IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>AL SCHMIDT, in his official capacity as Secretary of the Commonwealth, and the COMMONWEALTH OF PENNSYLVANIA,<br><br>*Defendants*. | Case No. 25-cv-1481<br>(Hon. Cathy Bissoon) |

**PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS AND MIKE CROSSEY'S MOTION TO INTERVENE AS DEFENDANTS**

Proposed Intervenors the Pennsylvania Alliance for Retired Americans ("PARA") and Mike Crossey move to intervene as defendants in this matter to defend their significant interests that stand to be impaired by this litigation.

For the reasons discussed in the supporting brief filed alongside this Motion, and the Declaration attached thereto, Proposed Intervenors are entitled to intervene in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2). In the alternative, Proposed Intervenors request permissive intervention pursuant to Rule 24(b). Pursuant to Rule 24(c), a Proposed Answer is also attached to this Motion.[1]

**WHEREFORE**, the Proposed Intervenors respectfully request that the Court grant their intervention in the above-captioned matter.

---

[1] Proposed Intervenors respectfully request leave to file a Rule 12(b) motion within the time period prescribed by the Federal Rules of Civil Procedure or pursuant to any schedule set by this Court.

| | |
|---|---|
| September 29, 2025 | Respectfully submitted, |
| | /s/ Timothy J. Ford |
| Elisabeth C. Frost* | Timothy J. Ford (Pa. Id. No. 325290) |
| Jacob D. Shelly* | David Rodkey (Pa. Id. No. 325698) |
| Branden D. Lewiston* | **DILWORTH PAXSON LLP** |
| Tori Shaw* | 1650 Market Street, Suite 1200 |
| **ELIAS LAW GROUP LLP** | Philadelphia, PA 19103 |
| 250 Massachusetts Ave. NW, Suite 400 | Tel.: (215) 575-7000 |
| Washington, DC 20001 | Fax: (215) 754-4603 |
| Telephone: (202) 968-4490 | tford@dilworthlaw.com |
| efrost@elias.law | drodkey@dilworthlaw.com |
| jshelly@elias.law | |
| blewiston@elias.law | |
| tshaw@elias.law | |

*ns*Pro Hac Vice* Applications Forthcoming

*Attorneys for Proposed Intervenors
Pennsylvania Alliance for Retired Americans
and Mike Crossey*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>AL SCHMIDT, in his official capacity as Secretary of the Commonwealth, and the COMMONWEALTH OF PENNSYLVANIA,<br><br>*Defendants*. | Case No. 25-cv-1481<br>(Hon. Cathy Bissoon) |

**PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS AND MIKE CROSSEY'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

LEGAL STANDARD ............................................................................................................ 8

ARGUMENT ......................................................................................................................... 9

I.   Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2). ....... 9

   A. This motion is timely. .......................................................................................... 9

   B. Proposed Intervenors have an interest in protecting their sensitive and personal information from improper disclosure to DOJ................................................................. 10

   C. The existing parties do not adequately represent Proposed Intervenors. ........... 12

II.  Alternatively, Proposed Intervenors should be granted permissive intervention. ... 14

CONCLUSION..................................................................................................................... 15

# INTRODUCTION

The U.S. Department of Justice recently embarked on an unprecedented nationwide campaign to compile sensitive personal information on voters in a centralized federal database. As part of this effort, DOJ sued Pennsylvania last week, seeking to compel the state to turn over all the voter information it has on all of its voters. This legal assault not only intrudes upon Pennsylvania's constitutional prerogative to maintain and protect its own voter registration list—it tramples the privacy rights of individual Pennsylvanians who have good reason to fear their personal information being handed over to the federal government.

