# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br> v.<br><br>COMMONWEALTH OF PENNSYLVANIA;<br>and AL SCHMIDT, in his official capacity as<br>Secretary of the State of Pennsylvania,<br><br>    Defendants. | Case No. 2:25-cv-1481<br>(Hon. Cathy Bissoon) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO INTERVENE AS DEFENDANTS OF NICHOLAS MASTON, GREGORY
PERRY, TODD THATCHER, JOEL DICKSON, TRISHA KENT, LIOR STERNFELD,
JOHN THOMPSON, THE LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA, AND
<u>COMMON CAUSE</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 2

   A.   DOJ's Efforts to Obtain Private Voter Information from Pennsylvania ............................ 2

   B.   Proposed Intervenors ........................................................................................ 7

III.  MOVANTS ARE ENTITLED TO INTEREVENE AS A MATTER OF RIGHT .......... 12

   A.   The Motion to Intervene is Timely .................................................................... 12

   B.   The Voter Intervenors Have Substantial Interests in the Underlying Litigation ............... 13

   C.   Disposition of this Case Is Likely to Impair the Interests of Proposed Intervenors ......... 16

   D.   The Interests of Existing Defendants Diverge from Those of Proposed Intervenors ....... 16

IV.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE
     INTERVENTION .......................................................................................... 19

V.    CONCLUSION ................................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Am. Farm Bureau Fed'n v. Envtl. Prot. Agency*,
278 F.R.D. 98 (M.D. Pa. 2011) ...................................................................... 16, 17, 19

*Berger v. N.C. State Conference of the NAACP*,
597 U.S. 179 (2022) .............................................................................................. 18

*Brody ex rel. Sugzdinis v. Spang*,
957 F.2d 1108 (3d Cir. 1992) ........................................................................... 16, 19

*Brumfield v. Dodd*,
749 F.3d 339 (5th Cir. 2014) .................................................................................. 16

*Choike v. Slippery Rock Univ. of Pa. of State Sys. of Higher Educ.*,
297 F. App'x 138 (3d Cir. 2008) ............................................................................. 12

*Cmty. Vocational Schs. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*,
No. 09-cv-1572, 2017 WL 1376298 (W.D. Pa. Apr. 17, 2017) ................................ 13

*Constand v. Castor*,
No. 15-cv-5799, 2016 WL 5681454 (E.D. Pa. Oct. 3, 2016) ................................... 12

*Donald J. Trump for President, Inc. v. Boockvar*,
No. 4:20-cv-2078, 2020 WL 8262029 (M.D. Pa. Nov. 12, 2020) ........................ 15, 20

*Donaldson v. United States*,
400 U.S. 517 (1971) ............................................................................................... 13

*Hoots v. Pennsylvania*,
672 F.2d 1133 (3d Cir. 1982) .................................................................................. 16

*Judicial Watch, Inc. v. Ill. State Bd. of Elections*,
No. 24-C-1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024 ..................................... 18

*Judicial Watch, Inc. v. Pennsylvania*,
Case No. 1:20-cv-708 (M.D. Pa. Nov. 19, 2020) ..................................................... 20

*Kleissler v. U.S. Forest Serv.*,
157 F.3d 964 (3d Cir. 1998) .............................................................................. 12, 17

*Kobach v U.S. Election Assistance Comm'n*,
No. 13-cv-04095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013)............................................. 15, 17

*LaRoque v. Holder*,
No. 1:10-cv-561 (D.D.C. Aug. 25, 2010) ..................................................................................... 15

*Meek v. Metro. Dade Cnty.*,
985 F.2d 1471 (11th Cir. 1993) ................................................................................................... 17

*PA Fair Elections v. Pa. Dep't of State*,
337 A.3d 598 (Pa. Commw. Ct. 2025)............................................................................................ 6

*Pa. State Educ. Ass'n v. Pa. Dep't of Cmty. & Econ. Dev.*,
148 A.3d 142 (Pa. 2016) .............................................................................................................. 13

*Pennsylvania v. President U.S.*,
888 F.3d 52 (3d Cir. 2018) ........................................................................................................... 13

*Pub. Int. Legal Found., Inc. v. Winfrey*,
463 F. Supp. 3d 795 (E.D. Mich. 2020) ....................................................................................... 15

*Texas v. United States*,
798 F. 3d 1108 (D.C. Cir. 2015).................................................................................................... 15

*Town of Chester v. Laroe Estates, Inc.*,
581 U.S. 433 (2017) ..................................................................................................................... 13

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528 (1972) ..................................................................................................................... 16

*United States v. Territory of V.I.*,
748 F.3d 514 (3d Cir. 2014) .................................................................................................... 12, 16

*Wallach v. Eaton Corp.*,
837 F.3d 356 (3d Cir. 2016) ......................................................................................................... 12

**Statutes**

25 Pa.C.S. § 1404.......................................................................................................................... 14
5 U.S.C. § 552a.............................................................................................................................. 14
52 U.S.C. § 20703.......................................................................................................................... 18

## Other Authorities

Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, PROPUBLICA (July 13, 2024), https://www.propublica.org/article/inside-ziklag-secret-christian-charity-2024-election........... 7

Bethany Rogers, *Testimony: Pa. Election Denial Group Behind Voter Registration Cancellation Form Mailings*, GOERIE.COM (Nov. 2, 2024), https://www.goerie.com/story/news/politics/elections/state/2024/11/02/pa-voter-registration-cancellation-letters-chester-county/75996247007 ....................................................................11

Brett Sholtis, *'PA Fair Elections,' Tied to Powerful Conservative Groups, Pushes to Remove People from Voter Rolls*, WESA (Sept. 28, 2024), https://www.wesa.fm/politics-government/2024-09-28/pa-fair-elections-conservative-pennsylvania-voter-role-purges.......... 7

