## THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>COMMONWEALTH OF PENNSYLVANIA; and AL SCHMIDT, in official capacity as Secretary of the State of Pennsylvania,<br><br>Defendants. | Case No. 2:25-cv-01481-LEW |

## PLAINTIFF UNITED STATES' OPPOSITION TO MOTIONS TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff, United States of America ("United States"), opposes the Motions to Intervene as Defendants by the Pennsylvania Alliance for Retired Americans and Mike Crossey; the National Association for the Advancement of Colored People, the National Association for the Advancement of Colored People Pennsylvania State Conference, and Stacey Taylor; the League of Women Voters of Pennsylvania, Common Cause, Nicholas Maston, Gregory Perry, Todd Thatcher, Joel Dickson, Trisha Kent, Lior Sternfeld, and John Thompson; and the America First Policy Institute – Pennsylvania (collectively, "Proposed Intervenors"). ECF Nos. 11, 17, 18, 36, 37, 59, and 60. Proposed Intervenors have failed to meet their burden of demonstrating that they meet the standard for intervention as of right under Federal Rule of Civil Procedure ("Rule") 24(a), or for permissive intervention under Rule 24(b). Accordingly, the United States respectfully requests that the Court deny the Proposed Intervenors' Motions to Intervene as Defendants.

## BACKGROUND

This is a straightforward case brought by the Attorney General of the United States to enforce the requirements of three complementary Federal statutes governing voter registration and voting records pertaining to Federal elections. The Civil Rights Act of 1960 ("CRA") requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any Federal office for a period of twenty-two months after any Federal election and to produce those records to the Attorney General upon request. *See* 52 U.S.C. §§ 20701-20706.

The National Voter Registration Act of 1993 ("NVRA") mandates that responsible election officials "ensure that accurate and current voter registration rolls are maintained" for Federal elections. 52 U.S.C. § 20501(b)(4). To that end, Section 8 of the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . the death of the registrant" or "a change in the residence of the registrant . . . ." 52 U.S.C. § 20507(a)(4). Section 8(i) of the NVRA provides that states shall make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," with certain exceptions. *Id.* § 20507(i).

The purpose of the Help America Vote Act of 2002 ("HAVA") "is to improve our country's election system" by recognizing "the federal government can play a valuable [role] by assisting state and local government in modernizing their election systems." H.R. Rep. No. 107-329(I) at 31-32 (2001). HAVA imposes "minimum requirements" for the conduct of Federal elections. *Id.* at 35. Specifically, all states are required to implement "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized

statewide voter registration list defined, maintained, and administered at the State level" that contains "the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State. . . ." 52 U.S.C. § 21083(a)(1)(A). Section 303 of HAVA provides that a state's "election system shall include provisions to ensure that voter registration records in the State are accurate and updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters," among other requirements. *Id.* § 21083(a)(4).

The United States, acting through its Attorney General, routinely investigates state compliance with the list maintenance requirements for Federal elections. In both Democratic and Republican administrations, the Attorney General has pursued enforcement actions against state and local governments and their officials when their efforts to maintain accurate voter rolls for Federal elections have fallen short of HAVA and NVRA requirements.[1]

The Attorney General sent a letter to the Secretary of State of Pennsylvania, Defendant Al Schmidt, on June 23, 2025 (the "June 23 Letter"), seeking information regarding Pennsylvania's compliance with HAVA. The June 23 Letter requested a description of the process by which registrants who are ineligible to vote due to non-citizenship are identified and removed from the statewide voter registration list and descriptions of the processes that Pennsylvania uses to carry out its list maintenance obligations under Section 303 of HAVA, such as the process by which the State identifies and removes any duplicate voter registrations and deceased registrants. Compl., ECF No. 1 at 9-10 (June 23 letter at Ex.1). The June 23 Letter also

---

[1] A list of HAVA and NVRA enforcement actions brought by the U.S. Department of Justice's Voting Section is available at https://www.justice.gov/crt/voting-section-litigation.

inquired about the requirement under Section 303(a)(5) of HAVA that applicants provide certain information and the State's process for verifying that information. *Id.* at 10.

Secretary Schmidt responded in a July 23, 2025, letter to the Department of Justice. The response did not explain whether non-citizens were identified and what steps were taken to remove those voters. The response also admitted that if the Commonwealth could not verify the ID number provided as required by HAVA, the applicant would be registered to vote anyway. *Id.* (July 23, 2025 letter is Ex. 2).

