# Exhibit 1

# IN UNITED STATES DISTRICT COURT
# FOR THE WESTER DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>v.<br><br>AL SCHMIDT, in his official capacity as Secretary of the Commonwealth, *et al.*,<br><br>    *Defendants*. | Case No. 25-cv-1481<br>(Hon. Cathy Bissoon) |

## PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS AND MIKE CROSSEY'S REPLY IN SUPPORT OF MOTION TO INTERVENE

## INTRODUCTION

DOJ's opposition invokes inapt legal theories, misapplies the Rule 24(a) standards, and misstates governing precedent in several critical respects. For one, it assumes that an intervenor-defendant must establish a private right of action under the federal statutes at issue in this case—a theory that is both contrary to the plain language of Rule 24, and implausible because defendants do not need to assert any action to begin with. Second, DOJ distorts the meaning of a particularized interest by harping on the large number of impacted individuals; but it is well settled that an inherently personal injury, like a violation of privacy, is no less particularized simply because many voters are affected. And DOJ's assertion that the State Defendants adequately represent Proposed Intervenors' interests contradicts binding authority and ignores the conflicting governmental interests that Proposed Intervenors previously identified. *See* Mot. Intervene at 12–14, ECF No. 11.

Finally, DOJ has advanced no plausible basis to deny permissible intervention. Indeed, a federal court in California, presented with the same arguments from DOJ, granted permissive intervention to civic organizations opposing DOJ's nearly identical demand for sensitive voter data. *See* Minutes of Mot. Hearing, *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Nov. 24, 2025), ECF No. 70. The Court should similarly grant Proposed Intervenors' motion.

## ARGUMENT

**I.    Proposed Intervenors do not need a private right of action to intervene as a matter of right.**

The Supreme Court has long read Rule 24(a) to permit intervention by parties that would not have been able to sue in the first instance, *see Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 531 (1972) (finding intervention as *plaintiff* proper by union member even when the relevant statute prohibited union members from "initiating a private suit"), as have other courts

1

across the country, *e.g.*, *Jones v. Prince George's County*, 348 F.3d 1014, 1018 (D.C. Cir. 2003) (holding "intervenors of right need only an 'interest' in the litigation—not a 'cause of action' or 'permission to sue'"). Further, Proposed Intervenors seek to intervene *as defendants*—and defendants never require a right of action. In any event, DOJ conspicuously fails to acknowledge that the National Voter Registration Act—the basis for its second claim—provides an express private right of action. 52 U.S.C. § 20510(b).

Nothing in the caselaw DOJ cites supports its theory that intervenors must have a private right of action. *Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) does not involve intervention at all. While the court in *United States v. Alabama* opined in dicta that the Help America Vote Act ("HAVA") does not imply a private right of action, it in no way suggested that intervenors in HAVA litigation must have such a right. *See* No. 2:06-cv-392, 2006 WL 2290726, at *4 (M.D. Ala. Aug. 8, 2006). Nor did the court in *United States v. New York State Board of Elections*, 312 F. App'x 353 (2d Cir. 2008), endorse DOJ's novel theory that proposed intervenor-defendants must establish a right of action.

## II. The threat to Proposed Intervenors' interests is concrete and particular.

DOJ's argument that the harm to Proposed Intervenors' interests is "speculative" also misses the mark. If DOJ prevails, Proposed Intervenors' privacy rights would necessarily be harmed because their own sensitive information, protected by state law, would be exposed to DOJ. *See* 4 Pa. Code § 183.14(c)(3). Nor does DOJ dispute that it intends to share this information across the federal government.[1] Such unauthorized disclosure of private information

---

[1] Widespread public reporting validates Proposed Intervenors' concerns that DOJ intends to share voter lists across the federal government and has not been truthful about its purposes in seeking such data. *See, e.g.*, Nick Corasaniti, *Election Officials Press Trump Administration Over Voter Data*, N.Y. Times (Nov. 18, 2025), https://www.nytimes.com/2025/11/18/us/politics/election-officials-trump-voter-data.html (quoting letter from ten secretaries of state expressing "immense

supports intervention. *See Constand v. Castor*, No. CV-15-5799, 2016 WL 5681454, at *3 (E.D. Pa. Oct. 3, 2016) (finding "interest in confidentiality is sufficient" to support intervention); *In re Chocolate Confectionary Antitrust Litig.*, No. 1:08-MDL-1935, 2008 WL 4960194, at *1 (M.D. Pa. Nov. 18, 2008) (similar).

DOJ gets the law wrong again when it claims that the harm to Proposed Intervenors is not sufficiently particularized. The Supreme Court has held it is "obvious" that even the stricter requirements of Article III standing are met when "large numbers of voters" each suffer an injury "widely shared" by others. *FEC v. Akins*, 524 U.S. 11, 24 (1998). Similarly, a violation of one's privacy is inherently "particularized"—disclosure of private information affects each person in a "personal and individual way," even if many people are similarly affected. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)); *see also Batts v. Gannett Co.*, No. 4:22-cv-10685, 2023 WL 3143695, at *3 (E.D. Mich. Mar. 30, 2023) (noting "the nonconsensual dissemination of information" in violation of "a statutorily protected right to privacy" "inflicts harm in a concrete and particularized way" (quoting *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 676–77 (E.D. Mich. 2022))).[2]

---

concern" that DOJ is sharing voter data with DHS and has "actively misled election officials regarding the uses of voter data"); Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html (quoting an attorney tasked to work on DOJ's requests for state voter data that DOJ intends to share the data with "DOGE" and DHS, and that DOJ's stated purposes for seeking the voter data is "dishonest").

