UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>       v.<br><br>COMMONWEALTH OF PENNSYLVANIA; and AL SCHMIDT, in his official capacity as Secretary of the Commonwealth of Pennsylvania,<br><br>             Defendants. | No. 2:25-cv-1481<br>Chief Judge Cathy Bissoon |

**BRIEF OF SECRETARY OF THE COMMONWEALTH AL SCHMIDT
IN SUPPORT OF HIS MOTION TO DISMISS**

# TABLE OF CONTENTS

Table of Authorities ................................................................................................. iii

Introduction .............................................................................................................. 1

Background ............................................................................................................... 2

I.     DOJ's requests to Secretary Schmidt about Pennsylvania list maintenance. ........................................................................................... 2

II.    Public statements by DOJ and DHS about their intended use of voter data. ............................................................................................. 5

Argument .................................................................................................................. 7

I.     DOJ has failed to state a claim under the National Voter Registration Act (NVRA). ................................................................................................ 8

     A.    NVRA Section 8(i) does not require disclosure of voters' SSN4 or DLN. ................................................................................ 8

     B.    DOJ does not need voters' SSN4 or DLN to accomplish its stated purposes. ............................................................................. 10

     C.    The NVRA does not require electronic disclosure. ............................ 14

II.    DOJ has failed to state a claim under the Help America Vote Act (HAVA) ........................................................................................... 14

     A.    DOJ lacks statutory authority under HAVA. .................................... 15

     B.    DOJ does not need voters' SSN4 or DLN to ensure compliance with HAVA's voter registration requirements. ................................. 16

     C.    DOJ does not need voters' SSN4 or DLN to ensure elimination of duplicates. ....................................................................... 18

III.    DOJ has failed to state a claim under Title III of the Civil Rights Act of 1960. .................................................................................................. 19

     A.    This Court lacks jurisdiction to adjudicate DOJ's Title III claim. ................... 20

     B.    DOJ has not provided a legally sufficient "basis and purpose." ........................ 20

     C.    Title III does not require electronic disclosure. ................................. 22

IV.    Pennsylvania privacy protections operate harmoniously with the NVRA, HAVA, and Title III. ............................................................................ 22

V.     DOJ's demand would violate the Privacy Act, E-Government Act, and Driver's Privacy Protection Act. .......................................................... 23

Conclusion ............................................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Allegheny Reprod. Health Ctr. v. Pa. DHS*, 309 A.3d 808 (Pa. 2024) .......................... 22

*Am. C.R. Union v. Phila. City Comm'ners*, 872 F.3d 175 (3d Cir. 2017) ......................... 8, 10, 14

*Applewhite v. Com.*, 2014 WL 184988 (Pa. Commw. Ct. Jan. 17, 2014) ................... 18

*Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) ........................... 23

*Ashcroft v. Iqbal*, 556 US 662 (2009) ................................................................. 15

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) ......................................... 10, 11, 12

*Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168 (3d Cir. 1978)............................. 23

*Blunt v. Lower Merion School Dist.*, 2009 WL 1259100 (E.D. Pa. May 7, 2009) ..................... 10

*Commonwealth v. Nixon*, 761 A.2d 1151 (Pa. 2000).................................................. 22

*EPIC v. Pres. Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297
    (D.D.C. 2017) .................................................................................... 25

*Florida State Conf. of the NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008) ...................... 17

*Greater Birmingham Ministries v. Sec'y of State for Alabama*, 105 F.4th 1324
    (11th Cir. 2024)............................................................................... 14, 22

*Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993).................................................... 9

*In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125 (3d Cir. 2016) ..................... 2

*In re Coleman*, 208 F. Supp. 199 (S.D. Miss. 1962) ................................................. 21

*Int'l Broth. of Elec. Workers Local Union No. 5 v. U.S. Dep't. Of Housing and
    Urban Development*, 852 F.2d 87 (3rd Cir. 1988)................................................. 9

*Judicial Watch v. Grimes*, No. 3:17-cv-94 (E.D. Ky. 2018)........................................ 13

*Judicial Watch, Inc. v. Illinois State Bd. of Elections*, 2025 WL 2712209 (N.D. Ill.
    Sept. 23, 2025) ................................................................................. 11

*Judicial Watch, Inc. v. Pennsylvania*, 524 F. Supp. 3d 399 (M.D. Pa. 2021............................. 12

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ....................................................... 21

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962).......................................................... 21

*League of Women Voters v. DHS*, No. 25-cv-3501 (D.D.C.) ............................................ 7

*Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99 (3d Cir. 2015) .............................. 20

*McLinko v. Pennsylvania*, 2025 WL 2952837 (Pa. Comm. Ct. Oct. 20, 2025)........................... 18

*PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598 (Pa. Comm. Ct. 2025) ......................... 17

*Pa. State Educ. Ass'n (PSEA) v. Com. Dep't of Cmty. & Econ. Dev.*, 148 A.3d 142 (Pa. 2016)........................................................................... 22, 23

*Project Vote v. Long*, 752 F. Supp. 2d 697 (E.D. Va. 2010) .......................................... 9

*Pub. Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025) ................................ 11, 12

*Pub. Int. Legal Found. v. Sec'y Com. of Pa.*, 136 F.4th 456 (3d Cir. 2025) ......................... 8

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024)......................... 9, 21

*Rossman v. Pa. Dep't of State*, 2025 WL 3514275 (Pa. Comm. Ct. Dec. 8, 2025)...................... 18

*Sheet Metal Workers' Int'l Ass'n, Local Union No. 19 v. U.S. Dep't. of Veterans Affairs*, 135 F.3d 891 (3rd Cir. 1998) ............................................ 9

*State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) ......................... 19, 21

*Tavarez v. Klingensmith*, 372 F.3d 188 (3d Cir. 2004)................................................ 21

*Tribune-Review Pub. Co. v. Bodack*, 961 A.2d 110 (Pa. 2008) ...................................... 22

*U.S. v. Indiana*, No. 1:06-cv-1000 (S.D. Ind. 2006) ................................................. 13

*U.S. v. Maine*, No. 06-86 (D. Me. 2006)............................................................. 13

*U.S. v. Missouri*, No. 2:05-cv-4391 (W.D. Mo. 2005) ................................................ 13

*U.S. v. New Jersey*, No. 06-4889 (D.N.J. 2006) ..................................................... 13

*U.S. v. Philadelphia*, No. 2:06-cv-4592 (E.D. Pa. 2007)............................................. 13

*U.S. v. Pulaski County*, No. 4-04-cv-389 (E.D. Ark. 2004) .......................................... 13

*Washington Ass'n of Churches v. Reed*, 492 F.Supp.2d 1264 (W.D. Wa. 2006)......................... 17

**Statutes**

Pa. Const. art. I, § 1 ............................................................................... 22

U.S. Const. art. I, § 4, cl. 1....................................................................... 1, 7, 23

**Other Authorities**

18 U.S.C. § 2721 ........................................................................................................... 25

18 U.S.C. § 2725 ........................................................................................................... 25

25 P.S. § 3050 ............................................................................................................... 18

25 P.S. § 3146.2b .......................................................................................................... 18

25 P.S. § 3150.12b ........................................................................................................ 18

25 Pa.C.S. § 1323 .......................................................................................................... 25

25 Pa.C.S. § 1327 .......................................................................................................... 22

25 Pa.C.S. § 1328 ..................................................................................................... 17, 19

25 Pa.C.S. § 1505 .......................................................................................................... 12

25 Pa.C.S. Part IV ........................................................................................................... 3

5 U.S.C. § 552a ............................................................................................................. 24

5 U.S.C. § 552a note ...................................................................................................... 24

