**Exhibits**

**Table of Contents**

Exhibit 1    Letter from Maureen Riordan, Acting Chief, Voting Section, Civil Rights
             Division, U.S. Department of Justice, to Secretary Al Schmidt, Secretary
             of the Commonwealth, Pennsylvania Department of State
             (June 23, 2025)

Exhibit 2    Letter from Secretary Al Schmidt, Secretary of the Commonwealth,
             Pennsylvania Department of State, to Maureen Riordan, Acting Chief,
             Voting Section, Civil Rights Division, U.S. Department of Justice
             (July 23, 2025)

Exhibit 3    Letter from Michael E. Gates, Deputy Assistant Attorney General, Civil
             Rights Division, U.S. Department of Justice, to Secretary Al Schmidt,
             Secretary of the Commonwealth, Pennsylvania Department of State
             (Aug. 4, 2025)

Exhibit 4    Letter from Harmeet K. Dhillon, Assistant Attorney General, Civil Rights
             Division, U.S. Department of Justice, to Secretary Al Schmidt, Secretary
             of the Commonwealth, Pennsylvania Department of State
             (Aug. 14, 2025)

Exhibit 5    Letter from Secretary Al Schmidt, Secretary of the Commonwealth,
             Pennsylvania Department of State, to Michael E. Gates, Deputy Assistant
             Attorney General, Civil Rights Division, U.S. Department of Justice
             (Aug. 18, 2025)

Exhibit 6    Letter from Secretary Al Schmidt, Secretary of the Commonwealth,
             Pennsylvania Department of State, to Harmeet K. Dhillon, Assistant
             Attorney General, and Michael E. Gates, Deputy Assistant Attorney
             General, Civil Rights Division, U.S. Department of Justice
             (Aug. 21, 2025)

Exhibit 1

**U.S. Department of Justice**

Civil Rights Division

---

*Voting Section*
*950 Pennsylvania Ave, NW – 4CON*
*Washington, DC 20530*

June 23, 2025

<u>Via U.S. Mail and E-Mail</u>
The Honorable Al Schmidt
Secretary of the Commonwealth
401 North Street, Room 302
Harrisburg, PA 17120
al.schmidt@pa.gov
st-press@pa.gov

Dear Secretary Schmidt:

The Help America Vote Act ("HAVA") establishes minimum standards for states to follow in several key aspects of administration of federal elections, including voting systems, provisional ballots, voter information posters on election days, first-time voters who register to vote by mail, and statewide voter registration databases. HAVA is codified at 52 U.S.C. § 20901 to 21145. In particular, HAVA imposes certain list maintenance obligations on states as part of the uniform statewide database requirements of Section 303(a)(2) of HAVA, 52 U.S.C. § 21083(a)(2), including coordinating the computerized statewide voter registration list ("statewide voter registration list") with state agency records on felony status and death.

Please provide the following information regarding the Commonwealth's HAVA compliance:

(1)    Describe how the Commonwealth processes new applications to register to vote for elections for federal office, as required by HAVA Section 303.

(2)    Describe the process by which Pennsylvania assigns a unique identifier to each legally registered voter in Pennsylvania, as required by HAVA Section 303(a)(1)(A).

(3)    Describe how the statewide voter registration list is coordinated with the databases of other agencies in the Commonwealth, as required by HAVA Section 303(a)(1)(A). Provide the name of each database used for coordination, and describe the procedures used for the coordination as well as how often the databases are coordinated with the statewide voter registration list.

(4)    Describe the process by which any duplicate voter registrations are identified and removed from the statewide voter registration list under HAVA Section 303(a)(2)(B)(iii). Please include an explanation of how the Commonwealth determines what constitutes a duplicate voter registration record.

(5)   Describe the process by which voters who have been convicted of a felony and are incarcerated are (a) identified and, (b) if applicable under Commonwealth law, removed from the statewide voter registration list under HAVA Section 303(a)(2)(A)(ii)(I).

(6)   Describe the process by which deceased registrants are identified and removed from the statewide voter registration list under HAVA Section 303(a)(2)(A)(ii)(II).

(7)   Describe all technological security measures taken by the Commonwealth to prevent unauthorized access to the statewide voter registration list, as required by HAVA Section 303(a)(3).

(8)   Describe the process by which voters who have moved outside the Commonwealth and subsequently register to vote in another state are identified and removed from the statewide voter registration list, under HAVA Section 303(a)(4)(A).

(9)   Describe the process by which registrants who are ineligible to vote due to non-citizenship are identified and removed from the statewide voter registration list.

(10)  HAVA requires the Commonwealth to verify voter registration information by mandating that applicants provide certain information under HAVA Section 303(a)(5). Please provide a copy of the voter registration application(s) utilized for in-person voter registration, a link to the Commonwealth's online voter registration application, and, if applicable, the voter registration application used for same-day registration.

(11)  Please describe the verification process under HAVA Section 303(a)(5) that election officials perform to verify the required information supplied by the registrant. Please describe what happens to the registration application if the information cannot be verified.

(12)  Provide a copy of the current agreement, under HAVA Section 303(a)(5)(B)(i), between the Commonwealth's chief election official and the Commonwealth's motor vehicle authority.

(13)  Provide a copy of the current agreement between the official responsible for the Commonwealth's motor vehicle authority and the Commissioner of Social Security Administration under HAVA Section 303(a)(5)(B)(ii).

(14)  Under HAVA Section 303(b), describe the Commonwealth's requirements for an individual to vote if the individual registered to vote by mail and has not previously voted in an election for federal office in the Commonwealth.

Please provide this information within 30 days of the date of this letter. The information and materials may be sent by email to voting.section@usdoj.gov or by FedEx or UPS to:

U.S. Department of Justice, Civil Rights Division
Voting Section
4 Constitution Square
150 M Street NE, 8th Floor
Washington, DC 20002

If you have any questions, please email voting.section@usdoj.gov. We very much appreciate your cooperation in our nationwide efforts to monitor HAVA compliance.

Sincerely,

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division

cc:    Jessica Mathis, Director, Bureau of Election Services and Notaries
       401 North Street, Room 210, Harrisburg, PA 17120
       jesmathis@pa.gov

Exhibit 2



**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**

July 23, 2025

*Via Electronic Mail*

Maureen Riordan
Acting Chief, Voting Section
U.S. Department of Justice, Civil Rights Division
4 Constitution Square
150 M Street NE, 8th Floor
Washington, DC 20002
Voting.section@usdoj.gov

Dear Ms. Riordan:

I write in response to your letter dated June 23, 2025, posing various questions regarding the Help America Vote Act of 2002 ("HAVA").[1] As Pennsylvania's chief election official, I take seriously the obligations under that law to ensure that all eligible voters have access to the ballot here in the Commonwealth, and the responsibilities it imposes on our county election officials to faithfully maintain our voter rolls. Although it is our local election officials who are responsible for maintaining their voter lists, the Pennsylvania Department of State ("Department") works diligently with these 67 counties to help them ensure that all electoral processes are fully compliant with federal and Pennsylvania laws, including HAVA.

