**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,

       Plaintiff,

       v.

AL SCHMIDT, in his official capacity as Secretary
of the Commonwealth of Pennsylvania,

       Defendant.

Case No. 2:25-cv-01481-CB

**<u>MEMORANDUM OF LAW OF THE UNITED STATES IN OPPOSITION TO
MOTIONS TO DISMISS (DOCS. 88-3, 90-2, 91-92)</u>**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................. 3

III.  THE UNITED STATES IS ENTITLED TO PRODUCTION OF THE FEDERAL
ELECTION RECORDS IT HAS DEMANDED UNDER TITLE III OF THE CRA. .................. 7

   A.    The Federal Rules of Civil Procedure, including the motion to dismiss standard, are
inapplicable to orders to compel under Section 305 of the CRA. ............................... 8

   B.    Title III of the CRA does not require allegations that the federal election records
demanded are needed to investigate race-based denial of voting rights. .................... 9

   C.    Pennsylvania's SVRL falls within Section 301's broad definition of "all records and
papers" relating to registration to vote in federal elections. ..................................... 12

   D.    Movants cannot challenge the Attorney General's basis and purpose to investigate
Pennsylvania's HAVA and NVRA compliance. ...................................................... 13

   E.    The United States is entitled to unredacted electronic copies of Pennsylvania's federal
election records, including its SVRL. ...................................................................... 16

   F.    The United States has subject-matter jurisdiction to bring suit in the Federal District
Court for the Western District of Pennsylvania to compel production of the SVRL. .............. 17

IV.   THE UNITED STATES IS COMPLYING WITH APPLICABLE FEDERAL PRIVACY
LAWS .............................................................................................................. 18

   A.    The United States is complying with the Privacy Act. .................................... 19

i

B.   The E-Government Act does not prevent the United States from obtaining data supporting its HAVA and NVRA claims..................................................................... 21

C.   The Driver's Privacy Protection Act does not allow Defendant to deny the United States list maintenance data..................................................................................................... 22

V.   THE UNITED STATES HAS VALID CLAIMS UNDER HAVA AND THE NVRA....... 23

VI.  CONCLUSION ......................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) .............................. 8, 9, 10, 12

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ................................................... 3

*Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644 (2020) ................................................................... 12

*Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008)................................................................ 24

*Carolina Tobacco Co. v. Bureau of Customs & Border Prot.*, 402 F.3d 1345 (Fed. Cir. 2005).. 19

*Coleman v. Campbell*, 208 F. Supp. 199 (S.D. Miss. 1962)................................................... 11, 16

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ......................................................... 8, 11, 16

*Ebert v. Poston*, 266 U.S. 548 (1925) ......................................................................................... 11

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Elec. Integrity*, 266 F. Supp. 3d 297

    (D.D.C. 2017) ............................................................................................................. 22

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371 (D.C.

    Cir. 2017) ................................................................................................................... 22

*Ex Parte Siebold*, 100 U.S. 371 (1879)......................................................................................... 3

*Florida State Conf. of NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008) ............................ 15

*Foster v. Love*, 522 U.S. 67 (1997)................................................................................................ 3

*France Packing Co. v. Dailey,* 166 F.2d 751 (3d Cir. 1948)........................................................ 11

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962).................................................................... passim

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995).............................................................. 3

*United States v. Armstrong*, 517 U.S. 456 (1996) ....................................................................... 19

*United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846 (W.D. La. 1960) . 8, 9, 24, 25

*United States v. Bisceglia*, 420 U.S. 141 (1975)............................................................................ 8

*United States v. Great N. Ry. Co.,* 343 U.S. 562 (1952) ................................................................ 12

*United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269 (1929) ........................................................ 11

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ................................................................ 8

*United States v. Powell*, 379 U.S. 48 (1964) ................................................................ 8

**Statutes**

5 U.S.C. § 552a ................................................................ 21

52 U.S.C. § 20507 ................................................................ 4, 25

52 U.S.C. § 20510 ................................................................ 4

52 U.S.C. § 20701 ................................................................ passim

52 U.S.C. § 20703 ................................................................ passim

52 U.S.C. § 20705 ................................................................ 1, 4, 14, 18

52 U.S.C. § 20706 ................................................................ 2

52 U.S.C. § 21083 ................................................................ 4, 6, 15

52 U.S.C. § 21111 ................................................................ 4, 15, 24

CRA § 301, Pub. L. No. 86-449, 74 Stat. 86 (1960) ................................................................ 10

The E-Government Act of 2002, Pub. L. No. 107–347, § 208 ................................................................ 21, 22

The Privacy Act of 1974, Pub. L. No. 93–579, 88 Stat. 1896 (1974) ................................................................ 21

**Other Authorities**

64 Fed. Reg. 73585-02 (Dec. 30, 1999) ................................................................ 20

66 Fed. Reg. 8425-02 (Jan. 31, 2001) ................................................................ 20

74 Fed. Reg. 57194 (Nov. 4, 2009) ................................................................ 20

82 Fed. Reg. 24151 (May 25, 2017) ................................................................ 20

**Constitutional Provisions**

U.S. Const. art. I, § 4, cl. 1 .................................................................................. 3

**Legislative Materials**

106 Cong. Rec. 7767 ........................................................................................ 11

148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002) ....................................... 24

H.R. Rep. 107-329, pt. 1 (2001) .................................................................. 11

Plaintiff United States of America respectfully submits this Response in Opposition to the Motion to Dismiss by Secretary of State Al Schmidt. (Doc. 91-92).

## I.    INTRODUCTION

The Attorney General of the United States brought this case as part of her investigation of Pennsylvania's list maintenance practices under the Help America Vote Act ("HAVA"), and the National Voter Registration Act ("NVRA"). The United States engaged in repeated correspondence with Defendant, requesting their cooperation in providing federal election records necessary to its assessment in a manner consistent with federal privacy law. Defendant provided some information relevant to HAVA and NVRA compliance but failed to produce Pennsylvania's statewide Voter Registration List ("SVRL") as mandated by federal law and necessary to evaluate their compliance with federal election laws. This action followed. *See* Compl., Doc. 1.

