# Exhibit 2

EXHIBIT 2



**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF STATE**

July 23, 2025

*Via Electronic Mail*

Maureen Riordan
Acting Chief, Voting Section
U.S. Department of Justice, Civil Rights Division
4 Constitution Square
150 M Street NE, 8th Floor
Washington, DC 20002
Voting.section@usdoj.gov

Dear Ms. Riordan:

I write in response to your letter dated June 23, 2025, posing various questions regarding the Help America Vote Act of 2002 ("HAVA").[1] As Pennsylvania's chief election official, I take seriously the obligations under that law to ensure that all eligible voters have access to the ballot here in the Commonwealth, and the responsibilities it imposes on our county election officials to faithfully maintain our voter rolls. Although it is our local election officials who are responsible for maintaining their voter lists, the Pennsylvania Department of State ("Department") works diligently with these 67 counties to help them ensure that all electoral processes are fully compliant with federal and Pennsylvania laws, including HAVA.

Please allow me to respond to your questions in turn.

*1) Describe how the Commonwealth processes new applications to register to vote for elections for federal office, as required by HAVA Section 303.*

As a starting point, please note that it is the voter registration commission in each county that is accorded sole authority under Pennsylvania law to adjudicate voter registration applications.[2] Specifically, Pennsylvania voter registration applications are received and processed by the 67 county voter registration commissions pursuant to the Pennsylvania voter registration law.[3] The

---

[1] 52 U.S.C. § 20901 *et seq.*
[2] 25 Pa.C.S. § 1203.
[3] 25 Pa.C.S. §§ 1101–1906.

Secretary of the Commonwealth
Room 302 North Office Building I 401 North Street I Harrisburg, PA 17120-0500 I 717.787.6458 I F 717.787.1734 www.dos.pa.gov

same registration qualifications and processing system apply to elections for local, state, and federal office.

As required by federal law, all voter lists are maintained in a computerized system. The Department manages Pennsylvania's Statewide Uniform Registry of Electors ("SURE" or "SURE System"), which is used not only to maintain our rolls but to process applications to register to vote. Whether the voter application is received on paper or by another computerized system, the information submitted by the applicant is typed or transferred into the SURE System for review and decision by county election authorities.

If an application is complete and the applicant is qualified, the county official approves the registration and adds the applicant to SURE as an active voter.[4] If the application is incomplete, the applicant is notified, and provided an opportunity to supplement the application until the county has undertaken "reasonable efforts" to determine the necessary missing information.[5] If the information on the application indicates that the voter resides in a different Pennsylvania county, the application is forwarded to that county.[6] If the application is not approved, a rejection notice is sent advising the applicant of the right to appeal pursuant to the voter registration law and Election Code.[7] The counties mail a voter registration card to all approved applicants.[8]

More information on voting registration and application methods can be found by referencing the most recent report issued by the Department on the Administration of Voter Registration in Pennsylvania.[9]

2) *Describe the process by which Pennsylvania assigns a unique identifier to each legally registered voter in Pennsylvania, as required by HAVA Section 303(a)(l)(A).*

Upon a county's approval of a voter registration application, the approved registrant is added to SURE, which assigns a voter ID number to each registrant.[10] The ID number includes a county-specific suffix to indicate which county the person is registered in, which is changed if a registrant moves and re-registers in a new county within Pennsylvania.

3) *Describe how the statewide voter registration list is coordinated with the databases of other agencies in the Commonwealth, as required by HAVA Section 303(a)(l)(A). Provide the name of each database used for coordination, and describe the procedures used for the*

---

[4] 25 Pa.C.S. § 1328(b).
[5] 25 Pa.C.S. § 1328(b)(2)(i).
[6] 25 Pa.C.S. § 1328(b)(1).
[7] 25 P.S. § 3073, 25 Pa.C.S. § 1328(b).
[8] 25 P.S. § 1328(c).
[9] Pa. Dep't of State, Administration of Voter Registration in Pennsylvania, 2024 Annual Report to the Pennsylvania General Assembly (June 30, 2025), available at https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/reports/voter-registration/dos_voter_registration_report_2024_final.pdf.
[10] 25 Pa.C.S. § 1328(c)(1).

