**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               *Plaintiff*,<br><br>    *v.*<br><br>AL SCHMIDT, in his official capacity as Secretary of the Commonwealth, and the COMMONWEALTH OF PENNSYLVANIA,<br><br>               *Defendants.* | Case No. 25-cv-1481<br>(Hon. Cathy Bissoon) |

**PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS AND MIKE CROSSEY'S [PROPOSED] MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 3

   I.  Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers. ........................................................ 3

   II.  DOJ has embarked on a nationwide campaign to collect voter data held by states............... 4

   III. DOJ sues Pennsylvania as part of its effort to create a national voter list. ........................... 5

LEGAL STANDARD ...................................................................................................... 6

ARGUMENT ................................................................................................................... 7

   I.  DOJ has not stated any claim entitling it to Pennsylvania's statewide voter registration list. ............................................................................................................ 7

      A.  The NVRA does not entitle DOJ to Pennsylvania's full unredacted voter list............... 7

      B.  HAVA does not entitle DOJ to Pennsylvania's full unredacted voter registration list. ............................................................................................... 10

      C.  The Civil Rights Act of 1960 does not entitle DOJ to Pennsylvania's voter registration list. ............................................................................................... 12

         1.  Title III was designed for investigations aimed at protecting the right to vote. ....... 12

         2.  DOJ lacks a proper basis and purpose to demand records under Title III. ............... 13

         3.  Title III does not prohibit redacting sensitive voter information. ............................ 15

   II.  DOJ has not stated any other claim for relief. ....................................................... 16

CONCLUSION ............................................................................................................... 17

# TABLE OF AUTHORITIES

**CASES**                                                                                   **Page(s)**

*In re Admin. Subpoena No. 25-1431-019* ,
    No. 1:25-MC-91324-MJJ, 2025 WL 2607784 (D. Mass. Sep. 9, 2025) ......................... 15

*Ala. ex rel. Gallion v. Rogers*,
    187 F. Supp. 848 (M.D. Ala. 1960) ....................................................................... 12

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
    570 U.S. 1 (2013) ................................................................................................. 3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................. 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................... 17

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
    854 F.3d 683 (D.C. Cir. 2017) ............................................................................ 13

*CFPB v. Source for Pub. Data, L.P.*,
    903 F.3d 456 (5th Cir. 2018) .............................................................................. 13

*Foster v. Love*,
    522 U.S. 67 (1997) ............................................................................................... 3

*Husted v. A. Philip Randolph Inst.*,
    584 U.S. 756 (2018) ............................................................................................. 3

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962) ................................................................... 13, 14, 15

*McCloskey v. Mueller*,
    446 F.3d 262 (1st Cir. 2006) ......................................................................... 12, 17

*Morrow v. Balaski*,
    719 F.3d 160 (3d Cir. 2013) ................................................................................. 6

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993) ............................................................................... 2

*Philips v. County. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008) ............................................................................... 17

*Project Vote, Inc. v. Kemp*,
    208 F. Supp. 3d 1320 (N.D. Ga. 2016) ............................................................... 9

*Project Vote/Voting for Am., Inc. v. Long*,
    682 F.3d 331 (4th Cir. 2012) .............................................................................. 9

*Project Vote/Voting for Am., Inc. v. Long*,
    752 F. Supp. 2d 697 (E.D. Va. 2010) .............................................................. 10

*Pub. Int. Legal Found. v. Boockvar*,
    370 F. Supp. 3d 449 (M.D. Pa. 2019) ............................................................. 16

*Pub. Int. Legal Found. v. Chapman*,
    595 F. Supp. 3d 296 (M.D. Pa. 2022) ............................................................... 9

*Pub. Int. Legal Found., Inc. v. Bellows*,
    92 F.4th 36 (1st Cir. 2024) ...................................................................... 1, 8, 15

*Pub. Int. Legal Found., Inc. v. Matthews*,
    589 F. Supp. 3d 932 (C.D. Ill. 2022) ................................................................. 9

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*,
    996 F.3d 257 (4th Cir. 2021) .............................................................................. 9

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
    120 F.4th 390 (4th Cir. 2024) ............................................................................ 3

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
    335 F.R.D. 54 (M.D. Pa. 2020) ........................................................................ 12

*In re Subpoena No. 25-1431-014*,
    No. MC 25-39, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025) ......................... 14

*True the Vote v. Hosemann*,
    43 F. Supp. 3d 693 (S.D. Miss. 2014) .............................................................. 10