Accordingly, the Pennsylvania Alliance for Retired Americans ("PARA") and Mike Crossey (together, "Proposed Intervenors") move to intervene in this suit to defend against the federal government's overreach. PARA, an organization that fights for economic and social fairness for Pennsylvanians, seeks to intervene both to preserve the privacy rights of its members across Pennsylvania and to protect its own mission-critical ability to politically empower communities worried about retaliation and scrutiny from the federal government. Mr. Crossey—a civically-engaged registered Pennsylvania voter and the President of PARA—moves to intervene to protect his privacy rights and prevent the improper disclosure of his sensitive and personal information to DOJ. Pennsylvania law guarantees voters that their "unique identifying" information—such as driver's license numbers and partial social security numbers—may "not be made available" for disclosure. 4 Pa. Code § 183.14(c)(3). DOJ's requested relief would run roughshod over these privacy protections.

Proposed Intervenors are entitled to intervention as of right because they have significant interests that are at serious risk of impairment by this action, and the existing parties do not adequately represent those interests. *See* Fed. R. Civ. P. 24(a). Most significantly, they have an interest in ensuring that their own sensitive and personal information—and in PARA's case, the

1

personal information of its members—is not improperly disclosed to DOJ. While Pennsylvania and its Secretary of State have thus far resisted disclosure, they do not adequately represent Proposed Intervenors; as governmental defendants, they must consider the "broader public-policy implications" of the issues presented in this suit, while Proposed Intervenors are solely concerned with protecting their privacy, "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 (1972)).

Alternatively, Proposed Intervenors should be granted permissive intervention under Rule 24(b), the requirements of which are readily satisfied. Doing so will ensure that Pennsylvania voters have a voice in this litigation, which ultimately concerns the disclosure of *their* sensitive and personal information.

Proposed Intervenors sought the existing parties' position on this motion. DOJ opposes the motion, and Defendants did not respond by time of filing.

## BACKGROUND

**I.     Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states primary responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. In 1993 Congress enacted the National Voter Registration Act ("NVRA") to serve "two main objectives: increasing voter registration and removing ineligible persons from

2

the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The law charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including as to maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted the Help America Vote Act ("HAVA") "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how *states* maintain their voter rolls, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1). It also requires states to "perform list maintenance" consistent with the NVRA. *Id.* § 21083(a)(2). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the *State* level." *Id.* § 21083(a)(1)(A) (emphasis added). Indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

*See* H.R. Rep. No. 107-329, at 31–32 (2001).

Consistent with that principle, neither the NVRA nor HAVA tasks the *federal government* with compiling a federal national voter registration list. Congress has traditionally "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the *specific* requirements of the NVRA and HAVA, which purposefully operate through the states themselves.

**II.** **The Department of Justice has embarked on an unprecedented nationwide campaign**

3

**to collect personal voter registration data held by the states.**

This spring, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about each registered voter. To date, DOJ has sent demands to over thirty-five states, with plans to make similar demands on all fifty states.[1] It seeks to use the data to create a national voter database that will, in turn, be used to seek to substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent elections. *See* Barrett & Corasaniti, *supra* n.1. The vast majority of states that have received such demands—including those led by Republican officeholders—have refused to comply, declining to turn over sensitive personal information that is typically protected by state law.[2]

DOJ sent Pennsylvania a letter on August 4, 2025, demanding, among other things, Pennsylvania's "statewide voter registration list." Compl. ¶ 36, ECF No. 1. DOJ later reiterated its requests, demanding that Pennsylvania produce "all fields" from its voter registration database, including "each registrant's full name, date of birth, residential address, their state driver's license number, and the last four digits of their social security number." *Id.* ¶ 39.

Pennsylvania Secretary of State Al Schmidt responded on August 21 by offering DOJ Pennsylvania's public voter records, but that offer did not extend to "unique identifiers" requested by DOJ, including driver's license numbers and partial social security numbers. *Id.* ¶ 43.

**III.   The Department of Justice sues Pennsylvania to obtain its complete voter registration list.**

DOJ filed this suit on September 25, seeking to compel Pennsylvania to provide its full

---

[1] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://perma.cc/8VP4-WRXD.

[2] *See* Jonathan Shorman, *Some Republican states resist DOJ demand for private voter data*, Stateline (Sept. 18, 2025), https://stateline.org/2025/09/18/some-republican-states-resist-doj-demand-for-private-voter-data/ (reporting only one state—Indiana—has so far given DOJ everything it sought).