Brett Sholtis, *Pa. Election Integrity Group Met with 2 Architects of 2020 Effort to Overturn Election*, LANCASTERONLINE (July 21, 2024), https://lancasteronline.com/news/politics/pa-election-integrity-groupmet-with-2-architects-of-2020-effort-to-overturnelection/article_d477633c-460f-11ef-9d56-2fd754d57cab.html .................................. 6

Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA (Nov. 8, 2024), https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/ ...........................................................10, 11

Carter Walker, *This Pa. Activist Is the Source of False and Flawed Election Claims Gaining Traction Across the Country*, VOTEBEAT (Feb. 12, 2025), https://www.votebeat.org/pennsylvania/2024/02/12/heather-honey-pennsylvania-election-integrity-eric/ ...................................................................................................................... 6

Chester County, *Nov. 1, 2024 Election Board* overview *Hearing,* https://chestercopa.portal.civicclerk.com/event/852/..................................................................11

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html ................................................................................................... 5

Doug Bock Clark, *She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security*, PROPUBLICA (Aug. 26, 2025), https://www.propublica.org/article/heather-honey-dhs-election-security ................................... 5

Hansi Lo Wang, *Thousands of Pennsylvania Voters Have Had Their Mail Ballot Applications Challenged*, NPR (Nov. 5, 2024), https://www.npr.org/2024/11/04/nx-s1-5178714/pennsylvania-mail-ballot-voter-challenges-trump ................................................10, 11

Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is Appointed to Federal Election Post*, PA. CAPITAL-STAR (Aug. 27, 2025), https://penncapital-star.com/election-2025/pa-s-heather-honey-who-questioned-the-2020-election-is-appointed-to-federal-election-post/ ............................................................................................................................... 5

Jeremy Roebuck and Katie Bernard, *'I Can't Think of Anything Less American': Right-Wing Activists' Effort to Nullify Hundreds of Pa. Votes Met with Skepticism*, PHILA. INQUIRER (Nov. 1, 2024), https://www.inquirer.com/politics/election/heather-honey-pa-fair-elections-vote-challenges-pennsylvania-20241101.html ............................................................................... 10

Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE (Sept. 12, 2025), https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security ........................................................................................................................ 5

Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR (June 29, 2025), https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database ................................................................... 6

Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET (June 12, 2025), https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters/ ................ 6

Press Release, U.S. Dep't of Justice, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://www.justice.gov/opa/pr/justice-department-sues-oregon-and-maine-failure-provide-voter-registration-rolls ............................ 4

Press Release, U.S. Dep't of Justice, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://www.justice.gov/opa/pr/justice-department-sues-six-states-failure-provide-voter-registration-rolls ............................................................ 4

Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS (Sept. 9, 2025), https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09.. 5

## Rules and Regulations

4 Pa. Code § 183.14 ............................................................................................................. 14

Fed. R. Civ. P. 24 ............................................................................................ 1, 2, 12, 13, 19, 20

Nicholas Maston, Gregory Perry, Todd Thatcher, Joel Dickson, Trisha Kent, Lior Sternfeld, John Thompson, the League of Women Voters of Pennsylvania, and Common Cause (collectively, "Proposed Intervenors" or the "Voter Intervenors") submit this memorandum of law in support of their Motion to Intervene as Defendants pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, pursuant to Rule 24(b).

## I.    INTRODUCTION

Proposed Intervenors are (1) individual Pennsylvania voters whose privacy and voting rights have been attacked already and/or may be under further threat if the United States gets the relief it seeks, and (2) non-partisan, good-government organizations dedicated to grassroots voter engagement in Pennsylvania whose members and whose own work is also at risk. Proposed Intervenors are entitled to intervene as of right under Rule 24 because this motion is timely, because their rights and interests are at stake, and because those rights and interests are not adequately represented by the existing defendants.

The Voter Intervenors' interests are unique among other reasons because of their experience during the 2024 Presidential Election, when wholly improper and unlawful mass-challenges filed across the Commonwealth targeted thousands of qualified Pennsylvania voters, including some of the individual Proposed Intervenors here. These baseless mass challenges to Pennsylvania mail-ballot voters, which threatened the voting rights of individual Proposed Intervenors as well as the vital pro-democracy work of organizational Proposed Intervenors, were developed by self-styled "election integrity" advocates using ill-conceived database-matching and database-analysis methods. And now, some of the same actors who facilitated these illegitimate attacks on Pennsylvania voters are working for the United States to promote "election integrity" through database-matching and analysis. Proposed Intervenors have an extremely strong and uniquely personal interest in ensuring that the United States' requests for unfettered and total access to the

most sensitive aspects of Pennsylvania's non-public voter data will not be used to harass and potentially disenfranchise voters.

The Voter Intervenors' interests are also unique because both the individual Proposed Intervenors and the organizational Proposed Intervenors' members reflect communities that are under particular threat from the United States' requested relief.  These communities include voters who are naturalized citizens, voters who have a previous felony conviction, voters who have moved and previously executed a change of address form or had previously been registered to vote in another state, voters who registered to vote by mail, and voters whose personal information is especially sensitive and who thus have heightened privacy interests in addition to the strong privacy interests under Pennsylvania law shared by all Pennsylvania voters.

The organizational Proposed Intervenors also have an interest in this case because their own grassroots, volunteer-led work engaging voters is threatened by the United States' request for sensitive, non-public voter data, which risks discouraging Pennsylvanians from registering to vote.

Proposed Intervenors' unique interests in this case, their unique perspective, and their unique motivation to interrogate the purpose of the United States' sweeping request for non-public Pennsylvania voter data will ensure the full development of the record here and aid the Court in its resolution of this case.  Intervention as of right pursuant to Rule 24(a), or in the alternative permissive intervention pursuant to Rule 24(b), should be granted.