Identification of noncompliant states is accomplished, in part, by reviewing the biennial Election Administration and Voting Survey ("EAVS") report prepared by the U.S. Election Assistance Commission ("EAC"), "an independent, bipartisan commission whose mission is to help election officials improve the administration of elections and help Americans participate in the voting process."[2] Pennsylvania, like other states, provided the EAC with voter registration and list maintenance-related data in response to the EAVS.

Pennsylvania's data and answers as reflected in the 2024 EAVS Report, published on June 30, 2025, indicated several potential issues that might be inconsistent with reasonable list maintenance efforts. Based on its review of the EAVS data, the Department of Justice (the "Department" or "DOJ") sent detailed inquiries regarding Pennsylvania's list maintenance procedures to the Pennsylvania Secretary of State in a letter dated August 4, 2025. Ex. 3. The Department's August 4 letter also requested, pursuant to the NVRA, 52 U.S.C. § 20501, *et. seq.*, the current electronic copy of Pennsylvania's computerized, statewide voter registration list ("SVRL"), required by HAVA, 52 U.S.C. § 21083. *Id.*

On August 14, 2025, the Department sent an updated letter to Secretary Schmidt, which

---

[2] EAC, *About the EAC*, https://www.eac.gov/about (last visited Nov. 30, 2025).

provided clarifications regarding its previous request for information and records related to Pennsylvania's statewide voter list maintenance. Ex. 4. The letter explained that the Department's request for Pennsylvania's SVRL, including the registrant's full name, date of birth, residential address, state driver's license number, or the last four digits of the registrant's social security number ("SSN4"), was pursuant to its authority under the NVRA, HAVA, and CRA and that the purpose of the request was to ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA and HAVA. *Id.*

Secretary Schmidt responded on August 18, 2025, to DOJ's letters. Ex. 5. The Secretary provided responses to some requests, stating most notably that "[n]othing in the NVRA provides a process by which those who are deemed non-eligible on the basis of being a non-citizen are to be removed from the voter rolls." *Id*. at 5. While acknowledging that it is illegal for a non-citizen to misrepresent that he is a citizen on a voter registration application, the Commonwealth does not appear to have any process in place to make any determination about whether there are non-citizens on the voter rolls. *Id*.

Secretary Schmidt provided an additional response on August 21, 2025, advising the Department that Pennsylvania would not provide an unredacted SVRL to the Department. Ex. 6. Secretary Schmidt advised that no provision of HAVA provides authority for DOJ to request all Pennsylvania voters' driver's license numbers, or SSN4. *Id*. at 2. Taken together, Pennsylvania's responses to the Department raised several issues that necessitated further action.

On September 25, 2025, the United States brought this action in response to Defendants' violations of Federal law. Compl., ECF No. 1. On September 29, 2025, the Pennsylvania Alliance for Retired Americans and Mike Crossey ("PARA") filed their motion to intervene as Defendants. ECF No. 11. On October 7, 2025, the National Association of Colored People, the National

Association of Colored People Pennsylvania State Conference, and Stacey Taylor[3] (collectively, "NAACP") filed their motion to intervene as Defendants.  ECF No. 17.  On October 9, 2025, Nicholas Maston, Gregory Perry, Todd Thatcher, Joel Dickson, Trisha Kent, Lior Sternfeld, John Thompson, the League of Women Voters of Pennsylvania, and Common Cause (collectively, "LWVPA") filed their motion to intervene as Defendants.  ECF No. 36.  On November 19, 2025, the America First Policy Institute–Pennsylvania ("AFPIP") filed its motion to intervene as Plaintiff.  ECF No. 59.

Proposed Intervenors have failed to establish sufficient grounds for intervention, lack standing under controlling authority, and have not made the necessary "very compelling" showing of inadequate representation by governmental entities. Proposed Intervenors PARA, NAACP, and LWVPA present only a generalized interest in preventing the United States from obtaining relief from Defendants' violations of Federal law. And Proposed Intervenors offer only a speculative basis for intervention that fails to articulate any concrete grievance or interest that has been or may be violated. Proposed Intervenors have failed to meet their burden of demonstrating that they meet the standard for intervention of right, as set forth in Rule 24(a), or for permissive intervention, as set forth in Rule 24(b). For the reasons specified below, the Proposed Intervenors' motion should be denied.