[2] DOJ is wrong in claiming that a North Carolina court recently found similar privacy concerns were "objectively . . . unfounded." Opp'n at 15. Since the parties resolved that action through a consent judgment, the court denied motions to intervene *as moot*, without any analysis of the intervenors' privacy concerns. Consent J. at 3, 12, ECF No. 75-7. And the state defendant reserved the right to seek a protective order if DOJ sought "confidential . . . data." *Id.* at 12.

3

Furthermore, DOJ fails to rebut the Pennsylvania Alliance for Retired Americans' ("PARA") interest in safeguarding the privacy of its members' personal information and advancing the organization's voter engagement programs. As PARA explained, DOJ's unprecedented intrusion on voter privacy threatens to undermine PARA's efforts by deterring its members from political engagement for fear of their personal information being leaked. *See* Mot. Intervene at 10–11. That interest is both concrete and particularized.

### III. The State Defendants do not adequately represent Proposed Intervenors.

DOJ's request that the Court presume adequate representation of Proposed Intervenors' interests flies in the face of the Supreme Court's holding that it "normally is *not enough* to trigger a presumption of adequate representation" when the intervenors' "interest is similar to, but not identical with, that of one of the parties." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195 (2022) (emphasis added) (quoting 7C *Wright & Miller's Federal Practice & Procedure* § 1909 (3d ed. Supp. 2022)). Proposed Intervenors' interests in privacy and voter engagement are not *identical* with the State Defendants' interests, so the presumption cannot apply.

This conclusion flows directly from long-standing precedent on intervention. In *Trbovich*, for example, the Supreme Court reviewed a union member's effort to intervene as a plaintiff in a suit that the Secretary of Labor brought against his union. 404 U.S. at 539. As *Berger* summarized, "[a]t a high level of abstraction, the union member's interest and the Secretary's might have seemed closely aligned," but the presumption of adequate representation was not warranted because "the union member sought relief against his union, full stop," while the Secretary had to "bear in mind broader public-policy implications." 597 U.S. at 196. DOJ cites a Ninth Circuit decision applying the presumption, but that circuit has more recently recognized that *Berger* "calls into question whether the application of such a presumption is appropriate." *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1021 n.5 (9th Cir. 2022).

Even if the presumption did apply, Proposed Intervenors' interests diverge from the State Defendants' interests several times over. For one, they do not share PARA's interest in mobilizing retirees. Nor do they share Proposed Intervenors' privacy interests. The State Defendants must instead reconcile "numerous complex and conflicting interests," *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973 (3d Cir. 1998), including in list maintenance, conserving resources, and avoiding an escalating confrontation with the federal government. Their interests are, accordingly, "necessarily colored by [their] view of the public welfare." *Pennsylvania v. President United States of Am.*, 888 F.3d 52, 60 (3d Cir. 2018). Proposed Intervenors thus meet the "comparatively light" burden of showing representation of their interests "may be" inadequate. *Id.* at 60–61 (citation omitted).

### IV. Proposed Intervenors should alternatively be granted permissive intervention.

Because DOJ concedes the other elements of permissive intervention are met, *see* Opp'n at 21, the only issue in dispute on permissive intervention is whether Proposed Intervenors' participation will unduly delay the litigation or prejudice the parties. Fed. R. Civ. P. 24(b)(3). But DOJ has no basis to argue delay or prejudice when intervention would not require altering any existing deadlines. In stark contrast to DOJ, which delayed this matter by moving to stay, *see* ECF No. 15, Proposed Intervenors have moved with haste: They moved to intervene just two business days after DOJ sued and intend to file a proposed motion to dismiss by or before the State Defendants' responsive pleading deadline. Indeed, in recognition of the valuable perspective voters can bring, a federal court recently granted permissive intervention to pro-voting groups in DOJ's nearly identical suit for California's voter list. *Weber,* No. 2:25-cv-09149, ECF No. 70. This Court should do the same.

| | |
|---|---|
| December 4, 2025 | Respectfully submitted,<br><br>*/s/ Uzoma N. Nkwonta*<br>Uzoma N. Nkwonta\*<br>Jacob D. Shelly\*<br>Branden D. Lewiston\*<br>Tori Shaw\*<br>**ELIAS LAW GROUP LLP**<br>250 Massachusetts Ave. NW, Suite 400<br>Washington, DC 20001<br>Telephone: (202) 968-4490<br>unkwonta@elias.law<br>jshelly@elias.law<br>blewiston@elias.law<br>tshaw@elias.law<br><br>Timothy J. Ford (Pa. Id. No. 325290)<br>**DILWORTH PAXSON LLP**<br>1650 Market St<br>Suite 1200<br>Philadelphia, PA 19103<br>tford@dilworthlaw.com<br><br>*Attorneys for Proposed Intervenors the Pennsylvania Alliance for Retired Americans and Mike Crossey*<br><br>\*Admitted *Pro Hac Vice* |