52 U.S.C. § 20507 .................................................................................................. passim

52 U.S.C. § 20701 ......................................................................................................... 20

52 U.S.C. § 20703 ................................................................................................... 20, 22

52 U.S.C. § 20705 ......................................................................................................... 20

52 U.S.C. § 21083 .................................................................................................. passim

52 U.S.C. § 21111 ................................................................................................ 3, 14, 15

E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 ............................... 25

Privacy Act of 1974, Pub. L. No. 93-579, 88 Stat. 1896 ........................................ 23, 24

**Rules**

4 Pa. Code ch. 18 ............................................................................................................. 3

**Treatises**

70 Fed. Reg. 43904 (July 29, 2005) .............................................................................. 24

82 Fed. Reg. 24147 (May 25, 2017) .................................................................... 24

*Central Civil Rights Division Index File and Associated Records, CRT-001*, 68
    Fed. Reg. 47610 (2003) ................................................................................ 24

DHS, *Privacy Act of 1974; System of Records*, 90 Fed. Reg. 48948 (Oct. 31,
    2025) .............................................................................................................. 5

DHS, *Private Impact Assessment for the Systematic Alien Verification for
    Entitlements "SAVE" Program* (Oct. 31, 2025) ............................................ 7

DOJ, *Cases Raising Claims Under The National Voter Registration Act* (Mar. 6,
    2025) ............................................................................................................ 13

DOJ, *Justice Department Sues Four Additional States and One Locality for
    Failure to Comply with Federal Elections Laws* (Dec. 12, 2025) ................ 4

ERIC, *Technology and Security Overview* (Sept. 29, 2025) ............................... 5

ERIC, *What is ERIC?* ........................................................................................... 4

Executive Order 14248, *Preserving and Protecting the Integrity of American
    Elections*, 90 Fed. Reg. 14005 (Mar. 25, 2025) ........................................... 5

GAO, *Immigration Status Verification For Benefits - Actions Needed to Improve
    Effectiveness and Oversight* (Mar. 2017) ..................................................... 5

H.R. Rep. No. 86-956 (1959) ........................................................................ 20, 21

Jim Saksa, *Trump Administration Sharing Voter Data Across Agencies, DHS
    Confirms*, Democracy Docket (Sept. 11, 2025) ............................................. 6

Jude Joffe-Block, *Trump's SAVE tool is looking for noncitizen voters. But it's
    flagging U.S. citizens too*, NPR (Dec. 10, 2025) .......................................... 6

Matt Cohen, *The DOJ Accelerates Its Hunt For Voter Fraud—With DOGE's
    Help*, Democracy Docket (May 23, 2025) ..................................................... 6

Miles Parks & Jude Joffe-Block, *Trump's DOJ focuses in on voter fraud, with a
    murky assist from DOGE*, NPR (May 22, 2025) ............................................ 6

OMB Guidance, M-03-22 (Sep. 26, 2003) ......................................................... 25

OMB, Circular No. A-108 (Dec. 2016) ............................................................... 24

Pa. Dep't of State, *Administration of Voter Registration in Pennsylvania, 2024
    Annual Report to the Pennsylvania General Assembly* (June 30, 2025) ......... 2, 19

Pa. Dep't of State, *Directive Concerning HAVA — Matching Drivers' Licenses or Social Security Numbers for Voter Registration Applications* (2018).................................. 17

Pa. Dep't of State, *PA Full Voter Export* ..................................................................... 3

Pennsylvania Voter Registration Application & Mail-In Ballot Request..................... 16

Post by @AAGDhillon, https://x.com/AAGDhillon/status/1997003629442519114 (Dec. 5, 2025) ............................................................................................................. 6

Presidential Statement on Signing the Civil Rights Act of 1960 (May 6, 1960)......................... 21

U.S. Br. as Amicus Curiae, Project Vote v. Long, 682 F.3d 331 (4th Cir. 2012) (No. 11-1809), 2011 WL 4947283 .............................................................................. 9

U.S. Br. as Amicus Curiae, Pub. Int. Legal Found. v. Sec'y Com. of Pa., 136 F.4th 456 (3d Cir. 2025) (Nos. 23-1590, 23-1591), 2023 WL 7486717 ................................ 9

U.S. Br. as Amicus Curiae, Pub. Int. Legal Found., Inc. v. Bellows, 92 F.4th 36 (1st Cir. 20254) (No. 23-1361), 2023 WL 4882397 ..................................................... 9

U.S. Election Assist. Comm'n, *Studies and Reports* (Aug. 11, 2025)........................... 3

USCIS, *Voter Registration and Voter List Maintenance Fact Sheet* (Aug. 27, 2025) .......................................................................................................................... 7

## INTRODUCTION

The U.S. Constitution empowers Pennsylvania to prescribe the "Times, Places and Manner" of holding federal elections, subject to the power of Congress to make or alter such regulations. U.S. Const. art. I, § 4, cl. 1. Congress exercised this power through the National Voter Registration Act (NVRA) and the Help America Vote Act (HAVA), requiring Pennsylvania to maintain and administer a computerized statewide voter registration list and to conduct regular list maintenance to ensure accurate voter rolls. The Pennsylvania Department of State, under the leadership of Secretary Schmidt, works diligently with the Commonwealth's 67 counties to help them ensure that all electoral processes are fully compliant with federal and Pennsylvania laws.

The Department of Justice now seeks to usurp the authority Congress granted Pennsylvania. It demands complete and unfettered electronic access to Pennsylvania's voter registration list—ostensibly to ensure that Pennsylvania is conducting a general program of list maintenance, but without any allegation that Pennsylvania's list maintenance practices are deficient. Although Secretary Schmidt has offered Pennsylvania's public voter file, which includes many data fields, DOJ insists that it must receive the driver's license number or partial Social Security number ("DLN" and "SSN4" respectively) for Pennsylvania's more than 8.9 million voters.

Neither the NVRA, nor HAVA, nor Title III of the Civil Rights Act of 1960 authorizes DOJ to obtain this highly sensitive personal information about every Pennsylvania voter. The NVRA's public disclosure provision does not extend to SSNs and DLNs. Nor is this data necessary to establish that Pennsylvania has a general program to remove deceased and moved registrants or duplicate records, or complies with HAVA's voter registration requirements. DOJ has brought its Title III claim to the wrong court, and its claim is not supported by the text or purpose of the statute. Finally, Pennsylvania voters enjoy robust informational privacy protections under the Pennsylvania Constitution that do not conflict with these federal election laws.

## BACKGROUND

I.    **DOJ's requests to Secretary Schmidt about Pennsylvania list maintenance.**

On June 23, 2025, DOJ wrote to Secretary Schmidt asking for 14 categories of information about how Pennsylvania complies with the list maintenance requirements of HAVA. Ex. 1.[1] On July 23, Secretary Schmidt explained in response that while local election officials are responsible for maintaining their voter lists, the Department works diligently with the Commonwealth's 67 counties to help them ensure that all electoral processes are fully compliant with federal and Pennsylvania laws, including HAVA. Ex. 2. He provided detailed responses to each question and referred DOJ to the most recent report issued by the Department on the Administration of Voter Registration in Pennsylvania, which comprehensively addresses voter list maintenance programs in the Commonwealth.[2] The letter also explained that HAVA leaves verification of SSN4 and DLNs to the States, 52 U.S.C. § 21083(a)(5)(A)(iii), and Pennsylvania law does not allow denying a voter registration application solely for failure to match an ID number, Ex. 2, at 8–9.