Please allow me to respond to your questions in turn.

**1) *Describe how the Commonwealth processes new applications to register to vote for elections for federal office, as required by HAVA Section 303.***

As a starting point, please note that it is the voter registration commission in each county that is accorded sole authority under Pennsylvania law to adjudicate voter registration applications.[2] Specifically, Pennsylvania voter registration applications are received and processed by the 67 county voter registration commissions pursuant to the Pennsylvania voter registration law.[3] The

---

[1] 52 U.S.C. § 20901 *et seq*.
[2] 25 Pa.C.S. § 1203.
[3] 25 Pa.C.S. §§ 1101–1906.

same registration qualifications and processing system apply to elections for local, state, and federal office.

As required by federal law, all voter lists are maintained in a computerized system. The Department manages Pennsylvania's Statewide Uniform Registry of Electors ("SURE" or "SURE System"), which is used not only to maintain our rolls but to process applications to register to vote. Whether the voter application is received on paper or by another computerized system, the information submitted by the applicant is typed or transferred into the SURE System for review and decision by county election authorities.

If an application is complete and the applicant is qualified, the county official approves the registration and adds the applicant to SURE as an active voter.[4] If the application is incomplete, the applicant is notified, and provided an opportunity to supplement the application until the county has undertaken "reasonable efforts" to determine the necessary missing information.[5] If the information on the application indicates that the voter resides in a different Pennsylvania county, the application is forwarded to that county.[6] If the application is not approved, a rejection notice is sent advising the applicant of the right to appeal pursuant to the voter registration law and Election Code.[7] The counties mail a voter registration card to all approved applicants.[8]

More information on voting registration and application methods can be found by referencing the most recent report issued by the Department on the Administration of Voter Registration in Pennsylvania.[9]

2) *Describe the process by which Pennsylvania assigns a unique identifier to each legally registered voter in Pennsylvania, as required by HAVA Section 303(a)(l)(A).*

Upon a county's approval of a voter registration application, the approved registrant is added to SURE, which assigns a voter ID number to each registrant.[10] The ID number includes a county-specific suffix to indicate which county the person is registered in, which is changed if a registrant moves and re-registers in a new county within Pennsylvania.

3) *Describe how the statewide voter registration list is coordinated with the databases of other agencies in the Commonwealth, as required by HAVA Section 303(a)(l)(A). Provide the name of each database used for coordination, and describe the procedures used for the*

---

[4] 25 Pa.C.S. § 1328(b).

[5] 25 Pa.C.S. § 1328(b)(2)(i).

[6] 25 Pa.C.S. § 1328(b)(1).

[7] 25 P.S. § 3073, 25 Pa.C.S. § 1328(b).

[8] 25 P.S. § 1328(c).

[9] Pa. Dep't of State, Administration of Voter Registration in Pennsylvania, 2024 Annual Report to the Pennsylvania General Assembly (June 30, 2025), available at https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/reports/voter-registration/dos_voter_registration_report_2024_final.pdf.

[10] 25 Pa.C.S. § 1328(c)(1).

*coordination as well as how often the databases are coordinated with the statewide voter registration list.*

The SURE system is coordinated with other state agency databases, including:

- The Pennsylvania Department of Transportation ("PennDOT") driver license database, for receiving and updating voter registrations, as well as to confirm and query the DLN/SSN4 provided by applicants; and
- The Pennsylvania Department of Health registry of deaths, for purposes of canceling deceased voters.

**4) Describe the process by which any duplicate voter registrations are identified and removed from the statewide voter registration list under HAVA Section 303(a)(2)(B)(iii). Please include an explanation of how the Commonwealth determines what constitutes a duplicate voter registration record.**

Pennsylvania's voter registration forms request that the applicant indicate whether it is a new registration, or a change of name, address, or party; if the applicant correctly marks this part of the application it assists in reducing duplicate entries.

Regardless of the applicant's designation, when processing a registration, SURE performs an automated check for possible duplicates, using information such as the applicant's first and last names, and birthdate. County personnel can also compare the SSN4 or Driver's License number included with the form in a manual duplicate query procedure. The specific procedure to be used is set forth in the regulations on the Establishment, Implementation and Administration of the Statewide Uniform Registry of Electors ("SURE Regulations").[11]

The investigations carried out by the county voter registration commission may result in sending correspondence which triggers inactive status or cancellation as a duplicate.[12] Additional information on duplicate voters can be found in response to Question 8 below.

**5) Describe the process by which voters who have been convicted of a felony and are incarcerated are (a) identified and, (b) if applicable under Commonwealth law, removed from the statewide voter registration list under HAVA Section 303(a)(2)(A)(ii)(I).**

Under Pennsylvania law, felons are not permitted to vote only during the period of their incarceration; the specific mechanism for this is disqualification for an absentee or mail-in ballot (and the person's inability to vote in person at the local polling place).[13] Upon release from

---

[11] 4 Pa. Code § 183.6(a). The SURE Regulations are found at 4 Pa. Code ch. 183.

[12] 4 Pa. Code § 183.6(a)(6), (7), (d).

[13] 25 P.S. §§ 2602(w), (z.6), 3146.1, 3150.11. While the Election Code's disqualification is to "persons confined in a penal institution," the Pennsylvania Attorney General has interpreted that to mean only those who are imprisoned as a result of a felony conviction (as opposed to pretrial detainees or those confined only for misdemeanor offenses). Op. Pa. Att'y Gen. No. 1974-47.

confinement (including on parole or probation), such individuals are once again permitted to vote.

The text of the voter registration law[14] purports to disqualify from registration anyone who has been incarcerated for a felony within the past five years, but that five-year exclusion was declared unconstitutional and is not in force.[15] Under controlling case law, incarcerated felons are entitled to be registered to vote, but may not actually cast a ballot until their release.[16]

Accordingly, because Pennsylvania law does not provide a basis to cancel a person's voter registration as a result of a felony conviction, there is no need for any systematic cancellation process for that purpose. Counties instead can place these records in a hold status during the period of incarceration to prevent unlawful voting.

**6) *Describe the process by which deceased registrants are identified and removed from the statewide voter registration list under HAVA Section 303(a)(2)(A)(ii)(II).***

County registration commissions have the sole authority to cancel registrations of deceased electors. To do so, they use a report provided by the Pennsylvania Department of Health, obituaries and other sources as permitted by the Pennsylvania voter registration law.[17]

The Pennsylvania Department of Health reports all deaths of adults over age 18 to the county voter registration commission to facilitate prompt cancellation of deceased voters' registrations (the "DOH Report").[18] The Department receives the DOH Report twice per month. It then transmits the DOH Report file to county voter registration commissions through the SURE System. County commissions are required to query the Department of Health's DOH Report at least monthly.[19] If records on the report match a deceased elector in their jurisdiction, the commission shall cancel the voter record.[20]

---

[14] 25 Pa.C.S. § 1301.