Title III of the Civil Rights Act ("CRA") provides the principal statutory authority for the United States to immediately obtain federal election records including the SVRL. Those provisions broadly authorize the Attorney General to compel production of "all records and papers" that "come into … possession" of the defendant relating to registration or other acts requisite to voting in federal elections. 52 U.S.C. § 20701; *see also* 52 U.S.C. § 20705 (authorizing the Attorney General to bring an action to compel the production of federal election records demanded under Section 303 of the CRA). In that manner, Title III is unique because it is purely an investigative tool. As such, it enables the Attorney General to determine whether a federal lawsuit "should be instituted" and "to obtain evidence for use in such cases if and when filed." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962).[1] The United States will focus most of its response on its CRA claim

---

[1] Caselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the

to compel production of federal election records it requires to complete its investigation of Defendant's list maintenance practices under HAVA and the NVRA.[2]

The CRA restricts the Court to a "severely limited" inquiry: (1) did the Attorney General make a written demand for federal election records stating the basis and purpose (52 U.S.C. § 20703); (2) was that demand made to one or more "officer[s] of election" responsible for performing any act requisite to voting in federal elections including voter registration;[3] (3) did the officer(s) of election fail or refuse to make the demanded federal election records "available for inspection, reproduction, and copying;" (52 U.S.C. § 20703) and (4) did the Attorney General make "a simple statement" to the Court that she satisfied the first three elements. *Lynd*, 306 F.2d at 225-26; *see also* 52 U.S.C. § 20703. The record before the Court demonstrates that the United States has established each of these requirements. In contrast, Defendant has wholly failed to establish that there remains any "matter[] open for determination" which would provide a basis for

---

issue. The United States is unaware of any courts disagreeing with the Fifth Circuit's approach to the CRA.

[2] The United States will briefly address its HAVA and NVRA claims, which likewise authorize the Attorney General to obtain federal election records. The record production requirements of those statutes are subject to litigation procedures inapplicable to Title III of the CRA.

[3] Section 306 provides:

> As used in this chapter, the term ''officer of election'' means any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting in any general, special, or primary election at which votes are cast for candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico.

52 U.S.C. § 20706.

his motion to dismiss. *Lynd*, 306 F.2d at 226. Therefore, the United States is entitled to an order compelling production of Pennsylvania's SVRL and other responsive federal election records, and the motion to dismiss should be denied.

## II.    BACKGROUND

While the United States Constitution invests states with broad powers over the conduct of federal elections, it also explicitly authorizes Congress to override those state choices. The Elections Clause provides, "The Times, Places, and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations." U.S. Const. art. I, § 4, cl. 1. The Supreme Court has explained that the Elections

> Clause is a default provision; it invests the States with responsibility for the mechanics of congressional elections … but only so far as Congress declines to preempt state legislative choices …. Thus, it is well settled that the Elections Clause grants Congress 'the power to override state regulations' by establishing uniform rules for federal elections, binding on the States.

*Foster v. Love*, 522 U.S. 67, 69 (1997) (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 832-33 (1995)) (citations omitted). "[T]he regulations made by Congress are paramount to those made by the State legislature; and if they conflict therewith, the latter, so far as the conflict extends, ceases to be operative." *Foster*, 522 U.S. at 69 (quoting *Ex Parte Siebold*, 100 U.S. 371, 384 (1879)); *see also Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 7-9 & n.1 (2013) (discussing breadth of Elections Clause).

Congress enacted broad regulations over the conduct of federal elections in the three statutes at issue in this litigation. Title III of the CRA imposes a "sweeping" obligation on election officials to preserve and, on request, to produce registration records pertaining to federal elections. *Lynd*, 306 F.2d at 226. HAVA requires states to implement a computerized SVRL and establish

"[m]inimum standard[s] for accuracy of State voter registration records." 52 U.S.C. § 21083(a)(4). Section 303 of HAVA mandates that every state "ensure that voter registration records in the State are accurate and are updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Id.* Section 8(i) of the NVRA requires states to make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters…." 52 U.S.C. § 20507(i)(1). Only the United States, through the Attorney General, is authorized to compel records under Title III of the CRA and to enforce Section 303 of HAVA. *See* 52 U.S.C. §§ 20703, 20705 (CRA); 52 U.S.C. § 21111 (HAVA). The Attorney General likewise enforces the NVRA's requirement that all states maintain "accurate and current voter rolls" and remove ineligible voters in the conduct of federal elections. *See* 52 U.S.C. §§ 20510(a), 20507(b), 20507(a)(4).

Acting pursuant to its authority to enforce these federal election statutes, on June 23, 2025, the United States sent a letter to Secretary Schmidt, seeking information regarding Pennsylvania's compliance with HAVA ("June 23 Letter"). Ex. 1. The June 23 Letter requested a description of how non-citizen voters are identified and removed from the SVRL. Further, the June 23 Letter inquired into how Pennsylvania carries out its list maintenance obligations under Section 303 of HAVA, particularly how the Commonwealth identifies and removes duplicate and deceased voter registrants. The June 23 Letter also inquired about the requirement under Section 303(a)(5) of HAVA that applicants provide certain information and the Commonwealth's process for verifying that information.

Secretary Schmidt responded in a July 23, 2025, letter to the Department of Justice. ("July 23 Letter"). Ex. 2. The response stated that all registrants are merely required to assert, in response to a yes or no question, that they are a citizen of the United States. The July 23 Letter further stated that if an individual answered no, that applicant would be required to be rejected. The July 23 Letter further stated that state and federal law did not require documentary proof of citizenship.

A second letter from the Attorney General on August 4, 2025, requested that Pennsylvania provide a list of election officials responsible for implementing Pennsylvania's general program of voter registration list maintenance and requested, pursuant to Section 8(i) of the NVRA, the electronic copy of its computerized SVRL, required under Section 303(a) of HAVA ("August 4 Letter"). Ex. 3. The August 4 Letter asked Pennsylvania to produce the requested information and records by encrypted email or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS). The August 4 Letter also requested information about duplicate registrations, other EAVS survey questions, and the removal procedures for ineligible voters from the voter rolls because they were noncitizens, felons, or adjudicated incompetent. The August 4 Letter cited the NVRA's various voter roll maintenance requirements while making these requests.