2

*coordination as well as how often the databases are coordinated with the statewide voter registration list.*

The SURE system is coordinated with other state agency databases, including:

- The Pennsylvania Department of Transportation ("PennDOT") driver license database, for receiving and updating voter registrations, as well as to confirm and query the DLN/SSN4 provided by applicants; and
- The Pennsylvania Department of Health registry of deaths, for purposes of canceling deceased voters.

4) *Describe the process by which any duplicate voter registrations are identified and removed from the statewide voter registration list under HAVA Section 303(a)(2)(B)(iii). Please include an explanation of how the Commonwealth determines what constitutes a duplicate voter registration record.*

Pennsylvania's voter registration forms request that the applicant indicate whether it is a new registration, or a change of name, address, or party; if the applicant correctly marks this part of the application it assists in reducing duplicate entries.

Regardless of the applicant's designation, when processing a registration, SURE performs an automated check for possible duplicates, using information such as the applicant's first and last names, and birthdate. County personnel can also compare the SSN4 or Driver's License number included with the form in a manual duplicate query procedure. The specific procedure to be used is set forth in the regulations on the Establishment, Implementation and Administration of the Statewide Uniform Registry of Electors ("SURE Regulations").[11]

The investigations carried out by the county voter registration commission may result in sending correspondence which triggers inactive status or cancellation as a duplicate.[12] Additional information on duplicate voters can be found in response to Question 8 below.

5) *Describe the process by which voters who have been convicted of a felony and are incarcerated are (a) identified and, (b) if applicable under Commonwealth law, removed from the statewide voter registration list under HAVA Section 303(a)(2)(A)(ii)(I).*

Under Pennsylvania law, felons are not permitted to vote only during the period of their incarceration; the specific mechanism for this is disqualification for an absentee or mail-in ballot (and the person's inability to vote in person at the local polling place).[13] Upon release from

---

[11] 4 Pa. Code § 183.6(a). The SURE Regulations are found at 4 Pa. Code ch. 183.

[12] 4 Pa. Code § 183.6(a)(6), (7), (d).

[13] 25 P.S. §§ 2602(w), (z.6), 3146.1, 3150.11. While the Election Code's disqualification is to "persons confined in a penal institution," the Pennsylvania Attorney General has interpreted that to mean only those who are imprisoned as a result of a felony conviction (as opposed to pretrial detainees or those confined only for misdemeanor offenses). Op. Pa. Att'y Gen. No. 1974-47.

confinement (including on parole or probation), such individuals are once again permitted to vote.

The text of the voter registration law[14] purports to disqualify from registration anyone who has been incarcerated for a felony within the past five years, but that five-year exclusion was declared unconstitutional and is not in force.[15] Under controlling case law, incarcerated felons are entitled to be registered to vote, but may not actually cast a ballot until their release.[16]

Accordingly, because Pennsylvania law does not provide a basis to cancel a person's voter registration as a result of a felony conviction, there is no need for any systematic cancellation process for that purpose. Counties instead can place these records in a hold status during the period of incarceration to prevent unlawful voting.

### 6) *Describe the process by which deceased registrants are identified and removed from the statewide voter registration list under HAVA Section 303(a)(2)(A)(ii)(II).*

County registration commissions have the sole authority to cancel registrations of deceased electors. To do so, they use a report provided by the Pennsylvania Department of Health, obituaries and other sources as permitted by the Pennsylvania voter registration law.[17]

The Pennsylvania Department of Health reports all deaths of adults over age 18 to the county voter registration commission to facilitate prompt cancellation of deceased voters' registrations (the "DOH Report").[18] The Department receives the DOH Report twice per month. It then transmits the DOH Report file to county voter registration commissions through the SURE System. County commissions are required to query the Department of Health's DOH Report at least monthly.[19] If records on the report match a deceased elector in their jurisdiction, the commission shall cancel the voter record.[20]

---

[14] 25 Pa.C.S. § 1301.