*Voter Reference Found., LLC v. Torrez*,
    No. 24-2133, 2025 WL 3280300 (10th Cir. Nov. 25, 2025) .......................... 1, 9

## US CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 4, cl. 1 ............................................................................... 2, 3

## FEDERAL STATUTES

5 U.S.C. § 552a ................................................................................................. 15

18 U.S.C. § 2721 ............................................................................................... 15

52 U.S.C. § 20501 ............................................................................................... 3

52 U.S.C. § 20507 ........................................................................... 3, 7, 10, 14, 16

52 U.S.C. § 20701 ......................................................................................... 12, 13

52 U.S.C. § 20703 ............................................................................................. 13

52 U.S.C. § 21083 ........................................................................... 3, 11, 15–16

52 U.S.C. § 21085 ......................................................................................... 4, 14

52 U.S.C. § 21111 ............................................................................................. 11

## STATE STATUTES AND REGULATIONS

4 Pa. Code § 183.14 ..................................................................................... 1, 8, 15

21-A M.R.S. § 196-A ........................................................................................ 8

25 Pa. Cons. Stat. § 1404 ........................................................................... 1, 8, 15

## OTHER AUTHORITIES

11 C.F.R. § 9428.7 ........................................................................................ 5, 16

Brief for the United States as Amicus Curiae in Support of Plaintiff-Appellee, *Pub. Int. Legal Found., Inc.,* 92 F.4th 36 (No. 23-1361), 2023 WL 4882397 ...................... 8, 9

Brief for the United States as Amicus Curiae, *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (No. 11-1809), 2011 WL 4947283 .................................... 9

Fed. R. Civ. P. 12 ............................................................................................ 6

H.R. Rep. No. 86-956 (1959) ......................................................................... 12, 13

H.R. Rep. No. 107-329 (2001) ..................................................................... 2, 4, 11

Karen L. Shanton, Cong. Rsch. Serv., IF13056, The Election Administrating and
Voting Survey (EAVS): Overview and 2024 Findings (2025)............................................. 5

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, Tracker of Justice
Department Requests for Voter Information, Brennan Ctr. for Just. (Dec. 12,
2025), https://perma.cc/G6R9-HKCX ................................................................................ 4

## INTRODUCTION

The United States Department of Justice ("DOJ") seeks to build a nationwide voter registration list, a scheme not authorized by Congress and contrary to federal laws assigning states the responsibility for maintaining voter registration. To accomplish this task, DOJ has demanded that dozens of states turn over their full, unredacted voter lists, even though state laws often shield voter information on those lists—most notably driver's license numbers, partial social security numbers, dates of birth, and signatures—from disclosure. Pennsylvania law is no exception: it dictates that neither a voter registrant's driver's license number nor the last four digits of their social security number should be "made available" for disclosure. 4 Pa. Code § 183.14(c)(3); *see also* 25 Pa. Cons. Stat. § 1404(a)(3) (protecting voters' signatures and registration numbers from disclosure).

Because Pennsylvania—like nearly every other state contacted by DOJ—has so far refused to comply with its demands, DOJ has amplified its pressure campaign by filing suit to forcibly obtain the state's voter registration list. Its Complaint cites three authorities in support of its demand—the National Voter Registration Act ("NVRA"), the Help America Vote Act ("HAVA"), and Title III of the Civil Rights Act of 1960—but none require the production of Pennsylvania's unredacted voter registration list. Courts have broadly (and recently) recognized that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in . . . [v]oter [f]ile[s]." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) ("*PILF*"); *see also Voter Reference Found., LLC v. Torrez*, No. 24-2133, 2025 WL 3280300, at *9 n.14 (10th Cir. Nov. 25, 2025) (similar). HAVA does not contain *any* disclosure provision. Title III of the Civil Rights Act also fails to support DOJ's claim because its demand is not supported by an adequate basis or purpose, and, as with the NVRA, nothing in the text of Title III prevents states from redacting the sensitive voter information DOJ seeks.

Tellingly, in more recent lawsuits seeking similar voter data from other states, DOJ has abandoned all claims under the NVRA and HAVA, relying solely on Title III of the Civil Rights Act.[1] And in each case DOJ has yet to identify a single instance where the statutes it cites have ever been used to obtain the sort of sensitive voter information that it now demands. The reasons why are clear: not only has DOJ's gambit never been tried before, it also runs directly contrary to the decentralized structure of our federal electoral system. *See, e.g.*, U.S. Const. art. I, § 4, cl. 1 (giving the States principal authority over congressional elections). When enacting HAVA after the contested 2000 election, Congress stressed that the "dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run and thereby be able to control the outcome." H.R. Rep. No. 107-329, at 32 (2001). DOJ's attempt to assert sweeping federal authority over the management of federal elections is unsupported by the statutes DOJ cites and entirely antithetical to the carefully designed system of American elections as reflected by the Constitution, federal law, and the states' rightful administration of their own elections. The Court should dismiss the Complaint with prejudice under Rule 12(b)(6) for failure to state a claim.