4

statewide voter registration list. Compl. ¶ 3. DOJ cited three federal statutes to justify its claims: the NVRA, HAVA, and the Civil Rights Act of 1960. *Id.* ¶¶ 13–15. None supports DOJ's sweeping demand.

*First*, though the NVRA requires states to permit public inspection of certain records, 52 U.S.C. § 20507(i)(1), courts have consistently held that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in" those records, such as driver's license numbers and partial social security numbers. *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases).

*Second*, unlike the NVRA, HAVA has no disclosure provisions at all, and DOJ's complaint and letters cite no case law or other authority for the radical proposition that the mere existence of DOJ's authority to enforce HAVA's "uniform and nondiscriminatory" requirements entitles it to unfettered access to state voter registration lists upon demand. 52 U.S.C. § 21111.

*Third*, as a last-ditch effort, DOJ invokes Section 303 of the Civil Rights Act of 1960, a long-dormant Civil Rights-era law that permits DOJ to review certain voting records to investigate "question[s] concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Congress enacted the law to preserve "the right of all qualified citizens to vote without discrimination on account of race," and specifically to facilitate "investigation[s]" authorized under the Civil Rights Act of 1957, which recalcitrant local officials had frustrated through the destruction of records. H.R. Rep. 86-956, at 1944 (1959). This history "leaves no doubt but that [Section 303] is designed to secure a more effective protection of the right to vote." *Alabama ex rel. Gallion v. Rogers,* 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U. S.*, 285 F.2d 430 (5th Cir. 1961). But DOJ admits that is not its purpose here; instead, it claims to be evaluating Pennsylvania's list maintenance efforts under NVRA and HAVA—statutes with their own separate disclosure rules (under the NVRA

5

specifically) and enforcement mechanisms. Compl. ¶ 2. Thus, the Civil Rights Act is inapplicable here.[3]

## IV.  Intervenors' sensitive personal information is placed in jeopardy by DOJ's demands.

Proposed Intervenors include (i) a statewide organization, PARA, that represents over 335,000 voter-members in Pennsylvania and is dedicated to fighting for economic and social fairness for all Pennsylvanians, *see* Ex. B, Declaration of Mike Crossey ("Crossey Decl.") at ¶¶ 4−5, as well as (ii) a civically-engaged, registered Pennsylvania voter, Mr. Crossey, whose sensitive and personal information will be disclosed to DOJ if its efforts prevail, *see id.* at ¶¶ 13−14. Pennsylvania law guarantees voters like Mr. Crossey and PARA's members that the sensitive personal information they disclose when registering to vote—such as driver's license numbers and partial social security numbers—will "not be made available" for disclosure. 4 Pa. Code § 183.14(c)(3).

In addition to defending their privacy interests, Proposed Intervenors have well-founded concerns about DOJ's intended use of PARA's members' sensitive personal voter information. These concerns are especially acute given that many—including Mr. Crossey—hold political views and engage in civic activities disfavored by the current presidential administration, which has repeatedly disregarded privacy protections over sensitive personal data.[4] *See* Crossey Decl.

---

[3] Even if Section 303 did apply, it does not prohibit states from redacting confidential and sensitive voter information that has nothing to do with investigating the denial of the right to vote, just as they may under the NVRA. *See Pub. Int. Legal Found.*, 92 F.4th at 56.

[4] For example, public reports have indicated that the Department of Government Efficiency (DOGE) placed the security of millions of Social Security numbers at risk through improper maintenance. *See* Nicholas Nehamas, *DOGE Put Critical Social Security Data at Risk, Whistle-Blower Says*, N.Y. Times (Aug. 26, 2025), https://perma.cc/ZB7V-R645. Just this past week, the National Archives allegedly released the military records of a New Jersey gubernatorial candidate in violation of the Privacy Act, with the apparent aim of seeking to help her opponent. *See* Caroline Vakil, *Sherrill campaign slams release of military records to opponent's ally*, The Hill (Sept. 25, 2025), https://perma.cc/8WZB-994P.