## II.     BACKGROUND

### A.     DOJ's Efforts to Obtain Private Voter Information from Pennsylvania

Over the summer of 2025, Plaintiff the United States, through its Department of Justice ("DOJ"), began sending letters to election officials in dozens of states, including Pennsylvania, making escalating demands for the production of voter registration databases.  While Defendant Secretary Al Schmidt and his counterparts in other states have answered many of DOJ's questions

about voter registration processes and have offered to provide DOJ with large data sets about voter rolls, they have declined to provide the complete, non-public voter database, which includes, *inter alia* confidential, private voter information such as driver license numbers and partial Social Security Numbers ("SSN4s").

DOJ's demands of Pennsylvania began on June 23, 2025, when it wrote to Defendant Secretary Al Schmidt requesting information about voter registration and maintenance of voter rolls in Pennsylvania. *See* Ex. 1, Letter of Maureen Riordan to the Hon. Al Schmidt (June 23, 2025). In particular, DOJ expressed an interest in certain categories of voters, including: voters who might have "duplicate" records in the system for some reason (for example, because they changed addresses and registered to vote at their new address); "voters who have been convicted of a felony;" voters "who have moved outside the Commonwealth" and registered in their new state (even if those voters subsequently moved back to Pennsylvania); voters who are supposedly "ineligible to vote due to non-citizenship;" and voters who "registered to vote by mail." *Id.* at 2.

Secretary Schmidt provided detailed responses to the June 23 requests in a heavily footnoted, 11-page letter. *See* Ex. 2, Letter of Al Schmidt to Maureen Riordan (July 23, 2025) However, the United States responded by demanding additional information, including with questions premised on inaccurate statements about Pennsylvania voter rolls and list maintenance. *See* Ex. 3, Letter of Deputy Attorney General Michael Gates to the Hon. Al Schmidt (Aug. 4, 2025). DOJ's August 4 letter specifically demanded that Secretary Schmidt provide "[t]he current electronic copy of the Commonwealth of Pennsylvania's computerized statewide voter registration list" with "all fields contained within the list." *Id.* at 1. The August 4 letter again asked about voters with supposed "duplicate registrations," as well as supposed "[n]on-citizen" voters and voters with a "[f]elony conviction." *Id.* at 2. In a subsequent letter, the United States escalated

this data demand by sending another letter specifying that "the statewide VRL [voter registration list]… must… contain[] *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number [SSN4s]." Ex. 4, Letter of Assistant Attorney General Harmeet Dhillon to the Hon. Al Schmidt (Aug. 14, 2025).

In subsequent letters, Secretary Schmidt answered the questions posed by the United States, including by correcting some of Plaintiffs' mistaken factual premises, and offered to provide the United States a copy of Pennsylvania's voter registration list ("Full Voter Export" or "FVE"), but declined to include in the FVE certain confidential, sensitive data, including voters' driver's license numbers and SSN4s.  Ex. 5, Letter of Al Schmidt to Michael Gates (Aug. 18, 2025); Ex. 6, Letter of Al Schmidt to AAG Dhillon and DAAG Gates (Aug. 21, 2025).  He further noted that the FVE does not contain information on certain "confidential voters,"  including crime victims.  Ex. 6 at 1  He went on to explain that no federal law required him to supply such private information to the federal government, and that Pennsylvania's constitution, statutes, and regulations all restrict the disclosure of that information.  *Id.* at 2.

The United States responded by filing this lawsuit, which is one of at least eight that DOJ has initiated recently against states and their top election officials, seeking to compel them to hand over this sensitive voter data.[1]

---

[1] Press Release, U.S. Dep't of Justice, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://www.justice.gov/opa/pr/justice-department-sues-six-states-failure-provide-voter-registration-rolls; Press Release, U.S. Dep't of Justice, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://www.justice.gov/opa/pr/justice-department-sues-oregon-and-maine-failure-provide-voter-registration-rolls.

Notably, according to public reporting, DOJ's request for private, sensitive voter data from Pennsylvania and other states appears to be in connection with novel efforts by the United States to construct a national voter database, and to otherwise use untested forms of database matching in order to scrutinize state voter rolls. According to this reporting, DOJ employees "have been clear that they are interested in a central, federal database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. DOJ is coordinating in these novel efforts with the federal Department of Homeland Security (DHS). *Id.*; *see also, e.g.*, Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE (Sept. 12, 2025), https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security; Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS (Sept. 9, 2025), https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09.

According to public reporting, these efforts are being conducted with the involvement of purported "election integrity" advocates within and outside government. Those advocates include Heather Honey, who now serves as DHS's "deputy assistant secretary for election integrity," and has been the leader, for years, of a group called "PA Fair Elections." Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is Appointed to Federal Election Post*, PA. CAPITAL-STAR (Aug. 27, 2025), https://penncapital-star.com/election-2025/pa-s-heather-honey-who-questioned-the-2020-election-is-appointed-to-federal-election-post/; Doug Bock Clark, *She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security*, PROPUBLICA (Aug. 26, 2025), https://www.propublica.org/article/heather-honey-dhs-

election-security; *see also PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598, 600 n.1 (Pa. Commw. Ct. 2025) (noting, in suit brought by PA Fair Elections and Honey, that Honey is an "authorized representative of PA Fair Elections" and determining that PA Fair Elections' complaint, challenging Pennsylvania's voter roll maintenance practices pursuant to the federal Help America Vote Act, was meritless). Also involved is Cleta Mitchell, a private attorney and leader of a national group called the "Election Integrity Network" that is associated with PA Fair Elections. *See, e.g.*, Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET (June 12, 2025), https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters/; *see also* Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR (June 29, 2025), https://www.npr.org/2025/06/29/nx-s1-5409608/citizenship-trump-privacy-voting-database (reporting that Mitchell had received a "full briefing" from federal officials).