## **<u>LEGAL STANDARDS</u>**

Federal Rule of Civil Procedure 24 provides the standards for intervention of right and permissive intervention. Intervention of right is appropriate, if the proposed intervenor: (1) files in a timely manner; (2) demonstrates an interest in the action; (3) shows that the interest may be

---

[3] Stacey Taylor is the President of the National Association of Colored People Pennsylvania Conference and a Proposed Individual Intervenor. ECF No. 17-2 at 1.

impaired by the disposition of the action; and (4) has an interest not otherwise adequately protected by an existing party in the litigation. Fed. R. Civ. P. 24(a)(2); *see also Berger v. N. C. State Conf. of NAACP*, 597 U.S. 179, 190 (2022) (same); *United States v. Territory of V.I.*, 748 F.3d 514, 519 (3d Cir. 2014) (same); *Kleisser v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (citing *inter alia Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987)).[4] Proposed Intervenors bear the burden of demonstrating they have a right to intervene. *Caterino v. Barry*, 922 F.2d 37, 39 (1st Cir. 1990) (same). Although these requirements are intertwined, each must be met to intervene as of right. *Harris*, 820 F.2d at 596 (citing *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 463 (5th Cir. 1984) (en banc)). Failure to meet any one of these requirements requires denial of the motion. *Caterino*, 922 F.2d at 40.

Permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(2) may be appropriate if the proposed intervenor shows independent grounds for jurisdiction, the motion is timely, and the applicant's claim or defense, and the main action, have a question of law or a question of fact in *Hoots v. Com. of Pa.*, 672 F.2d 1133, 1135–36 (3d Cir. 1982) (citing *McKay v. Heyison*, 614 F.2d 899, 906 (3d Cir. 1980)). The Rule vests the district court with "broad" discretion to consider whether permissive intervention will delay the lawsuit or prejudice the adjudication of the rights of the original parties. *Daggett v. Comm'n of Gov'tal Ethics,* 172 F.3d 104, 113 (1st Cir.1999). Importantly, the Rule also requires the court to consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. *Hoots*, 672 F.2d at 1136. Perry, 587 F.3d at 955 (quoting Fed. R. Civ. P. 24(b)(3)) (emphasis in original). "Even if an applicant satisfies those threshold requirements, the district court has discretion to

---

[4] NAACP Intervenors cite (ECF No. 18 at 10) to *Harris*, 820 F.2d at 605–06 to argue that the Rule is designed to liberalize the right to intervene without noting that they cite to Judge Garth's dissenting opinion in that case.

deny permissive intervention." *Donnelly v. Glickman,* 159 F.3d 405, 412 (9th Cir. 1998).

## ARGUMENT

### I.    THE PROPOSED INTERVENORS DO NOT MEET THE STANDARD FOR INTERVENTION AS OF RIGHT.

#### A.    The Proposed Intervenors Have No Interest in This Action.

To support intervention, the intervenor's interest must be a particularized and legally protected interest rather than a general grievance. *See* Fed. R. Civ. P. 24(a)(2). This necessitates "a significantly protectable" interest. *Kleissler*, 157 F.3d at 969 (quoting *Donaldson v. United States*, 400 U.S. 517, 531 (1971) (reversed on other grounds)). A sufficient interest in the litigation is one that is specific to the intervenor, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought. *Kleissler*, 157 F.3d at 972. The polestar for evaluating a claim for intervention must be whether the proposed intervenor's interest is direct or remote. *Id*.

This interest requires the intervenor to establish the legal right to bring or defend the claim before the district court as a plaintiff or defendant. *See generally Diamond v. Charles*, 476 U.S. 54, 66–67 (1986) ("Article III requires more than a desire to vindicate value interests. It requires an 'injury in fact' that distinguishes 'a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem.'"). Intervenors must show they "stand to gain or lose by the direct legal operation of the district court's judgment" on the complaint. *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991); *see Spangler v. Pasadena City Bd. of Education*, 552 F.2d 1326, 1329 (9th Cir. 1977) (standing as factor for permissive intervention). "An 'interest' shared by all members of an electorate is not 'sufficient[ly particularized] to meet the requirements of Rule 24(a).'" *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, No. 5:24-cv-00547-M, 2024 WL 4349904, at *2 (E.D.N.C. Sept. 30, 2024)

(denying motion to intervene by the North Carolina Conference of the NAACP) (quoting *League of Women Voters of Va. v. Va. State Bd. of Elections*, 458 F. Supp. 3d 460, 466 (W.D. Va. 2020)). Proposed Intervenors cannot meet their burden for three reasons: (1) neither HAVA nor the CRA confers a right for private organizations or individuals to be party plaintiffs or defendants in this action; (2) Federal law expressly refutes their speculative concern that the privacy of voter information will not be protected; and (3) they have failed to identify any particularized harm that differs from that of any other member of the public. *Id.*

1. HAVA and the CRA Confer No Private Right of Action and Limit Defendants to Responsible Government Officials.

Proposed Intervenors can neither bring, nor defend a claim under HAVA or the CRA. Neither HAVA nor the CRA creates a private right of action.