DOJ did not respond to the Department's letter. Instead, on August 4, 2025, DOJ wrote to Secretary Schmidt with questions about how Pennsylvania complies with the list maintenance requirements of the NVRA. Ex. 3. Relying upon Section 8(i) of the NVRA, 52 U.S.C. § 20507(i), DOJ requested the "current electronic copy of the Commonwealth of Pennsylvania's computerized statewide voter registration list," with "all fields contained with the list." *Id.* at 1. DOJ also posed

---

[1] At the motion to dismiss stage, the Court may consider "documents integral to or explicitly relied upon in the complaint." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016) (cleaned up).

[2] Pa. Dep't of State, *Administration of Voter Registration in Pennsylvania, 2024 Annual Report to the Pennsylvania General Assembly* (June 30, 2025) (hereinafter "DOS 2024 VR Report"), https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/reports/voter-registration/dos_voter_registration_report_2024_final.pdf.

additional questions about the Department's responses to the most recent biennial U.S. Election Assistance Commission's Election Administration and Voting Survey.[3] *Id.* at 2.

Before Secretary Schmidt could respond, DOJ wrote again on August 14, 2025, to clarify that "the Justice Department's request to provide an electronic copy of the statewide VRL should contain *all fields*, which means, your state's VRL must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number." Ex. 4, at 1. For the first time, DOJ asserted that it sought these records under HAVA Section 401 (52 U.S.C. § 21111) and Title III of the Civil Rights Act of 1960. *Id.* at 1–2. DOJ stated that the "purpose of the request is to ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* at 2.

On August 18, 2025, Secretary Schmidt responded to DOJ's August 4 letter. Ex. 5. He explained that most of DOJ's questions about the Election Administration and Voting Survey misunderstood the data or misrepresented the Department's response. *Id.* at 2–5.

On August 21, 2025, Secretary Schmidt responded to DOJ's request for statewide voter registration data. Ex. 6. He offered to provide DOJ with Pennsylvania's Full Voter Export, which is available through the Department's website.[4] *Id.* at 1. It includes all voters in the Commonwealth (with certain limited exceptions for crime victims and other confidential voters) and contains the following fields: voter ID number, name, sex, date of birth, date registered, status (i.e., active or

---

[3] U.S. Election Assist. Comm'n, *Studies and Reports* (Aug. 11, 2025) (most recent report published June 30, 2025), https://www.eac.gov/research-and-data/studies-and-reports.

[4] In accordance with the Pennsylvania voter registration law, 25 Pa.C.S. Part IV, and the Statewide Uniform Registry of Electors (SURE) Regulations, 4 Pa. Code ch. 183, all requesters must agree to the same terms and conditions: payment of $20 and affirmation that the records will only be used for non-commercial purposes related to elections, political activities and law enforcement, and will not be published on the internet. *See* Pa. Dep't of State, *PA Full Voter Export*, https://www.pavoterservices.pa.gov/pages/PurchasePAFullVoterExport.aspx.

3

inactive), date status last changed, party, residential address, mailing address, polling place, date last voted, all districts in which the voter votes, voter history, and date the voter's record was last changed. But Secretary Schmidt declined to provide voters' SSN4 or DLN because DOJ lacked legal authority for such a broad collection of highly sensitive, private information. *Id.* at 2.

DOJ did not respond to the Department's August letters. Instead, it filed this complaint on September 25, 2025, seeking an order that Secretary Schmidt provide DOJ with the "current electronic copy of Pennsylvania's computerized statewide voter registration list, with all fields," including each voter's SSN4 or DLN. Compl. at 16. The only fields requested by DOJ that Secretary Schmidt has declined to provide are voters' SSN4 and DLNs. Compl. ¶ 43. DOJ has also sued 17 other states for their statewide voter registration lists.[5]

As the complaint acknowledges, Compl. ¶ 44–45, the Department is a member of the Electronic Registration Information Center (ERIC), which helps states improve the accuracy of America's voter rolls by identifying inaccurate or out-of-date voter registration records, duplicate registrations, deceased voters, and possible cases of illegal voting.[6] Importantly, the Department does not provide ERIC with voters' SSN4s and DLNs in plain text in an .xls, .csv, or delimited-text file format, as DOJ has demanded. *Cf.* Ex. 3; Compl. ¶¶ 44–45. Instead, the Department applies a cryptographic one-way hash to these data *before* sending them to ERIC, which transforms SSN4s and DLNs into "what appears to be a string of random characters" that is not meant to be

---

[5] DOJ, *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://www.justice.gov/opa/pr/justice-department-sues-four-additional-states-and-one-locality-failure-comply-federal.

[6] ERIC is a nonprofit, nonpartisan membership organization funded and governed by its members states. *See* ERIC, *What is ERIC?* https://ericstates.org/about/ (last visited Dec. 11, 2025).

decrypted.[7] This allows the Department to transmit information necessary for voter list maintenance without disclosing voters' sensitive personal information.

## II.    Public statements by DOJ and DHS about their intended use of voter data.

On March 25, 2025, the President issued an Executive Order on elections.[8] That order requires the Department of Homeland Security and the Administrator of the Department of Government Efficiency to review each state's voter file and list maintenance records for non-citizens, Sec. 2(b)(iii), and requires the U.S. Attorney General to use information maintained by DHS (including DLN records) to prosecute non-citizens who vote, Sec. 2(e).

In response to the Executive Order, DHS overhauled its Systematic Alien Verification for Entitlements program (SAVE)—a database originally created to assist with verifying the immigration status of applicants for federal, state, or local benefits.[9] According to DHS, SAVE now provides voter verification; permits bulk searching; permits searching by full or partial SSN and (soon) DLNs; "searches multiple government databases or systems to provide a SAVE response," including the Social Security Administration databases; and includes U.S. citizens by birth.[10]

DHS asserts that all records and information in SAVE may be disclosed to DOJ "when it is relevant or necessary" to "litigation or proceedings before any court, adjudicative, or administrative body" and the United States is a party or has an interest in the litigation. 90 Fed. Reg. at

---

[7] ERIC, *Technology and Security Overview*, at 2 (Sept. 29, 2025), https://eric-states.org/wp-content/uploads/documents/ERIC-Tech-Security-Brief.pdf.

[8] Executive Order 14248, *Preserving and Protecting the Integrity of American Elections*, 90 Fed. Reg. 14005 (Mar. 25, 2025), https://www.federalregister.gov/documents/2025/03/28/2025-05523/preserving-and-protecting-the-integrity-of-american-elections.

[9] GAO, *Immigration Status Verification For Benefits - Actions Needed to Improve Effectiveness and Oversight*, at 1 (Mar. 2017), https://www.gao.gov/assets/gao-17-204.pdf.

[10] DHS, *Privacy Act of 1974; System of Records*, 90 Fed. Reg. 48948 (Oct. 31, 2025), https://www.govinfo.gov/content/pkg/FR-2025-10-31/pdf/2025-19735.pdf.

48954. DHS will also allow agencies with "a legal authority to monitor and audit … voter regis-

tration records" to "view relevant case data such as biographic data, enumerators, case submission

date/time, and SAVE response information." *Id.* at 48951. Given DOJ's claim that it "is tasked

with ensuring that States conduct voter-registration-list maintenance to prevent the inclusion of

ineligible voters on any State's voter registration list," Compl. at 2, it is likely that DHS intends to

allow DOJ access.