[15] *Mixon v. Commw.*, 759 A.2d 442, 451 (Pa. Cmwlth. Ct. 2000) *aff'd* 783 A.2d 763, 763 (Pa. 2001). *See also Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 185 (3d Cir. 2017) ("The unambiguous text of the HAVA simply does not require election officials to purge voter rolls of incarcerated felons.").

[16] The exception to this general rule is that those convicted for committing election-related crimes are disenfranchised for a period of four years following conviction, with the person's voter registration to be canceled. 25 P.S. § 3552. In this instance, the voter registration cancellation would be specifically triggered as the trial court would indicate that in its order and communicate directly with county voter registration authorities. *See, e.g.*, *Commw. v. Thurman*, No. CP-51-CR-553-2018 (Phila. Cnty. Ct. Com. Pl. May 9, 2018) (order imposing sentencing following guilty plea for election offenses includes the annotation "Defendant not eligible to VOTE until MAY 9, 2022").

[17] 25 Pa.C.S. §§ 1505, 1901(a)(2).

[18] 25 Pa.C.S. § 1505(a).

[19] 4 Pa. Code § 183.6(d)(1)(iii).

[20] 25 Pa.C.S. §§ 1505(a), 1901(a)(2).

The county voter registration commissions are also permitted to use published newspaper obituaries or probate records to cancel a deceased elector's registration.[21]

7) *Describe all technological security measures taken by the Commonwealth to prevent unauthorized access to the statewide voter registration list, as required by HAVA Section 303(a)(3).*

Although voting systems are maintained by the county boards of election, the Department maintains some election-related infrastructure, including the SURE System. The Department supervises and controls credentials to the SURE System.

The Department provides access only through individualized credentials, whether to county or Department personnel. Moreover, counties access the SURE system using computers provided by the Department, and they are maintained in the same manner that any Commonwealth user machine is maintained. Users undergo IT Security Training and comply with identity and access management policies required by the Commonwealth. Additional instruction to counties regarding password protection is included in the Department's guidance.[22]

Like all Commonwealth information systems, access is controlled with state-of-the-art security techniques, which are subject to ongoing improvements for enhanced security. In addition, the devices that county election officials use to access the SURE system are configured in a completely locked down mode and prevent access to programs not essential for the SURE system, including access to Internet.

8) *Describe the process by which voters who have moved outside the Commonwealth and subsequently register to vote in another state are identified and removed from the statewide voter registration list, under HAVA Section 303(a)(4)(A).*

Again, Pennsylvania's 67 county registration commissions are responsible for voter list maintenance. The Department works with the counties to assist each county in fulfilling its responsibilities under Pennsylvania and federal law, specifically Section 8 of the NVRA and Section 303(a)(4)(A) of HAVA.

Removal and cancellation of voter registration are governed by the voter registration law and SURE Regulations.[23] As contemplated by the NVRA, the Department, through its membership in the Electronic Registration Information Center ("ERIC"), receives data through the United States Postal Service's National Change of Address program, and forwards it to the county voter

---

[21] 25 Pa.C.S. § 1505(b).

[22] *See, e.g.*, Pa. Dep't of State, Guidance on Electronic Voting System Preparation and Security at 4–5 (Oct. 13, 2020), available at https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/directives-and-guidance/2020-PADOS-Guidance-Electronic-Voting-System-Security.pdf. Although presented in the context of security for electronic voting systems, the principles apply equally to access to SURE.

[23] 25 Pa.C.S. § 1901 and 4 Pa. Code ch. 183.

registration commissions. In accordance with the SURE Regulations,[24] if a county voter registration commission receives information that a voter has moved out of the county (including to another Pennsylvania county, or out-of-state), the commission sends to the registrant, at the address of registration (the "old" address), a Notice of Change of Address ("NCOA") via forwardable mail with a postage prepaid preaddressed return form by which the registrant may verify or correct the address information.

The Department assists the counties in conducting several list maintenance programs to ensure accuracy of the voter registration rolls (including removal of those who have moved to another state):

a)    Five-Year Notices. Counties send these notices to voters who have not voted or had other contact for a period of five years. These voters are marked as inactive and set for cancellation if there is no further contact and affirmation of continued residence before the date of the second federal general election.

b)    National Change of Address Notice. Counties send these notices to voters for whom the U.S. Postal Service reported a move. If the voters do not reply to either confirm or deny the move, an Address Verification Notice is sent; lack of response to the AVN will trigger inactive status and cancellation following the second federal general election.

c)    ERIC Duplicate Notices (out of state). Counties evaluate potential matches, send a notice, and mark the voter as inactive where ERIC data identifies that the same person may be registered in multiple jurisdictions.

d)    ERIC In-State Moves. Where ERIC data suggests a person has moved without updating voter registration, the county sends a notice to verify continued residence. This notice triggers inactive status (and potential cancellation if no affirmation of residence is received before the second federal general election).

e)    ERIC Out-of-State Moves. Counties use ERIC data where a Pennsylvania registered voter appears to have a more recent voter registration from another member state. In this situation, the county sends a notice to verify continued residence. This notice triggers inactive status (and potential cancellation if no affirmation of residence is received before the second federal general election).

f)    Address Verification Notices. When another type mailing to a voter is returned by the post office as undeliverable, the counties send an Address Verification Notice.

These programs are described in greater detail in the Department's annual report on voter registration.[25]

As noted above, as part of the Department's membership in ERIC, it receives and distributes data on potential duplicate voter records to county officials. Because ERIC is a consortium of

---

[24] 4 Pa. Code § 183.6(d)(5).

[25] Pa. Dep't of State, Administration of Voter Registration in Pennsylvania, 2024 Annual Report to the Pennsylvania General Assembly (June 30, 2025), available at https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/reports/voter-registration/dos_voter_registration_report_2024_final.pdf.

member states, and because there is no national voter registration database, ERIC is in a unique position to compare, without access to personally identifiable information, the verified data provided by member states to locate records of voters who may be potentially registered in more than one state. It also provides a report on voters who may be registered in more than one Pennsylvania county. These pairs of voter records are identified for further review by county officials, who determine whether the same person is potentially registered in more than one jurisdiction. If the county identifies the registrant as potentially duplicated in another jurisdiction, a notice is sent to the voter's address on record. Further information about this program can be found in the annual report on voter registration.[26]