In response, on August 18, 2025, Secretary Schmidt sent a second letter providing explanations to the Attorney General's EAVS requests ("August 18 Letter"). Ex. 4. In that letter, however, the Secretary stated, "Nothing in the NVRA provides a process by which those who are deemed non-eligible on the basis of being a non-citizen are to be removed from the voter rolls." While acknowledging that it is illegal for a non-citizen to misrepresent that he is a citizen on a voter registration application, the Commonwealth did not describe any verification procedures beyond a mere review of the self-attestation question.

On August 14, 2025, the Attorney General sent a third letter to Secretary Schmidt, requesting production of Pennsylvania's SVRL that contains all fields ("August 14 Letter"). Ex. 5. The August 14 Letter requested an electronic copy of Pennsylvania's computerized voter registration list for the commonwealth, with all fields, including each registrant's full name, date of birth, residential address, and driver's license number, or last four digits of his or her Social Security number as required by 52 U.S.C. § 20703.

Furthermore, the August 14 Letter stated, "[A]ll data received from you will be kept securely and treated consistently with the Privacy Act." The letter explained that information the Justice Department collects pursuant to its request to Pennsylvania will be maintained consistent with Privacy Act protections as explained on the Justice Department's website. Ex. 5 at 3.

The August 14 Letter also explained that HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered to be a social security number for purposes of section 7 of the Privacy Act of 1974 (5 U.S.C. [§] 552a note)." 52 U.S.C. § 21083(c). The August 14 letter further stated: "In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's [Privacy] Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing." *Id.* at 2-3.

In response, Secretary Schmidt sent a letter on August 21, 2025, and offered public voter records to the United States for review. ("August 21 Letter"). Ex. 6. However, Pennsylvania's public voter records do not include the HAVA-required unique identifiers requested by the Attorney General.

On September 25, 2025, the United States filed the instant action seeking to compel production of the federal election records that it demanded, including Pennsylvania's SVRL with

the HAVA identifying numbers. *See* Compl., Doc. 1. The Complaint included three counts requiring production under the CRA, NVRA, and HAVA, respectively. *Id.* at 15-16. As discussed below, the United States believes it is unnecessary for the Court to address its claims under the NVRA and HAVA, which mandate production through the normal litigation process. Rather, the United States' CRA claim is dispositive of all the relief that it seeks through Title III's "severely limited inquiry" in a "summary proceeding." *Lynd*, 306 F.2d at 226.

### III.    THE UNITED STATES IS ENTITLED TO PRODUCTION OF THE FEDERAL ELECTION RECORDS IT HAS DEMANDED UNDER TITLE III OF THE CRA.

Defendant misapprehends the nature of a CRA claim by erroneously suggesting the Court should apply the motion to dismiss standard to it. He incorrectly maintains that Title III of the CRA applies to investigation of a narrow category of federal election laws involving discrimination. He asks the Court to ignore case law under the CRA and allow an impermissible challenge to the basis and purpose of the Attorney General's written demand. In place of producing all election records requisite to voting in federal elections, Defendant invites the Court to narrow the mandate to encompass only publicly available records.[4] For the reasons discussed below, Defendant's motion should be denied and the United States' demand for production of Pennsylvania's federal election records, including its SVRL, should be granted.[5]

---

[4] A "publicly available" record would never need to be "produced." The Attorney General would simply be able to access it in the same manner as any other member of the public. If that were the rule, CRA's provisions mandating production and privacy protections would essentially be rendered meaningless.

[5] In *United States of America v. Stephanie Thomas*, No. 3:26-cv-00021 (D. Conn. Jan. 06, 2026)— a suit raising a CRA claim the same as those raised in the present litigation—the Court (Dooley, J.) has issued an Order to Show Cause why the State of Connecticut "should not be ordered to provide the SVRL to the Attorney General, as well as the 'other documents demanded by the Attorney General to ascertain Defendant's compliance with federal law,' to wit, the NVRA and HAVA." *United States v. Thomas*, ECF 10 (D. Conn. Jan. 8, 2026). *See* Ex. 7.

**A.      The Federal Rules of Civil Procedure, including the motion to dismiss standard, are inapplicable to orders to compel under Section 305 of the CRA.**

Defendant contends that the Court should apply the motion to dismiss standard to the United States' CRA claim, seeking an order to compel production of federal election records. *See* Mot., Doc. 92 at 19-22. He is mistaken. Defendant repeats what the Fifth Circuit has described as "a basic misconception … concerning a Title III proceeding." *Lynd*, 306 F.2d at 225.

The "chief purpose" of Title III "is to facilitate the investigation of the records *before suit is filed*." *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960) (per curiam) (emphasis added). "[T]he function sought to be exercised by the Attorney General is … purely investigative," *Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 854 (M.D. Ala. 1960), to evaluate "possible violations of a Federal statute," *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) ("*Coleman II*"). It does not require known violations of federal law. In that manner, Title III enables the Attorney General to determine whether a federal lawsuit "should be instituted" and "to obtain evidence for use in such cases if and when filed." *Lynd*, 306 F.2d at 228. Contrary to what Defendant argues, no factual allegations of a substantive violation of federal law are required. Instead, "Congress has specifically committed the investigative responsibility to the Attorney General and has equipped [her] with machinery thought suitable for the effective fulfillment of that obligation" through Title III of the CRA.[6] *Id.* at 230. That approach makes sense. The United States cannot be expected to effectively enforce federal election laws such as HAVA

---

[6] Title III invests the Attorney General with a power akin to a grand jury which "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Bisceglia*, 420 U.S. 141, 148 (1975). The Supreme Court has recognized that statutes that vest investigative powers in Executive Branch agencies provide such agencies with grand jury-like powers. *See, e.g.*, *United States v. Powell*, 379 U.S. 48, 57 (1964) (recognizing that the IRS Commissioner has grand jury-like powers); *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950) (same with respect to the Federal Trade Commission). The investigative powers that the Attorney General derives from Title III fall comfortably within this paradigm.

and the NVRA, if the Attorney General is required to allege facts from federal election records that state officers of election have denied to her. *See id.* at 227 (the Attorney General's "right to records does not require that [she] show [she] could win without them").