[15] *Mixon v. Commw.*, 759 A.2d 442, 451 (Pa. Cmwlth. Ct. 2000) *aff'd* 783 A.2d 763, 763 (Pa. 2001). *See also Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 185 (3d Cir. 2017) ("The unambiguous text of the HAVA simply does not require election officials to purge voter rolls of incarcerated felons.").

[16] The exception to this general rule is that those convicted for committing election-related crimes are disenfranchised for a period of four years following conviction, with the person's voter registration to be canceled. 25 P.S. § 3552. In this instance, the voter registration cancellation would be specifically triggered as the trial court would indicate that in its order and communicate directly with county voter registration authorities. *See, e.g., Commw. v. Thurman*, No. CP-51-CR-553-2018 (Phila. Cnty. Ct. Com. Pl. May 9, 2018) (order imposing sentencing following guilty plea for election offenses includes the annotation "Defendant not eligible to VOTE until MAY 9, 2022").

[17] 25 Pa.C.S. §§ 1505, 1901(a)(2).

[18] 25 Pa.C.S. § 1505(a).

[19] 4 Pa. Code § 183.6(d)(1)(iii).

[20] 25 Pa.C.S. §§ 1505(a), 1901(a)(2).

The county voter registration commissions are also permitted to use published newspaper obituaries or probate records to cancel a deceased elector's registration.[21]

### 7) Describe all technological security measures taken by the Commonwealth to prevent unauthorized access to the statewide voter registration list, as required by HAVA Section 303(a)(3).

Although voting systems are maintained by the county boards of election, the Department maintains some election-related infrastructure, including the SURE System. The Department supervises and controls credentials to the SURE System.

The Department provides access only through individualized credentials, whether to county or Department personnel. Moreover, counties access the SURE system using computers provided by the Department, and they are maintained in the same manner that any Commonwealth user machine is maintained. Users undergo IT Security Training and comply with identity and access management policies required by the Commonwealth. Additional instruction to counties regarding password protection is included in the Department's guidance.[22]

Like all Commonwealth information systems, access is controlled with state-of-the-art security techniques, which are subject to ongoing improvements for enhanced security. In addition, the devices that county election officials use to access the SURE system are configured in a completely locked down mode and prevent access to programs not essential for the SURE system, including access to Internet.

### 8) Describe the process by which voters who have moved outside the Commonwealth and subsequently register to vote in another state are identified and removed from the statewide voter registration list, under HAVA Section 303(a)(4)(A).

Again, Pennsylvania's 67 county registration commissions are responsible for voter list maintenance. The Department works with the counties to assist each county in fulfilling its responsibilities under Pennsylvania and federal law, specifically Section 8 of the NVRA and Section 303(a)(4)(A) of HAVA.

Removal and cancellation of voter registration are governed by the voter registration law and SURE Regulations.[23] As contemplated by the NVRA, the Department, through its membership in the Electronic Registration Information Center ("ERIC"), receives data through the United States Postal Service's National Change of Address program, and forwards it to the county voter

---

[21] 25 Pa.C.S. § 1505(b).

[22] *See, e.g.*, Pa. Dep't of State, Guidance on Electronic Voting System Preparation and Security at 4–5 (Oct. 13, 2020), available at https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/directives-and-guidance/2020-PADOS-Guidance-Electronic-Voting-System-Security.pdf. Although presented in the context of security for electronic voting systems, the principles apply equally to access to SURE.

[23] 25 Pa.C.S. § 1901 and 4 Pa. Code ch. 183.

5

registration commissions. In accordance with the SURE Regulations,[24] if a county voter registration commission receives information that a voter has moved out of the county (including to another Pennsylvania county, or out-of-state), the commission sends to the registrant, at the address of registration (the "old" address), a Notice of Change of Address ("NCOA") via forwardable mail with a postage prepaid preaddressed return form by which the registrant may verify or correct the address information.