---

[1] *See* ECF No. 1, *United States v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025); ECF No. 1, *United States v. DeMarinis*, No. 1:25-cv-03934 (D. Md. Dec. 1, 2025); ECF No. 1, *United States v. Oliver*, No. 1:25-cv-01193 (D.N.M. Dec. 2, 2025); ECF No. 1, *United States v. Amore*, No. 1:25-cv-00639 (D.R.I. Dec. 2, 2025); ECF No. 1, *United States v. Hanzas*, No. 2:25-cv-00903 (D. Vt. Dec. 1, 2025); ECF No. 1, *United States v. Hobbs*, No. 3:25-cv-06078 (W.D. Wash. Dec. 2, 2025); ECF No. 1, *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo. Dec. 11, 2025); ECF No. 1, *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Dec. 11, 2025); ECF No. 1, *United States v. Aguilar*, No. 3:25-cv-00728 (D. Nev. Dec. 11, 2025); ECF No. 1, *United States v. Galvin*, No. 1:25-cv-13816 (D. Mass. Dec. 11, 2025); *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (recognizing courts may consider "matters of public record" at the motion to dismiss stage).

## BACKGROUND

### I.    Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. As a default matter, the Constitution assigns states the responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013). While Congress has enacted laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data.

Congress in 1993 enacted the NVRA to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). Tellingly, that law charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)–(g). It similarly makes states the custodians of voter lists. *See Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted HAVA "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how states maintain voter registration lists, requiring that they create a "computerized statewide voter registration list" and "perform list maintenance." 52 U.S.C. § 21083. HAVA is abundantly clear that this list is "defined, maintained, and administered at the State level." *Id.* § 21083(a)(1)(A). And more generally, HAVA commands that the "specific choices on the methods of complying with" HAVA "shall be left to the discretion of

the State." *Id.* § 21085. Indeed, HAVA's legislative history stressed the importance of maintaining

our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, at 31–32. And while HAVA requires states to create their own centralized

statewide voter registration lists, nothing in the law obligates them to disclose that list—or indeed,

any records—to anyone, including to the federal government.

## II.    DOJ has embarked on a nationwide campaign to collect voter data held by states.

This spring, DOJ launched an unprecedented campaign demanding broad access to state

voter files, which include sensitive and personal information about each registered voter. To date,

DOJ has sent demands to over forty states, with plans to make similar demands of all fifty.[2] The

vast majority of states that have received such demands—including those led by Republican

officeholders—have refused to comply, declining to turn over sensitive information that is

typically protected by state law. *See supra* note 2.

DOJ sent its demand letter to Pennsylvania on June 23, 2025, seeking to ascertain

Pennsylvania's compliance with the list maintenance obligations outlined in Section 303 of

HAVA. Compl. ¶ 33. In a follow-up letter, DOJ also asked Pennsylvania Secretary of State Al

Schmidt questions regarding Pennsylvania's list maintenance efforts and its responses to Election

Administration and Voting Survey ("EAVS") prompts, including inquiries about Pennsylvania's

---

[2] Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Dec. 12, 2025), https://perma.cc/G6R9-HKCX.

efforts to (i) remove ineligible voters; (ii) remove duplicate registrations; and (iii) send confirmation notices to possibly inactive voters. *Id.* ¶¶ 36–37.[3] DOJ also demanded that Pennsylvania produce "all fields" from its voter registration database, including "each registrant's full name, date of birth, residential address, their state driver's license number, and the last four digits of their social security number." *Id.* ¶ 39.

Secretary Schmidt responded on August 21 by offering DOJ Pennsylvania's public voter records, but that offer did not extend to the "unique identifiers" requested by DOJ, including driver's license numbers and partial social security numbers. *Id.* ¶ 43.