¶ 15. PARA has an additional interest in preventing the chilling of its members' political activity by the disclosure of their sensitive personal information to DOJ, which would impair the Alliance's existing mission-critical voter and civic engagement work. Crossey Decl. ¶¶ 11–12.

**PARA.** PARA is a 501(c)(4) nonprofit social welfare organization with over 335,000 members throughout Pennsylvania. *See* Crossey Decl. ¶¶ 3–4. Its membership is composed of retirees, most of whom are over the age of 65, from public and private sector unions and community organizations, as well as individual activists. *Id.* ¶ 4. PARA is a chartered state affiliate of the Alliance for Retired Americans, which represents more than 4.4 million members nationwide. *Id.* PARA's mission is to ensure social and economic justice and to protect the civil rights of retirees so they may enjoy dignity, personal fulfillment, and family security as senior citizens. *Id.* ¶ 5. To advance that mission, PARA engages in efforts to protect and preserve programs vital to the health and economic security of its members and dedicates significant resources to helping its members register to vote and cast a ballot. *Id.* ¶¶ 6–7. Increasing voter turnout among its members is central to PARA's mission: by turning out such voters, PARA builds its constituency's political power. *Id.* ¶ 8. Further, because PARA members are overwhelmingly retirees, they are disproportionately subject to scams targeting senior citizens—particularly scams involving identity theft and social security fraud—which make them all the more protective of the privacy of their sensitive personal identifying information. *Id.* ¶ 11. In fact, this concern is so pressing that PARA has recently launched a senior fraud detection program. *Id.* ¶ 12. The potential disclosure of PARA's members' sensitive identifying information to DOJ risks disrupting PARA's mission-critical work because many of its members may choose to opt out of registering to vote for fear that their information will be improperly disclosed to the federal government, increasing the risk of exposing them to identify-theft scams. *Id.*

**Mike Crossey.** The son of a bricklayer from McKees Rocks, Mr. Crossey has been a

registered voter in Allegheny County, Pennsylvania for over fifty years. *Id.* ¶ 2. He cares deeply about Pennsylvania and the people who live there and has thus dedicated his professional life to advancing social and economic justice in the state. *Id.* ¶¶ 2–3. To that end, he was a schoolteacher in the Pittsburgh suburbs for over thirty years and was then elected President of the Pennsylvania State Education Association, a union representing teachers statewide. *Id.* ¶ 2. He has also served as an Allegheny County councilman, a Mount Lebanon commission, and is currently the President of PARA. *Id.* ¶¶ 2–3. He is deeply concerned about the disclosure of his sensitive and personal information to DOJ, particularly considering the recent data breaches involving DOGE. *Id.* ¶ 14. He does not trust the federal government to handle with care his personal identifying information. *Id.* Moreover, as a prominent political activist, he is concerned that federal officials would use his sensitive information to harass or retaliate against him—and other PARA members—for their advocacy work. *Id.* ¶ 15.

## LEGAL STANDARD

To determine whether a movant has a right to intervene under Federal Rule of Civil Procedure 24(a)(2), courts review whether it has submitted "a timely application for leave to intervene," it has established "a sufficient interest in the litigation," there is "a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action," and the existing parties may inadequately represent the prospective intervenor's interest. *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (discussing Fed R. Civ. P. 24(a)(2)). Alternatively, a nonparty may be permitted to intervene under Rule 24(b) if it has submitted a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the

8

adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).[5]