According to public reporting, Honey, Mitchell, and their organizations were previously involved in efforts to overturn the result of the 2020 election and to attack the integrity of elections in Pennsylvania in particular. *See, e.g.*, Carter Walker, *This Pa. Activist Is the Source of False and Flawed Election Claims Gaining Traction Across the Country*, VOTEBEAT (Feb. 12, 2025), https://www.votebeat.org/pennsylvania/2024/02/12/heather-honey-pennsylvania-election-integrity-eric/ (discussing Honey's "false" claims regarding voting in Pennsylvania in 2020 and her extensive collaboration with Mitchell); *see also* Brett Sholtis, *Pa. Election Integrity Group Met with 2 Architects of 2020 Effort to Overturn Election*, LANCASTERONLINE (July 21, 2024), https://lancasteronline.com/news/politics/pa-election-integrity-groupmet-with-2-architects-of-2020-effort-to-overturnelection/article_d477633c-460f-11ef-9d56-2fd754d57cab.html

(describing Mitchell meeting with PA Fair Elections).  For example, in the months before the 2024 election, Honey and PA Fair Elections pushed an effort to remove thousands of lawful Pennsylvania voters from the rolls, based on faulty sources of voter data such as "Eagle AI," a voter database analysis tool supported by Mitchell and her Election Integrity Network.  *See* Brett Sholtis, *'PA Fair Elections,' Tied to Powerful Conservative Groups, Pushes to Remove People from Voter Rolls*, WESA (Sept. 28, 2024), https://www.wesa.fm/politics-government/2024-09-28/pa-fair-elections-conservative-pennsylvania-voter-role-purges; *see also* Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, PROPUBLICA (July 13, 2024), https://www.propublica.org/article/inside-ziklag-secret-christian-charity-2024-election ("Mitchell is promoting a tool called EagleAI, which has claimed to use artificial intelligence to automate and speed up the process of challenging ineligible voters.").  As noted below, these efforts apparently continued through the 2024 elections with efforts to challenge the mail ballots of thousands of lawful Pennsylvania voters, including a number of the individual Proposed Intervenors.  *See infra* p. 10-11.

### B.  Proposed Intervenors

Proposed Intervenors Nicholas Maston, Gregory Perry, Todd Thatcher, Joel Dickson, Trisha Kent, Lior Sternfeld, John Thompson are qualified Pennsylvania voters whose voting rights and privacy rights would be threatened should the United States obtain its requested relief.

- Nicholas Maston is a medical doctor who resides in Delaware County. Dr. Maston's mail ballot was challenged by "election integrity" advocates on the eve of the 2024 Presidential Election based on the fact that Dr. Maston had previously completed a USPS change of address form when he resided temporarily in Chicago for medical training.  Dr. Maston moved back to Pennsylvania in the summer of 2024 and properly registered to vote in Delaware County.  *See* Mot., Ex. A ("Maston Decl."), ¶¶ 3, 6, 8.

7

- Gregory Perry is a "federal voter" who last resided in Lehigh County when he served as the Director of the Allentown Art Museum. Mr. Perry now lives abroad and has voted as an overseas voter for years. *See* Mot., Ex. B ("Perry Decl."), ¶¶ 6-7. His mail ballot was also challenged ahead of the 2024 Presidential Election. *Id.* ¶ 9.

- Todd Thatcher is a Chester County voter whose mail ballot was challenged on the eve of the 2024 Presidential Election because he had previously lived in California (where he had been registered to vote and filled out a USPS change of address form). Mr. Thatcher's ballot was challenged despite the fact that he had subsequently returned to Pennsylvania in 2024, reestablished residence, and properly registered to vote in Chester County. Mot., Ex. C ("Thatcher Decl."), ¶¶ 6, 7, 9, 13.

- Joel Dickson is also a Chester County voter whose mail ballot was challenged during the 2024 Presidential Election cycle because he had previously resided in Texas (where he had been registered to vote and filled out a USPS change of address form). Mr. Dickson was challenged despite the fact that he had subsequently moved back to Chester County in 2024, reestablished residence, and properly registered to vote. Mot., Ex. D ("Dickson Decl."), ¶¶ 7, 10, 11.

- Trisha Kent is a "federal voter" who votes in Beaver County, where she lived until moving to Canada to be with her spouse. Mot., Ex. E ("Kent Decl."), ¶¶ 5, 6. Her mail ballot was also challenged in 2024. *Id.* ¶ 10.

- Lior Sternfeld is a Pennsylvania voter and professor at Penn State University who became a naturalized U.S. citizen in 2023 and first voted in 2024. Mot., Ex. F ("Sternfeld Decl."), ¶¶ 4, 7, 9.

- John Thompson is a Pennsylvania voter and formerly incarcerated person whose right to vote was restored following his return home in 2017 after decades in prison.  Mot., Ex. G ("Thompson Decl."), ¶¶ 5, 7.