Turning first to HAVA, the only enforcement provision in the statute authorizing a cause of action in Federal court is found at Section 401, which provides that:

> The *Attorney General* may bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief (including a temporary restraining order, a permanent or temporary injunction, or other order) as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, 21083, and 21083a of this title [Sections 301, 302, 303, and 303(a) of HAVA].

52 U.S.C. § 21111 (emphasis added).

Aside from that right of action, granted exclusively to the Attorney General of the United States, no other explicit right of action in federal court exists to enforce the provisions of HAVA. The clear text of the statute is reinforced by its legislative history. Senator Dodd of Connecticut – a HAVA conferee and sponsor – openly lamented the lack of a private right of action in HAVA, observing that such participation was limited to the participation through the Act's administrative

hearing process in Section 402 of the Act, 52 U.S.C. § 21112.

> While I would have preferred that we extend the private right of action afforded private parties under [the] NVRA, the House simply would not entertain such an enforcement provision[]. Nor would they accept Federal judicial review of any adverse decision by a State administrative body. However, the state-based administrative procedure must meet basic due process requirements and afford an aggrieved party a hearing on the record if they so choose.

148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002).

Consequently, private parties may not bring Section 303 claims nor make requests for records under that provision. *See Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (per curiam) ("Respondents, however, are not sufficiently likely to prevail on the question whether Congress has authorized the District Court to enforce § 303 in an action brought by a private litigant to justify the issuance of a TRO."); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002) (explaining that where "the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit….").

HAVA's text likewise limits who may be a defendant. As HAVA's preamble makes clear, the provisions of Title III of the Act "establish minimum election administration standards for States and units of local government … responsible[e] for the administration of Federal elections." Pub. L. No. 107-252, 116 Stat. 1666. Proper party defendants in a Section 303 enforcement action therefore are limited to "any State or jurisdiction." 52 U.S.C. § 21111. Under Section 303(a), "State or jurisdiction" includes a State's election officials who are responsible for implementing the statutory mandates. *See*, *e.g.*, 52 U.S.C. § 21083(a)(1)(A) ("*[E]ach State, acting through the chief State election official*, shall implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list….") (emphasis added); 52 U.S.C. § 21083(a)(1)(A)(vi) ("All voter registration information obtained by *any local election official in the State* shall be electronically entered into the computerized list on

an expedited basis at the time the information is provided to the local official.") (emphasis added); 52 U.S.C. § 21083(a)(5)(A)(i) ("an application for voter registration for an election for Federal office may not be accepted or processed by a *State* unless the application includes" the identifying number required by Section 303) (emphasis added); 52 U.S.C. § 21083(a)(5)(A)(ii) ("… *the State* shall assign the applicant a number which will serve to identify the applicant for voter registration purposes.") (emphasis added); 52 U.S.C. § 21083(a)(5)(A)(iii) ("*The State* shall determine whether the information provided by an individual is sufficient to meet the requirements of this subparagraph, in accordance with State law.") (emphasis added). To summarize, Section 303 of HAVA regulates election administrators responsible for timely updating Pennsylvania's computerized SVRL for Federal offices; the Commonwealth and those officials are the only valid defendants.

The CRA has limitations on parties that parallel those included in HAVA. Title III of the CRA provides that only the Attorney General of the United States may bring an action in Federal court to enforce the Act's provisions for retaining and producing election records upon request. *See* 52 U.S.C. § 20703 (providing that "upon demand in writing by the *Attorney General*" "[a]ny record or paper required by [section 301]" shall be "made available for inspection, reproduction, and copying…") (emphasis added); *see also* 52 U.S.C. § 20705 (providing that the United States District Court for the district in which the Attorney General has made the demand "shall have jurisdiction" over any litigation to compel production of the covered records).