Public statements by government officials make clear that these agencies are, in fact, work-

ing together to sort through state voter files to find potential non-citizens. A DOGE staffer this

summer confirmed that DOJ asked DOGE to find noncitizen voters in every state, and that DOGE

was doing so by comparing Social Security data with state voter data.[11] In September 2025, a DHS

spokesperson confirmed that DOJ was sharing voter registration data with DHS.[12] And earlier this

month, DOJ's Assistant Attorney General for Civil Rights announced that "we've checked 47.5

million voting records" and found "several thousand non-citizens who are enrolled to vote in Fed-

eral elections,"[13] while DHS's U.S. Citizenship and Immigration Services confirmed to NPR a few

days later that "more than 47 million voters have been run through SAVE."[14]

---

[11] Matt Cohen, *The DOJ Accelerates Its Hunt For Voter Fraud—With DOGE's Help*, De-mocracy Docket (May 23, 2025), https://www.democracydocket.com/news-alerts/the-doj-accel-erates-its-hunt-for-voter-fraud-with-doges-help (link to podcast statements); Miles Parks & Jude Joffe-Block, *Trump's DOJ focuses in on voter fraud, with a murky assist from DOGE*, NPR (May 22, 2025), https://www.npr.org/2025/05/17/nx-s1-5383277/trump-doj-doge-noncitizen-voting.

[12] Jim Saksa, *Trump Administration Sharing Voter Data Across Agencies, DHS Con-firms*, Democracy Docket (Sept. 11, 2025), https://www.democracydocket.com/news-alerts/trump-administration-sharing-voter-data-across-agencies-dhs-confirms/.

[13] Post by @AAGDhillon, https://x.com/AAGDhillon/status/1997003629442519114 (Dec. 5, 2025).

[14] Jude Joffe-Block, *Trump's SAVE tool is looking for noncitizen voters. But it's flagging U.S. citizens too*, NPR (Dec. 10, 2025), https://www.npr.org/2025/12/10/nx-s1-5588384/save-voting-data-us-citizens.

Public reporting belies the success of these efforts, *id.*, and DHS' own documents indicate SAVE cannot produce consistently accurate results because the records upon which it relies do not always contain updated information regarding naturalization status.[15] The legality and accuracy of SAVE is under challenge. *See League of Women Voters v. DHS*, No. 25-cv-3501 (D.D.C.).

## ARGUMENT

DOJ claims to need DLNs and SSN4s of all 8.9 million registered Pennsylvania voters to determine whether Pennsylvania is complying with (a) the NVRA's requirement to remove registrants who have moved or died, and (b) HAVA's requirements to remove duplicate registrants and require identifying numbers at the time of registration. Compl. ¶¶ 55, 60–61. As explained below, obtaining registrants' DLNs and SSN4s is not necessary to achieve those proffered goals. DOJ is using its claims of NVRA and HAVA "oversight" as a pretext to scour the personal data of every registered voter in Pennsylvania and to run that data through the SAVE database—despite the fact that evidence of non-citizen voter registration is exceedingly rare. It is Pennsylvania—not DOJ—that is constitutionally empowered to administer and maintain its voter rolls, subject only to the power of Congress. U.S. Const. art. I, § 4, cl. 1. And it is Pennsylvania—not DOJ—that Congress has authorized to maintain a computerized statewide voter registration list and conduct list maintenance. 52 U.S.C. §§ 20507, 21083.

---

[15] USCIS, *Voter Registration and Voter List Maintenance Fact Sheet* (Aug. 27, 2025), https://www.uscis.gov/save/current-user-agencies/guidance/voter-registration-and-voter-list-maintenance-fact-sheet (stating that SAVE may return inaccurate results for individuals with acquired citizenship); DHS, *Private Impact Assessment for the Systematic Alien Verification for Entitlements "SAVE" Program* (Oct. 31, 2025), https://www.dhs.gov/sites/default/files/2025-10/privacy-pia-dhsuscis006d-save-october2025%20%28002%29.pdf (stating that SAVE may produce inaccurate results due to misspellings, transposed numbers, and incomplete information, and queries using SSN do not trigger the manual review designed to mitigate these errors).

I.      **DOJ has failed to state a claim under the National Voter Registration Act (NVRA).**

The NVRA both "protects registered voters from improper removal from the rolls" and places "limited requirements on states to remove ineligible voters from the rolls." *Am. C.R. Union v. Phila. City Comm'ners*, 872 F.3d 175, 179 (3d Cir. 2017); *accord Pub. Int. Legal Found. v. Sec'y Com. of Pa.*, 136 F.4th 456, 466 (3d Cir. 2025). Among other obligations, NVRA Section 8(a) instructs states to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" by reason of death or change in residence. 52 U.S.C. § 20507(a)(4).

DOJ demands Pennsylvania voter records under Section 8(i) of the NVRA, which requires Pennsylvania to "make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1); *see* Compl. ¶¶ 53–54. DOJ claims voters' SSN4 and DLNs are necessary to determine if Pennsylvania is conducting a "general program" of list maintenance as required by the NVRA and to evaluate issues "raised by the data and by answers provided by the Commonwealth of Pennsylvania to the Election Assistance Commission's 2024 EAVS." Compl. ¶ 55. But the NVRA does not require disclosure of sensitive personal information, which in any event would not serve DOJ's stated purposes. Nor does the NVRA require electronic disclosure.

A.      **NVRA Section 8(i) does not require disclosure of voters' SSN4 or DLN.**

Secretary Schmidt offered DOJ the Full Voter Export, which contains all fields from the statewide voter registration list except voters' SSN4s and DLNs. Not satisfied, DOJ demands this highly sensitive personal data by attempting to rely on the NVRA's disclosure provision. Compl. ¶ 54. But, to the extent that provision applies at all, "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information," such as SSNs and

DLNs. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases); *Project Vote v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (holding that the NVRA does not require disclosure of SSNs, because disclosure would "potentially undermine[] the voter registration goals of the NVRA"), *aff'd* 682 F.3d 331, 339 (4th Cir. 2012).

DOJ has previously agreed—taking the position across multiple administrations—that states may redact certain information before disclosing records under Section 8(i). U.S. Br. as Amicus Curiae, Pub. Int. Legal Found. v. Sec'y Com. of Pa., 136 F.4th 456 (3d Cir. 2025) (Nos. 23-1590, 23-1591), 2023 WL 7486717, at *28–*29 ("[T]he NVRA does not prohibit the *redaction* of highly sensitive information within those records, or information whose disclosure would violate other federal laws."); U.S. Br. as Amicus Curiae, Pub. Int. Legal Found., Inc. v. Bellows, 92 F.4th 36 (1st Cir. 20254) (No. 23-1361), 2023 WL 4882397, at *27–*30 (same); U.S. Br. as Amicus Curiae, Project Vote v. Long, 682 F.3d 331 (4th Cir. 2012) (No. 11-1809), 2011 WL 4947283, at *25–*26 (same).

Courts have also declined to require disclosure of SSNs and similarly sensitive data in other, non-NVRA contexts. *See, e.g.*, *Int'l Broth. of Elec. Workers Local Union No. 5 v. U.S. Dep't. Of Housing and Urban Development*, 852 F.2d 87, 89 (3rd Cir. 1988) (holding that SSNs were exempt from disclosure under FOIA, because their release "would constitute a clearly unwarranted invasion of privacy"), *holding cited with approval and expanded by Sheet Metal Workers' Int'l Ass'n, Local Union No. 19 v. U.S. Dep't. of Veterans Affairs*, 135 F.3d 891, 989–99 (3rd Cir. 1998); *Greidinger v. Davis*, 988 F.2d 1344, 1355 (4th Cir. 1993) (holding that a Virginia state law requiring voter registration applicants to provide their SSNs and requiring officials to disclose those numbers in public records created an "intolerable burden on [the right to vote] as protected

by the First and Fourteenth Amendments"); *Blunt v. Lower Merion School Dist.*, 2009 WL 1259100, at *3 (E.D. Pa. May 7, 2009) (requiring redaction of SSNs in discovery responses).