In 2024, Pennsylvania counties sent out over 502,067 notices to voters in connection with list maintenance activities pursuant to the NVRA and Pennsylvania law. With respect to the NCOA process specifically, Pennsylvania counties mailed 130,119 NCOA notices in 2024. The Department provides counties with NCOA information in June of each year. Counties then begin a two-step mailing process. First, counties send an initial mailing based on data of individuals who have moved as reflected in NCOA data. Those notices are sent via forwardable mail to the address of registration and offer the voter the opportunity to confirm their address or update it. Based on the response, county election officials then update their records accordingly. Following this process, county election officials send a second notice to voters who either: did not respond to the first notice or whose initial notice was returned as undeliverable. This notice, referred to as an Address Verification Notice or AVN, would not typically be sent until approximately 30 days after the initial notice. With the mailing of the AVN, the record is marked Inactive, triggering the waiting period required by Sections 8(b), (c) & (d) of the NVRA before the voter record can be removed from the registration rolls. Information on the number of voter cancellations by Pennsylvania counties can be found in the tables found on pages 23–27 and 87–92 of the 2024 annual report on voter registration.[27]

9) *Describe the process by which registrants who are ineligible to vote due to non-citizenship are identified and removed from the statewide voter registration list.*

All registrants must affirmatively answer "yes" to the question "Are you a citizen of the United States."[28] An individual who states that they are not a U.S. citizen is not qualified to vote and their application would be required to be rejected by the county voter registration commission.[29]

---

[26] Pa. Dep't of State, Administration of Voter Registration in Pennsylvania, 2024 Annual Report to the Pennsylvania General Assembly (June 30, 2025), available at https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/reports/voter-registration/dos_voter_registration_report_2024_final.pdf.

[27] Pa. Dep't of State, Administration of Voter Registration in Pennsylvania, 2024 Annual Report to the Pennsylvania General Assembly (June 30, 2025), available at https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/reports/voter-registration/dos_voter_registration_report_2024_final.pdf.

[28] 52 U.S.C. § 20508(b)(2)(A), 4 Pa. Code § 183.1.

[29] 25 Pa.C.S. §§ 1301, 1328.

False statements misrepresenting an applicant's citizenship on a voter registration form are crimes punishable under both state[30] and federal laws.[31]

Neither Pennsylvania nor federal law requires a voting registration applicant to provide documentary proof of citizenship. To the extent any county registration commission or the Department becomes aware that an individual who is not a U.S. citizen has registered or attempted to vote, where appropriate, the county may cancel such registration and refer the matter to law enforcement for handling.

***10) HAVA requires the Commonwealth to verify voter registration information by mandating that applicants provide certain information under HAVA Section 303(a)(5). Please provide a copy of the voter registration application(s) utilized for in-person voter registration, a link to the Commonwealth's online voter registration application, and, if applicable, the voter registration application used for same-day registration.***

Please refer to the following:

- Voter Registration Mail Application (the same form is accepted for in-person registration):
  https://www.pavoterservices.pa.gov/documents/voterapplication_english.pdf
- Link to Online Voter Registration:
  https://www.pavoterservices.pa.gov/pages/VoterRegistrationApplication.aspx
- Pennsylvania does not have same-day voter registration.

***11) Please describe the verification process under HAVA Section 303(a)(5) that election officials perform to verify the required information supplied by the registrant. Please describe what happens to the registration application if the information cannot be verified.***

As noted on the voter registration applications, the applicant is required to provide a Pennsylvania driver's license number (or non-driver ID card number) and/or the last four digits of their Social Security number, or to check a box that the person has not been assigned either type of number consistent with Section 303(a)(5)(A) of HAVA.

County voter registration commission staff enter the data from applications (or receive them electronically) and query them against the PennDOT database which will return a match or non-match. In the case of an applicant providing a driver's license number, the query is based on the applicant's last name (first two characters only), date of birth, and the driver's license number.

---

[30] 25 Pa.C.S. §§ 1703 (providing for a fine up to $10,000 and five years in prison for improper registration), 1714 (incorporating criminal penalty provisions of the Crimes Code at 18 Pa.C.S. §§ 4902, 4903, and 4904) relating to perjury, false swearing, and unsworn falsification to authorities).

[31] 18 U.S.C. §§ 1015(f) (imposing fines and up to five years in prison for misrepresenting one's citizenship on a voter registration application), 3559 and 3571 (setting fines at $250,000 for class D felonies).

For applicants providing an SSN4, the query uses the first, middle and last names, birthdate, and the last four digits of the Social Security number.

County voter registration authorities adjudicate the sufficiency of the ID number provided "in accordance with State law."[32] There are four qualifications to register to vote under Pennsylvania law: age, citizenship, residence, and incarceration status.[33] The voter registration law further offers four grounds to reject a voter registration application: an incomplete application, non-qualification, non-entitlement to a transfer or address change, and non-entitlement to a name change.[34] "Failure to match ID number" is not among the bases offered in Pennsylvania law to reject a voter registration application. If the "information cannot be verified,"[35] SURE prompts the county voter registration commission to review the application for typographical errors and/or contact the voter to clarify and fix the discrepancy, but the county ultimately would approve the voter registration application—provided that there are no other irregularities in the application, or independent grounds to reject the application.[36] With respect to mail-ballot voters, the Election Code requires that any such voter whose submission of ID numbers (DLN or SSN) did not match against a government database must provide proof of identification within six days of the election, or their ballot will not be counted.[37] All in-person voters must present photo or non-photo ID the first time they appear to vote in an election district.[38]

---

[32] 52 U.S.C. § 21083(a)(5)(A)(iii).

[33] 25 Pa.C.S. § 1301(a), *accord* Pa. Const. art. VII, § 1. As noted above, controlling case law holds that even inmates incarcerated for a felony may be registered to vote. *Mixon v. Commw.*, 759 A.2d 442, 451 (Pa. Cmwlth. Ct. 2000) *aff'd* 783 A.2d 763, 763 (Pa. 2001).

[34] 25 Pa.C.S. § 1328(b)(2).

[35] We understand the reference in this question to "verification" to mean a positive match between the information provided in the voter registration application, including the ID number, and the corresponding entry in a PennDOT or Social Security database.

[36] 25 Pa.C.S. § 1328.

[37] 25 P.S. § 3146.8(h).

[38] 25 P.S. § 3050. Under an injunction, in-person voter ID is governed by the pre-2012 version of 25 P.S. § 3050. The *Applewhite* decision in 2014 enjoined enforcement of the changes wrought by Act 18 of 2012 as to in-person voting only, while leaving in place its changes to the identification requirements for absentee voting. *Applewhite v. Commw.*, No. 330 M.D. 2012, 2014 WL 184988, at *27 (Pa. Cmwlth. Jan. 17, 2014).

The language of that statute provides

> (a) At every primary and election each elector who appears to vote in that election district for the first time and who desires to vote shall first present to an election officer one of the following forms of photo identification . . . .
>
>                *     *     *
>
> (a.1) Where the elector does not have a photo identification as provided for in subsection (a), the elector shall present for examination one of the following forms of identification that shows the name and address of the elector . . . .

***12) Provide a copy of the current agreement, under HAVA Section 303(a)(5)(B)(i), between the Commonwealth's chief election official and the Commonwealth's motor vehicle authority.***

A copy of this agreement between the Department and the Pennsylvania Department of Transportation is attached.