The Attorney General's request for an order under Title III "is not the commencement of an ordinary, traditional civil action with all of its trappings." *Id.* at 225.[7] It is "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Id.* In structuring the statute in this way, Congress has indicated that the Federal Rules of Civil Procedure are inapplicable. "Since it is a special statutory proceeding, it does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure." *Id.* at 225-26; *see also Gallion*, 187 F. Supp. at 854 (comparing applications to compel to actions by the Securities and Exchange Commission in which procedural rules "are made specifically inapplicable to investigations"). The CRA differs from ordinary civil actions because its "chief purpose" is to facilitate *pre-suit* investigation. *Citizens Councils*, 187 F. Supp. at 847. In stark contrast, "[t]he chief purpose of Rule 34 … is to give a party litigant the right to have records produced *after* suit has been filed." *Id.* (emphasis added). To summarize, "[t]here is no place for any other procedural device or maneuver," including the motions to dismiss presently before the Court, in response to a CRA claim. *Lynd*, 306 F.2d at 226; *see also* Fed. R. Civ. P. 81.

**B.    Title III of the CRA does not require allegations that the federal election records demanded are needed to investigate race-based denial of voting rights.**

Title III of the Civil Rights Act of 1960 is entitled "Federal Election Records." CRA § 301, Pub. L. No. 86-449, 74 Stat. 86 (1960). This "sweeping" obligation requires officers of election to preserve and, on request, to produce registration records pertaining to federal elections. *Lynd*, 306

---

[7] The United States will file an Order to Show Cause later this week.

F.2d at 226. Section 301 provides, in pertinent part, "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election …." 52 U.S.C. § 20701. Section 303 authorizes the Attorney General of the United States to compel any person "having custody, possession, or control of such record or paper" to make "available for inspection, reproduction, and copying … by the Attorney General or [her] representative." 52 U.S.C. § 20703.

Notwithstanding the CRA's plain language, Defendant argues that the Court must go outside the text of the statute to the sparse legislative history and find that Title III is limited to those records necessary to "provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race."[8] Mot., Doc. 92 at 20-21.

No such language limiting Title III of the CRA to voting rights violations based upon racial discrimination appears anywhere in the statutory text. *See* 52 U.S.C. §§ 20701-20706. Moreover, in a decision cited by Defendant, Mot., Doc. 92 at 19, 21, the court concluded "that the prescribed standard of Section 301 is *clear and unambiguous*." *Gallion*, 187 F. Supp. at 848 (emphasis added). Specifically, Title III functions as "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Lynd*, 306 F.2d at 225. The only language that is required in the Attorney General's demand is that it "was made for the purpose of investigating possible violations of a Federal statute." *Coleman II*, 313 F.2d at 868 (quoting "Senator Keating, one of the principal spokesmen for the bill in the Senate," at 106 Cong. Rec. 7767); *see also Coleman v. Campbell*, 208 F. Supp. 199, 200 (S.D. Miss. 1962) ("*Coleman I*") (sufficient purpose to examine federal

---

[8] Defendant cites to *State of Ala. ex rel. Gallion v. Rogers*, 187 F.Supp. 848, 853 (M.D. Ala. 1960), which states that the statute protects the right to vote, not that it protects the right to vote *without discrimination on account of race*, as Defendant alleges. (emphasis added).

election records is "to see if any Federal laws were violated"). The United States clearly has satisfied that requirement by informing the officers of election that "the purpose of the request is to ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA and HAVA."[9] Ex. 5 at 2. Requiring more than that by engrafting a requirement of racial discrimination that does not exist in the statute would violate the clear congressional mandate. Where, like here, the language of an enactment is clear, "Construction may not be substituted for legislation." *France Packing Co. v. Dailey,* 166 F.2d 751, 755 (3d Cir. 1948) (quoting *United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269, 278 (1929)). Well-established principles of statutory construction foreclose federal courts from rewriting a statute in a manner that better suits a litigant. As the Supreme Court explained, "[t]he judicial function to be exercised in construing a statute is limited to ascertaining the intention of the Legislature therein expressed. A *casus omissus* does not justify judicial legislation." *Ebert v. Poston*, 266 U.S. 548, 554-55 (1925). "[W]here the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended. And in such cases legislative history may not be used to support a construction that adds to or takes from the significance of the words employed." *Mo. Pac.*, 278 U.S. at 278 (citations omitted). In that manner, the "judicial function [is] to apply statutes on the basis of what Congress has written, not what Congress might have written." *United States v. Great N. Ry. Co.,* 343 U.S. 562, 575 (1952). "After all, only the words on the page constitute the law adopted by Congress and approved by the President. If judges could add to, remodel, update, or detract from old statutory terms

---

[9] Congress has explained why list maintenance and compliance with HAVA's identifying numbers helps protect an individual's right to vote. For example, passage of HAVA was intended to "reduce the incidence of voters appearing at a polling place only to discover that no record of their registration can be found." H.R. Rep. 107-329, pt. 1, at 36 (2001).

inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process…." *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 654-55 (2020). The Court should decline Defendant's invitation to rewrite the CRA to add a requirement of racial discrimination that simply does not exist in Title III. *See id*.

### C.    Pennsylvania's SVRL falls within Section 301's broad definition of "all records and papers" relating to registration to vote in federal elections.

The scope of federal election records covered by Title III of the CRA is broadly established by Congress. Section 301 of the Act provides that the retention and production requirements apply to "*all records and papers*" which "come into … possession" of an officer of election "relating to any application, registration, payment of poll tax, or other act requisite to voting" in a federal election "for a period of twenty-two months" from the date of any federal election. 52 U.S.C. § 20701 (emphasis added). This language is unequivocal in its breadth.