The Department assists the counties in conducting several list maintenance programs to ensure accuracy of the voter registration rolls (including removal of those who have moved to another state):

    a)    Five-Year Notices. Counties send these notices to voters who have not voted or had other contact for a period of five years. These voters are marked as inactive and set for cancellation if there is no further contact and affirmation of continued residence before the date of the second federal general election.

    b)    National Change of Address Notice. Counties send these notices to voters for whom the U.S. Postal Service reported a move. If the voters do not reply to either confirm or deny the move, an Address Verification Notice is sent; lack of response to the AVN will trigger inactive status and cancellation following the second federal general election.

    c)    ERIC Duplicate Notices (out of state). Counties evaluate potential matches, send a notice, and mark the voter as inactive where ERIC data identifies that the same person may be registered in multiple jurisdictions.

    d)    ERIC In-State Moves. Where ERIC data suggests a person has moved without updating voter registration, the county sends a notice to verify continued residence. This notice triggers inactive status (and potential cancellation if no affirmation of residence is received before the second federal general election).

    e)    ERIC Out-of-State Moves. Counties use ERIC data where a Pennsylvania registered voter appears to have a more recent voter registration from another member state. In this situation, the county sends a notice to verify continued residence. This notice triggers inactive status (and potential cancellation if no affirmation of residence is received before the second federal general election).

    f)    Address Verification Notices. When another type mailing to a voter is returned by the post office as undeliverable, the counties send an Address Verification Notice.

These programs are described in greater detail in the Department's annual report on voter registration.[25]

As noted above, as part of the Department's membership in ERIC, it receives and distributes data on potential duplicate voter records to county officials. Because ERIC is a consortium of

---

[24] 4 Pa. Code § 183.6(d)(5).

[25] Pa. Dep't of State, Administration of Voter Registration in Pennsylvania, 2024 Annual Report to the Pennsylvania General Assembly (June 30, 2025), available at https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/reports/voter-registration/dos_voter_registration_report_2024_final.pdf.

member states, and because there is no national voter registration database, ERIC is in a unique position to compare, without access to personally identifiable information, the verified data provided by member states to locate records of voters who may be potentially registered in more than one state. It also provides a report on voters who may be registered in more than one Pennsylvania county. These pairs of voter records are identified for further review by county officials, who determine whether the same person is potentially registered in more than one jurisdiction. If the county identifies the registrant as potentially duplicated in another jurisdiction, a notice is sent to the voter's address on record. Further information about this program can be found in the annual report on voter registration.[26]

In 2024, Pennsylvania counties sent out over 502,067 notices to voters in connection with list maintenance activities pursuant to the NVRA and Pennsylvania law. With respect to the NCOA process specifically, Pennsylvania counties mailed 130,119 NCOA notices in 2024. The Department provides counties with NCOA information in June of each year. Counties then begin a two-step mailing process. First, counties send an initial mailing based on data of individuals who have moved as reflected in NCOA data. Those notices are sent via forwardable mail to the address of registration and offer the voter the opportunity to confirm their address or update it. Based on the response, county election officials then update their records accordingly. Following this process, county election officials send a second notice to voters who either: did not respond to the first notice or whose initial notice was returned as undeliverable. This notice, referred to as an Address Verification Notice or AVN, would not typically be sent until approximately 30 days after the initial notice. With the mailing of the AVN, the record is marked Inactive, triggering the waiting period required by Sections 8(b), (c) & (d) of the NVRA before the voter record can be removed from the registration rolls. Information on the number of voter cancellations by Pennsylvania counties can be found in the tables found on pages 23–27 and 87–92 of the 2024 annual report on voter registration.[27]

### 9) *Describe the process by which registrants who are ineligible to vote due to non-citizenship are identified and removed from the statewide voter registration list.*

All registrants must affirmatively answer "yes" to the question "Are you a citizen of the United States."[28] An individual who states that they are not a U.S. citizen is not qualified to vote and their application would be required to be rejected by the county voter registration commission.[29]

---

[26] Pa. Dep't of State, Administration of Voter Registration in Pennsylvania, 2024 Annual Report to the Pennsylvania General Assembly (June 30, 2025), available at https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/reports/voter-registration/dos_voter_registration_report_2024_final.pdf.

[27] Pa. Dep't of State, Administration of Voter Registration in Pennsylvania, 2024 Annual Report to the Pennsylvania General Assembly (June 30, 2025), available at https://www.pa.gov/content/dam/copapwp-pagov/en/dos/resources/voting-and-elections/reports/voter-registration/dos_voter_registration_report_2024_final.pdf.