### III.    DOJ sues Pennsylvania as part of its effort to create a national voter list.

DOJ filed this suit on September 25, 2025, primarily seeking to compel Pennsylvania to produce its full, unredacted statewide voter registration list. *Id.* ¶ 3. DOJ claims that it is entitled to relief under the NVRA, HAVA, and the Civil Rights Act of 1960. The only explicit demand for relief is for Pennsylvania to produce its unredacted statewide voter registration list. See *id.* ¶¶ 33, 36, 39, 53, 61. DOJ also alleges that Pennsylvania failed to provide "sufficient information" in response to DOJ's requests concerning "Pennsylvania's compliance with HAVA"—seemingly referencing its written questions to Secretary Schmidt, not its request for Pennsylvania's statewide voter registration list, *id.* ¶¶ 59–60, but the Complaint does not request relief on that issue, *id.* at 15–16, Prayer for Relief.

The same day that DOJ sued Pennsylvania, it filed nearly identical lawsuits against California, New York, Michigan, Minnesota, and New Hampshire. *See* ECF No. 1, *United States*

---

[3] EAVS is a biennial survey of state and local election officials administered by the U.S. Election Assistance Commission ("EAC"). *See* 11 C.F.R. § 9428.7. EAC reports its findings to Congress and the public after each regular federal election cycle. *See* Karen L. Shanton, Cong. Rsch. Serv., IF13056, *The Election Administrating and Voting Survey (EAVS): Overview and 2024 Findings* (2025).

*v. Weber*, No. 2:25-cv-9149 (C.D. Cal. Sep. 25, 2025); ECF No. 1, *United States v. Bd. of Elections of the State of N.Y.*, No. 1:25-cv-1338 (N.D.N.Y. Sep. 25, 2025); ECF No. 1, *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. Sep. 25, 2025); ECF No. 1, *United States v. Simon*, No. 0:25-cv-03761 (D. Minn. Sept. 25, 2025); ECF No. 1, *United States v. Scanlon*, No. 1:25-cv-371 (D.N.H. Sep. 25, 2025). Days earlier, DOJ sued Oregon and Maine, asserting similar claims under the NVRA, HAVA, and the Civil Rights Act. *See* ECF No. 1, *United States v. Oregon*, No. 6:25-cv-1666 (D. Or. Sep. 16, 2025); ECF No. 1, *United States v. Bellows*, No. 1:25-cv-468 (D. Me. Sep. 16, 2025). And, earlier this month, DOJ filed suit against ten additional states for their purported "failure" to provide voter registration rolls. *See supra* note 1. Notably, DOJ's most recent wave of suits jettison their NVRA and HAVA claims and cite only one avenue to relief— the Civil Rights Act of 1960. *See supra* note 1.

Proposed Intervenors comprise a Pennsylvania-based civic organization that represents over 335,000 members throughout the state, as well as a Pennsylvania voter. They moved to intervene as defendants to assert and protect their privacy interests on September 29, 2025, just four days after DOJ filed its complaint. *See* Mot. Intervene 1, ECF No. 11. That motion remains pending.

## LEGAL STANDARD

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the Court "must accept the allegations in the complaint as true," but need not accept "legal conclusion[s] couched as . . . factual allegation[s]." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" for purposes of surviving a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

**I.    DOJ has not stated any claim entitling it to Pennsylvania's statewide voter registration list.**

The Complaint squarely seeks only one form of relief: the compelled disclosure of Pennsylvania's entire, unredacted statewide voter list. Compl. at 15–16, Prayer for Relief, ¶ E. DOJ cites three statutes to justify this demand: (1) the NVRA; (2) HAVA; and (3) the Civil Rights Act of 1960. *Id.* at ¶¶ 1–2, 50. But none of these laws supply any recognizable basis for releasing sensitive voter data protected by state and federal privacy laws. DOJ's vague allegations— unsupported by any request for relief—that Secretary Schmidt failed to provide "sufficient information" concerning "Pennsylvania's compliance with HAVA" fare no better. *Id.* ¶¶ 59–60. In addition to relying upon flawed readings of the NVRA, HAVA, and the Civil Rights Act, these allegations are wholly vague and conclusory and thus fail to plausibly state a claim.

**A.    The NVRA does not entitle DOJ to Pennsylvania's full unredacted voter list.**

DOJ points to the NVRA to support its demand for Pennsylvania's unredacted voter list, *id.* ¶¶ 1, 3, 6, 12–20, 41, but that law cannot sustain the weight DOJ puts on it. What the NVRA requires is that each state "maintain for at least 2 years and . . . make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). This "public inspection" requirement is the sole disclosure provision in the NVRA, and, by its terms, it does not grant the federal government special inspection rights beyond those available to the public. Moreover, courts across the country have squarely rejected the notion that the public inspection provision obligates states to provide *every* piece of information stored in covered records—up to and including highly sensitive personal information contained within those files. Instead, courts have recognized that nothing in the NVRA's text prohibits states from

redacting sensitive voter information before disclosure and that doing so does not violate that federal law.