## ARGUMENT

I.  **Proposed Intervenors are entitled to intervene as of right under Rule 24(a)(2).**

    A.    **This motion is timely.**

Proposed Intervenors' motion is indisputably timely. "To determine whether [an] intervention motion is timely," courts in the Third Circuit consider: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 939, 949 (3d Cir. 2012) (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995)). DOJ filed suit on September 25, and this motion follows only four days later—before any case schedule has been set, before any Defendants have appeared or answered, and while this case remains at the preliminary stage. *See Land v. Del. River Basin Comm'n*, No. 3:16-CV-00897, 2017 WL 63918, at *3 (M.D. Pa. Jan. 5, 2017) (recognizing as timely an intervention motion filed "prior to the commencement of discovery and prior to the Court's ruling on any dispositive motion"). Allowing intervention would not alter any existing deadlines, and Proposed Intervenors agree to abide by any future deadlines set by the Court or agreed to by the existing parties, so there is no conceivable prejudice to any existing party. *See Mountain Top Condo. Ass'n*, 72 F.3d at 370 (finding no prejudice where "there were no depositions taken, dispositive motions filed, or decrees entered during the four year period in question"). Proposed Intervenors therefore satisfy the timeliness factor for intervention as of right.

---

[5] Proposed Intervenors submit a Proposed Answer as required by Rule 24, *see* Ex. A, but reserve the right to file a Rule 12 motion by the deadline set by the Court or the Federal Rules of Civil Procedure.

### B. Proposed Intervenors have an interest in protecting their sensitive and personal information from improper disclosure to DOJ.

To satisfy the second prong, encompassing the second and third elements of Rule 24(a)'s test, "the Supreme Court has held that an applicant must assert an interest that is significantly protectable" by "demonstrat[ing] that its interest is specific to it, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Pennsylvania v. President U.S.*, 888 F.3d 52, 58 (3d Cir. 2018) (cleaned up) (citations omitted). Satisfying this requirement is less demanding than establishing an Article III injury-in-fact. *See Am. Farm Bureau Fed'n v. EPA*, 278 F.R.D. 98, 107 n.3 (M.D. Pa. 2011) (collecting authority).

Proposed Intervenors satisfy that standard here. PARA's members and Mr. Crossey have protectible privacy interests in maintaining the confidentiality of their sensitive identifying information, and they strenuously oppose the release of such information—which is protected from disclosure by state law, 4 Pa. Code § 183.14(c)(3)—to DOJ. Crossey Decl. ¶ 16. And they are also credibly concerned about the consequences of the disclosure of their sensitive information to DOJ, both because of the potential risk of data breaches that would expose them to identify-theft scams, and because of the potential for retaliation by the federal government against voters who engage in political advocacy work disfavored by the current administration. *Id.* ¶¶ 11, 15. Proposed Intervenors' concerns about the confidentiality and privacy of their sensitive information constitute a legally protectible interest that supports intervention. *See, e.g.*, *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (recognizing "straightforward" significantly protectable interest in confidentiality of non-public documents); *In re Sealed Case*, 237 F.3d 657, 663–64 (D.C. Cir. 2001) (holding intervenors had "legally cognizable interest in maintaining the confidentiality" of records); *Constand v. Castor*, No. CV 15-5799, 2016 WL 5681454, at *3 (E.D. Pa. Oct. 3, 2016) (finding "interest in confidentiality is sufficient" to support intervention); *In re Chocolate Confectionary Antitrust Litig.*, No. CIV.A. 1:08-MDL-1935, 2008 WL 4960194, at *1 (M.D. Pa.

10

Nov. 18, 2008) (finding "significantly protectable interest" supporting intervention in "safeguarding the confidentiality of information" (internal quotation marks omitted) (citation omitted)).

The fact that Proposed Intervenors' privacy interests implicate the right to vote bolsters the interest here as well, as voters have a substantial interest in preserving their "right to vote privately," *Powell v. Benson*, No. 20-CV-11023, 2020 WL 5229104, at *5 (E.D. Mich. Sept. 2, 2020), and in ensuring that their right to vote is not unlawfully burdened, *e.g.*, *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434–35 (5th Cir. 2011) (reversing denial of intervention and concluding voting right interest was "a sufficient interest to satisfy Rule 24(a)(2)").