Proposed Intervenors the League of Women Voters of Pennsylvania ("LWV-PA") and Common Cause ("Common Cause") are nonpartisan organizations committed to, *inter alia*, ensuring that all eligible Pennsylvania voters register to vote and exercise their right of suffrage at each election.  *See* Mot., Ex. H ("LWV-PA Decl."), ¶ 5; Mot., Ex. I ("Common Cause Decl."), ¶¶ 6, 12.  The organizational Proposed Intervenors expend significant resources conducting on-the-ground voter engagement and assistance efforts, including registering qualified individuals to vote, helping voters navigate the vote-by-mail process, encouraging voters to participate, and assisting voters when they experience problems in trying to vote.  *See* LWV-PA Decl. ¶ 7; Common Cause Decl. ¶¶ 11, 12.   In addition to their work engaging voters, both organizations also have thousands of members who are themselves registered Pennsylvania voters.  *See* LWV-PA Decl. ¶ 6; Common Cause Decl. ¶¶ 8, 9. The organizational Proposed Intervenors' members include voters who are likely to fall into the categories identified in DOJ's letters, including voters who are at risk of having a supposed "duplicate" record in the system, voters who have registered to vote by mail, persons with a felony conviction, and naturalized citizens.  *See* LWV-PA Decl. ¶ 8; *see also* Common Cause Decl. ¶¶ 8-9.  They also may include voters whose information is "confidential" due to their particular status as crime victims, public officials, or due to some other heightened need for privacy.  *See* LWV-PA Decl. ¶ 9; *see also* Common Cause Decl. ¶¶ 8-9.

The relief requested by the United States would impair the privacy interests of all of the individual Voter Intervenors, as well as those of LWV-PA and Common Cause's members.  *See, e.g.*, LWV-PA Decl. ¶¶ 8, 9; Common Cause Decl. ¶¶ 13, 14; Maston Decl. ¶¶ 15, 16; Perry Decl.

¶ 12; Thatcher Decl. ¶¶ 16, 17; Dickson Decl. ¶¶ 18, 19; Kent Decl. ¶¶ 15, 16; Sternfeld Decl. ¶¶ 11-14; Thompson Decl. ¶ 11.  The requested relief would also threaten LWV-PA's and Common Cause's grassroots voter-engagement work by chilling voter engagement because of compromised voter privacy.  It would also threaten voters' rights by facilitating baseless voter challenges and other barriers to the free exercise of the right to vote.

Notably, five of the Proposed Intervenors were *personally subjected* to such baseless challenges to their mail ballots in 2024 by persons affiliated with Honey, the current DHS high official involved in the United States' purported "election integrity" efforts.  In particular, in 2024, over 4,000 Pennsylvania voters were subjected to mass-challenges lodged by individuals affiliated with PA Fair Elections.  *See* Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA (Nov. 8, 2024), https://www.spotlightpa.org/news/2024/11/mail-ballot-application-challenges-pennsylvania-fair-elections/ (describing mass-challenges and noting connection to PA Fair Elections and Honey); *see also* Jeremy Roebuck and Katie Bernard, *'I Can't Think of Anything Less American': Right-Wing Activists' Effort to Nullify Hundreds of Pa. Votes Met with Skepticism*, PHILA. INQUIRER (Nov. 1, 2024), https://www.inquirer.com/politics/election/heather-honey-pa-fair-elections-vote-challenges-pennsylvania-20241101.html (noting sworn testimony regarding PA Fair Elections' involvement in the challenges); Hansi Lo Wang, *Thousands of Pennsylvania Voters Have Had Their Mail Ballot Applications Challenged*, NPR (Nov. 5, 2024), https://www.npr.org/2024/11/04/nx-s1-5178714/pennsylvania-mail-ballot-voter-challenges-trump (same).  These efforts involved (1) mass-challenges to voters based on their appearance on the USPS change-of-address database and (2) mass-challenges to "federal voters" (*i.e.*, former Pennsylvania residents who live abroad but remain entitled to vote in federal elections in

Pennsylvania). *See, e.g.*, Wang, *Thousands of Pennsylvania Voters*, *supra*. According to public reporting and contemporaneous hearing testimony, PA Fair Elections facilitated these challenges, which were based on self-evidently flawed attempts to analyze and match data from the Pennsylvania voter database with external sources. *Id.*; *accord* Bethany Rogers, *Testimony: Pa. Election Denial Group Behind Voter Registration Cancellation Form Mailings*, GOERIE.COM (Nov. 2, 2024), https://www.goerie.com/story/news/politics/elections/state/2024/11/02/pa-voter-registration-cancellation-letters-chester-county/75996247007/.[2]

The baseless voter challenges, which were filed in at least twelve counties across the Commonwealth, were eventually all rejected after significant efforts by individual challenged voters (including voter Proposed Intervenors), pro-democracy organizations (including organizational Proposed Intervenors and their counsel), and county boards of elections, all of whom scrambled during the week of the 2024 election to deal with the illegitimate mass-challenges and to assuage the concerns of the thousands of voters who had been told that, as a result of the challenges, their ballots might not be counted. *See, e.g.*, Walker, *Efforts to Challenge Pennsylvania Voters*, *supra*; *see also* Maston Decl. ¶¶ 8-13; Perry Decl. ¶ 9-11; Thatcher Decl. ¶¶ 9, 10; Dickson Decl. ¶¶ 8-14; Kent Decl. ¶¶ 11-13; LWV-PA Decl. ¶¶ 10-11. Many of the challenged voters attended live and virtual hearings before their respective Boards of Elections and wrote passionate statements defending their qualifications to vote, despite having been approved by their county election offices months prior. *Id.*

---

[2] For example, the challenger in Chester County, who baselessly challenged Proposed Intervenors Thatcher and Dickson's ballots, testified under oath about PA Fair Elections' involvement in her effort. Chester County, *Nov. 1, 2024 Election Board* overview *Hearing* at 50:30-51:34; 58:00-58:47; 1:54:58-1:55:19, https://chestercopa.portal.civicclerk.com/event/852/.

### III.    MOVANTS ARE ENTITLED TO INTEREVENE AS A MATTER OF RIGHT

In the Third Circuit, a party is entitled to intervene as or right under Fed. R. Civ. P. 24(a) upon establishing that

> (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.