Like HAVA, the CRA limits defendants to certain election officials. Section 301 of the CRA applies to "*[e]very officer of election*" who must "retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election" for Federal office "all records and papers which come into his possession relating to any application, registration,

payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701 (emphasis added). Section 306 of the CRA makes this explicit, defining the term "officer of election" as "any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting" in any Federal election. 52 U.S.C. § 20706.

Proposed Intervenors do not contend, and cannot establish, that they have any responsibilities for voter-list maintenance under Section 303 of HAVA, nor that they are required to maintain and produce voter registration records under Sections 301 or 306 of the CRA. Rather, Proposed Intervenors allege they fear the disclosure of their sensitive personal information to the federal government. Without presenting a scintilla of evidence, Intervenor PARA alleges concerns of "the *potential* risk of data breaches that would expose [PARA members] to identify-theft scams" and "the *potential* for retaliation by the federal government." ECF No. 11 at 14 (emphasis added). PARA further alleges that its "mission-critical voter engagement and turnout work will also be harmed by the disclosure of its voters' information to DOJ." *Id*. at 15.  Without alleging how the Department's demand and receipt of Pennsylvania's SVRL would impair elections, Intervenor NAACP contends that disclosure of the SVRL would "chill[] . . . the exercise of the right to vote by increased federal scrutiny or threatened harassment," citing to cases that do not concern DOJ's statutory authority. ECF No. 18 at 23. NAACP asserts that it has an interest in protecting the right to vote and safeguarding voter data. *Id*. at 2-26. NAACP cites numerous cases, but none concerns DOJ's statutory authority to demand and receive a SVRL, including voters' personal identifying information.  *Id*.  Intervenor NLWVP speculates that DOJ's requests are likely to be used to challenge the voter registration of certain Pennsylvanians and to create a Federal voter database

that Pennsylvania voters, whose ballots were "baselessly" challenged in the 2024 election through the application of non-DOJ databases, fear will be used against them.  ECF No. 37 at 20-21.[5]

"In the absence of strong indicia of a contrary congressional intent," the Supreme Court has stated, "we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14–15 (1981). "'[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979). Congress specifically limited the parties in litigation over HAVA's computerized SVRL requirements and over voter registration records covered by Title III of the CRA to the Attorney General of the United States to enforce the provisions, and States, jurisdictions, and their responsible election officials, as defendants. Consequently, Proposed Intervenors are foreclosed from intervening as a party, including in the role of a defendant.

Although case law interpreting the CRA is scarce, several decisions under HAVA reject intervention by individuals or groups not included in the statutory text. Federal courts have not permitted intervention by private parties, even for some election boards in previous Section 303 enforcement actions brought by the Attorney General. In *United States v. Alabama*, the Chairs of the Alabama Democratic Executive Committee and the Alabama Democratic Conference moved to intervene for the purpose of suggesting special masters to remedy the Section 303 violation. No. 2:06-CV-392-WKW, 2006 WL 2290726, at *1 (M.D. Ala. Aug. 8, 2006). The court denied their motions, concluding that "HAVA does not confer a private right of action. Congress granted explicitly to the Attorney General of the United States the right of enforcement of Sections 301,

---

[5] Intervenor AFPIP admits that is not entitled to make the demand that the United States has in this litigation. ECF No. 60 at 14.

302, and 303 of HAVA." *Id.* at *4. Therefore, the court found that the proposed intervenors did not have a "legally protectable" interest under HAVA and denied their motion. *Id.* Similarly, in *United States v. N.Y. State Bd. of Elections*, the district court denied motions to intervene as defendants by the Nassau County Board of Elections and the Nassau County Legislature, despite both having some responsibilities under HAVA for administering the State's computerized SVRL. *See* 312 F. App'x 353 (2d Cir. 2008).

Here, Proposed Intervenors bear no responsibility for implementing the requirements of HAVA, the NVRA, nor the CRA. Thus, none of the Proposed Intervenors fall within the plain language of HAVA or the CRA, in which Congress clearly articulated who may be parties to enforcement actions, whether as plaintiffs or as defendants. As such, Proposed Intervenors have no legally protectable interest and are not entitled to intervene as of right.

2. <u>Voter Information Is Not at Risk of Improper Disclosure in This Action.</u>

Even if this Court were to consider Proposed Intervenors' speculative concerns about the privacy of data that voters have already voluntarily submitted to election officials in the Commonwealth, those concerns are absolutely unfounded. The United States' requests in this matter are authorized by Congress. The Complaint states clearly that the United States is seeking relief in this litigation that is narrowly focused on obtaining records pursuant to the NVRA, HAVA, and the CRA to ensure Defendants' compliance with the list maintenance requirements of the NVRA and HAVA for Federal elections. Specifically, the United States' Complaint requests, *inter alia*, that the Court order Defendants "to provide to the United States the current electronic copy of Pennsylvania's computerized, statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number or the last four digits of their Social Security number as required by HAVA, 52 U.S.C.