If NVRA Section 8(i) does not prohibit *redaction* of sensitive, personally identifiable data such as SSNs and DLNs, then it cannot compel production of such data either. DOJ's reliance on Section 8(i) must fail.

**B.    DOJ does not need voters' SSN4 or DLN to accomplish its stated purposes.**

As explained in the Secretary's July 23 and August 18, 2025 letters, *supra* at 2–3, and as detailed in the Department's Annual Report, *see supra* note 2, the Department does a robust job of ensuring that all of Pennsylvania's 67 counties comply with their list maintenance responsibilities under the NVRA. DOJ provided no response to these letters, nor does it allege that the Commonwealth is *not* conducting a general program of list maintenance. Instead, DOJ now claims that it needs the SSN4 or DLN of more than 8.9 million registered voters to evaluate Pennsylvania's compliance with Section 8(a)(4) and responses to the 2024 Election Administration and Voting Survey. Compl. ¶¶ 53–55. But this is incorrect, and DOJ provides no reason to hold otherwise.

As an initial matter, the NVRA only *requires* states to remove registrants who are no longer eligible due to death or change in residence. 52 U.S.C. § 20507(a)(4); *see also Am. C.R. Union*, 872 F.3d at 182 ("By its terms, the mandatory language in Section 8(a)(4) only applies to registrants who have died or moved away."); *Bellitto v. Snipes*, 935 F.3d 1192, 1195 (11th Cir. 2019) ("[T]he statute could not be clearer: the states and their subsidiaries are required to conduct a general program of list maintenance that makes a reasonable effort to remove voters who become ineligible on account of death or change of residence, and only on those two accounts."). The NVRA also *permits*—but does not require—states to remove registrants at their request, or due to criminal conviction or mental incapacity, if those categories are disqualifying under state law. 52 U.S.C. § 20507(a)(3); *Bellitto*, 935 F.3d at 1203 ("Although the statute also allows and encourages

the states to conduct additional programs of list maintenance—and indeed the states have administrative and other incentives to do so—the statute requires nothing more of the state.").

In mandating removals for death or change in residence, the NVRA's focus is on process, not results. It requires states to "conduct a general program that makes a *reasonable effort*" to remove these ineligible registrants. 52 U.S.C. § 20507(a)(4) (emphasis added). To constitute a reasonable effort, the removal program must make "a rational and sensible attempt to remove dead [or non-resident] registrants; a state need not, however, go to 'extravagant or excessive' lengths in creating and maintaining such a program." *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 625 (6th Cir. 2025), *petition for cert. pending.* Indeed, "[t]he state is not required to exhaust all available methods for identifying deceased [or non-resident] voters; it need only use reasonably reliable information to identify and remove such voters." *Bellitto*, 935 F.3d at 1205.

For change in residence, the NVRA provides a "safe harbor" for states: complying with Section 8(c)(1), which provides that a state "may meet the requirement of Section 8(a)(4)" by using "change-of-address information supplied by the Postal Service" to update the addresses of registrants who have moved within the same registrar's jurisdiction and to confirm that other registrants have moved outside the registrar's jurisdiction using the notice procedure established in Section 8(d)(2). 52 U.S.C. § 20507(c)(1); *see also, e.g.*, *Bellitto*, 935 F.3d at 1205 ("As a safe harbor, the NCOA process, at a minimum, constitutes a reasonable effort at identifying voters who have changed their addresses."); *Judicial Watch, Inc. v. Illinois State Bd. of Elections*, 2025 WL 2712209 at *11 (N.D. Ill. Sept. 23, 2025). The NVRA does not similarly provide a safe harbor for removals based on deaths, but courts have recognized that states made a "reasonable effort" where removal programs were based on state and federal death records. *See, e.g.*, *Benson*, 136 F.4th at 628; *Bellitto*, 935 F.3d at 1205.

11

Thus, to determine whether a state is violating Section 8(a)(4), the proper inquiry is on the reasonableness of the process itself, rather than the result. "Section 8(a)(4) does not require a perfect removal effort[.]" *Judicial Watch, Inc. v. Pennsylvania*, 524 F. Supp. 3d 399, 407 (M.D. Pa. 2021). This is because Congress was striking a balance between making registration more accessible and maintaining accurate voter rolls, and "a maximum effort at purging voter lists could minimize the number of ineligible voters, but those same efforts might also remove eligible voters." *Bellitto*, 935 F.3d at 1198.

A snapshot of Pennsylvania's voter registration file—with or without registrants' DLNs and SSN4s—will not tell DOJ what processes election officials follow, what data sources they use, or how regularly they remove registrants who have become ineligible due to death or change in residence. The mere existence at a given time of specific individuals on the voter rolls who have died or have changed residence is not determinative of whether a state's process is reasonable. *See Benson*, 136 F.4th at 628 (assuming *arguendo* that 27,000 deceased voters were on Michigan's voter rolls and finding that, at 0.3% of the registration rolls, "that vanishingly small percentage is in-and-of-itself indicative that Michigan has taken rational, sensible steps to maintain accurate voter rolls"). Obviously, people die and move every day; removals are a process, and there will always be some number of dead or non-resident registrants on any state's voting rolls, no matter how diligent the state is. *See* 25 Pa.C.S. § 1505(a) ("The Department of Health shall, within 60 days of receiving notice of the death of an individual 18 years of age or older, send the name and address of residence of that individual to a commission … [which] shall promptly update information contained in its registration records."); 52 U.S.C. § 20507(d) (prohibiting states from removing registrants due to a change in residence unless the registrant (a) has confirmed the change

12

in writing or (b) failed to respond to a sent notice and failed to vote or appear to vote for a two-year period beginning when the notice).[16]

Furthermore, DOJ's enforcement history demonstrates that it does not need SSN4s or DLNs to bring successful lawsuits alleging that states' removal programs were not reasonable. DOJ lists on its website at least six such lawsuits from the mid-2000s.[17] None of the complaints or settlements indicate that DOJ had access at any point to registrants' SSN4s or DLNs. More recently, in 2017, DOJ requested information from Kentucky about its compliance with the list maintenance provisions of the NVRA and HAVA, as well as data that was missing from its most recent report to the U.S. Election Assistance Commission.[18] Unlike the present demand from DOJ, however, the 2017 letter did not request any personally identifying information at all, let alone such sensitive information as SSN4s or DLNs. DOJ subsequently intervened in a NVRA Section 8(a)(4) lawsuit against Kentucky and entered into a remedial consent judgment. Again, neither the complaint nor consent judgment make any reference to personally identifying information.[19]

---

[16] Because removals are a process, the number of ineligible registrants will also fluctuate from week to week and month to month. Thus, a static, point-in-time snapshot of the voter file (with or without SSN4s and DLNs) would also not tell DOJ anything about what the voter file will look like at a later point of time, and the voter file would be just as likely to have fewer ineligible registrants than more.

[17] DOJ, *Cases Raising Claims Under The National Voter Registration Act* (Mar. 6, 2025), https://www.justice.gov/crt/cases-raising-claims-under-national-voter-registration-act. The relevant cases are: *U.S. v. Pulaski County*, No. 4-04-cv-389 (E.D. Ark. 2004); *U.S. v. Missouri*, No. 2:05-cv-4391 (W.D. Mo. 2005); *U.S. v. Indiana*, No. 1:06-cv-1000 (S.D. Ind. 2006); *U.S. v. Maine*, No. 06-86 (D. Me. 2006); *U.S. v. New Jersey*, No. 06-4889 (D.N.J. 2006); *U.S. v. Philadelphia*, No. 2:06-cv-4592 (E.D. Pa. 2007).