***13) Provide a copy of the current agreement between the official responsible for the Commonwealth's motor vehicle authority and the Commissioner of Social Security Administration under HAVA Section 303(a)(5)(B)(ii).***

A copy of this agreement between the Commissioner of Social Security and the Pennsylvania Department of Transportation is attached.

***14) Under HAVA Section 303(b), describe the Commonwealth's requirements for an individual to vote if the individual registered to vote by mail and has not previously voted in an election for federal office in the Commonwealth.***

HAVA Section 303 imposes the requirement that a voter present photo identification, or a utility bill, bank statement, government check, paycheck, or other government document showing name and address to an official at the polling place (if voting in person) or submit a copy of such a document if voting by mail.[39] This is required of all voters who register to vote by mail, but have not previously voted in an election for federal office.[40] HAVA further provides a carve-out for several classes of voters, including (A) registrants who provided an ID document with their mail voter registrant application, (B) registrants who provided a driver's license or Social Security number which matched the PennDOT or SSA database, or (C) overseas citizen and military voters, among others.[41]

The Pennsylvania Election Code contains strict requirements that go beyond HAVA's requirements for first-time voters who register by mail. In-person voters must provide photo or non-photo identification not only at their first time voting in a federal election but also the first time voting in a new election district (i.e., a new local voting precinct—essentially, every time the person moves and re-registers at a new residence).

Pennsylvania further mandates that absentee and mail-in voters provide proof of identification for every election; otherwise their ballots will not be counted.[42] Proof of identification can be

---

25 P.S. § 3050(a), (a.1) (pre-2012 version).

[39] 52 U.S.C. § 21083(b)(2).

[40] 52 U.S.C. § 21083(b)(1).

[41] 52 U.S.C. § 21083(b)(3).

[42] 25 P.S. §§ 3146.2(e.2), 3146.2b(d), 3146.5(b)(1), 3146.8(h)(2), 3150.12b(c), 3150.15 (requiring proof of identification for absentee and mail-in voters).

provided through, *inter alia*, a match of a voter's SSN4 or DLN.[43] Absentee or mail-in voters who fail to provide matching numbers must provide other proof of identification to their county board of elections within six days following an election or their ballot will not count for that election.[44]

*        *        *

We hope the information provided here is helpful. The Department and Pennsylvania's 67 counties engage in great efforts to ensure that Pennsylvania's voter rolls are accurate and that all requirements of Pennsylvania and federal law are faithfully followed. Please let us know if you have any further questions.

Sincerely,

Al Schmidt
Secretary of the Commonwealth

Enclosures

---

[43] 25 P.S. § 2602(z.5)(3), *cf.* 52 U.S.C. § 21083(b)(3)(B).
[44] 25 P.S. § 3146.8(h).

Exhibit 3

**U.S. Department of Justice**    Exhibit 3

Civil Rights Division

_Voting Section_
_950 Pennsylvania Ave, NW – 4CON_
_Washington, DC  20530_

August 4, 2025

<u>Via Mail and Email</u>

The Honorable Al Schmidt
Secretary of the Commonwealth
401 North Street, Rm 302
Harrisburg, PA 17120
Email: al.schmidt@pa.gov | ra-voterreg@pa.gov

Dear Secretary Schmidt:

We write to you as the chief election official for the Commonwealth of Pennsylvania to request information regarding the Commonwealth's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 et seq.

Please provide a list of the election officials who are responsible for implementing Pennsylvania's general program of voter registration list maintenance from November 2022 through receipt of this letter, including those responsible officials not employed by your office (such as local election officials) who are also involved in that effort. Please also provide a description of the steps that you have taken to ensure that the Commonwealth's list maintenance program has been properly carried out in full compliance with the NVRA.  Please include both the actions taken by Commonwealth officials as well as county officials.

The NVRA requires each state and the District of Columbia to make available for inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). Section 11 of the NVRA authorizes the Attorney General to bring NVRA enforcement actions.

Pursuant to Section 20507(i) of the NVRA, the Attorney General requests that you produce for inspection the following records:

1. The current electronic copy of the Commonwealth of Pennsylvania's computerized statewide voter registration list ("statewide voter registration list") as required by Section 303(a) of the Help America Vote Act. Please include all fields contained within the list. Please produce each list in a .xls, .csv, or delimited-text file format.  Please specify what delimiter is used, if applicable, or provide a file layout.

Additionally, please provide the following information in electronic form. The time period for these requests is close of registration for the November 2022 general election through the close

of registration for the November 2024 general election, the same time period as the most recent report from the Election Assistance Commission's Election Administration and Voting Survey ("EAVS"). If you are unable to provide the data, please explain why the data is not available.

1. In the EAVS data for Question A3d, Pennsylvania identified 378,187 voters (4.49 percent) with duplicate registrations, nearly three times below the nationwide average of 12.7 percent. Moreover, we understand the Public Interest Legal Foundation recently identified an additional 19,489 registrants holding matched voter registration files in second states as of Summer 2025, 3,170 instances of same-address duplications, 70 intra-county duplicates, and 321 placeholder/fictitious dates of birth. Please explain why duplicate registrations are such a low percentage of the total registration applications received.

2. Similarly, in the EAVS data for Question A12h, 47 of 66 counties in Pennsylvania recorded either 0 or 1 transactions to remove duplicate registrants. Please confirm how frequently county personnel perform manual duplicate queries and how frequently SURE performs automated searches.

3. In the EAVS data for Question A3g, Pennsylvania listed 40,209 transactions as "other," without further explanation. Please explain those registrations listed as "other."

4. In the EAVS data for Question A4h, Pennsylvania listed 1 transaction arising from an Armed Forces Recruitment Office, which is significantly below similarly sized states. Please explain why such few transactions can be sourced to Armed Forces Recruitment Offices and what actions Pennsylvania is taking to ensure Offices fulfill their voter registration responsibility.

5. In the EAVS data for Question A11, concerning the reason for sending confirmation notices, the largest category by far is A11n, "Other." Please explain the nature of these confirmation notices and why they do not fit in available categories.

6. In the EAVS data, Pennsylvania has failed to respond to Question A13a regarding merged voter records. Please provide the requested data or an explanation for why that information is not available.

Please provide a description of the steps that Pennsylvania has taken, and when those steps were taken, to identify registered voters who are ineligible to vote as well as the procedures that Pennsylvania used to remove those ineligible voters from the registration list for categories two and three below. For all categories below, please identify the number of registered voters identified as ineligible to vote for the time period of the close of registration for the November 2022 general election through present:

1. Non-citizen

2. Adjudicated incompetent

3. Felony conviction

For each of those voters identified in categories 1-3 above, provide their registration information on the statewide voter registration list, including their vote history.

Please provide this information within 14 days of the date of this letter. The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov. We look forward to your assistance in advance.