Indeed, the federal courts that have applied Section 301 have concluded that Congress meant what it said in the statute. It does not exclude electronic records or records created by the officer of election. One court explained in detail why a similar effort to impede the Attorney General's enforcement of federal election laws failed:

> There is nothing uncertain about that part of the Act requiring preservation and production of all records and papers which are in the possession of an election official … if those records and papers relate to the acts requisite to voting…. Regardless of when these records came into the possession of the election official, under Section 301 they must be retained and preserved for a period of twenty-two months 'from the date of any general, special, or primary election…' if they relate to acts requisite to voting in such election.

*Gallion*, 187 F. Supp. at 855 (quoting 52 U.S.C. § 20701).

In *Lynd*, the Fifth Circuit likewise recognized that "the papers and records" covered by Section 301 "have been specifically identified by Congress." 306 F.2d at 226. This requirement "is sweeping." *Id.* It applies to "all records and papers," as the statute provides, *id.*, and cannot be

circumvented. In a similar vein, "there is no question for judicial determination as to how far back the records go. This, too, is fixed by the statute." *Id.* "[T]he Attorney General's right of inspection and copying extend as far back as the earliest date of any such record or paper which bears on the eligibility of any currently listed voter to vote" in a federal election. *Id.* at 227. To put it even more succinctly: Section 301 means what it says in requiring production of "all records and papers" relating to registration to vote in a federal election, including Pennsylvania's SVRL. 52 U.S.C. § 20701. As *Lynd* made clear, "All means all." 306 F.2d at 230.

Title III was enacted to, *inter alia*, counteract discriminatory practices in allowing citizens to vote. *Lynd*, 306 F.2d at 228. (This is not to say that this is Title III's sole purpose.) The United States previously has pursued successful matters, including in litigation, to obtain statewide voter registration lists under Title III of the CRA. For example, in two of those matters against Georgia and Texas, the United States obtained the SVRLs, including drivers' license numbers and SSN4s, to evaluate compliance with the NVRA, including that Act's list maintenance requirements.[10]

### D.    Movants cannot challenge the Attorney General's basis and purpose to investigate Pennsylvania's HAVA and NVRA compliance.

The CRA establishes a straightforward requirement for the Attorney General to make a written demand to officers of election for federal election records. As explained in the preceding discussion, it covers "all records and papers" which come into possession of an officer of election that relate to any prerequisite to voting in a federal election, including voter registration applications and records. 52 U.S.C. § 20701. Pursuant to Section 303 of the Act, to obtain those

---

[10] *See* Compl., *United States v. Georgia*, No. 1:06-cv-02442 (N.D. Ga. Oct. 12, 2006), Doc. 1. The Court entered a consent decree in the Georgia case requiring production of the SVRL. *See Georgia*, *supra*, at Doc. 4 (filed Oct. 27, 2006). The Texas matter was resolved by a Memorandum of Understanding. *See* U.S. Dep't of Just., Mem. of Understanding between the United States and Texas (May 13, 2008), *available at* https://www.justice.gov/media/1173461/dl?inline (last visited Jan. 6, 2026). For the Court's convenience, the three documents are provided as Exhibits 8-10.

federal election records, the Attorney General need only make to an officer of election with custody, possession, or control of those records a "demand in writing" for "inspection, reproduction, and copying," accompanied by "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. After that written demand has been made, and the officer of election has rejected it, the Attorney General may seek an order from the federal court "to compel the production of such record or paper." 52 U.S.C. § 20705.

In the August 14 Letter, the Attorney General made a written demand under Section 303 of the CRA for Pennsylvania's federal election records. Ex. 5 at 2. The letter cited Section 303 of the CRA as the basis for the request, stating that "[p]ursuant to the foregoing authorities, including the CRA, the Attorney General is demanding an electronic copy of Pennsylvania's complete and current [SVRL]. The purpose of the request is to ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.*

Nevertheless, Defendant argues that the United States failed to provide a sufficient statement of the basis and purpose of its request for federal election records because the Commonwealth relies on registrants' self-attestations as to the authenticity of the driver's license number or last four of their social security number they provide. Mot., Doc. 92 at 16-17. In fact, county election officials are enjoined from rejecting a voter-registration application if they identify a mismatch. *Id.* at 17. Defendant concludes that were the Attorney General to receive Pennsylvania's SVLR, no violations could be found due to the Commonwealth's method of verifying voter registrations.  *Id.* at 18.  That is incorrect.

It is a requirement of federal law that voter registration applicants provide their driver's license number, and if they do not have that, then they need to provide the last four of their social security number:

an application for voter registration for an election for Federal office may not be accepted or processed by a State unless the application includes—
(I) in the case of an applicant who has been issued a current and valid driver's license, the applicant's driver's license number; or
(II) in the case of any other applicant (other than an applicant to whom clause (ii) applies), the last 4 digits of the applicant's social security number.

52 U.S.C. § 21083(a)(5)(A)(i).

Defendants cite the Eleventh Circuit in *Florida State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1174 (11th Cir. 2008), to support their position that the federal government is not entitled to look at the driver's license and SSN4 information, but that is not what the court found: "The fact that HAVA section 303(a) requires states to obtain the applicant's identification numbers before accepting a registration application and also to 'determine whether the information provided ... is sufficient to meet [that] requirement[ ]' indicates that Congress deemed the identification numbers material to determining eligibility to register and to vote." *Browning*, 522 F.3d at 1174.Regardless of the method Defendant has elected to verify voter registrations in section 303(a)(5)(A)(iii), the United States has a statutory duty to investigate and review Pennsylvania's unredacted SVRL for compliance with the requirements of list maintenance under Section 303 of HAVA. *See* 52 U.S.C. § 21111.

Federal courts have rejected contentions that parallel those made by Defendant. Section 303's requirement that the written demand "contain a statement of the basis and the purpose therefor," 52 U.S.C. § 20703, "means only that the Attorney General [must] identify in a general way the reasons for [her] demand." *Coleman II*, 313 F.2d at 868 (citation omitted). "Clearly a sufficient statement would be the assertion that the demand was made for the purpose of investigating *possible violations* of a Federal statute." *Id.* (emphasis added); *see also Coleman I*, 208 F. Supp. at 200 (the written demand need only indicate the records were needed "to see if any federal laws were violated"). The United States plainly satisfied that requirement by stating, "[t]he

15

purpose of the request is to ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA and HAVA." Ex. 5 at 2.