[28] 52 U.S.C. § 20508(b)(2)(A), 4 Pa. Code § 183.1.
[29] 25 Pa.C.S. §§ 1301, 1328.

False statements misrepresenting an applicant's citizenship on a voter registration form are crimes punishable under both state[30] and federal laws.[31]

Neither Pennsylvania nor federal law requires a voting registration applicant to provide documentary proof of citizenship. To the extent any county registration commission or the Department becomes aware that an individual who is not a U.S. citizen has registered or attempted to vote, where appropriate, the county may cancel such registration and refer the matter to law enforcement for handling.

*10) HAVA requires the Commonwealth to verify voter registration information by mandating that applicants provide certain information under HAVA Section 303(a)(5). Please provide a copy of the voter registration application(s) utilized for in-person voter registration, a link to the Commonwealth's online voter registration application, and, if applicable, the voter registration application used for same-day registration.*

Please refer to the following:

- Voter Registration Mail Application (the same form is accepted for in-person registration):
  https://www.pavoterservices.pa.gov/documents/voterapplication_english.pdf
- Link to Online Voter Registration:
  https://www.pavoterservices.pa.gov/pages/VoterRegistrationApplication.aspx
- Pennsylvania does not have same-day voter registration.

*11) Please describe the verification process under HAVA Section 303(a)(5) that election officials perform to verify the required information supplied by the registrant. Please describe what happens to the registration application if the information cannot be verified.*

As noted on the voter registration applications, the applicant is required to provide a Pennsylvania driver's license number (or non-driver ID card number) and/or the last four digits of their Social Security number, or to check a box that the person has not been assigned either type of number consistent with Section 303(a)(5)(A) of HAVA.

County voter registration commission staff enter the data from applications (or receive them electronically) and query them against the PennDOT database which will return a match or non-match. In the case of an applicant providing a driver's license number, the query is based on the applicant's last name (first two characters only), date of birth, and the driver's license number.

---

[30] 25 Pa.C.S. §§ 1703 (providing for a fine up to $10,000 and five years in prison for improper registration), 1714 (incorporating criminal penalty provisions of the Crimes Code at 18 Pa.C.S. §§ 4902, 4903, and 4904) relating to perjury, false swearing, and unsworn falsification to authorities).

[31] 18 U.S.C. §§ 1015(f) (imposing fines and up to five years in prison for misrepresenting one's citizenship on a voter registration application), 3559 and 3571 (setting fines at $250,000 for class D felonies).

For applicants providing an SSN4, the query uses the first, middle and last names, birthdate, and the last four digits of the Social Security number.

County voter registration authorities adjudicate the sufficiency of the ID number provided "in accordance with State law."[32] There are four qualifications to register to vote under Pennsylvania law: age, citizenship, residence, and incarceration status.[33] The voter registration law further offers four grounds to reject a voter registration application: an incomplete application, non-qualification, non-entitlement to a transfer or address change, and non-entitlement to a name change.[34] "Failure to match ID number" is not among the bases offered in Pennsylvania law to reject a voter registration application. If the "information cannot be verified,"[35] SURE prompts the county voter registration commission to review the application for typographical errors and/or contact the voter to clarify and fix the discrepancy, but the county ultimately would approve the voter registration application—provided that there are no other irregularities in the application, or independent grounds to reject the application.[36] With respect to mail-ballot voters, the Election Code requires that any such voter whose submission of ID numbers (DLN or SSN) did not match against a government database must provide proof of identification within six days of the election, or their ballot will not be counted.[37] All in-person voters must present photo or non-photo ID the first time they appear to vote in an election district.[38]

---

[32] 52 U.S.C. § 21083(a)(5)(A)(iii).

[33] 25 Pa.C.S. § 1301(a), *accord* Pa. Const. art. VII, § 1. As noted above, controlling case law holds that even inmates incarcerated for a felony may be registered to vote. *Mixon v. Commw.*, 759 A.2d 442, 451 (Pa. Cmwlth. Ct. 2000) *aff'd* 783 A.2d 763, 763 (Pa. 2001).

[34] 25 Pa.C.S. § 1328(b)(2).