As a recent example, in *PILF*, the First Circuit heard a challenge to a Maine law that made a limited version of the state's voter registration list available for purchase but also restricted the use and publication of that list by purchasers. 92 F.4th at 43–44 (citing 2-A M.R.S. § 196-A(1)(J)(1)–(2)). The court held that while the voter registration list was a "record" covered by section 20507(i) and therefore subject to public inspection, *see id.* at 45–49, "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in" such voter files. *Id.* at 56; *see also id.* (citing with approval decisions recognizing that states could redact information such as birthdates and Social Security numbers). Accordingly, the First Circuit recognized that the "proper redaction of certain personal information" in statewide voter registration lists could "assuage the potential privacy risks implicated by the public release of the [v]oter [list]." *Id.* In so holding, the First Circuit effectively recognized that the NVRA's public inspection provisions did not preempt or circumvent the Maine legislature's lawfully enacted privacy requirements, which largely parallel Pennsylvania's protections and prohibit disclosure of the highly sensitive personal information that DOJ seeks. *Compare* 21-A M.R.S. § 196-A(1), *with* 4 Pa. Code § 183.14(c)(1)–(5), *and* 25 Pa. Cons. Stat. § 1404(a)(3).

That conclusion should come as no surprise to DOJ—it filed an amicus brief in *PILF* urging the First Circuit to reach that result. *See* Brief for the United States as Amicus Curiae in Support of Plaintiff-Appellee at 27–30, *PILF*, 92 F.4th 36 (No. 23-1361), 2023 WL 4882397, at *27–30. While the DOJ opposed Maine's argument that it could place broad limitations on a requester's ability to use and publish the voter registration list, DOJ recognized that the state's "privacy concerns" were "substantial." *Id.* at *27. To that end, its brief "emphasize[d] the limits on

[§ 20507(i)'s] preemptive scope." *Id.* Most notably, it conceded that "*the NVRA does not prohibit States from redacting 'uniquely sensitive information' like voters' Social Security Numbers before disclosing records*." *Id.* (emphasis added) (citing *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012)). And it further conceded that the NVRA does not "prohibit [states from] redacting an even broader set of personal information in certain sensitive circumstances." *Id.* (citing *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 267 (4th Cir. 2021)). DOJ made similar arguments more than a decade earlier. *See* Brief for the United States as Amicus Curiae at 11, 25–26, *Project Vote/Voting for Am.*, 682 F.3d 331 (No. 11-1809), 2011 WL 4947283, at *11, 25–26. And consistent with that historical view, DOJ has not pursued any claims arising under the NVRA in its most recent litigation against ten other states. Its current demand that Pennsylvania produce an entirely unredacted voter registration file reflects an unexplained reversal of its longstanding (and correct) view of federal law.

The First Circuit's holding in *PILF* is no outlier—many other courts have reached the same conclusion. *See Voter Reference Found.*, 2025 WL 3280300, at *9 n.14 (agreeing with holding in *PILF* that nothing in the text of the NVRA prohibits redacting information from voter lists); *Project Vote*, 682 F.3d at 339 (affirming district court order to redact social security numbers before disclosure under NVRA); *N.C. State Bd. of Elections*, 996 F.3d at 268 (recognizing that the NVRA permits redactions to "protect sensitive information"); *Pub. Int. Legal Found. v. Chapman*, 595 F. Supp. 3d 296, 306 (M.D. Pa. 2022) (permitting redactions for "personal information" under NVRA), *vacated on other grounds sub nom. Pub. Int. Legal Found. v. Sec'y Commonwealth of Pennsylvania*, 136 F.4th 456 (3d Cir. 2025) (reversing on standing); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) (holding the NVRA permits "proper redaction of highly sensitive information"); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320,

1344 (N.D. Ga. 2016) (holding the NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns," including telephone numbers, partial social security numbers, partial email addresses, and birth dates); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) (holding the NVRA "does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates"); *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (holding the NVRA permits redacting social security numbers). Although the Third Circuit has yet to resolve the question, this broad and uniform precedent from multiple courts across the country reaffirms that the NVRA does not grant the invasive authority that DOJ claims here. This Court should follow suit.