PARA's mission-critical voter engagement and turnout work will also be harmed by the disclosure of its voters' information to DOJ. PARA's members are predominantly senior citizens and are thus often the target of identity-theft scams, and many members are also concerned about the prospect of political retaliation against disfavored political advocacy. Crossey Decl. ¶¶ 11, 15. If members know their sensitive identifying information will be disclosed to a federal government that they do not trust to handle it with care, many may opt out of voter registration and political engagement altogether, thus undermining PARA's core mission. *Id.* ¶ 12. Courts have long recognized that organizations have a significant protectable interest in preserving and pursuing their own mission-critical organizational activities, particularly when it comes to ensuring their constituents' ability to vote. *See, e.g.*, *Jud. Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706, at *3 (N.D. Ill. July 18, 2024); *Paher v. Cegavske*, No. 3:20-cv-00243-MMD-WGC, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *Issa v. Newsom*, No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020); *cf. La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (recognizing that a political party had a "legally

protectable interest" because they "expend significant resources in the recruiting and training of volunteers and poll watchers who participate in the election process").

The disclosure of Proposed Intervenors' confidential information as a result of this litigation would plainly impair Proposed Intervenors' interests. Once their information is disclosed to DOJ, "the cat is out of the bag." *In re Sealed Case*, 237 F.3d at 664 (citation omitted) (finding impairment when intervenor's confidential information was at risk of disclosure); *see Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc.*, 54 F.3d 156, 162 (3d Cir. 1995) (observing that impairment focuses upon the "practical consequences of the litigation"); *Kalbers*, 22 F.4th at 828 (holding intervenor's "interest in keeping its documents confidential would obviously be impaired by an order to disclose" those documents). DOJ's demand for Proposed Intervenors' confidential information is thus "antithetical" to Proposed Intervenors' "efforts to maintain the confidentiality" of that information. *In re Chocolate Confectionary Antitrust Litig.*, 2008 WL 4960194, at *1.

### C. The existing parties do not adequately represent Proposed Intervenors.

Proposed Intervenors cannot be assured adequate representation in this matter if they are denied intervention. "[A]n applicant's interests are not adequately represented if they diverge sufficiently from the interests of the existing party, such that the existing party cannot devote proper attention to the applicant's interests." *President U.S.*, 888 F.3d at 60 (cleaned up). Because "[t]his burden is generally treated as minimal and requires the applicant to show that representation of his interest '*may be*' inadequate," *id*. (cleaned up) (citation omitted), courts are "liberal in finding" this requirement to be met, 7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1909 (3d ed. 2024) (noting that "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests").

The existing parties—all government actors—do not adequately represent Proposed Intervenors' interests. DOJ, for one, seeks to forcibly compel production of Pennsylvania's

12

unredacted state voter registration list, which directly impairs Proposed Intervenors' interests. While Pennsylvania and its Secretary of State have, to date, resisted that demand, federal courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). This is because a government defendant's interests are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998). According, Proposed Intervenors' burden here is "comparatively light." *Id.*

The Supreme Court recently emphasized this point, explaining that public officials must "bear in mind broader public-policy implications," whereas private litigants—like Proposed Intervenors—seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 196 (quoting *Trbovich*, 404 U.S. at 538–39). Thus, the Supreme Court cautioned that courts should not conduct the adequacy-of-representation analysis at too "high [a] level of abstraction," and reaffirmed that, even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation remains "minimal" unless those interests are "identical." *Id.* (citation omitted). In other words, even if Pennsylvania and the Secretary also oppose the relief that DOJ seeks at a high level of abstraction, it does not follow that they share "identical" interests to private individual voters or civic organizations committed to voter engagement and turnout. *See id.*

Here, the existing Defendants and Proposed Intervenors do not share "identical" interests. For one, the existing Defendants are obliged to enforce the requirements of the NVRA and HAVA, in addition to various state laws governing maintenance of the voter registration list. Thus, by definition, they have an obligation to weigh and carry out public duties that Proposed Intervenors do not share. *See, e.g.*, *Bellitto v. Snipes*, No. 16-CV-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sept. 21, 2016) (concluding adequate representation was not guaranteed where existing defendant

13

was "an elected official" whose interpretation of the NVRA might not be aligned with intervenors' interests). Indeed, the NVRA specifically requires them to "balance competing objectives"—maintaining accurate and current voter rolls while promoting access to the ballot box—that do not pertain to the Proposed Intervenors or their interests. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019). Proposed Intervenors do not share these competing interests—they are focused entirely on maintaining the privacy of their sensitive personal information, whereas the existing Defendants' competing obligations may incline them to acquiesce to DOJ's demands. *See President U.S.*, 888 F.3d at 61 (finding inadequate representation when government had "numerous complex and conflicting interests" (quoting *Kleissler*, 157 F.3d at 973)).