*United States v. Territory of V.I.*, 748 F.3d 514, 519 (3d Cir. 2014) (quotation marks and citations omitted).  Courts construe these factors consistent with a "policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 970 (3d Cir. 1998) (quotation marks and citations omitted).

The Voter Intervenors satisfy all four of these considerations. The Court should permit their intervention as a matter of right. *See Constand v. Castor*, No. 15-cv-5799, 2016 WL 5681454, at *3 (E.D. Pa. Oct. 3, 2016) (noting that "Rule 24(a) contains mandatory language—the court 'must permit' intervention, so long as certain conditions are satisfied . . . .").

### A.    The Motion to Intervene is Timely

Intervention is timely based on consideration of: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016) (quotation marks and citations omitted).  Ultimately, "[t]he timeliness of a motion to intervene is determined from all the circumstances" and in the court's "sound discretion." *Choike v. Slippery Rock Univ. of Pa. of State Sys. of Higher Educ.*, 297 F. App'x 138, 140 (3d Cir. 2008) (quotation marks and citations omitted).

The Motion is timely.  The United States initiated this litigation on September 25, 2025, and Defendants have not yet filed an answer or a motion to dismiss.  On October 1, the United States moved to stay proceedings for lapse of appropriations, and this Court granted the motion on

12

October 7 by a text order on the docket. *See also* Order Granting Omnibus Stay Application, No. 2:25-mc-01098-MRH (W.D. Pa. Oct. 3, 2025).

Requests to intervene at the preliminary stages, like this one, are timely for purposes of Rule 24. *See, e.g.*, *Cmty. Vocational Schs. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, No. 09-cv-1572, 2017 WL 1376298, at \*5 (W.D. Pa. Apr. 17, 2017) (motion to intervene timely where "discovery [was] not yet closed [and] no schedule for summary judgment motions or trial [was] set"). The Voter Intervenors' prompt intervention will not delay the timely advancement of the action or otherwise harm the parties. Where "'few legally significant events have occurred,'" courts have generally "not found prejudice." *Id.* (quotation marks and citations omitted).

### B. The Voter Intervenors Have Substantial Interests in the Underlying Litigation

The Voter Intervenors have a "sufficient"—*i.e.*, a "significantly protectable"—interest in the litigation. *Donaldson v. United States*, 400 U.S. 517, 531 (1971). Under Rule 24(a)(2), a protectable interest is any "cognizable legal interest" that is more than a mere "interest of a general and indefinite character." *Pennsylvania v. President U.S.*, 888 F.3d 52, 58 (3d Cir. 2018).[3] Here, Proposed Intervenors have multiple interests at stake.

*First*, the individual Voter Intervenors, and LWV-PA and Common Cause's members, have a right to privacy in the sensitive voter data the United States seeks based on the Pennsylvania Constitution, *see, e.g.*, *Pa. State Educ. Ass'n v. Pa. Dep't of Cmty. & Econ. Dev.*, 148 A.3d 142, 156 (Pa. 2016) (noting Pennsylvania jurisprudence "requiring governmental agencies to respect

---

[3] The Voter Intervenors need not separately establish Article III standing because they seek to intervene as Defendants, and because one or both Defendants seek the same ultimate outcome as Proposed Intervenors, namely, dismissal or denial of the claims brought by the United States. *See Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439-40 (2017); *Pennsylvania v. President U.S.*, 888 F.3d 52, 57 n.2 (3d Cir. 2018).

the constitutional privacy rights of citizens when disseminating requested information"), as well as state statutory and regulatory law limiting the dissemination of voter information such as driver's license numbers and SSN4s, *e.g.*, 25 Pa.C.S. § 1404; 4 Pa. Code § 183.14. No federal law supersedes these state-law privacy protections; indeed, federal law provides *additional* protections that DOJ's requests, and its larger project of creating a federal voter database, put at risk. *See* 5 U.S.C. § 552a(e)(7) (provision of the federal Privacy Act prohibiting the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote). These privacy interests are significant and inure to each of the individual Voter Intervenors as Pennsylvania voters, as well as LWV-PA's and Common Cause's members, who are also Pennsylvania voters. *See supra* pp. 7– 11. Moreover, certain LWV-PA and Common Cause members have a separate privacy interest in preventing the disclosure of their personal information because of their status as crime victims, public officials, or some other sensitive designation. *See, e.g.*, LWV-PA Decl. ¶ 9.

*Second*, DOJ's requests are likely to be used to challenge the voter registration of certain Pennsylvanians, including voters with felony convictions; voters who have moved within Pennsylvania or left the Commonwealth and then returned to Pennsylvania (but might be deemed "duplicate" voters or "out-of-state" voters due to a shoddy matching system); voters who are naturalized citizens (but might be deemed "ineligible to vote due to non-citizenship" by an outdated or faulty database-matching process) and voters who "registered to vote by mail." *See* Ex. 1, Letter of Maureen Riordan to the Hon. Al Schmidt (June 23, 2025), at 2; *see also* Ex. 3, Letter of Deputy Attorney General Michael Gates to the Hon. Al Schmidt (Aug. 4, 2025), at 2. A number of the individual Voter Intervenors fit these categories. *See* Sternfeld Decl. ¶ 7 (naturalized citizen); Thompson Decl. ¶ 5 (formerly incarcerated); *see also* Maston Decl. ¶ 6(d), Thatcher Decl.

14

¶ 13, Dickson Decl. ¶ 11, (voters who relocated back to Pennsylvania). Numerous members of LWV-PA also fall within those categories. *E.g.*, LWV-PA Decl. ¶ 8.