§ 21083, and the CRA, 52 U.S.C. § 20703." Compl., ECF No. 1 at 16. The requested relief encompasses the requirements, pursuant to each relevant statute, and goes no further, to ensure and enforce compliance.

The Proposed Intervenors' alleged injuries—centering on speculative concerns that their sensitive, personal information and that of other Pennsylvania voters may be improperly disclosed to or used by the Department and that disclosure may chill engagement of prospective registrants for elections or voters, ECF No. 5—is not concrete nor imminent, but hypothetical and lacking foundation. The information at issue is already subject to extensive statutory protections under Federal law, including the provisions of 5 U.S.C. § 552a, and the Department's practices and procedures to ensure compliance with the Privacy Act. *See* Compl., ECF No. 1 at 11-12. The litigation concerns whether certain information must be disclosed to the Attorney General to facilitate enforcement of list maintenance requirements under Federal laws, as Congress intended, not whether that information will be made public, nor whether any party to this case intends to misuse such data.

Similar alarmist arguments about the Attorney General's enforcement of Section 303 of HAVA in North Carolina were made in *United States v. N.C. Bd. of Elections*, No. 5:25-cv-00283-M-RJ, at 12 (E.D.N.C. Sept. 8, 2025). Ex. 7. There, the Federal court denied the motions to intervene when those arguments objectively proved to be unfounded.[6] The parties entered into a consent order that made clear: "All records and data received by the United States from the State Board Defendants will be kept securely and treated consistently with the Privacy Act, 5 U.S.C. § 552a. To the extent confidential records or data is requested, the North Carolina State Board

---

[6] Two of the groups of proposed intervenors in that case have filed motions for reconsideration, which were pending when the case was stayed due to the federal government shutdown.

Defendants "reserve the right to seek a protective order from the court." *See* Ex. 7. Therefore, in that case, as in this one, the United States has made clear it will protect voter information provided by the Commonwealth consistent with the requirements of the Privacy Act, the CRA, and other applicable Federal law. The remedial order the United States requests can readily provide for those protections, just as the consent order did in the North Carolina litigation. As a result, like in North Carolina, the alarmist harms that the Proposed Intervenors decry cannot and will not materialize.

Moreover, speculative injury "does not rise to the level required for intervention as a matter of right." *Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condo. Council of Co-Owners*, 721 F. Supp. 775, 779 (E.D. Va. 1989); *see also Laube v. Campbell*, 215 F.R.D. 655, 657 (M.D. Ala. 2003) ("Interests that are contingent upon some future events and which are 'purely a matter of speculation' are not 'the kind of protectable interest … necessary to support intervention as of right.'") (quoting *ManaSota–88, Inc. v. Tidwell*, 896 F.2d 1318, 1322 (11th Cir. 1990)). Even if Proposed Intervenors had a legally protectable interest in this case under the CRA, HAVA, or the NVRA—which they do not—their concern about an alleged improper disclosure, maintenance, or use of voter information is imagined, speculative, and not going to occur, because it is contrary to Federal law and can be readily addressed by the Court through an order like the one entered in the North Carolina consent order.

3    Proposed Intervenors Failed to Show a Particularized Harm in Protecting Their Information and Privacy.

Proposed Intervenors' arguments are speculative and inconsistent with the conduct that the individual Proposed Intervenors themselves have engaged in repeatedly and voluntarily by providing the requested data to governmental entities. Federal agencies routinely are provided and maintain the same data being sought in this action. Individuals regularly share sensitive personal information—such as Social Security numbers, dates of birth, income, education, immigration

16

status, and addresses—with Federal agencies like the IRS (for tax filing and refunds), SSA (for Social Security benefits), HHS (for Medicaid and Medicare), Department of Education (for Federal student aid), the State Department (social security numbers for passports), Selective Service (social security numbers for draft registration), and the Transportation Security Administration (driver's license for boarding aircraft)). They do so without filing litigation to stop other agencies from performing similar congressionally mandated functions, such as the voter list maintenance enforcement powers assigned to the Attorney General.