[18] *Judicial Watch v. Grimes*, No. 3:17-cv-94, Dkt. 35 Ex. A (E.D. Ky. June 21, 2018), https://www.justice.gov/crt/case-document/file/1148356/dl?inline

[19] *Id.*; *id.* Dkt. 39 (E.D. Ky. July 3, 2018), https://www.justice.gov/crt/case-document/file/1083361/dl?inline.

Finally, DOJ has not demonstrated how voters' SSN4s and DLNs are necessary to evaluate "issues raised by the data and by answers provided" by the Secretary to the EAC's 2024 Election Administration and Voting Survey. Compl. ¶ 55. DOJ already asked the Secretary questions about Pennsylvania's responses, which the Secretary answered. *Supra* at 2–3. DOJ concedes that Secretary Schmidt provided "explanations to the Attorney General's EAVS requests," Compl. ¶ 38, and nowhere alleges that these responses were incomplete or unsatisfactory.

        **C.      The NVRA does not require electronic disclosure.**

Even if the NVRA did require disclosure of voters' SSN4s and DLNs, the statute does not require electronic disclosure as demanded by DOJ. *Contra* Compl. at 16. Instead, Section 8(i) "requires states to make covered records available in two ways: (1) for 'public inspection,' and (2) 'where available, photocopying at a reasonable cost.'" *See Greater Birmingham Ministries v. Sec'y of State for Alabama*, 105 F.4th 1324, 1332–35 (11th Cir. 2024) (quoting 52 U.S.C. § 20507(i)(1)). Electronic production "is an entirely different method of disclosure" that Congress has not chosen to require, *id.*, and so not one the Court can order Pennsylvania to provide.

**II.      DOJ has failed to state a claim under the Help America Vote Act (HAVA)**

Congress enacted HAVA to, among other things, "help improve ... the way registration lists are maintained." *Am. C.R. Union*, 872 F.3d at 180–81. HAVA "builds on the NVRA" by requiring each state to maintain "a computerized database for voter registrations" and "perform list maintenance" of the computerized database. But "states may not remove individuals from the voter rolls unless they do so in accordance with" the NVRA. *Id.* at 181.

DOJ claims that it needs voters' SSN4 and DLN to: (a) evaluate Pennsylvania's compliance with HAVA, pursuant to the Attorney General's statutory enforcement authority under 52 U.S.C. § 21111; (b) evaluate Pennsylvania's procedures to ensure that duplicate names are eliminated from the voter rolls as required by 52 U.S.C. § 21083(a)(2)(B); and (c) determine

Pennsylvania's compliance with HAVA's list maintenance requirements in 52 U.S.C. § 21083(a)(5)(A). Compl. ¶¶ 59–61. These arguments are not legally or factually credible.

### A.    DOJ lacks statutory authority under HAVA.

HAVA does not contain a public records disclosure provision, and so it cannot grant DOJ a right to Pennsylvania to registered voters' records. DOJ instead attempts to muddy the waters, baldly alleging that "Defendants have failed to take the actions necessary for the State of Pennsylvania to comply with Section 303 of HAVA," Compl. ¶ 58, while simultaneously claiming that it does not have the necessary information to evaluate Pennsylvania's compliance with HAVA. Compl. ¶ 59. As a matter of logic, DOJ cannot have evaluated Pennsylvania's compliance with HAVA if it does not have the necessary information to evaluate Pennsylvania's compliance with HAVA. These "naked assertion[s]" do not "contain sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (cleaned up).

Moreover, even if the allegations were ordinarily sufficient, they cannot support the notion here that DOJ is entitled to the relief it seeks—a declaration that the Secretary's refusal to provide records prevents the Attorney General from enforcing HAVA's list maintenance requirements, Compl. Prayer for Relief C., because the Secretary is under no obligation to provide records pursuant to HAVA nor to voluntarily assist the Attorney General in suing him.

DOJ appears to misunderstand 52 U.S.C. § 21111. That section grants the Attorney General authority to "bring a civil action … for such declaratory and injunctive relief … as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements" in specific sections of HAVA. In other words, this section in a subchapter titled "Enforcement" grants the Attorney General authority to *enforce* certain provisions of HAVA, including Section 303. That is hardly the same as an independent grant of authority to create a whole

new obligation on states to disclose records, or indeed to do anything at all that Congress did not choose to require.

### B. DOJ does not need voters' SSN4 or DLN to ensure compliance with HAVA's voter registration requirements.

DOJ does not specify which requirements of 52 U.S.C. § 21083(a)(5)(A) Pennsylvania is allegedly violating. Compl. ¶ 61. That section generally requires that a state not accept or process a voter registration application unless the applicant provides a DLN or SSN4. *Id.* § 21083(a)(5)(A)(i). If the applicant does not have one of those two numbers, the state must assign them an identification number for voter registration purposes. *Id.* § 21083(a)(5)(A)(ii). Crucially, however, Congress authorized Pennsylvania to "determine whether the information provided by an individual," i.e., their SSN4, DLN, or a lack thereof, "is sufficient to meet [these requirements], *in accordance with State law*." *Id.* § 21083(a)(5)(A)(iii) (emphasis added).

As a practical matter, DOJ knows that Pennsylvania requires DLNs and SSN4s; otherwise, it would not be suing the Secretary for them. The Commonwealth's voter registration application confirms that Pennsylvania collects that information.[20] But obtaining voters' SSN4s and DLNs would tell DOJ nothing about whether Pennsylvania requires those numbers from all applicants who possess them. To check whether there are any registrants who do not have an SSN4 or DLN listed in the voter file, but who do in fact have such a number and should have listed it on their registration, DOJ would also need to have access to the Commonwealth's driver's license database and the Social Security database, as well as a way to verify that any given registrant without an

---

[20] *See* Pennsylvania Voter Registration Application & Mail-In Ballot Request, https://www.pa.gov/content/dam/copapwp-pagov/en/vote/resources/documents-and-forms/Voter_Registration_Application_English.pdf

SSN4 or DLN listed in the voter file is the same person as an individual in the driver's license or Social Security databases.

Obtaining voters' SSN4s and DLNs would also tell DOJ nothing about whether or how Pennsylvania law determines whether the information provided is sufficient to meet the requirements of HAVA, "in accordance with State law." 52 U.S.C. § 21083(a)(5)(A)(iii). The "in accordance with State law" clause—which DOJ has entirely left out of its restatement of the law, Compl. ¶ 26—means that *Pennsylvania* may choose whether to query the SSN4 or DLN provided by a registrant against the relevant database, and if they do, what to do if the query returns a non-match. *Florida State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1174 n.21 (11th Cir. 2008) ("HAVA also does not require that states authenticate these numbers by matching them against existing databases. It is explicit that states are to make determinations of validity in accordance with state law. States are therefore free to accept the numbers provided on [the] application form . . . as self-authenticating."); *Washington Ass'n of Churches v. Reed*, 492 F.Supp.2d 1264, 1268–69 (W.D. Wa. 2006) (holding that HAVA does not require a match at the time of registration, and that holding otherwise would directly conflict with other provisions of HAVA).