Sincerely,

Michael E. Gates
Deputy Assistant Attorney General
Civil Rights Division

Maureen Riordan
Acting Chief, Voting Section
Civil Rights Division

cc: Jessica Mathis, Director
Bureau of Election Services and Notaries
401 North Street, Room 210
Harrisburg, PA 17120
jesmathis@pa.gov

Exhibit 4



**U.S. Department of Justice**

Civil Rights Division

---

*Office of the Assistant Attorney General*                    *Washington, D.C. 20530*

August 14, 2025

<u>Via Mail and Email</u>

The Honorable Al Schmidt
Secretary of the Commonwealth
401 North Street, Rm 302
Harrisburg, PA 17120
al.schmidt@pa.gov; ra-voterreg@pa.gov

Re:      **Complete Pennsylvania's Voter Registration List with All Fields**

Secretary Schmidt:

      We understand that the time the Justice Department has provided your state to respond to the request for a statewide voter registration list ("VRL") and other information has not reached its deadline.

      Given responses from other states thus far, we want to clarify that the Justice Department's request to provide an electronic copy of the statewide VRL should contain *all fields*, which means, your state's VRL must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[1] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

      We have requested Pennsylvania's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501, *et seq*. Our request is pursuant to the Attorney General's authority under Section 11 of the NVRA to bring enforcement actions. *See* 52 U.S.C. § 20501(a).

      The Help America Vote Act ("HAVA"), 52 U.S.C. § 20501, *et seq*., also provides authority for the Justice Department to seek the State's VRL via Section 401, which makes the Attorney

---

[1] In charging the Attorney General with enforcement of the voter registration list requirements in the HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

General solely responsible for actions to enforce HAVA's computerized statewide voter registration list requirements. *See* 52 U.S.C. § 21111; *see also Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (*per curiam*) (finding there is no private right of action to enforce those requirements in HAVA).

In addition to those authorities, the Attorney General is also empowered by Congress to request records pursuant to Title III of the Civil Rights Act of 1960 ("CRA"), codified at 52 U.S.C. § 20701, *et seq.* Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative..." 52 U.S.C. § 20703.

Pursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Pennsylvania's complete and current VRL. The purpose of the request is to ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA and HAVA.

When providing the electronic copy of the statewide VRL, Pennsylvania must ensure that it contains *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number, or the last four digits of the registrant's social security number as required under the Help America Vote Act ("HAVA")[2] to register individuals for federal elections. *See* 52 U.S.C. § 21083(a)(5)(A)(i).

To the extent there are privacy concerns, the voter registration list is subject to federal privacy protections. Section 304 of the CRA provides the answer:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the

---

[2] In charging the Attorney General with enforcement of the voter registration list requirements in HAVA and in the NVRA, Congress plainly intended that DOJ be able to conduct an independent review of each state's list. Any statewide prohibitions are clearly preempted by federal law.

disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from you will be kept securely and treated consistently with the Privacy Act.

To that end, please provide the requested electronic Voter Registration List[3] to the Justice Department by the date set for your delivery by our original letter, or by August 21, 2025, whichever is later.

The information and materials may be sent by encrypted email to voting.section@usdoj.gov or via the Department's secure file-sharing system, Justice Enterprise File Sharing ("JEFS").  Should further clarification be required, please contact Maureen Riordan at maureen.riordan2@usdoj.gov.

Regards,

Harmeet K. Dhillon
Assistant Attorney General
Civil Rights Division

cc:    Jessica Mathis
       Director, Bureau of Election Services and Notaries
       401 North Street, Room 210
       Harrisburg, PA 17120
       jesmathis@pa.gov

---

[3] Containing *all fields*, which includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number as required by HAVA.

Exhibit 5



**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**

August 18, 2025

***Via Electronic Mail***

Michael E. Gates
Deputy Assistant Attorney General
U.S. Department of Justice, Civil Rights Division
950 Pennsylvania Avenue, NW – 4CON
Washington, DC 20530
Voting.section@usdoj.gov

Dear Mr. Gates:

I write in response to your letter dated August 4, 2025, requesting information regarding the Commonwealth's procedures for complying with list maintenance provisions of the National Voter Registration Act ("NVRA").[1] My office is committed to ensuring that our voting lists are properly maintained according to state and federal law, and our efforts to do so are detailed in my July 23, 2025, response to the letter from the Department of Justice letter dated June 23, 2025 ("July Response"), which contained a comprehensive review of Pennsylvania's list maintenance procedures and links to the Department's Annual Report on the Administration of Voter Registration ("Annual Report"). A copy of the July Response is enclosed for your reference as you review our discussion of data provided in the Election Administration and Voting Survey (EAVS). While it is our local county election officials who are responsible for maintaining their voter lists, the Pennsylvania Department of State ("Department") works diligently with all 67 county election offices to help them ensure that all electoral processes are fully compliant with federal and Pennsylvania laws.[2]

Your letter requests a list of election officials responsible for implementing Pennsylvania's program for voter registration list maintenance from November 2022 to the present, including local elections officials. Pennsylvania voter registration law vests the Commonwealth's 67 county voter registration commissions with principal responsibility for implementing voter

---

[1] 52 U.S.C. §§ 20501–20511.
[2] In light of the subsequent letter dated August 14, 2025, from Assistant Attorney General Harmeet Dhillon, we will respond separately to your request for specific information about Pennsylvania's registered voters.

registration list maintenance.[3] The county election offices are staffed by individuals hired by county leadership, not the Department of State. The roles and functions of each office staff member are dictated by county leadership, which may vary in accordance with municipal law. Accordingly, we are not in a position to provide you with the names of each individual who performed each specific function.

You have also requested the steps taken to ensure that the Commonwealth's list maintenance program has been properly carried out in full compliance with the NVRA. Know that the Department and its 67 counties engage in all reasonable efforts to fulfill our list maintenance responsibilities. Please refer to the July Response and Annual Report for information on those steps, and their effectiveness.

Specific responses to your questions relating to the Election Administration and Voting Survey 2024 Comprehensive Report (EAVS Report) are as follows:

1. **In the EAVS data for Question A3d, Pennsylvania identified 378,187 voters (4.49 percent) with duplicate registrations, nearly three times below the nationwide average of 12.7 percent. Moreover, we understand the Public Interest Legal Foundation recently identified an additional 19,489 registrants holding matched voter registration files in second states as of Summer 2025, 3,170 instances of same-address duplications, 70 intra-county duplicates, and 321 placeholder/fictitious dates of birth. Please explain why duplicate registrations are such a low percentage of the total registration applications received.**

Question 1 includes figures that are contradicted by the EAVS Report, and your framing misrepresents the data reported in EAVS Survey question A3d. The EAVS Report shows that the 378,187 duplicate registration applications reported represent **9.4%** of the total number of registration applications reported, not **4.49%**, as your letter states.[4] Moreover, the EAVS Report itself qualifies the national average figure, noting that "[t]he percentage calculations at the national level (U.S. Total) only used data from those states that provided data for the numerator and denominator of the calculation," meaning that states with less reported data were consequentially not included in the calculation.[5] Further, many of the states reporting data suggested that their numbers may be incomplete or underinclusive.[6] That 12.7% "nationwide average" number is presumably derived from adding all duplicates and dividing by all transactions.[7] Given that this does not weight states differently based on their population, it may not serve as a reliable interstate comparison. Indeed, comparing the number of duplicate

---

[3] 25 Pa.C.S. § 1203. Of course, the NVRA specifically contemplates that local governments may have a role in the electoral process. 52 U.S.C.§§ 20501; 20507(j).