Contrary to what Defendant argues, he is prohibited from using "any procedural device or maneuver," including their motions to dismiss, to challenge or "ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Lynd*, 306 F.2d at 226. No discovery or other tools ordinarily available under the Federal Rules of Civil Procedure may be used to question or examine "the reasons why the Attorney General considers the records essential...." *Id.* "Questions of relevancy or good cause or other like considerations" that may be assessed under other statutes to which the Federal Rules of Civil Procedure are applicable "are completely foreign to the summary proceeding" under Section 304 of the CRA. *Id.* at 228. Congress vested the Attorney General with broad authority to obtain federal election records under Title III of the CRA. *Coleman I*, 208 F. Supp. at 200-01. In sum, "the factual foundation for, or the sufficiency of, the Attorney General's" written demand under Section 303 "is not open to judicial review or ascertainment." *Lynd*, 306 F.2d at 226. Defendant's motion to dismiss the CRA claim for not meeting an elevated showing of statement of "the basis and the purpose" fails under the plain language of the statute, as applied by federal courts. Therefore, the motion should be denied.

### E. The United States is entitled to unredacted electronic copies of Pennsylvania's federal election records, including its SVRL.

Section 303 provides that "[a]ny record or paper required by [Section 301] to be retained and preserved shall" upon written demand by the Attorney General or her representative stating the basis and purpose, "be made available for inspection, reproduction, and copying...." 52 U.S.C. § 20703. "The incorporated standard of [Section 301] is sweeping." *Lynd*, 306 F.2d at 226. The question is only "open for determination" by the Court if "a genuine dispute... arises as to whether

16

or not any specified particular paper or record comes within this broad statutory classification of 'all records and papers… relating to any… act requisite to voting'…." *Id.*

Nevertheless, Defendant asks the Court to legislate limitations conspicuously absent from Title III. First, Defendant argues that no electronic records need to be produced to the United States. Instead, Defendant contends, "[t]he statute only mandates that covered records be made available for inspection, reproduction, and copying at the principal office of such custodian…." Mot., Doc. 92 at 20, 22 (citing 52 U.S.C. § 20703). Federal courts have concluded that Section 303 requires reproduction and copying, and 52 U.S.C. § 20704 provides privacy protections for documents produced to the Attorney General. For example, in *Lynd*, the court rejected a "mechanical objection" in which copying federal election records "would, at one time, have been a formidable thing." *Lynd*, 306 F.2d at 231. There, the court observed that "[m]odern photostating equipment will make short order of most of these demands…." *Id.* Pennsylvania's SVRL is required by HAVA to be in electronic form. It is axiomatic that providing the United States with an electronic copy of its SVRL will be much less burdensome than physically copying every individual registration record.

### F.    The United States has subject-matter jurisdiction to bring suit in the Federal District Court for the Western District of Pennsylvania to compel production of the SVRL.

The United States brought suit in the Federal District Court for the Western District of Pennsylvania to compel production of the SVRL.  Compl., Doc. 1 at 1.  Jurisdiction is proper in "The United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located…."  52 U.S.C. § 20705.

Federal courts have concluded that Section 303 requires reproduction and copying. *Lynd*, 306 F.2d at 231. Pennsylvania's SVRL is required by HAVA to be in electronic form. *See* 52 U.S.C. § 21083(a)(1)(A). The SVRL is available in electronic form throughout the commonwealth.

Over sixty years ago, the court in *Lynd* recognized that the technological innovation of the photocopying of documents obviated the defendants' demands for antiquated methods of reproduction of information. 306 F.2d at 231. So, in like measure, the custody, inspection, reproduction, and copying of Pennsylvania's SVLR in the twenty-first century in electronic form only eliminates the requirement for DOJ attorneys to physically appear in Harrisburg to review the SVRL. Since this requirement is no longer viable, initiation of suit in any federal district of Pennsylvania is proper, as access to Pennsylvania's SVLR is available through any secure DOJ internet link anywhere in the Commonwealth. Since the United States made a demand for inspection, reproduction, and copying of Pennsylvania's SVRL in the Western District Court, and the electronic SVRL is available in any federal judicial district in Pennsylvania, jurisdiction in the Western District is proper.

IV.    **THE UNITED STATES IS COMPLYING WITH APPLICABLE FEDERAL PRIVACY LAWS**

Defendant argues that privacy laws require dismissal of the United States' efforts to compel production of Pennsylvania's federal election records. *See* Mot., Doc. 74-1 at 29-32. He is mistaken. The United States does not dispute that the requirements of the Privacy Act and Section 304 of the CRA apply here, and it is complying with those requirements. The First Amendment does not prohibit the collection of voter information by the United States to assess compliance with HAVA and the NVRA. The requirement for a Privacy Impact Assessment under the E-Government Act does not apply to the investigation of Pennsylvania's list maintenance practices being conducted by the United States under HAVA and the NVRA. Similarly, the Driver's Privacy

Protection Act does not limit the United States' ability to conduct list maintenance activities. Each of these arguments will be addressed briefly in turn.

### A.    The United States is complying with the Privacy Act.

Defendant Movants argue that the United States must comply with the Privacy Act, and the United States is doing that. But Defendant goes even further, contending that "DOJ's request violates the Privacy Act." Mot., Doc. 92 at 24. There is no requirement in federal law requiring that the United States plead its compliance with the Privacy Act in every complaint it brings in which it may obtain records that contain personally identifiable information.[11] Rather, the Privacy Act and Section 304 of the CRA simply require that when protected information is obtained, it must be securely stored and not be subject to unauthorized dissemination or use.