[35] We understand the reference in this question to "verification" to mean a positive match between the information provided in the voter registration application, including the ID number, and the corresponding entry in a PennDOT or Social Security database.

[36] 25 Pa.C.S. § 1328.

[37] 25 P.S. § 3146.8(h).

[38] 25 P.S. § 3050. Under an injunction, in-person voter ID is governed by the pre-2012 version of 25 P.S. § 3050. The *Applewhite* decision in 2014 enjoined enforcement of the changes wrought by Act 18 of 2012 as to in-person voting only, while leaving in place its changes to the identification requirements for absentee voting. *Applewhite v. Commw.*, No. 330 M.D. 2012, 2014 WL 184988, at *27 (Pa. Cmwlth. Jan. 17, 2014).

The language of that statute provides

> (a) At every primary and election each elector who appears to vote in that election district for the first time and who desires to vote shall first present to an election officer one of the following forms of photo identification . . . .
>
>                 \*    \*    \*
>
> (a.1) Where the elector does not have a photo identification as provided for in subsection (a), the elector shall present for examination one of the following forms of identification that shows the name and address of the elector . . . .

9

*12) Provide a copy of the current agreement, under HAVA Section 303(a)(5)(B)(i), between the Commonwealth's chief election official and the Commonwealth's motor vehicle authority.*

A copy of this agreement between the Department and the Pennsylvania Department of Transportation is attached.

*13) Provide a copy of the current agreement between the official responsible for the Commonwealth's motor vehicle authority and the Commissioner of Social Security Administration under HAVA Section 303(a)(5)(B)(ii).*

A copy of this agreement between the Commissioner of Social Security and the Pennsylvania Department of Transportation is attached.

*14) Under HAVA Section 303(b), describe the Commonwealth's requirements for an individual to vote if the individual registered to vote by mail and has not previously voted in an election for federal office in the Commonwealth.*

HAVA Section 303 imposes the requirement that a voter present photo identification, or a utility bill, bank statement, government check, paycheck, or other government document showing name and address to an official at the polling place (if voting in person) or submit a copy of such a document if voting by mail.[39] This is required of all voters who register to vote by mail, but have not previously voted in an election for federal office.[40] HAVA further provides a carve-out for several classes of voters, including (A) registrants who provided an ID document with their mail voter registrant application, (B) registrants who provided a driver's license or Social Security number which matched the PennDOT or SSA database, or (C) overseas citizen and military voters, among others.[41]

The Pennsylvania Election Code contains strict requirements that go beyond HAVA's requirements for first-time voters who register by mail. In-person voters must provide photo or non-photo identification not only at their first time voting in a federal election but also the first time voting in a new election district (i.e., a new local voting precinct—essentially, every time the person moves and re-registers at a new residence).

Pennsylvania further mandates that absentee and mail-in voters provide proof of identification for every election; otherwise their ballots will not be counted.[42] Proof of identification can be

---

25 P.S. § 3050(a), (a.1) (pre-2012 version).
[39] 52 U.S.C. § 21083(b)(2).
[40] 52 U.S.C. § 21083(b)(1).
[41] 52 U.S.C. § 21083(b)(3).
[42] 25 P.S. §§ 3146.2(e.2), 3146.2b(d), 3146.5(b)(1), 3146.8(h)(2), 3150.12b(c), 3150.15 (requiring proof of identification for absentee and mail-in voters).

provided through, *inter alia*, a match of a voter's SSN4 or DLN.[43] Absentee or mail-in voters who fail to provide matching numbers must provide other proof of identification to their county board of elections within six days following an election or their ballot will not count for that election.[44]

*   *   *

We hope the information provided here is helpful. The Department and Pennsylvania's 67 counties engage in great efforts to ensure that Pennsylvania's voter rolls are accurate and that all requirements of Pennsylvania and federal law are faithfully followed. Please let us know if you have any further questions.

Sincerely,

*[signature]*

Al Schmidt
Secretary of the Commonwealth

Enclosures

---

[43] 25 P.S. § 2602(z.5)(3), *cf.* 52 U.S.C. § 21083(b)(3)(B).
[44] 25 P.S. § 3146.8(h).