To hold otherwise would have striking privacy implications. As noted, the NVRA's public inspection provides no special disclosure rights to the federal government. 52 U.S.C. § 20507. Thus, any right that DOJ may have to request inspection of records under Section 20507(i) is a right that is equally shared by the public. Consequently, if it were the case (as DOJ incorrectly presses) that federal officials enjoy a Section 20507(i) right to demand the complete unredacted voter registration list, then any member of the public can do the same. Not only would that conclusion be contrary to the many decisions holding precisely the opposite, it would also work a radical and unexpected harm to voter privacy, allowing any person to demand the driver's license numbers, signatures, and partial social security numbers of every registered voter, in every state. There is no reason for the Court to depart from the judicial consensus about the scope of the NVRA and jeopardize the privacy rights of millions of registered voters.

**B.    HAVA does not entitle DOJ to Pennsylvania's full unredacted voter registration list.**

DOJ points to HAVA as another basis for relief, but that statute also does not support its demand. In fact, HAVA contains no disclosure requirements *at all*. DOJ's Complaint and

correspondence cite no authority to the contrary, relying instead upon a provision permitting the Attorney General to file suit "as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements" of HAVA. 52 U.S.C. § 21111. But the underlying statutory provisions DOJ may enforce through Section 2111 say nothing about permitting DOJ to demand state voter registration lists at will. To the contrary, the sole underlying provision concerning voter registration affirms that voter registration lists must be "maintained" and "administered at the State level"—not the federal government. *Id.* § 21083(a)(1)(A); *see also* H.R. Rep. No. 107-329, at 32, 36 (emphasizing that "local control must be preserved" under HAVA and voter registration databases should be "administered at the state level"). Nothing in HAVA provides any basis for DOJ to compel the disclosure of information that the Constitution and federal law both instruct to be administered by states.

Further, it would defy logic to conclude that HAVA implicitly authorizes, let alone *requires*, states to disclose all voter information, including sensitive and personal information protected by state law. Since the NVRA—which has an actual public disclosure provision—permits states to redact sensitive and personal voter information, HAVA—which does not contain *any* disclosure requirement—cannot somehow be read to have broader preemptive effect on state privacy laws than the NVRA. And the mere fact that HAVA grants the Attorney General a cause of action to enforce HAVA's substantive requirements changes nothing because the statute imposes no obligation on states to disclose records to the federal government. In accordance with this view, DOJ has chosen not to file any claims arising under HAVA in its most recent litigation against Colorado, Delaware, Hawaii, Maryland, Massachusetts, Nevada, New Mexico, Rhode Island, Vermont, and Washington.

Meanwhile, DOJ makes no allegation whatsoever that Pennsylvania has violated HAVA's substantive requirements. The federal government, as much as any litigant, is not permitted to "conduct fishing expeditions in hopes of discovering claims that they do not know they have." *McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006); *see also Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 335 F.R.D. 54, 76 (M.D. Pa. 2020) (noting that plaintiffs cannot use federal lawsuits to "find out whether [they have] claim[s]").

### C.    The Civil Rights Act of 1960 does not entitle DOJ to Pennsylvania's voter registration list.

In its final effort to justify its disclosure demand, DOJ dusts off Title III of the Civil Rights Act of 1960, a law passed in the civil rights era to combat racial discrimination in voting in Jim Crow states. *See* 52 U.S.C. § 20701. As with the NVRA and HAVA, Title III does not support DOJ's demands.

### 1.    Title III was designed for investigations aimed at protecting the right to vote.

Congress enacted Title III to buttress DOJ's enforcement and protection of voting rights. *See* H.R. Rep. No. 86-956, at 3 (1959) (finding that while "some progress" has been made since the Civil Rights Act of 1957, there was a "need for additional legislation to implement the enforcement of civil rights"); *Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("The legislative history leaves no doubt but that [Title III] is designed to secure a more effective protection of the right to vote."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). Despite this charge, DOJ's efforts were stymied by "the refusal of some state and local authority to permit" inspection of voter registration records. H.R. Rep. No. 86-956, at 7. DOJ had "no existing power in civil proceedings to require the production of [voter registration] records during any investigation." *Id.* Congress found that without granting DOJ a "suitable provision for access to voting records during the course of an investigation," its ability to protect

the right to vote was "rendered relatively ineffective." *Id.* (explaining Title III is "an essential step in the process of enforcing and protecting the right to vote regardless of color, race, religion, or national origin" (quoting *In re Wallace*, 170 F. Supp. 63, 67 (M.D. Ala. 1959))).

Title III has two relevant parts. First, Section 301 requires election officials to retain for twenty-two months "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701. Next, Section 303 requires election officials to make records covered by Section 301 available for inspection by the Attorney General upon receiving a "demand . . . contain[ing] a statement of the basis and the purpose" for the inspection. *Id.* § 20703.