Ultimately, the government entities and public officials on both sides of the case do not stand in the same shoes as Proposed Intervenors and thus do not sufficiently represent their interests, which are directly impacted by the disposition of this matter.

**II.     Alternatively, Proposed Intervenors should be granted permissive intervention.**

This Court should alternatively exercise its discretion to grant permissive intervention. Rule 24(b) is readily satisfied: Proposed Intervenors assert a "defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b). Proposed Intervenors have moved promptly, *see supra* Argument § I.A, and agree to abide by any schedule set by the Court or agreed to by the original parties, meaning there will be no delay or prejudice. *See United States v. Virgin Islands*, 748 F.3d 514, 524 (3d Cir. 2014) (explaining that in weighing permissive intervention, courts "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."). And Proposed Intervenors' defense requires resolution of the same factual and legal issues raised in the underlying lawsuit.

Furthermore, under Rule 24(b), courts may "consider whether the proposed intervenors

will add anything to the litigation." *Kitzmiller v. Dover Area Sch. Dist.,* 229 F.R.D. 463, 471 (M.D. Pa. 2005). PARA and Mr. Crossey will do just that. As explained, they stand in different shoes than the existing Defendants and are the only parties that give voice to the voters who are at risk of having their sensitive information disclosed as a consequence of Plaintiff's suit. *See supra* Argument § I.C. Proposed Intervenors will provide the Court with a distinct viewpoint unencumbered by Defendants' obligations under the NVRA to balance competing policy objectives. Thus, "the presence of the intervenors [will] serve to clarify issues and, perhaps, contribute to resolution of this matter." *Am. Farm Bureau Fed'n*, 278 F.R.D. at 111.

It is for these reasons that courts routinely grant permissive intervention to civic organizations and individual voters to ensure their voices are heard when litigation implicates the rights of all voters. *See, e.g.*, *1789 Found. Inc. v. Fontes*, No. CV-24-02987-PHX-SPL, 2025 WL 834919, at *4 (D. Ariz. Mar. 17, 2025) (permitting advocacy organizations to intervene as defendants); *Pub. Int. Legal Found., Inc., v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020) (permitting voting rights organizations to intervene as defendants); *League of Women Voters of N.C. v. North Carolina*, No. 1:13CV660, 2014 WL 12770081, at *3 (M.D.N.C. Jan 27, 2014) (permitting individual voters to intervene).

Thus, because Proposed Intervenors' participation will assist rather than prejudice the efficient development and resolution of this matter, the Court should grant permissive intervention if it does not find that Proposed Intervenors may intervene as of right.

## CONCLUSION

For all of the foregoing reasons, Proposed Intervenors respectfully request that the Court grant them intervention as of right—or in the alternative, grant permissive intervention—to allow them to protect their sensitive personal information from disclosure.

September 29, 2025

Elisabeth C. Frost\*
Jacob D. Shelly\*
Branden D. Lewiston\*
Tori Shaw\*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
efrost@elias.law
jshelly@elias.law
blewiston@elias.law
tshaw@elias.law

\**Pro Hac Vice* Applications Forthcoming

*Attorneys for Proposed Intervenors
Pennsylvania Alliance for Retired Americans
and Mike Crossey*

Respectfully submitted,

*/s/ Timothy J. Ford*

Timothy J. Ford (Pa. Id. No. 325290)
David Rodkey (Pa. Id. No. 325698)
**DILWORTH PAXSON LLP**
1650 Market Street, Suite 1200
Philadelphia, PA 19103
Tel.: (215) 575-7000
Fax: (215) 754-4603
tford@dilworthlaw.com
drodkey@dilworthlaw.com