*Third*, the voters whose mail ballots were baselessly challenged in 2024 by "election integrity" activists, including current federal officials, using ill-conceived voter database matching and analysis techniques, such as Maston, Perry, Thatcher, Dickson, and Kent, have an *especially strong, personal interest* in making sure that their experience in 2024 is not and cannot be repeated. Maston Decl. ¶ 16; Perry Decl. ¶ 12; Thatcher Decl. ¶ 17; Dickson Decl. ¶ 19; Kent Decl. ¶ 16.

Similarly, organizations like LWV-PA, who had to divert their resources to assist voters in dealing with these baseless mass-challenges, will also see their core missions harmed if another set of database-driven mass challenges are deployed, this time by "election integrity" activists wielding the power of the United States government. Such mass challenges will also force these organizations to redirect resources to overcoming prospective voters' reasonable fears about having to provide personal information when registering to vote. Courts routinely find that public interest organizations, like the organizational Proposed Intervenors, should be granted intervention in election-related cases, demonstrating the significantly protectable interests such organizations have in the electoral process. *See, e.g.*, *Texas v. United States*, 798 F. 3d 1108, 1111 (D.C. Cir. 2015); *Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-cv-2078, 2020 WL 8262029, at *1 (M.D. Pa. Nov. 12, 2020); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799-800 (E.D. Mich. 2020); *Kobach v U.S. Election Assistance Comm'n*, No. 13-cv-04095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013. This case is no exception. The Voter Intervenors have multiple, independently sufficient interests that can support intervention here.

### C.    Disposition of this Case Is Likely to Impair the Interests of Proposed Intervenors

The Voter Intervenors also satisfy the third prong of the intervention analysis because their interests "may be affected or impaired, as a practical matter by the disposition of the action." *Virgin Islands*, 748 F.3d at 519.  They need not show that their interests "will" be impaired by disposition of the ligation; only that they "may" be.  *See Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (citing 6 Moore's Federal Practice § 24.03[3][a], at 24–41 (3d Ed. 2008)).  Indeed, the "very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions."  *Id.* at 345; *see also Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992).

Here, a decision in favor of the United States would expose the Voter Intervenors to the very harms they seek to avoid, including the irrevocable disclosure of private data to actors who may misuse it in any number of ways, including by mass-challenging or otherwise attacking Pennsylvanians' right to vote.  *See supra* pp. 7–11.

### D.    The Interests of Existing Defendants Diverge from Those of Proposed Intervenors

The Voter Intervenors also meet their "minimal" burden of demonstrating that the existing parties in the litigation may not protect their interests.  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d Cir. 1982).  "The possibility that the interests of the applicant and the parties may diverge 'need not be great,'" *Am. Farm Bureau Fed'n v. Envtl. Prot. Agency*, 278 F.R.D. 98, 110 (M.D. Pa. 2011), and a proposed intervenor need show only that "although [its] interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote [them] proper attention," *United States v. Territory of V.I.*, 748 F.3d 514, 519-20 (3d Cir. 2014).

16

Here, the Voter Intervenors have a personal and particularized interest in ensuring their private information remains private, by preventing the disclosure of sensitive, personal information.  As governmental entities, Defendants have a generalized interest in carrying out their legal obligations under federal and state laws, and in minimizing burdens on governmental employees and resources—but they do not have a direct, personalized interest in the privacy of Proposed Intervenors and their members.  *See generally Kleissler*, 157 F.3d at 972 ("[W]hen an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden [of establishing inadequacy of representation] is comparatively light.").  This divergence of interests, between the government's general need to balance various considerations, and the Proposed Intervenors' personal and particular interest in the privacy of their own data, is a classic scenario supporting granting a motion to intervene.  *See, e.g.*, *Am. Farm Bureau Fed'n,* 278 F.R.D. at 110-11 (public interest groups allowed to intervene in litigation in which EPA was a defendant, "[b]ecause the EPA represents the broad public interest . . . not only the interests of the public interest groups" and similar stakeholders); *Kobach v. U.S. Election Assistance Comm'n*, No. 13-cv-4095, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (applicants who had shown their interests in protecting voter rights, particularly in minority and underprivileged communities, may have private interests that diverge from the public interest of the defendant Election Assistance Commission); *see also, e.g.*, *Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1478 (11th Cir. 1993) ("The intervenors sought to advance their own interests in achieving the greatest possible participation in the political process. Dade County, on the other hand, was required to balance a range of interests likely to diverge from those of the intervenors."), *abrogated on other grounds by Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007).

Moreover, there may be issues, positions, and claims that the Defendants may not be willing to raise that are critical to public interest organizations like LWV-PA and Common Cause. As one example, there is a risk that political considerations external to the legal issues presented by this case may motivate Defendants to pursue a settlement that would jeopardize the private information of Proposed Intervenors or of their members. *See Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-C-1867, 2024 WL 3454706, at *5 (N.D. Ill. July 18, 2024) (allowing intervention in NVRA case and observing that "potential intervenors can cite potential conflicts of interests in future settlement negotiations to establish that their interests are not identical with those of a named party"); *cf. Berger v. N.C. State Conference of the NAACP*, 597 U.S. 179, 198 (2022) (reversing denial of motion to intervene where North Carolina Board of Elections was "represented by an attorney general who, though no doubt a vigorous advocate for his clients' interests, is also an elected official who may feel allegiance to the voting public or share the Board's administrative concerns").

Moreover, and perhaps most starkly of all, the Voter Intervenors' direct and personal interest in avoiding the debacle of the 2024 mass-challenges gives them a particular interest in developing facts and advancing arguments relating to the motivations and validity of the federal government's request for non-public voter data, which could be used to (again) baselessly challenge voters using ill-conceived database-matching techniques, just as was done to Maston, Perry, Thatcher, Dickson, and Kent. For example, the United States requests the data at issue pursuant to purported public disclosure provisions in the Civil Rights Act of 1960, but any requests pursuant to those provisions must come with "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. The motivations and purposes for DOJ's requests, including whether they are another attempt to improperly mass-challenge Pennsylvania voters using faulty data-matching

techniques, is thus highly relevant here. Proposed Intervenors' unique and personal interest in pursuing this highly relevant line of factual inquiry and argument is itself strong grounds to support intervention.[4] *See supra* pp. 5–7, 10–11.