Moreover, the Commonwealth of Pennsylvania has requested driver's license numbers and social security numbers from citizens registering to vote in the regular course of doing business. The Commonwealth has likewise provided this information to a third-party, the non-governmental organization Electronic Registration Information Center ("ERIC"). https://ericstates.org/ (last visited November 30, 2025). ERIC is a nonprofit, nonpartisan membership organization created by and comprised of state election officials from around the United States. *Id*. Each member state submits their voter registration data and licensing and identification data from motor vehicle departments to ERIC for analysis. *Id*.

Consequently, none of the Proposed Intervenors or their members can be harmed by the outcome of this litigation, which will not lead to the United States reviewing any information not already made available to state and federal agencies as well as a non-governmental organization. The United States is aware of no objection from any of these Proposed Intervenors to disclose the same personal identifying information that has already been regularly disclosed to these other parties. Without an interest, Proposed Intervenors' claims of impairment of that interest must fail.

Furthermore, district courts routinely deny motions to intervene, even in cases unlike this one where the individual right to vote is implicated. "[C]ourts that have addressed intervention

motions from similarly situated prospective intervenors… have regularly denied intervention as of right under Rule 24(a)." *League of Women Voters*, 458 F. Supp. 3d at 465 (W.D. Va. 2020) (collecting citations). Here, "[t]here is nothing that distinguishes the Prospective Intervenors' interest in this case from that of any other eligible voter" in Pennsylvania. *Id*. Proposed Intervenors have interests that are indistinguishable from all other Pennsylvania citizens of voting age.

"Courts are typically disinclined to allow intervenors who merely assert a 'generalized public policy interest shared by a substantial portion of the population.'" *Id.* "[D]espite its 'personal' nature, the right to vote… is no different as between any other eligible [Pennsylvanian], and indeed, any other eligible American. It may be personal, but it is also *universal* to those that qualify for the franchise." *Id*. (emphasis in original). Unlike cases directly implicating the right to vote, Proposed Intervenors have no interest in this case, which involves regulation of the administration of Federal elections in Pennsylvania and the associated records that Federal law mandates must be produced to the Attorney General of the United States.

### B.    Proposed Intervenors Cannot Show an Interest That May Be Impaired by the Disposition of this Action.

Next, Proposed Intervenors are required to establish that their purported interest may be impaired by the disposition of the action. *See* Fed. R. Civ. P. 24(a)(2); *Wilderness Soc'y*, 630 F.3d at 1177. In this factor, "'[t]he focus ... is on whether the proposed intervenor would suffer a 'practical disadvantage or impediment' if not permitted to intervene.'" *Republican Nat'l Comm*., 2024 WL 4349904, at *2. "This requirement is 'intimately related' to the alleged interest sought to be protected" by the Proposed Intervenors. *United States v. Alabama*, 2006 WL 2290726, at *5 (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)); *see also Republican Nat'l Comm.*, 2024 WL 4349904, at *2 ("If a third party satisfies the first factor of Rule 24(a), it often follows that participation as a party is necessary to protect that interest.") (citation omitted).

Proposed Intervenors cannot make their required showing.

For the reasons explained in the previous section, Proposed Intervenors have no interest, because neither the CRA nor HAVA allows private individuals the right to be a party in this action. Furthermore, Proposed Intervenors have failed to show an interest distinguishable from that of all other Pennsylvanians. This is a dispute between the Attorney General of the United States, who requested voter registration records, and the Commonwealth of Pennsylvania that maintains those records. The United States is not seeking and will not be seeking any information from any individual Pennsylvania voter nor will it be seeking more information than Pennsylvania voters have already voluntarily submitted to the Commonwealth of Pennsylvania to be eligible to participate in Federal elections. Consequently, none of the Proposed Intervenors can suffer harm from the outcome of this litigation. Thus, there is no interest that Proposed Intervenors can protect in this litigation from harm other than the generalized interest of all Pennsylvanians, and indeed of all Americans, in the fair and equitable administration of elections. Without a particularized interest, Proposed Intervenors' claims of impairment of that interest must fail.