Pennsylvania law does not require a match at the time of registration. 25 Pa.C.S. § 1328 (governing the approval or rejection of voter registration applications, with no reference to mismatched or unverified identification numbers); *see also* Pa. Dep't of State, *Directive Concerning HAVA — Matching Drivers' Licenses or Social Security Numbers for Voter Registration Applications* (2018) (advising that county election officials may not reject voter registration applications based solely on a mismatch); *PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598, 604 (Pa. Comm. Ct. 2025) (citing with approval the Deputy General Counsel's determination that HAVA does not require a match in order to register to vote); *McLinko v. Pennsylvania*, 2025 WL 2952837,

at *5–6 (Pa. Comm. Ct. Oct. 20, 2025) (noting that, under Pennsylvania law, "voter registration commissions are not required to match the DLNs or SSNs provided by applicants with established databases to accept a voter registration application"); *Rossman v. Pa. Dep't of State*, 2025 WL 3514275, at *6 (Pa. Comm. Ct. Dec. 8, 2025) ("[S]tate law does not authorize an out-of-hand rejection based merely upon a mismatch in the driver's license or SSN databases, without investigation.").[21]

In short, possessing voters' SSN4s and DLNs will not tell DOJ whether Pennsylvania requires those numbers from registrants who have them and otherwise assigns numbers to those who do not. As with the NVRA, DOJ can accomplish its goals without sensitive personally identifying information. And because neither HAVA nor Pennsylvania law require a match at the time of registration, there is no other potential violation of HAVA's voter registration requirements, let alone one that would require registrants' SSN4s and DLNs to establish.

## C.    DOJ does not need voters' SSN4 or DLN to ensure elimination of duplicates.

HAVA does require that list maintenance be conducted "on a regular basis" to remove duplicate names. 52 U.S.C. § 21083(a)(2). But a static, point-in-time voter roll would tell DOJ nothing about how regularly removals are conducted. Depending on when DOJ were to receive the voter file, the same HAVA-compliant program would different numbers of potential duplicates. For example, because the removal process takes time, one would expect a higher number of

---

[21] Importantly, if an individual registers by mail (including online registration) and they do not provide a DLN or SSN4, or the number they provide cannot be verified at the time of registration, HAVA provides that the individual must not be permitted to vote for the first time unless they provide proof of identity with their voter registration application, with their mail ballot, or at the polling place, unless they meet a limited exception. 52 U.S.C. § 21083(b). Pennsylvania law also requires identification at the polling place when voting for the first time, and with each application for an absentee or mail-in ballot. *See* 25 P.S. § 3050(a), as modified by *Applewhite v. Com.*, 2014 WL 184988, at *27 (Pa. Commw. Ct. Jan. 17, 2014); 25 P.S. §§ 3146.2b(c), 3150.12b(a).

duplicates in the weeks immediately before a voter registration deadline, when voter registration activity typically spikes. *See* 25 Pa.C.S. § 1328(d) (a registrant's new county must send a cancellation notice to her old county, but the old county must investigate and verify the address change before cancelling the record). Likewise, one would expect the number of duplicate registrations to be higher immediately before the Department receives a duplicate report from ERIC and sends information to the relevant counties to process under the NVRA.[22]

Even if the number of duplicate registrations at a fixed point in time were relevant to determining HAVA compliance, it is not necessary for DOJ to possess registrants' SSN4s and DLNs. The Secretary has offered DOJ a voter file with a wealth of registrant information, including voter ID number, full name, date of birth, residential address, sex, political party, date registered, voter history, and date the registrant's record was last changed. *Supra* at 3–4. Were DOJ genuinely concerned about removing duplicate registrations, it could use the information in the voter file to identify likely duplicates, and then ask the Commonwealth to use SSN4s, DLNs, or signatures to confirm.

### III.   DOJ has failed to state a claim under Title III of the Civil Rights Act of 1960.

Congress enacted Title III of the Civil Rights Act of 1960 "to secure a more effective protection of the right to vote." *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U. S.*, 285 F.2d 430 (5th Cir. 1961). To enable the Attorney General to meaningfully investigate complaints of voter discrimination, Title III requires election officials to retain "for a period of twenty-two months from the date of any general, special, or primary [federal] election … all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such

---

[22] *See generally* DOS 2024 VR Report, *supra* note 2, at 17–18, 72–74, 87–89.

election." 52 U.S.C. § 20701; *see* H.R. Rep. No. 86-956, at 7 (1959). The Attorney General may then inspect those records upon a "demand in writing" that "contain[s] a statement of the basis and the purpose therefore." 52 U.S.C. § 20703.

Although DOJ demands voters' SSN4 and DLN under Title III, Compl. ¶¶ 47–50, it has brought its complaint to the wrong court, failed to provide a legally sufficient basis *and* purpose, and demanded electronic disclosure where the statute does not so require.

### A.    This Court lacks jurisdiction to adjudicate DOJ's Title III claim.

When the Attorney General seeks to enforce a valid demand for records or papers under 52 U.S.C. § 20703, the Civil Rights Act grants jurisdiction only to the federal district court "for the district in which a demand is made" or "in which a record or paper so demanded is located." 52 U.S.C. § 20705. Even though DOJ bears the burden of proof that jurisdiction exists, *see Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015), DOJ has not alleged facts to show that either criteria is satisfied here. Nor could it, as Secretary Schmidt sits in Harrisburg, which is in the Middle District. *See* Compl. ¶¶ 33–43 (discussing demand made upon Secretary Schmidt). As a result, this Court lacks jurisdiction to adjudicate DOJ's Title III claim.

### B.    DOJ has not provided a legally sufficient "basis and purpose."

DOJ is only entitled to inspect records "upon demand in writing" that contains "a statement of the basis *and* the purpose therefor." 52 U.S.C. § 20703 (emphasis added). It has not done so.

In its August 14 letter that first invoked Title III, DOJ stated that the "purpose of the request is to ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA and HAVA." Ex. 4, at 2. But as explained above, *supra* at 10–13, 16–19, production of voters' SSN4 and DLN is not necessary to ascertain Pennsylvania's compliance with these requirements.

Nor would it be consistent with the purpose of Title III, which Congress enacted to "pro-vide a more effective protection of the right of all qualified citizens to vote without discrimination

on account of race." H.R. Rep. No. 86-956 at 7; *accord Rogers*, 187 F. Supp. at 853. Title III built

on the Civil Rights Act of 1957, which authorized "the Attorney General to institute proceedings

for preventive relief from the discriminatory denial of the right to vote." H.R. Rep. No. 86-956

at 7. But experience had shown that without "access to voting records during the course of an

investigation" into complaints of race discrimination, the Attorney General "is rendered relatively

ineffective." *Id.* In his signing statement, President Eisenhower recognized that "retention of vot-

ing records ... will be of invaluable aid in the successful enforcement of existing voting rights

statutes." Presidential Statement on Signing the Civil Rights Act of 1960 (May 6, 1960).[23]

    Moreover, Congress chose to require DOJ to provide *both* a basis and a purpose. Black-

letter law requires giving effect to every word of a statute and avoiding surplusage. *Tavarez v.*

*Klingensmith*, 372 F.3d 188, 190 (3d Cir. 2004) (collecting caselaw). Consistent with the civil

rights purpose of Title III, contemporaneous caselaw confirms that the "basis" is a statement show-

ing reason to believe there have been civil rights violations and the "purpose" explains how the

requested records would help determine if there has been such a violation. *E.g.*, *Kennedy v. Lynd*,

306 F.2d 222, 229 n.6 (5th Cir. 1962); *Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962); *In re*

*Coleman*, 208 F. Supp. 199, 199 (S.D. Miss. 1962).

    Here, DOJ has offered an insufficient purpose—hypothetical noncompliance with list

maintenance obligations Congress authorized States to conduct (which falls far afield from inves-

tigating voter discrimination)—and has failed altogether to provide a basis.

    Finally, nothing in Title III prohibits the redaction of sensitive voter information. *Cf. Bel-*

*lows*, 92 F.4th at 56 (1st Cir. 2024) (finding that "the appropriate redaction of uniquely or highly

---

[23] https://www.presidency.ucsb.edu/documents/statement-the-president-upon-signing-the-civil-rights-act-1960.

sensitive personal information in the Voter File" was permissible where the NVRA did not prohibit such redactions). And if sensitive information can be redacted, it cannot be compelled.