[4] *See* EAVS Report, pg. 176, *accessible at* https://www.eac.gov/sites/default/files/2025-06/2024_EAVS_Report_508c.pdf.

[5] *Id.* at 177 (Table 3 General Notes).

[6] *See, e.g., id.*, at 177 n.2 (at least one Arizona county did not track duplicate applications caught and rejected).

[7] *Id*. at 177 (Table 3 General Notes) (noting the nationwide total is "casewise").

registrations nationwide to the total of all applications nationwide, the nationwide average of duplicates is closer to 6%.

Critically, however, the data reported in Table 3 does not represent "voters….with duplicate registrations," as it is phrased in your letter. Rather, Question A3d asks for "Registration transactions submitted by persons already registered to vote at the same address, under the same name and personal information (e.g., date of birth, social security number, driver's license), and with the same political party (where applicable)."[8] It is a measure of applications submitted, not a measure of duplicate voters on the rolls. All states have an incentive to prevent duplicate applications from being submitted in the first place, as they unnecessarily pose additional burdens for elections staff to process (and then properly deny them). Indeed, Pennsylvania agrees with the observation of our colleagues from Oklahoma that "[t]he introduction of online voter registration has greatly reduced the occurrence of duplicate, rejected, and invalid voter registrations."[9] Permitting voters to check their registration status *before* they submit their application cuts down on duplicate submissions.

To understand the work that Pennsylvania does to remove duplicate voters who may be on our rolls, as opposed to those who apply and are denied as duplicate, please refer to the Department's Annual Report.[10]

2. **Similarly, in the EAVS data for Question A12h, 47 of 66 counties in Pennsylvania recorded either 0 or 1 transactions to remove duplicate registrants. Please confirm how frequently county personnel perform manual duplicate queries and how frequently SURE performs automated searches.**

Again, the removal of potential duplicate registrations (addressed in A12h) is different from the denial of duplicate applications (addressed in A3d). In addition, Pennsylvania has 67 counties, not 66.

The Department's response to A12h is consistent with our efforts to prevent duplicate registrations by having counties appropriately screen registration applications, as opposed to removing duplicate registrations during list maintenance activities. Moreover, since 2020, the Department has participated in the Electronic Registration Information Center's (ERIC) duplicate program, which allows for a systemic duplicate review. The Department's efforts to remove duplicate registrations in collaboration with ERIC—including efforts made prior to the reporting period at issue in the 2024 EAVS Report—mean that there will be fewer duplicate

---

[8] EAVS Survey at 7, *accessible at* https://www.eac.gov/sites/default/files/2024-04/2024_EAVS_FINAL_508c.pdf.

[9] EAVS Report, fn. 4, *supra*, at 178 n.11.

[10] You also reference potential duplicates identified by a nongovernmental entity. The Department will be reaching out to review the data purportedly identified by that entity. Critically, the lack of personally identifiable information (PII) in the dataset used by this entity, and the fact that the referenced letter does not specify whether these records are active or inactive, make it difficult to evaluate their claims at this time. The Department is confident that any duplicate registrations will be identified through regular list maintenance processes.

removals in this and subsequent EAVS reports. Indeed, as we noted in our Annual Report, "[t]he number of potential duplicate voter registrations has decreased by more than 80% since Pennsylvania started using this ERIC data in 2020, demonstrating the effectiveness of this program over time."[11]

Finally, as noted previously, the county voter registration commissions have significant autonomy and are not subject to the direct control of the Department.

3. **In the EAVS data for Question A3g, Pennsylvania listed 40,209 transactions as "other," without further explanation. Please explain those registrations listed as "other."**

This question misrepresents DOS' response to A3g. To the contrary, the EAVS Dataset available on the Election Assistance Commission's website[12] shows that the Department noted that the 40,209 transactions enumerated in A3g represented pending applications. This was one of the "most cited" descriptions for the "Other" category.[13]

4. **In the EAVS data for Question A4h, Pennsylvania listed 1 transaction arising from an Armed Forces Recruitment Office, which is significantly below similarly sized states. Please explain why such few transactions can be sourced to Armed Forces Recruitment Offices and what actions Pennsylvania is taking to ensure Offices fulfill their voter registration responsibility.**

Many states reported 0 or no applications received via recruitment offices presumably because Department of Defense Instruction 1000.04 directs recruitment centers to report voting assistance metrics to the Federal Voter Assistance Program (FVAP) and not individual states.[14] And while recruitment centers are NVRA agencies, the Department is nevertheless without authority to require reporting of metrics by recruitment centers.

5. **In the EAVS data for Question A11, concerning the reason for sending confirmation notices, the largest category by far is A11n, "Other." Please explain the nature of these confirmation notices and why they do not fit in available categories.**

As elaborated in the EAVS Dataset, the figure reported in A11n corresponds to "the number of confirmation notices sent due to correspondence sent by an election office being returned as undeliverable or due to failure of the voter to respond to an initial confirmation notice sent for the reason identified in a1ll (initial NCOA notice)." This number may be larger than any other

---

[11] Annual Report at 18, *accessible at* https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/reports/voter-registration/dos_voter_registration_report_2024_final.pdf.
[12] https://www.eac.gov/sites/default/files/2025-06/2024_EAVS_for_Public_Release_V1_xlsx.xlsx
[13] EAVS Report, fn. 4, *supra* at 132.
[14] DoDI 1000.04, Federal Voting Assistance Program (FVAP), November 12, 2019

individual mailing because it is sent following nonresponse to a variety of prior list maintenance correspondence types.

6.  **In the EAVS data, Pennsylvania has failed to respond to Question A13a regarding merged voter records. Please provide the requested data or an explanation for why that information is not available.**

The Department did, in fact, respond to Question A13a. Specifically, the Department noted that the data was not available and further explained in the comments to A13a that "the Pennsylvania Department of State is unable to provide a figure for A13a due to an inability to accurately differentiate between merged records and transferred records."

You also posed questions regarding removal procedures for certain categories of voters. Nothing in the NVRA provides a process by which those who are deemed non-eligible on the basis of being a non-citizen are to be removed from the voter rolls. As set forth in the July Response, false statements misrepresenting an applicant's citizenship on a voter registration form are crimes punishable under both state[15] and federal laws.[16] To the extent any county registration commission or the Department becomes aware that an individual who is not a U.S. citizen has registered or attempted to vote, where appropriate, the county may cancel such registration and refer the matter to law enforcement for handling.