The voter information that the Department is collecting is maintained according to the Privacy Act protections explained in the Civil Rights Division's Privacy Policy, which it has published online.[12] The full list of routine uses for this collection of information, which include investigations and enforcement actions, can be found in the Department of Justice's systems of records notices ("SORN"), most of which are identified with their citations in U.S. Dep't of Just., Privacy Act of 1974; System of Records, 82 Fed. Reg. 24147-01 (May 25, 2017), listed in a table at pages 24,148-24,151.[13]

---

[11] Indeed, governmental compliance with relevant laws is, absent a showing to the contrary, presumed. *See, e.g.*, *Carolina Tobacco Co. v. Bureau of Customs & Border Prot.*, 402 F.3d 1345, 1350 (Fed. Cir. 2005) ("Government officials are presumed to do their duty, and one who contends they have not done so must establish that defect by 'clear evidence.'") (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)).

[12] *See* U.S. Dep't of Just., Civ. Rts. Div., Privacy Policy ("Privacy Policy"), *available at* https://civilrights.justice.gov/privacy-policy (last visited Jan. 6, 2026).

[13] Additional SORNs issued by the Civil Rights Division to supplement the Department-wide privacy practices are titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); and 70 Fed. Reg. 43904-01

The statutes cited for routine use include the NVRA, HAVA, and the Civil Rights Act of 1960. *See* Privacy Policy, *supra* n.16. The United States made its requests pursuant to those statutes. The records in the system of records are kept under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling the responsibility assigned to the Civil Rights Division under the provisions of 28 C.F.R. §§ 0.50, 0.51.

To the extent Defendant is concerned about the transport of such data to the United States, the Department of Justice uses a secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). That system implements strict access controls to ensure that each user can only access their own files and is also covered by SORNs.[14]

Moreover, the Privacy Act does not bar the disclosure of Pennsylvania's SVRL to the United States, as Defendant contends. Mot., Doc. 92 at 23-24. The Privacy Act regulates federal agencies' collection, maintenance, and disclosure of information within their own systems of records—it does not restrict the ability of state actors to share information with federal agencies. The statute's plain language confirms that it applies only to federal "agencies" as defined in 5 U.S.C. § 552a(a)(1), meaning "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government." The Privacy Act "erects certain safeguards for an individual against an invasion of personal privacy," Pub. L. No. 93–579, § 2(b), 88 Stat. 1896 (1974), only within the scope of

---

(July 29, 2005). Defendant fails to recognize any of the Department-wide SORNs that permit the Department's collection of its SVRL, as was done previously in the Georgia and Texas examples discussed *supra* note 10.

[14] *See* JUSTICE/DOJ-014, Department of Justice Employee Directory Systems, last published in full at 74 Fed. Reg. 57194 (Nov. 4, 2009), and modified at 82 Fed. Reg. 24151, 24153 (May 25, 2017); JUSTICE/DOJ-002, Department of Justice Computer Systems Activity and Access Records, last published in full at 64 Fed. Reg. 73585-02 (Dec. 30, 1999), and modified at 66 Fed. Reg. 8425-02 (Jan. 31, 2001) and 82 Fed. Reg. 24147-01 (May 25, 2017).

federal agency record systems. There is no basis for Defendant to fail to disclose information to a federal agency for law enforcement purposes, particularly here, where the United States is complying with the provisions of the Privacy Act.

### B.    The E-Government Act does not prevent the United States from obtaining data supporting its HAVA and NVRA claims.

Defendant next argues that the demand for production of Pennsylvania's SVRL and other federal election records violates the E-Government Act. According to Defendant, the Voting Section is required to conduct a "privacy impact assessment," or "PIA," before initiating a new collection of information. *See* Mot., Doc. 92 at 25. Again, neither the E-Government Act nor interpretative caselaw support Defendant's assertion.

The E-Government Act neither authorizes dismissal of this case nor limits the United States' ability to bring suit. The E-Government Act is not applicable to the United States' enforcement of HAVA and the NVRA. The United States is not initiating a new process whereby it is contacting individuals for information as contemplated by Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II), which "includes any information in an identifiable form permitting the physical or online contacting of a specific individual, if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons, other than agencies, instrumentalities, or employees of the Federal Government." The request is made to Defendant to provide a voter registration list he already maintains pursuant to federal law to analyze Pennsylvania's federally required list maintenance.[15]

Applying the E-Government Act to enforcement of voting statutes would lead to an absurd

---

[15] When the Civil Rights Division began using ServiceNow (SNOW), a FedRAMP High-compliant Software as a Service (SaaS) cloud-hosting provider offering a suite of natively integrated applications designed to support Information Technology Service Management (ITSM), resource management, and shared support services, it prepared a Privacy Act

result in which thousands of Privacy Impact Assessments would have to be done whenever the Voting Section gathers any voter data to enforce the Voting Rights Act, NVRA, HAVA, or the Uniform and Overseas Citizens Voting Act (UOCAVA). Nothing in the E-Government Act or the purpose of the privacy provision in the Act suggests it was meant to encompass the enforcement provisions of all voting laws where voter data is examined. *See* Pub. L. No. 107–347, § 208 (a).

Even if the Court found the E-Government Act applied here—and it should not—Defendant has misplaced his reliance on *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Elec. Integrity*, 266 F. Supp. 3d 297 (D.D.C. 2017) ("*EPIC I*"). *See id. EPIC I* does not support dismissal of a complaint based on an alleged failure to conduct a PIA. In that case, the plaintiff sought to enjoin a federal commission's collection of state voter information, claiming the commission had failed to prepare a PIA under § 208 of the E-Government Act. The D.C. Circuit affirmed dismissal of the claim on standing grounds. *See Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371 (D.C. Cir. 2017) ("*EPIC II*"). In doing so, the *EPIC II* court explained that the Act "is intended to protect *individuals*—in the present context, voters—by requiring an agency to fully consider their privacy before collecting their personal information. EPIC is not a voter and is, therefore, not the type of plaintiff Congress had in mind." *Id*. at 378 (emphasis in original).