### 2.    DOJ lacks a proper basis and purpose to demand records under Title III.

DOJ has not even bothered to try to articulate any basis to believe that Pennsylvania has denied the right to vote or otherwise violated federal law. The lack of any stated basis for investigating Pennsylvania is further highlighted by the fact that DOJ has made what appear to be near carbon copy demands to over forty other states and has sued 18 states with complaints that contain nearly identical boilerplate claims and allegations. *See supra* Background § II. "Simply put, [DOJ's demand] does not identify what conduct, it believes, constitutes an alleged violation." *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458 (5th Cir. 2018).

DOJ's stated purpose for issuing the demand to Pennsylvania—to "allow the Attorney General to effectively assess Defendants' compliance with the requirements of the NVRA and HAVA", Compl., ¶ 3—is not sufficient under Title III, which is meant to permit DOJ to review voting records for "question[s] concerning infringement or denial of [people's] constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962); *see CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 690–91 (D.C. Cir. 2017) (rejecting "perfunctory"

statement of purpose in issuing civil investigative demand, reasoning agencies are also "not afford[ed] . . . unfettered authority to cast about for potential wrongdoing" (internal quotation omitted)). Throughout its correspondence and Complaint, DOJ never cited a single instance in the 65 years of Title III's existence in which the agency issued a demand for records under Title III that did not relate to investigating the "infringement or denial of . . . constitutional voting rights." *Lynd*, 306 F.2d at 228. Proposed Intervenors are aware of no such instance.[4]

Further, even if ascertaining Pennsylvania's compliance with the NVRA and HAVA were permissible grounds for invoking Title III, Pennsylvania's full unredacted voter list is entirely unnecessary for that purpose. Both the NVRA and HAVA grant states wide discretion: State efforts under the NVRA must only be "reasonable," 52 U.S.C. § 20507(a)(4), and HAVA explicitly commits "specific choices . . . to the discretion of the State." *Id.* § 21085. Secretary Schmidt has already provided DOJ with more than adequate information to confirm that Pennsylvania is meeting its list maintenance obligations, and DOJ has not identified any shortcomings or deficiencies in his responses. *See supra* Background § II; *see also* Compl. ¶ 38. Seemingly rather than asking follow-up questions or engaging in any further dialogue with Secretary Schmidt, DOJ filed this lawsuit despite Secretary Schmidt's good-faith efforts to provide DOJ with the information it seeks. Considering all the circumstances of DOJ's demand, the only conclusion that can be drawn is that DOJ has no reasonable basis to justify a fishing expedition into Pennsylvania's compliance with the NVRA and HAVA. *See In re Subpoena No. 25-1431-014*, No. MC 25-39,

---

[4] While some of the 1960s-era cases that interpreted Title III included language indicating broad deference to the Attorney General's statement of a "basis and . . . purpose" for requesting records, *see Lynd*, 306 F.2d at 226, those cases involved circumstances where Title III was being used for its intended purpose: investigations into the potential denial of voting rights. Those cases are thus fundamentally different than the circumstances here, where DOJ has offered no justifiable basis to support the need for records to evaluate compliance with two *other* statutes.

2025 WL 3252648, at *17 (E.D. Pa. Nov. 21, 2025) (rejecting subpoena for private health information when DOJ "invoke[d] sweeping needs" for the information "far removed from those claimed purposes granted by Congress"); *In re Admin. Subpoena No. 25-1431-019*, No. 1:25-MC-91324-MJJ, 2025 WL 2607784, at *5 (D. Mass. Sep. 9, 2025) (quashing subpoena when DOJ "failed to show proper purpose" under the statutory scheme, rejecting the notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review").

### 3.    Title III does not prohibit redacting sensitive voter information.

Aside from whether DOJ can validly invoke Title III to demand Pennsylvania's unredacted voter list, Title III does not require the production of sensitive and personal voter information. To reiterate, "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in" voter files, such as driver's license numbers, partial social security numbers, and signatures. *PILF*, 92 F.4th at 56. Title III's plain text does not prohibit the redaction of that information either. As the Fifth Circuit has explained, Title III is intended to reach only "public records which ought ordinarily to be open to legitimate reasonable inspection," but not "confidential, private papers and effects." *Lynd*, 306 F.2d at 231. The information that DOJ seeks here is not material typically "open to legitimate reasonable inspection." *Id.* To the contrary, it seeks plainly sensitive information that is typically safeguarded from prying eyes under both federal and state law. *See, e.g.*, 5 U.S.C. § 552a; 18 U.S.C. § 2721; 4 Pa. Code § 183.14(c)(1)–(5); 25 Pa. Cons. Stat. § 1404(a)(3). And since driver's license numbers and partial social security numbers were not required to be provided on voter registration forms until HAVA was enacted in 2002, *see* 52 U.S.C. § 21083(a)(5)(A)(i), the Congress that enacted Title III in 1960 would not have intended the statute's reach to cover the disclosure of such information.