## IV. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION

Even if the Court determines that the Voter Intervenors are not entitled to intervene as a matter of right, the Court should exercise its broad discretion to grant permissive intervention. A court may grant permissive intervention when the motion to intervene is "timely," the proposed intervenors have "a claim or defense that shares with the main action a common question of law or fact," and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). The decision whether to grant permissive intervention is "highly discretionary." *Brody ex rel. Sugzdinis v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992). Permissive intervention is appropriate where, as here, the proposed intervenors may meaningfully contribute to the proper development of the factual or legal issues in dispute. *See, e.g.*, *Am. Farm Bureau Fed'n*, 278 F.R.D. at 111 ("In deciding whether to permit intervention under Rule 24(b), courts consider whether the proposed intervenors will add anything to the litigation." (internal quotation marks and citation omitted)).

Here, the Voter Intervenors will contribute to the Court's resolution of key questions of law and fact common to the main action, including: (1) whether federal law permits the United States to force Defendants to give it the personal information it seeks; (2) whether federal and state legal

---

[4] While the Voter Intervenors' motion rises or falls on its own merit, their interests are also different from, and not adequately represented by, the other proposed intervenors. Those groups do not include any voters who were baselessly challenged in 2024, and do not appear to include any individuals or group members who fall within the particular categories of voters identified in DOJ's requests, such as voters with felony convictions or those who are naturalized citizens.

protections for individual privacy prohibit the disclosure of that information; and (3) whether the United States' motivations and its potential uses for the data sought are permissible. Proposed Intervenors distinct perspective on the legal and factual issues before the Court will thus complement or amplify Defendants' arguments.

For one example, certain individual Voter Intervenors such as Maston, Perry, Thatcher, Dickson, and Kent have personal experience with being falsely flagged as ineligible voters on the basis of data like that sought by the United States here, and can contribute to the Court's understanding of the relevant facts. For another example, LWV-PA and Common Cause can provide relevant factual background and context about the concerns that prompt prospective voters to hesitate to provide personal information as part of the voter-registration process. Under such circumstances, district courts routinely grant permissive intervention to voters and voter-activation organizations. *See, e.g.*, Mem. Opinion & Order, *Judicial Watch, Inc. v. Pennsylvania*, Case No. 1:20-cv-708 (M.D. Pa. Nov. 19, 2020), Dkt. No. 50 at 3 (granting permissive intervention in NVRA case to Common Cause and LWV-PA upon finding that "the presence of the intervenors may serve to clarify issues and thereby serve judicial economy" (internal quotation marks, citation, and footnote omitted)); *Donald J. Trump for President, Inc. v. Boockvar*, No. 4:20-cv-2078, 2020 WL 8262029, at *1 (M.D. Pa. Nov. 12, 2020) (granting Rule 24(b) motion where voters and organizations "have an interest in the constitutionality of Pennsylvania's voting procedures, which goes to the heart of Plaintiffs' action" (internal quotation marks and citation omitted)).

Finally, granting intervention at this early stage of the case would not delay or prejudice the adjudication of the original parties' rights under Fed. R. Civ. P. 24(b)(3). *See, e.g.*, Mem. Op. & Order, *Donald J. Trump for President, Inc. v. Boockvar*, No. 2:20-cv-966 (W.D. Pa. Aug. 3, 2020), Dkt. No. 309 at 6 ("[I]ntervention at this time will not unduly delay or prejudice the

20

adjudication of the rights of Plaintiffs, since the case has not progressed to a stage where intervention would be burdensome."). But denying intervention would almost certainly deprive the Voter Intervenors of the chance to defend their cognizable, significant, and protectable interests in this litigation.

## V.    CONCLUSION

For the reasons stated above, the Court should grant the Motion to Intervene as Defendants as of right, or in the alternative, via permissive intervention.

Dated: October 9, 2025                                 Respectfully submitted,


                                                      /s/    Witold J. Walczak

Ari J. Savitzky*                                      Mary M. McKenzie (PA No. 47434)*
Theresa Lee*                                         Benjamin Geffen (PA No. 310134)*
Sophia Lin Lakin*                                    Olivia Mania (PA No. 336161)*
AMERICAN CIVIL LIBERTIES UNION                        PUBLIC INTEREST LAW CENTER
FOUNDATION                                           1500 JFK Blvd., Suite 802
125 Broad Street, 18th Floor                         Philadelphia, PA 19102
New York, NY 10004                                   (267) 546-1313
Tel.: (212) 549-2500                                 mmckenzie@pubintlaw.org
asavitzky@aclu.org                                   bgeffen@pubintlaw.org
tlee@aclu.org                                        omania@pubintlaw.org
slakin@aclu.org
                                                      Witold J. Walczak (PA No. 62976)
                                                      Kate I. Steiker-Ginzberg  (PA No. 332236)
                                                      AMERICAN CIVIL LIBERTIES UNION OF
                                                      PENNSYLVANIA
                                                      P.O. Box 60173
                                                      Philadelphia, PA 19102
                                                      (215) 592-1513
                                                      vwalczak@aclupa.org
                                                      ksteiker-ginzberg@aclupa.org


*application for admission pro hac vice
forthcoming

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 9, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record and by email on counsel for the Commonwealth of Pennsylvania and Secretary Schmidt.

/s/_____Witold J. Walczak_____