### C. Proposed Intervenors Cannot Show Inadequate Representation.

"There is … an assumption of adequacy when the government is acting on behalf of a constituency that it represents. In the absence of a '*very compelling showing* to the contrary,' it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (emphasis added). There is a presumption that if one party is a government entity, charged by law with representing the interests of the applicant for intervention, then representation will be adequate. *Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992); *see also* 7C Wright, Miller &

Kane, Federal Practice and Procedure § 1909 (3d ed. Supp. 2022). [7]

The United States Supreme Court narrowed that rule slightly by holding that the presumption of adequate representation is inapplicable where the proposed intervenors themselves are government officials, namely "duly authorized state agent[s]." *Berger*, 597 U.S. at 197. Since none of the Proposed Intervenors is a "duly authorized state agent," the presumption that Commonwealth Defendants will adequately represent their interests applies. The First Circuit has determined that where the party seeking to intervene has the same ultimate goal as a party already in the suit, courts are to apply a presumption of adequate representation. *Moosehead Sanitary Dist. v. S. G. Phillips Corp.*, 610 F.2d 49, 54 (1st Cir. 1979). To overcome that presumption, the intervenor must ordinarily demonstrate adversity of interest, collusion, or nonfeasance. *Id.* (citing *Commonwealth of Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214, 216 (4th Cir. 1976)).

Here, the record demonstrates that Proposed Intervenors PARA, NAACP, and LWVPA share the same interests in this litigation as Defendants—to reject efforts by the United States to obtain Pennsylvania's SVRL, pursuant to its Federal claims, because those Intervenors and the Commonwealth allege concerns about voter privacy and how the requested data will be used. Since the Intervenors and the Commonwealth share the same interests in this matter and Intervenors have not demonstrated adversity of interest, collusion, or nonfeasance, Intervenors' interests are adequately represented by the Commonwealth. *Brody*, 957 F.2d at 1123. Proposed Intervenors have failed to demonstrate a right to intervene under Rule 24(a)(2). [8]

## II.    PROPOSED INTERVENORS DO NOT MEET THE STANDARD FOR

---

[7] The Commonwealth's Motion to Dismiss (ECF No. 68), even if granted, would not remove the Secretary of State from this action, and therefore, intervenors interests will still be represented.

[8] The presumption is different with Intervenor AFPIP, but there would still be a presumption of adequacy of representation regarding the United States' enforcement of the NVRA. AFPIP has not shown it can overcome that presumption.

## **PERMISSIVE INTERVENTION.**

Rule 24(b)(2) intervention should be denied for the same reasons. As explained above, Proposed Intervenors' interests and objectives align with those of the Commonwealth Defendants and their participation will not significantly contribute to full development of the factual and legal issues in this action. *Id*. Permissive intervention requires more than just a timely motion and raising a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Rule also requires the court to consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. *Hoots*, 672 F.2d at 1136. Adding intervenors would impede, not advance, this litigation. The Proposed Intervenors have no standing to assert any claim or defense in this litigation and, therefore, could add nothing to the Court's consideration of the United States' claims and merely delay resolution.

Denying permissive intervention will not leave the Proposed Intervenors without recourse. Nothing would impede their ability to consult with their duly elected Commonwealth officials, particularly Secretary Schmidt, about how to proceed. They also would "retain the ability to present their views… by seeking leave to file" an amicus brief. *Stuart v. Huff*, 706 F.3d 345, 355 (4th Cir. 2013). That is an especially appropriate means for Proposed Intervenors to weigh in, given the statements in their briefs show little more than a speculative, generalized interest in this case. "While a would-be intervenor may prefer party status to that of friend-of-the-court, the fact remains that amici often make useful contributions to litigation. The availability of such alternative avenues of expression reinforces … [the] disinclination to drive district courts into multi-cornered lawsuits by indiscriminately granting would-be intervenors party status and all the privileges

pertaining thereto." *Id.*

Accordingly, the Court should deny permissive intervention to Proposed Intervenors.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny the

Motions to Intervene.

Dated: December 1, 2025                                    Respectfully submitted,

                                                          HARMEET K. DHILLON
                                                          Assistant Attorney General
                                                          Civil Rights Division

                                                          *David D. Vandenberg*
                                                          MAUREEN S. RIORDAN
                                                          Senior Counsel, Voting Section
                                                          Civil Rights Division
                                                          TIMOTHY F. MELLETT
                                                          DAVID D. VANDENBERG
                                                          Attorneys, Voting Section
                                                          Civil Rights Division
                                                          950 Pennsylvania Avenue 4CON
                                                          Washington, DC 20530
                                                          Maureen.Riordan2@usdoj.gov
                                                          Timothy.F.Mellett@usdoj.gov
                                                          David.Vandenberg@usdoj.gov
                                                          Tel. (202) 307-2767
                                                          *Attorneys for the United States*

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ David D. Vandenberg*
David D. Vandenberg