### C.  Title III does not require electronic disclosure.

Even if Title III did require the Secretary to produce voters' SSN4s and DLNs, the statute does not require electronic disclosure. *Contra* Compl. at 16. Instead, the demanded records must "be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative." 52 U.S.C. § 20703. As with the NVRA (which permits "public inspection" and "photocopying"), Congress did not choose to require electronic production. *Cf. Greater Birmingham Ministries*, 105 F.4th at 1332–45.

## IV.  Pennsylvania privacy protections operate harmoniously with the NVRA, HAVA, and Title III.

Article I, Section 1 of the Pennsylvania Constitution protects voters' "inherent and indefeasible" right to informational privacy, which is the "right of the individual to control access to, or the dissemination of, personal information about himself or herself." Pa. Const. art. I, § 1; *Pa. State Educ. Ass'n (PSEA) v. Com. Dep't of Cmty. & Econ. Dev.*, 148 A.3d 142, 150 (Pa. 2016). This protection recognizes that the disclosure of some types of information, such as SSN4 and DLN, "by their very nature[] would operate to the prejudice or impairment of a person's privacy, reputation, or personal security, and thus intrinsically possess a palpable weight." *See Tribune-Review Pub. Co. v. Bodack*, 961 A.2d 110, 115–16 (Pa. 2008). Only a context-specific "compelling state interest will override one's privacy rights" and justify disclosure. *Allegheny Reprod. Health Ctr. v. Pa. DHS*, 309 A.3d 808, 903–04 (Pa. 2024); *accord Commonwealth v. Nixon*, 761 A.2d 1151, 1156 (Pa. 2000).

While HAVA and state law require Pennsylvania voters to provide their SSN4 or DLN when registering to vote, *see* 52 U.S.C. § 21083(a)(5)(A); 25 Pa.C.S. § 1327(a)(2), their exercise

of the franchise does not require them to forfeit their constitutionally protected privacy interest in that information, *see, e.g.*, *PSEA*, 148 A.3d at 363 (noting that public school employees "should not be required to forfeit their privacy merely as a precondition to, or by virtue of, their decision to be employed as public school employees").

The Elections Clause gives States the power to regulate the time, place, or manner of federal congressional elections (including registration), subject to congressional power to "make or alter such [r]egulations." U.S. Const., art. I, § 4, cl. 1; *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013). State law is preempted only if it is "inconsistent" with a federal election law. *ITCA*, 570 U.S. at 15. But no inconsistency exists between Pennsylvania's constitutional privacy protections and the NVRA, HAVA, and Title III. DOJ identifies no provision of any of these statutes that demands disclosure of voters' SSN4 and DLN (because none do). Nor has DOJ demonstrated that it needs voters' SSN4 and DLN to exercise its statutory oversight functions under HAVA. And because DOJ has therefore failed to provide a "compelling state interest," it cannot override voters' constitutional private interests in their SSN4 and DLN.

## V.    DOJ's demand would violate the Privacy Act, E-Government Act, and Driver's Privacy Protection Act.

An affirmative defense may be raised in a Rule 12(b)(6) motion "if the predicate establishing the defense is apparent from the face of the complaint." *Bethel v. Jendoco Const. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978). Three fatal defects are apparent here.

1.    Congress enacted the Privacy Act to "provide certain safeguards for an individual against an invasion of personal privacy" by, among other things, regulating the collection of personal information by Federal Agencies. Pub. L. No. 93-579, § 2(a)(5), (b), 88 Stat. 1896 (1974). Before an agency establishes or revises a "system of records" (i.e., a group of "records" about an individual collected or maintained by that agency), it must first publish a notice in the Federal

23

Register. 5 U.S.C. § 552a(a)(3), (a)(4), (a)(5), (e)(4). The notice must include the categories of individuals on whom records are maintained. *Id.* § 552a(e)(4). For a "significant change," the agency must provide "adequate advance notice" to certain congressional committees and the Office of Management and Budget to permit evaluation of the effect on privacy rights. *Id.* § 552a(r); *see* OMB, Circular No. A-108, at 5–6 (Dec. 2016) (significant change is substantive in nature).

DOJ concedes that the Privacy Act applies to its demand and represents it will store the data in a system of records called the Central Civil Rights Division Index File and Associated Records, CRT-001. Compl. ¶ 41; *see* 68 Fed. Reg. 47610 (2003).[24] But that system of records does not encompass the personal information of 8.9 million registered Pennsylvania voters (and millions of voters in other states), who are not "[s]ubjects of investigations, victims, [or] potential witnesses," nor "other persons or organizations referred to CRT in potential or actual cases and matters of concern to CRT." *Cf.* 68 Fed. Reg. at 47611 (listing categories of individuals covered by the system). Nor has DOJ provided notice to the relevant congressional committees or OMB. It is therefore apparent on the face of the Complaint that DOJ's request violates the Privacy Act.

DOJ's claim that HAVA exempts SSN4s from section 7 of the Privacy Act, Compl. ¶ 42, is irrelevant. Section 7 makes it unlawful for a government agency "to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number." 5 U.S.C. § 552a note; Pub. L. No. 93-579, § 7, 88 Stat at 1909. The HAVA exemption, therefore, permits denial of voter registration because of a person's refusal to disclose her SSN; it does not exempt SSN4s from the Privacy Act's protections.

---

[24] Revisions to the system of records are not relevant here. *See* 70 Fed. Reg. 43904 (July 29, 2005) (adding new routine use for disclosing information related to closing certain criminal matters); 82 Fed. Reg. 24147 (May 25, 2017) (adding routine use related to data breach).

2.     DOJ has also not complied with the E-Government Act, which requires an agency to conduct a "privacy impact assessment" *before* "initiating a new collection of information." Pub. L. No. 107-347, § 208, 116 Stat. 2899 (2002); *see EPIC v. Pres. Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 309 (D.D.C. 2017); OMB Guidance, M-03-22 (Sep. 26, 2003). Collecting the SSN4s and DLNs of 8.9 million registered Pennsylvania voters (and millions of voters in other states) is undoubtedly a new collection of information, but the Complaint does not allege that DOJ completed a PIA in advance. This apparent failure also warrants dismissal.

3.     Finally, the Driver's Privacy Protection Act (DPPA) generally prohibits the disclosure of DLNs and SSN4s obtained by the Pennsylvania Department of Transportation in connection with a motor vehicle record. 18 U.S.C. §§ 2721(a), 2725(1), (3), (4). These protections extend to the Department, which is permitted under DPPA to receive personal information from PennDOT to carry out the Department's voter registration functions. *Id.* § 2721(b)(1), (c); 25 Pa.C.S. § 1323(c). But DOJ's request does not fall within a permissible use because it has not identified how it needs voters' SSN4 and DLN to "carry[] out its functions." *Contra* Compl. ¶ 42.

## CONCLUSION

For the reasons set forth above, the Court should dismiss this action.

December 16, 2025

Respectfully submitted,

Carolyn A. DeLaurentis (PA 307018)
Chief Counsel
Kathleen A. Mullen (PA 84604)
Executive Deputy Chief Counsel
Pennsylvania Department of State
306 North Office Bldg.
401 North Street
Harrisburg, PA 17120-0500

Jennifer Selber (PA 80644)
General Counsel

*/s/ Michael J. Fischer*
Michael J. Fischer (PA 322311)
Executive Deputy General Counsel
Aimee D. Thomson (PA 326328)
Deputy General Counsel
Office of General Counsel
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(717) 831-2847
mjfischer@pa.gov

*Counsel for Secretary of the Commonwealth Al Schmidt*