Finally, with respect to removal of voters by reason of criminal conviction or mental capacity, the NVRA does not govern; rather, it defers to state law.[17] Under Pennsylvania law, there is no basis or procedure to challenge, revoke or cancel a person's voter registration on the basis of an adjudication of mental incompetency. As for those voters with felony convictions, there is no removal process contemplated by Pennsylvania law, as explained in the July Response.

*    *    *

As Pennsylvania's chief election official, I take seriously my legal obligation to ensure that all eligible voters have access to the ballot here in the Commonwealth and the responsibilities that both federal and state law impose on the Department and on our county election officials to faithfully maintain our voter rolls. Likewise, I applaud efforts at transparency in our voting processes, such as the EAVS Survey data reporting. Pennsylvania goes further than is required, detailing our voter registration and list maintenance processes in our Annual Report. The Department and Pennsylvania's 67 counties engage in reasonable efforts to ensure that our voter

---

[15] 25 Pa.C.S. §§ 1703 (providing for a fine up to $10,000 and five years in prison for improper registration), 1714 (incorporating criminal penalty provisions of the Crimes Code at 18 Pa.C.S. §§ 4902, 4903, and 4904) relating to perjury, false swearing, and unsworn falsification to authorities).

[16] 18 U.S.C. §§ 1015(f) (imposing fines and up to five years in prison for misrepresenting one's citizenship on a voter registration application), 3559 and 3571 (setting fines at $250,000 for class D felonies).

[17] 52 U.S.C. § 20507(a)(3)(B).

rolls are accurate and that all requirements of Pennsylvania and federal law are faithfully followed. Please let us know if you have any further questions.

Sincerely,

Al Schmidt
Secretary of the Commonwealth

Enclosure (without appendices)

Exhibit 6



**COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF STATE**

August 21, 2025

***Via Electronic Mail***
Harmeet K. Dhillon
Assistant Attorney General
Michael E. Gates
Deputy Assistant Attorney General
U.S. Department of Justice, Civil Rights Division
950 Pennsylvania Avenue, NW – 4CON
Washington, DC 20530
voting.section@usdoj.gov

Dear AAG Dhillon and DAAG Gates:

I write in response to your letters dated August 4, 2025, and August 14, 2025, requesting an electronic copy of the Commonwealth of Pennsylvania's statewide voter registration list. Your letter dated August 14 specifically asked for detailed personal and confidential information, including driver's license numbers and social security numbers, for all Pennsylvania voters. This request, and reported efforts to collect broad data on millions of Americans, represent a concerning attempt to expand the federal government's role in our country's electoral process. Please know that the Department of State takes seriously its obligation to safeguard the integrity and accuracy of Pennsylvania's voter rolls, as well as the security of Pennsylvanians' personal information. Because your letters do not provide any legal justification for the Department to disregard this sacred obligation, we are unable to share such confidential information with you. We can, however, provide Pennsylvania's Full Voter Export, subject to the conditions below.

Pursuant to Pennsylvania law, our Full Voter Export is available through the Pennsylvania Department of State's website. This list includes all voters in the Commonwealth (with certain limited exceptions for crime victims and other confidential voters) and contains the following fields: voter ID number, name, sex, date of birth, date registered, status (i.e., active or inactive), date status last changed, party, residential address, mailing address, polling place, date last voted, all districts in which the voter votes, voter history, and date the voter's record was last changed.

In accordance with the Pennsylvania voter registration law[1] and the Statewide Uniform Registry of Electors (SURE) Regulations,[2] all requesters must agree to the terms and conditions for use of public information lists. Further information may be found on our website. Please let us know if you would like to receive this data subject to these terms and conditions.

---

[1] 25 Pa.C.S. Part IV.
[2] 4 Pa. Code ch. 183.

Your August 14 letter specifically asked for *all* fields in the Commonwealth's computerized statewide voter registration list, including each voter's Pennsylvania driver's license number or last four digits of their social security number. We are aware of no precedent for such a broad request for such sensitive information. While we are happy to provide the Full Voter Export, consistent with the process outlined above, we cannot provide these fields, which contain sensitive, personally identifiable information for Pennsylvania's 8.8 million voters.

As Pennsylvania's chief election official, I take seriously my obligation to ensure that our county election officials faithfully maintain our voter rolls. The Department works with Pennsylvania's 67 counties in making every reasonable effort to ensure that all electoral processes are fully compliant with federal and Pennsylvania laws, including the National Voter Registration Act and the Help America Vote Act. Likewise, I take seriously my responsibility to safeguard the private information that Pennsylvanians entrust to the care of our county election officials. Our laws do not permit the Department to release driver's license or social security numbers. These protections are consistent with other federal and state statutes that protect social security and driver's license numbers. The Department's statutory obligations are reinforced by the Pennsylvania Constitution, which requires the Department to maintain the privacy of our 8.8 million registered voters.

None of the legal bases provided in your letter justify or authorize providing these fields and disregarding the strong protections on voter privacy enshrined in our Commonwealth's laws.

*First*, the NVRA does not require the disclosure of voters' sensitive personal information. Your letter provides no explanation as to why the social security and driver's license numbers of every registered voter in Pennsylvania are necessary to ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA. As explained in the Department's letters dated July 23, 2025, and August 18, 2025, and as detailed in our publicly available Annual Report on the Administration of Voter Registration in Pennsylvania, the Department does a robust job of ensuring that all of Pennsylvania's 67 counties comply with their list maintenance responsibilities pursuant to the NVRA. You have provided no basis for concluding otherwise.

*Second*, no provision of HAVA provides authority for such a request. Although the Attorney General has authority under HAVA to bring certain enforcement actions, you have identified no basis for why the social security and driver's license numbers of all Pennsylvania's registered voters is necessary to ascertain Pennsylvania's compliance with the list maintenance requirements of HAVA.

*Finally*, the Civil Rights Act of 1960 does not provide legal authority for such a broad request. You have identified no basis or purpose for why the social security and driver's license numbers of all Pennsylvania's registered voters is necessary to enforce any relevant legal requirements, nor have you shown how such a request would satisfy the requirements of the Civil Rights Act.

*     *     *

Consistent with Pennsylvania and federal law, the Department and Pennsylvania's 67 counties go far beyond the reasonable efforts required by the NVRA to ensure that Pennsylvania's voter rolls are accurate. The Department is also entrusted to protect and safeguard the personal information of our 8.8 million voters, and I take that obligation extremely seriously.
Please let us know if you have any further questions, or would like to proceed with obtaining the Full Voter Export, as permitted under Pennsylvania law.

Sincerely,

Al Schmidt
Secretary of the Commonwealth