### C.  The Driver's Privacy Protection Act does not allow Defendant to deny the United States list maintenance data.

Defendant Movants' contention that dismissal is warranted because they allege that the United States has "failed to sufficiently allege its compliance with the Driver's Privacy Protection

---

Assessment ("PIA") as required by the E-Government Act. *See* Office of Privacy & Civ. Liberties, DOJ Privacy Impact Assessments, *available at* https://www.justice.gov/opcl/doj-privacy-impact-assessments (last visited Jan. 6, 2026).

Act ('DPPA')," likewise fails. Mot., Doc. 92 at 25. Under 18 U.S.C. § 2721(b)(1), disclosure is allowed "for use by any government agency … in carrying out its functions," including law enforcement or other regulatory enforcement purposes. This statutory language demonstrates that the DPPA was not intended to block all government access to DMV records.

The DPPA's prohibition is not implicated in the present case. The Department of Justice is a government agency performing a statutorily mandated function—verifying voter registration records and associated list maintenance activities. Under the governmental-function exemption in § 2721(b)(1), the United States' use of DMV-provided information is permissible, even though the information originates from a motor vehicle record. Transfers of DMV data to government agencies for official functions, including voter registration administration, are, therefore, consistent with the DPPA and fall squarely within the statute's exceptions.

## V.   THE UNITED STATES HAS VALID CLAIMS UNDER HAVA AND THE NVRA.

Defendant argues that the Court should dismiss the HAVA and NVRA claims brought by the United States to obtain federal election records, including Pennsylvania's SVRL, necessary to investigate and assess Pennsylvania's compliance with those statutes. *See* Mot., Doc. 92 at 25. As explained in the United States' introduction and its discussion of its CRA action, the claim under the CRA is dispositive of the relief being sought. The summary nature of an action to compel federal election records under Section 305 of the CRA, and the sweeping scope of that provision, obviate the need for additional relief under HAVA and the NVRA. If the Court agrees, the United States stipulates that it is appropriate to dismiss without prejudice its records requests under HAVA and the NVRA, which would be mooted by a CRA order of production. Nevertheless, the United States will briefly address its other two records claims.

Turning first to HAVA, Defendant points out that the text of the Act "does not contain a public record disclosure provision." Mot., Doc. 92 at 15. That is true, and it explains why the United States is entitled to the federal election records it has demanded through its HAVA claim. The only enforcement provision in HAVA authorizing a cause of action in federal court is found at Section 401, which provides that enforcement of the Act is vested solely in the Attorney General. *See* 52 U.S.C. § 21111. Senator Dodd of Connecticut, a HAVA conferee and sponsor, recognized that the Act did not have a private right of action. *See* 148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002). As a result, the Supreme Court has held that private parties may not enforce Section 303, including requests for records under that provision. *See Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (per curiam) ("Respondents, however, are not sufficiently likely to prevail on the question whether Congress has authorized the District Court to enforce § 303 in an action brought by a private litigant to justify the issuance of a TRO."). Congress unsurprisingly did not include a public disclosure requirement, such as the one included in Section 8(i) of the NVRA, because unlike the NVRA, private parties cannot enforce HAVA.

However, that does not leave the United States without recourse to seek list maintenance records under HAVA. Rather, it may do so through the ordinary discovery process necessary to prosecute its Section 303 claim. Here, the CRA cases are instructive. Under the CRA, election officials are required to preserve and produce federal election records "to facilitate the investigation … before suit is filed." *Citizens Councils*, 187 F. Supp. at 847. By comparison, the demand for records that the United States has made under HAVA falls into the conventional realm of discovery: "The chief purpose of [Federal] Rule [of Civil Procedure] 34 … is to give a party litigant the right to have records produced after suit has been filed." *Id.* That is all the United States is doing in this case. It seeks records necessary to establish a claim under HAVA, following its

investigation into whether Defendants are violating the list maintenance requirements in Section 303(a)(4) of the Act. Again, the expedited and comprehensive nature of relief under the CRA renders the HAVA claim unnecessary if the Court enters an order compelling production of the federal election records.

Defendant's motion to dismiss the NVRA claim also must be denied. The plain text of Section 8(i) of the NVRA requires states to make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters…" 52 U.S.C. § 20507(i)(1). That includes the voter registration list, used to ensure the accuracy of the official list of eligible voters, and is the some of the best evidence of a state's voter list maintenance efforts. The United States has properly alleged in its Complaint that based upon the information currently available to it—that is, without the benefit of the federal election records that Defendant seeks to deny—Defendant is impeding efforts to ensure that Pennsylvania's list maintenance efforts comply with federal law.

It is unnecessary to address in any detail the recitation of authorities Defendant offers alleging that Defendants can deny the United States access to everything but the publicly available federal election records. *See* Mot., Doc. 92 at 9-10, 21. All the decisions that Defendant summarizes, as well as the citation to an amicus brief filed by the United States in a different case, involved efforts by *private organizations* to obtain that data and accordingly are readily distinguishable from this action. Here, the United States is seeking certain federal election data in the SVRL in its efforts to enforce the NVRA in Pennsylvania. In contrast to records produced to a private entity or individual, records produced to the United States will be subject to federal privacy protections in place at the Department of Justice. *See supra*, Part IV. Consequently, the United States has adequately pled claims for federal election records under HAVA and the NVRA.

## VI.    CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant its

motion to compel production of federal election records under Section 305 of the CRA, and to

deny the Motion to Dismiss (Doc. 92).

Dated: January 12, 2026                                        Respectfully submitted,


                                                               HARMEET K. DHILLON
                                                               Assistant Attorney General
                                                               Civil Rights Division

                                                               ERIC V. NEFF
                                                               Acting Chief, Voting Section
                                                               Civil Rights Division


                                                               /s/ David D. Vandenberg
                                                               DAVID D. VANDENBERG
                                                               Trial Attorney, Voting Section
                                                               U.S. Department of Justice
                                                               4 Constitution Square
                                                               150 M Street, NE, Room 8.143
                                                               Washington, D.C. 20002
                                                               Telephone: (202) 307-2767
                                                               David.Vandenberg@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 12, 2026, a true and correct copy of the foregoing

document was served via the Court's ECF system to all counsel of record.


<u>*/s/ David D. Vandenberg*</u>
David D. Vandenberg