## II.    DOJ has not stated any other claim for relief.

The only explicit request for relief in the Complaint is DOJ's demand for Pennsylvania's statewide voter registration list. Compl. at 15–16, Prayer for Relief, ¶ E. But the Complaint also contains other fleeting suggestions that Pennsylvania failed "to provide sufficient information" necessary for "evaluating Pennsylvania's compliance with HAVA." *Id.* ¶¶ 59–60. This apparently refers to DOJ's questions to Pennsylvania regarding the state's EAVS responses and list maintenance practices, though DOJ fails to identify any specific defects in Pennsylvania's answers. To the extent these vaguely alleged deficiencies are meant to constitute a claim for relief under the NVRA or HAVA, they fail.

First, Pennsylvania has no statutory obligation to answer DOJ's questions *at all*. Through the NVRA and HAVA, Congress charged states with making "reasonable effort[s]" to perform list maintenance, 52 U.S.C. § 20507(a)(4); *see id.* § 21083(a)(1)(A), but Congress never required states to report the results of that maintenance to DOJ or answer DOJ's inquiries about their list maintenance activities.[5] Accordingly, any perceived deficiencies or incompleteness in Pennsylvania's written responses to DOJ's questions do not alone constitute a violation of the NVRA or HAVA.

DOJ attempts to fall back on its general enforcement authority to bring actions "necessary to carry out" the NVRA and HAVA, Compl. ¶ 6 (citing 52 U.S.C. §§ 20510(a), 21111), but those provisions simply permit DOJ to bring suits to address plausibly alleged *violations* of those statutes. *Pub. Int. Legal Found. v. Boockvar*, 370 F. Supp. 3d 449, 456 (M.D. Pa. 2019) (noting

---

[5] Regulations require states to provide certain information *to the EAC*, not DOJ, *see* 11 C.F.R. 9428.7, and DOJ's NVRA claim does not allege that the information Pennsylvania provided the EAC was insufficient or otherwise violated this regulation. In fact, DOJ neither cites the regulation, nor claims any authority to enforce it.

that "Congress [only] authorized . . . parties 'aggrieved by a violation' to bring a private cause of action"). DOJ does not allege that Pennsylvania has *violated* any of its obligations under the NVRA or HAVA; instead, it claims to seek information to prospectively "ensure that voter registration records in the State are accurate," Compl. ¶ 25, as it has done with dozens of other states, *see supra* Background § II. But that argument gets things backwards—DOJ cannot sue Pennsylvania (or any other state) as part of a roving inquiry into noncompliance with federal law; rather, the Attorney General can file suit when she can plausibly allege that the substantive terms of the NVRA or HAVA have been violated. *See McCloskey*, 446 F.3d at 271.

Likewise, DOJ does not allege what specific inquiries have gone unaddressed, nor how Pennsylvania's responses are insufficient. Compl. ¶¶ 59–61. The Complaint thus amounts to nothing more than "labels and conclusions" about the sufficiency of Pennsylvania's responses. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Such "naked assertion[s]" devoid of "further factual enhancement" are not enough to state a claim. *Id.* at 557 (citation omitted); *see also Philips v. County. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[F]actual allegations must be enough to raise a right to relief above the speculative level." (citation omitted)).

## CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully request that the Court dismiss the Complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: December 16, 2025                    Respectfully submitted,

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta*
Jacob D. Shelly*
Branden D. Lewiston*
Tori Shaw*
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400

Washington, DC 20001
Telephone: (202) 968-4490
unkwonta@elias.law
jshelly@elias.law
blewiston@elias.law
tshaw@elias.law

Timothy J. Ford (Pa. Id. No. 325290)
**DILWORTH PAXSON LLP**
1650 Market St
Suite 1200
Philadelphia, PA 19103
tford@dilworthlaw.com

*Admitted *Pro Hac Vice*

*Attorneys for Proposed Intervenors
the Pennsylvania Alliance for Retired
Americans and Mike Crossey*