**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | Civil Action No. 2:25-CV-01481 |
| v. | Hon. Cathy Bissoon |
| COMMONWEALTH OF PENNSYLVANIA, *et al.*, | |
| *Defendants*. | |

**[PROPOSED] MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 2

LEGAL STANDARD.................................................................................................... 6

ARGUMENT ................................................................................................................. 7

I.  The NVRA Does Not Entitle Plaintiff to Pennsylvania's Complete Unredacted Voter File. ...................................................................................................................... 7

II.  HAVA Does Not Entitle Plaintiff to Pennsylvania's Complete Unredacted Voter File. ... 9

III.  Plaintiff Fails to State a Claim Under the Civil Rights Act of 1960................................. 12

A.  The Complaint's allegations are insufficient to assert a claim to enforce the CRA's information access provisions.................................................................................. 13

B.  Plaintiff fails to assert an investigation of racial discrimination within the scope of the CRA. ......................................................................................................................... 15

C.  Plaintiff is not entitled to unredacted sensitive personally identifying information... 19

D.  Plaintiff has not been denied proper disclosure under the CRA. ............................... 22

E.  Plaintiff fails to establish subject matter jurisdiction in this Court............................ 22

CONCLUSION.............................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re AAM Holding Corp.*,
  153 F.4th 252 (2d Cir. 2025) .................................................................16

*Am. C.R. Union v. Phila. City Comm'rs*,
  872 F.3d 175 (3d Cir. 2017)..........................................................9, 10, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................6

*Ballentine v. United States*,
  486 F.3d 806 (3d Cir. 2007)...............................................................7

*Bellitto v. Snipes*,
  935 F.3d 1192 (11th Cir. 2019) ......................................................2, 11

*California v. Trump*,
  786 F. Supp. 3d 359 (D. Mass. 2025), *appeal docketed*, No. 25-01726 (1st Cir.
  Aug. 1, 2025) .................................................................................11

*In re Coleman*,
  208 F. Supp. 199, 199-200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v.
  Kennedy*, 313 F.2d 867 (5th Cir. 1963) ...............................................18

*Dave v. Wells Fargo*,
  824 F.3d 333 (3d Cir. 2016)...............................................................6

*Equal Emp. Opportunity Comm'n v. Franklin & Marshall Coll.*,
  775 F.2d 110 (3d Cir. 1985)..............................................................20

*Equal Emp. Opportunity Comm'n v. McLane Co., Inc.*,
  857 F.3d 813 (9th Cir. 2017) ............................................................16

*Equal Emp. Opportunity Comm'n v. United Air Lines, Inc.*,
  287 F.3d 643 (7th Cir. 2002) ............................................................16

*Equal Emp. Opportunity Comm'n v. Univ. of Pa.*,
  850 F.2d 969 (3d Cir. 1988)..............................................................20

*Equal Emp. Opportunity Comm'n v. Univ. of Pittsburgh*,
  487 F. Supp. 1071 (W.D. Pa. 1980).....................................................16

*Fed. Trade Comm'n v. Turner*,
  609 F.2d 743 (5th Cir. 1980) ............................................................16

*Fish v. Schwab,*
    957 F.3d 1105 (10th Cir. 2020) ..................................................................11

*FOCUS v. Alleghany Cnty. Ct. of Common Pleas,*
    75 F.3d 834 (3d Cir. 1996)...........................................................................7

*Foglia v. Renal Ventures Mgmt., LLC,*
    754 F.3d 153 (3d Cir. 2014)..........................................................................6

*Fowler v. UPMC Shadyside,*
    578 F.3d 203 (3d Cir. 2009)..........................................................................6

*Greater Birmingham Ministries v. Sec'y of State for Ala.,*
    105 F.4th 1324 (11th Cir. 2024) .................................................................22

*Hanif v. Att'y Gen. of U.S.,*
    694 F.3d 479 (3d Cir. 2012)........................................................................10

*Kennedy v. Bruce,*
    298 F.2d 860 (5th Cir. 1962) ................................................................18, 19

*Kennedy v. Lynd,*
    306 F.2d 222 (5th Cir. 1962) ...............................................14, 15, 18, 20

*Kennedy v. Owen,*
    321 F.2d 116 (5th Cir. 1963) ......................................................................20

*League of United Latin Am. Citizens v. Exec. Off. of the President,*
    780 F. Supp. 3d 135 (D.D.C. 2025)............................................................12

*League of United Latin Am. Citizens v. Exec. Off. of President,*
    No. 25-cv-00946, 2025 WL 3042704 (D.D.C. Oct. 31, 2025) .............2, 3

*Loper Bright Enters. v. Raimondo,*
    603 U.S. 369 (2024)......................................................................................14

*Owen v. Kennedy,*
    84 S. Ct. 12 (1963).......................................................................................21

*Pa. State Conf. of NAACP Branches v. Sec'y Pa.,*
    97 F.4th 120 (3d Cir. 2024) ........................................................................17

*Pennsylvanians for Union Reform v. Pa. Dep't of State,*
    138 A.3d 727 (Pa. Commw. Ct. 2016) .........................................................9

*Phillips v. Cnty. of Allegheny,*
    515 F.3d 224 (3d Cir. 2008).........................................................................6

*Project Vote, Inc. v. Kemp*,
    208 F. Supp. 3d 1320 (N.D. Ga. 2016) ...................................................................8

*Project Vote/Voting for Am., Inc. v. Long*,
    682 F.3d 331 (4th Cir. 2012) ...........................................................................7, 8

*Project Vote/Voting For Am., Inc. v. Long*,
    752 F. Supp. 2d 697 (E.D. Va. 2010) ...................................................................8

*Pub. Int. Legal Found., Inc. v. Bellows*,
    92 F.4th 36 (1st Cir. 2024)..............................................................................1, 7

*Pub. Int. Legal Found., Inc. v. Chapman*,
    595 F. Supp. 3d 296 (M.D. Pa. 2022), *vacated on standing grounds*, *Pub. Int.*
    *Legal Found. v. Sec'y Pa.*, 136 F.4th 456 (3d Cir. 2025) ...........................................7

*Pub. Int. Legal Found., Inc. v. Matthews*,
    589 F. Supp. 3d 932 (C.D. Ill. 2022) ...................................................................8

*Pub. Int. Legal Found., Inc. v. N.C. Bd. of Elections*,
    996 F.3d 257 (4th Cir. 2021) .............................................................................7

*Pub. Int. Legal Found. v. Boockvar*,
    431 F. Supp. 3d 553 (M.D. Penn. 2019)................................................................7

*Russello v. United States*,
    464 U.S. 16 (1983)........................................................................................10

*South Carolina v. Katzenbach*,
    383 U.S. 301 (1966) ......................................................................................17

*True the Vote v. Hosemann*,
    43 F. Supp. 3d 693 (S.D. Miss. 2014)...................................................................8

*United States v. Alabama*,
    362 U.S. 602 (1960).......................................................................................17

*United States v. Lynd*,
    301 F.2d 818 (5th Cir. 1962) ............................................................................18

*United States v. Mississippi*,
    380 U.S. 128 (1965).......................................................................................17

**Statutes**

25 Pa. Cons. Stat. § 1404(a)(3) .................................................................8, 9, 11

5 U.S.C.

    § 551(13) ....................................................................................................14
    § 704 ...........................................................................................................14
    § 706(2)(A) .................................................................................................14

52 U.S.C.

    § 20507(i) .................................................................................................1, 21
    § 20507(i)(1) ..............................................................................................10
    § 20701 ...............................................................................................13, 19
    § 20701, *et seq.* ...........................................................................................1
    § 20703 ................................................................................................ *passim*
    § 20705 .......................................................................................................23
    § 20901 *et seq.* ...........................................................................................10
    § 21081(b) ..................................................................................................12
    § 21082 .......................................................................................................10
    § 21083 ......................................................................................................1, 6
    § 21083(a)(1)(A) ........................................................................................12
    § 21083(a)(2)(A) ........................................................................................10
    § 21083(a)(2)(B) ........................................................................................12
    § 21083(a)(5)(A) ........................................................................................12
    § 21083(a)(5)(B)(i) .....................................................................................10
    § 21085 .......................................................................................................10
    § 21111 .......................................................................................................12

Help America Vote Act, Pub. L. No. 107-252, 116 Stat. 1666 (2002) .........................10

**Other Authorities**

4 Pa. Code § 183.14(c) .................................................................................................9

Br. for the United States as Amicus Curiae in Supp. of Plaintiff-Appellee, *Pub.
    Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) (No. 23-1361),
    2023 WL 4882397 .............................................................................................8

Br. for the United States as Amicus Curiae Supporting Plaintiff-Appelle and
    Urging Affirmance, *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331
    (4th Cir. 2012) (No. 11-1809), 2011 WL 4947283 .............................................8

Compl., *United States v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025), ECF
    No. 1 .................................................................................................................3

Compl., *United States v. Amore*, No. 1:25-cv-00639 (D. R.I. Dec. 2, 2025), ECF
    No. 1 .................................................................................................................3

Compl., *United States v. Bellows*, No. 1:25-cv-00468 (D. Me. Sept. 16, 2025),
    ECF No. 1 .........................................................................................................3

Compl., *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. Sept. 25, 2025), ECF No. 1 ...................................................................................................3

Compl., *United States v. Board of Elections*, No. 1:25-cv-01338 (N.D.N.Y. Sept. 25, 2025), ECF No. 1 ..................................................................................3

Compl., *United States v. Demarinis*, No. 1:25-cv-03934 (D. Md. Dec. 1, 2025), ECF No. 1 ...................................................................................................3

Compl., *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo. Dec. 11, 2025), ECF No. 1 ...................................................................................................3

Compl., *United States v. Hanzas*, No. 2:25-cv-00903 (D. Vt. Dec. 1, 2025), ECF No. 1 ................................................................................................................3

Compl., *United States v. Hobbs*, No. 3:25-cv-06078 (W.D. Wash. Dec. 2, 2025), ECF No. 1 ...................................................................................................3

Compl., *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Dec. 11, 2025), ECF No. 1 ................................................................................................................3

Compl., *United States v. Oliver*, No. 1:25-cv-01193 (D. N.M. Dec. 2, 2025), ECF No. 1 ................................................................................................................3

Compl., *United States v. Oregon*, No. 6:25-cv-01666 (D. Or. Sept. 16, 2025), ECF No. 1 ................................................................................................................3

Compl., *United States v. Scanlan*, No. 1:25-cv-00371 (D. N.H. Sept. 25, 2025), ECF No. 1 ...................................................................................................3

Compl., *United States v. Simon*, No. 0:25-cv-03761 (D. Minn. Sept. 25, 2025), ECF No.1 ....................................................................................................3

Compl., *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Sept. 25, 2025), ECF No. 1 ...................................................................................................3

Exec. Order No. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2025)...................................2, 3

Fed. Election Comm'n, *Implementing the National Voter Registration Act: A Report to State and Local Election Officials on Problems and Solutions Discovered 1995 - 1996* (1998) ........................................................................20

Fed. R. Civ. P. 12(b)(1).........................................................................................7, 12, 23

Fed. R. Civ. P. 12(b)(6)..................................................................................1, 6, 12, 23

H.R. Rep. No. 86-956 (1959), *reprinted in* 1960 U.S.C.C.A.N. 1939 .............13, 15, 17

H.R. Rep. No. 107-329(I) (2001).........................................................................11, 12

*Hearing on H.R. 8601 Before the S. Comm. on the Judiciary*, 86th Cong. (1960) ....................17

Mem. in Supp. of Mot. to Compel, *United States v. DeMarinis*, No. 1:25-cv-3934 (D. Md. Dec. 1, 2025), ECF No. 2-1 ........................................................................................21

Mem. in Supp. of Mot. to Compel, *United States v. Hanzas*, No. 2:25-cv-903 (D. Vt. Dec. 1, 2025), ECF No. 2-2 ........................................................................................21

Mem. in Supp. of Mot. to Compel, *United States v. Oliver*, No. 1:25-cv-1193 (D. N.M. Dec. 2, 2025), ECF No. 2-2 ........................................................................................21

Mem. in Supp. of Req. for Order to Compel Produc. of Rs. Pursuant to 52 U.S.C. § 20701, *et seq.*, *United States v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025), ECF No. 4 ........................................................................................21

Mem. in Supp. of Req. for Order to Compel, *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo. Dec. 11, 2025), ECF No. 5 ..................................................21

Mem. in Supp. of Req. for Order to Compel, *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Dec. 11, 2025), ECF No. 5-1 .........................................................21

U.S. Comm'n on Civ. Rts., *Report of the United States Commission on Civil Rights* (1959) ........................................................................................17

U.S. Comm'n on Civ. Rts, *Voting*, bk. 1 *in 1961 Commission on Civil Rights Report* (1961) ........................................................................................16

U.S. Dep't of Just., *Annual Report of the Attorney General of the United States for the Fiscal Year Ended June 30, 1962* (1962) ..................................................16

U.S. Election Assistance Comm'n, *Election Administration and Voting Survey 2024 Comprehensive Report: A Report from the U.S. Election Assistance Commission to the 119th Congress* (2025) ("2024 EAVS Report") .....................................5, 6

## INTRODUCTION

In an unprecedented and illegitimate attempt to seize control of election administration, the United States Department of Justice ("DOJ") seeks to obtain full unredacted state voter files to create its own national voter registration database and verification apparatus. The DOJ has demanded states turn over their full voter files—including internal state personal identifiers, driver's license numbers, Social Security numbers, and full dates of birth, along with associated information concerning political affiliation and activity, for each individual voter. These requests far exceed anything the federal government might be entitled to obtain under applicable election law or in a properly substantiated federal investigation. The only stated justifications for this effort have been conclusory and counterfactual allegations of noncitizen voting. But even if the federal government offered concrete evidence of noncitizen voting, it would not save its claims in this case. The statutes here neither establish citizenship verification procedures nor provide for disclosure of complete and unredacted state voter databases. And nothing in them requires states to facilitate DOJ-led list maintenance efforts, let alone purges of voter rolls.

The Court therefore should dismiss this action under Federal Rule of Civil Procedure 12(b)(6) because DOJ has not alleged claims under any statute entitling it to the relief it seeks and has not alleged facts necessary to establish jurisdiction or the elements of its claims. In support of its claims under the National Voter Registration Act, 52 U.S.C. § 20507(i) ("NVRA"), the Help America Vote Act, 52 U.S.C. § 21083 ("HAVA"), and the Civil Rights Act of 1960, 52 U.S.C. § 20701, *et seq.* ("CRA"), *see* Compl. ¶¶ 50, 54, 61, DOJ asserts only that Defendant Pennsylvania Secretary of State Al Schmidt "offered public voter records to the United States for review," but did "not include the HAVA required unique identifiers requested." Compl. ¶ 43. But "[n]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir.

2024). Nor does HAVA contain a disclosure provision or "broaden[] the scope of the NVRA's list-maintenance obligations." *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019). And the CRA provides a tool only for investigation of civil rights violations, not a fishing net to fuel voter registration challenges. Thus, Plaintiff's allegations fail to establish jurisdiction or a claim of improper denial of a lawful demand for information.

Plaintiff's unprecedented effort to create its own parallel voter registration database, for the purpose of independently purging voter registrations, not only exceeds its authority and intrudes on state prerogatives, but also undermines the regulatory structure that HAVA, the NVRA, and the CRA adopted. The Constitution vests the states with authority to administer elections, and Defendants, to that end, have obtained personal information from voters. The Constitution confers no authority on the Executive Branch to administer elections. *See League of United Latin Am. Citizens v. Exec. Off. of President*, No. 25-cv-00946, 2025 WL 3042704, at *26-28 (D.D.C. Oct. 31, 2025). Congress exercised its authority by enacting laws to require that states administer elections fairly and without discrimination. Those laws provide no means for the Executive Branch to supersede lawful state voter list maintenance. The Complaint therefore must be dismissed.

## BACKGROUND

This action rests on the position of the Executive Branch that "the United States now fails to enforce basic and necessary election protections employed by modern, developed nations, as well as those still developing. . . . for example, . . . tying voter identification to a biometric database, while the United States largely relies on self-attestation for citizenship." Exec. Order No. 14248, 90 Fed. Reg. 14005, 14005 (Mar. 25, 2025); Compl. at 1 (nonnumerical paragraph) (citing Exec. Order No. 14248 by reference). Through this lawsuit, Plaintiff seeks to unilaterally overhaul election administration without legal authorization by creating a parallel federal database and

system for voter verification. *See* Compl. at 1-2 (citing Exec. Order No. 14248, 90 Fed. Reg. at 14005). The Administration justifies this effort with baseless assertions of vote "dilution" and "fraud," *id.*, that have previously been found inadequate to sustain its *ultra vires* actions. *See id.* at 1-2 (nonnumerical paragraphs); *League of United Latin Am. Citizens*, 2025 WL 3042704, at *28 (D.D.C. Oct. 31, 2025). Congress, through the NVRA, prescribed the means to verify citizenship in voter registration: a sworn attestation. That Plaintiff disagrees with Congress's mandate does not permit this effort to displace it, or to usurp state administration of elections as established by the Constitution.

In furtherance of this effort, Plaintiff seeks to compel Pennsylvania (and other states in parallel litigation) to disclose "an electronic copy of the statewide voter registration list including all fields." Compl. ¶ 4.[1] The alleged factual predicate for Plaintiff's demand in this case is an exchange of correspondence between the DOJ and Secretary of State Al Schmidt ("SOS") concerning Pennsylvania's election administration practices, the contents of which are neither exhibits to the Complaint, nor quoted in their entirety. *See id.* ¶¶ 33-43. Allegedly, the DOJ sent three letters to the SOS, on June 23, 2025, August 4, 2025, and August 14, 2025—to which the

---

[1] *See* Compl., *United States v. Oregon*, No. 6:25-cv-01666 (D. Or. Sept. 16, 2025), ECF No. 1; Compl., *United States v. Bellows*, No. 1:25-cv-00468 (D. Me. Sept. 16, 2025), ECF No. 1; Compl., *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Sept. 25, 2025), ECF No. 1; Compl., *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. Sept. 25, 2025), ECF No. 1; Compl., *United States v. Simon*, No. 0:25-cv-03761 (D. Minn. Sept. 25, 2025), ECF No.1; Compl., *United States v. Board of Elections*, No. 1:25-cv-01338 (N.D.N.Y. Sept. 25, 2025), ECF No. 1; Compl., *United States v. Scanlan*, No. 1:25-cv-00371 (D. N.H. Sept. 25, 2025), ECF No. 1; Compl., *United States v. Demarinis*, No. 1:25-cv-03934 (D. Md. Dec. 1, 2025), ECF No. 1; Compl., *United States v. Hanzas*, No. 2:25-cv-00903 (D. Vt. Dec. 1, 2025), ECF No. 1; Compl., *United States v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025), ECF No. 1; Compl., *United States v. Oliver*, No. 1:25-cv-01193 (D. N.M. Dec. 2, 2025), ECF No. 1; Compl., *United States v. Amore*, No. 1:25-cv-00639 (D. R.I. Dec. 2, 2025), ECF No. 1; Compl., *United States v. Hobbs*, No. 3:25-cv-06078 (W.D. Wash. Dec. 2, 2025), ECF No. 1; Compl., *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo. Dec. 11, 2025), ECF No. 1; Compl., *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Dec. 11, 2025), ECF No. 1.

SOS responded on July 23, 2025, August 18, 2025, and August 21, 2025, respectively. *Id.* Together, the DOJ letters allegedly sought: "information regarding Pennsylvania's compliance with HAVA;" information about the "requirement under Section 303(a)(5) of HAVA that applicants provide certain information and the state's process for verifying that information;" "other information and documents;" a "description of the process by which registrants who are ineligible to vote due to non-citizenship are identified and removed" from registration lists; "the process by which the state identifies and removes any duplicate voter registrations and deceased registrants;" "information about duplicate registrations;" "other EAVS survey questions;" "removal procedures for ineligible voters from the voter rolls because they were noncitizens, felons, or adjudicated incompetent;" "descriptions of the processes that Pennsylvania uses to carry out its list maintenance obligations under Section 303 of HAVA;" a "list of election officials responsible" for "registration list maintenance;" and the "current electronic copy of its computerized statewide voter registration list ('SVRL'), required under Section 303(a) of HAVA," including "all fields, including each registrant's full name, date of birth, residential address, their state driver's license number, and the last four digits of their Social Security number." *Id.* ¶¶ 33-34, 36, 37, 39. Plaintiff brought this action seeking to obtain only this last item: the complete and unredacted SVRL. *See id.* ¶¶ 3, 43.

Plaintiff claims a right to vast and unredacted disclosures based entirely on the following alleged deficiencies in Plaintiff's responses:

- "[Secretary Schmidt's] response did not explain whether non-citizens were identified and what steps were taken to remove those voters." *Id.* ¶ 35.

- "The response also admitted that if [Pennsylvania] could not verify the ID number provided as required by HAVA, the applicant would be registered to vote anyway." *Id.*

- "Secretary [Schmidt] stated, 'Nothing in the NVRA provides a process by which those who are deemed non-eligible on the basis of being a non-citizen are to be removed from the

voter rolls.' While acknowledging that it is illegal for a non-citizen to misrepresent that he is a citizen on a voter registration application, [Pennsylvania] does not appear to have any process in place to make any determination about whether there are non-citizens on the voter rolls." *Id.* ¶ 38.

- "Secretary Schmidt sent a letter on August 21, 2025 and offered public voter records to the United States for review. However, Pennsylvania's public voter records do not include the HAVA required unique identifiers requested by the Attorney General." *Id.* ¶ 43.

Plaintiff also refers to a recent report by the United States Election Assistance Commission ("EAC"), *id.* ¶¶ 31-32, 37, 38, but it only illustrates that Plaintiff's claims are baseless. HAVA established the EAC as "an independent, bipartisan commission whose mission is to help election officials improve the administration of elections and help Americans participate in the voting process." *Id.* ¶ 31. It conducts a biennial Election Administration and Voting Survey ("EAVS"), which is "an analysis of state-by-state data that covers various topics related to the administration of federal elections[,] including voter registration and list maintenance," *id.* ¶ 32 (alteration in original), the results of which the EAC puts into a report ("EAVS Report"). According to the Complaint:

> The EAC's most recent report . . . ("2024 EAVS Report") explains that as part of the 2024 EAVS, the states "reported data on their efforts to keep voter registration lists current and accurate, known as list maintenance[,]" such as the number of confirmation notices states sent "to verify continued eligibility from registered voters[,]" and the number of voter registration records that state removed from their voter lists.

*Id.* The 2024 EAVS Report indicates that Pennsylvania responded to the EAC's survey for its report. *See* U.S. Election Assistance Comm'n, *Election Administration and Voting Survey 2024 Comprehensive Report: A Report from the U.S. Election Assistance Commission to the 119th Congress*, at vii (2025) ("2024 EAVS Report") (providing a state-by-state overview of data results in 2024). The 2024 EAVS Report states that PA rejects or deems invalid 14.2% of registration applications, second in number only to Guam among those states and territories reporting. 2024 EAVS Report at 176. The 2024 EAVS Report also states that Uniformed and Overseas Citizens

Absentee Voting Act *ballot* "[r]ejection rates were highest in Mid-Atlantic states like Delaware, New York, and Pennsylvania, in southern states including Arkansas and Louisiana, and in mountain states such as Minnesota, South Dakota, and Wyoming." *Id.* at 206. The report confirms that Pennsylvania has processes for conducting list maintenances. Regarding citizenship verification, the 2024 EAVS Report states:

> HAVA requires the chief election official in each state to attempt to verify the information in first-time voter registration applications against driver's license numbers in the state's motor vehicle licensing agency's database or against the Social Security Administration's database of social security numbers. If no match is found, election officials in most states attempt to contact the applicant for additional information, but they manage this process in various ways. HAVA requires that applicants who cannot be matched against one of these databases be allowed to vote on Election Day, provided they present appropriate identification.

2024 EAVS Report at 64 (citing 52 U.S.C. § 21083).

## LEGAL STANDARD

A complaint must be dismissed where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008)). While courts are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant," they "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Dave v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (in part quoting *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014)).

Rule 12(b)(1) permits a court to dismiss a complaint "for lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). "The party invoking federal jurisdiction bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." *FOCUS v. Alleghany Cnty. Ct. of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996).

## ARGUMENT

### I.   The NVRA Does Not Entitle Plaintiff to Pennsylvania's Complete Unredacted Voter File.

DOJ asserts that Defendants have violated the NVRA by failing to provide "an electronic copy of Pennsylvania's statewide voter registration list with all fields." Compl. ¶¶ 53-55. But the NVRA does not require Pennsylvania to produce its complete, unredacted SVRL. To the contrary, courts have consistently held that states may comply with the NVRA's public disclosure provision by providing public voter lists with certain sensitive information redacted. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File."); *Pub. Int. Legal Found., Inc. v. N.C. Bd. of Elections*, 996 F.3d 257, 267-68 (4th Cir. 2021) (finding the NVRA permits redactions to "protect sensitive information"); *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (affirming district court order to redact Social Security numbers before disclosure under NVRA); *Pub. Int. Legal Found., Inc. v. Chapman*, 595 F. Supp. 3d 296, 306 (M.D. Pa. 2022) (exempting the disclosure of DMV records in NVRA requests), *vacated on standing grounds*, *Pub. Int. Legal Found. v. Sec'y Pa.*, 136 F.4th 456 (3d Cir. 2025); *Pub. Int. Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 561 n.3 (M.D. Penn.

2019) ("[T]he Disclosure Provision does not guarantee unfettered access to confidential sensitive information."); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022) (holding the NVRA permits "proper redaction of highly sensitive information"); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344-45 (N.D. Ga. 2016) (holding the NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns," including partial telephone numbers, partial Social Security numbers, partial email addresses, and birth dates); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 736, 739 (S.D. Miss. 2014) (holding the NVRA "does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates" and social security numbers); *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711 (E.D. Va. 2010) (holding the NVRA permits redacting Social Security numbers). DOJ gives no indication that it recognizes Pennsylvania's privacy statutes, nor does it suggest that its request complies with those statutes, *see* 25 Pa. Cons. Stat. § 1404(a)(3), or that the requests fall within some NVRA exemption, *see* Compl. ¶ 42 (only referencing exemption under the federal Driver's License Protection Act).

Indeed, DOJ itself has argued in prior cases that "the NVRA does not prohibit States from redacting 'uniquely sensitive information' like voters' Social Security Numbers before disclosing records." Br. for the United States as Amicus Curiae in Supp. of Plaintiff-Appellee, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (No. 23-1361), 2023 WL 4882397, at *27-30 (quoting *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d at 339). *See also* Br. for the United States as Amicus Curiae Supporting Plaintiff-Appelle and Urging Affirmance, *Project Vote/Voting for Am., Inc.*, 682 F.3d 331 (No. 11-1809), 2011 WL 4947283, at *11, 24-26 (arguing sensitive information may be redacted from voter registration records prior to disclosure to address legitimate privacy concerns).

DOJ's assertion that it would protect the security and confidentiality of Pennsylvania voters' sensitive information if produced, Compl. ¶¶ 40-41, is irrelevant. Nor does anything in the text of the NVRA or the caselaw interpreting it afford DOJ any special rights to inspect a state's voter rolls. Because DOJ's right to examine a state's voter registration records is coextensive with the general public's right to examine this same information, any holding that Pennsylvania must provide its full, unredacted voter list to DOJ would necessarily expose this same sensitive information to the general public, which would violate the protected confidentiality interests of Commonwealth voters. 4 Pa. Code § 183.14(c) (prohibiting public inspection or photocopying of a registrant's driver's license number or last four digits of their Social Security number and information of certain individuals); 25 Pa. Cons. Stat. § 1404(a)(3) (prohibiting disclosure of the "digitized or electronic signature or SURE registration number" in public lists); *see also Pennsylvanians for Union Reform v. Pa. Dep't of State*, 138 A.3d 727, 732 n.11 (Pa. Commw. Ct. 2016) ("The General Assembly also explicitly provided that certain types of voter registration information may not be disclosed." (emphasis removed)).

Defendants have made available the information the NVRA requires them to produce, and Plaintiff has otherwise failed to state a claim under the NVRA upon which relief can be granted. "As its text makes clear, NVRA was intended as a shield to protect the right to vote, not as a sword to pierce it." *Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 182 (3d Cir. 2017).

## II.    HAVA Does Not Entitle Plaintiff to Pennsylvania's Complete Unredacted Voter File.

The Court should dismiss Plaintiff's claim under HAVA. The statute does not authorize access to the data it requests, and Plaintiff's basis for seeking such access runs counter to HAVA's purpose. Plaintiff cannot overcome these hurdles with vague assertions that access to Pennsylvania's full unredacted SVRL is necessary to enforce HAVA.

Plaintiff has no valid claim under HAVA. First, HAVA does not have a disclosure provision and thus does not afford the relief Plaintiff seeks, *see* Compl. ¶¶ 57-62. Unlike the NVRA and the CRA, the statute is silent regarding disclosure to the federal government or the public. *Compare* 52 U.S.C. § 20507(i)(1) (public inspection provision) *and* 52 U.S.C. § 20703 (Attorney General inspection provision), *with* 52 U.S.C. § 20901 *et seq.* HAVA does, however, provide for limited data-sharing between state agencies, *see* 52 U.S.C. § 21083(a)(5)(B)(i). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Hanif v. Att'y Gen. of U.S.*, 694 F.3d 479, 486 (3d Cir. 2012) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)). Thus, HAVA's silence on disclosure or inspection by the federal government precludes Plaintiff's request for relief.

Second, HAVA was enacted to enhance state election administration, not to federalize it or facilitate voter roll purges. In fact, HAVA "attempts to increase voter participation by limiting the manner in which states may remove voters from the voting rolls." *Am. C.R. Union*, 872 F.3d at 181; 52 U.S.C. § 21082. While HAVA sought "to establish minimum election administration standards" and "uniform" requirements, and requires states to "perform list maintenance," Pub. L. No. 107-252 pmbl., tit. 3, 116 Stat. 1666, 1704 (2002); 52 U.S.C. § 21083(a)(2)(A), Congress left to the states the implementation of those standards and the administration of elections. *See* 52 U.S.C. § 21085. A House Committee report on HAVA emphasized this clear intent, citing the benefits of local election administration:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country. Local

> control has the further added benefit of allowing for flexibility, so that local
> authorities can tailor their procedures to meet the demands of disparate and unique
> communities. Further by leaving the responsibility for election administration in
> the hands of local authorities, if a problem arises, the citizens who live within their
> jurisdictions know whom to hold accountable. The local authorities who bear the
> responsibility cannot now, and should not in the future be able to, point the finger
> of blame at some distant, unaccountable, centralized bureaucracy.

H.R. Rep. No. 107-329(I) at 31-32 (2001). Congress further explained that HAVA did not

"preempt any state or local law." *Id.* at 57; *see also Am. C.R. Union*, 872 F.3d at 185-87 (holding

HAVA does not require voters to be purged in violation of state law). Plaintiff's bid to consolidate

state voter records and data in a centralized federal database in violation of state law, 25 Pa. Cons.

Stat. § 1404(a)(3), thwarts the clear Congressional intent. So too does its bid to usurp state voter

roll maintenance, to further Plaintiff's ostensible goal of purging alleged noncitizens.

Plaintiff's attempt to assert a valid claim for access to Pennsylvania's voter database under

the guise of enforcing HAVA also fails. Plaintiff identifies no actual failure of Defendants to

comply with HAVA or any section of it pertaining to citizenship verification. *See* Compl. ¶¶ 35,

38. Nor does Plaintiff identify any section of HAVA that requires Defendants to do anything *other*

than what Plaintiff alleges was done here. *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019)

("Nothing in HAVA broadens the scope of the NVRA's list-maintenance obligations."); *see also*

*Fish v. Schwab*, 957 F.3d 1105, 1136 (10th Cir. 2020) (state documentary proof requirement

imposed on NVRA citizenship self-attestation constituted an unconstitutional burden on voting).

Instead, Plaintiff vaguely expresses displeasure at how Pennsylvania operates its elections. *See*

Compl. ¶ 43, 45. But nothing in HAVA forces Pennsylvania to change whatever displeases

Plaintiff. DOJ cannot forcibly impose Executive Branch policy on the states, especially not policy

that is "contrary to the manifest will of Congress, as expressed in the text, structure, and context

of the NVRA and HAVA." *California v. Trump*, 786 F. Supp. 3d 359, 371-72 (D. Mass. 2025)

(citing *League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 195 (D.D.C. 2025)), *appeal docketed*, No. 25-01726 (1st Cir. Aug. 1, 2025).

Bereft of specific statutory language, Plaintiff advances the abstract notion that in permitting the Attorney General to file suit "as may be necessary to carry out [HAVA's] uniform and nondiscriminatory election technology and administration requirements," Compl. ¶ 59; 52 U.S.C. § 21111, the statute implicitly requires disclosure of all underlying voter data—not simply the policy or records concerning the systems and operations architecture governed by the statute. *See* 52 U.S.C. § 21081(b) (defining "voting system"). The purpose of HAVA was to make federal funding available to "improve the election infrastructure," and its provisions govern election technology at the systems level. H.R. Rep. No. 107-329(I), at 57. The referenced section of HAVA provides no authority to request voter-specific information. Although Plaintiff claims that Defendant's failure to produce completed unredacted voter files prevents DOJ from independently verifying compliance with 52 U.S.C. § 21083(a)(2)(B) and § 21083(a)(5)(A), nowhere does Plaintiff explain why it needs voter-specific data in lieu of the systems policies and plans contemplated by HAVA. *See* Compl. ¶¶ 60-61. In fact, the Act's provisions concerning voter registration administration dictate that records be "defined, maintained, and administered at the State level." 52 U.S.C. § 21083(a)(1)(A).

The provisions identified in Plaintiff's Complaint simply do not support Plaintiff's demand for the complete unredacted voter file. And there are no set of facts that would support the unprecedented relief Plaintiff seeks under HAVA. Plaintiff's HAVA claim must be dismissed.

## III. Plaintiff Fails to State a Claim Under the Civil Rights Act of 1960.

Plaintiff's claim under the CRA must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(1) and (b)(6) because: (A) the Complaint does not sufficiently allege a claim to enforce Title III disclosure provisions; (B) Plaintiff fails to assert an investigation of

racial discrimination within the scope of the CRA; (C) Plaintiff is not entitled to sensitive personal identifiers; (D) Defendants have made the records available for inspection as contemplated by the CRA; and (E) Plaintiff fails to plead the factual predicate to establish the Court's jurisdiction.

Title III of the CRA sets forth the circumstances under which the DOJ may access voter information under the statute and its remedies if it is denied such access. Under 52 U.S.C. § 20701:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such [federal] election . . . .

52 U.S.C. § 20701. To inspect, reproduce, or copy election records described in Section 20701 "at the principal office of such custodian," the Attorney General must present "to the person having custody, possession, or control of such record or paper" a written request containing "a statement of the basis and the purpose" for such a request. *Id.* § 20703. The requirement that the Attorney General state the basis and purpose of the request enables a district court to determine whether the request is consistent with the statutory objectives: in particular, speedily remedying voting interference and intimidation by private and public individuals based on race. *See* H.R. Rep. No. 86-956 (1959), *reprinted in* 1960 U.S.C.C.A.N. 1939, 1944 ("The purpose of Title III is to . . . [protect] the right . . . to vote without discrimination on account of race. This is the same purpose contained in the Civil Rights Act of 1957, which authorizes the Attorney General to institute civil proceedings for preventive relief from the discriminatory denial of the right to vote.").

### A.    The Complaint's allegations are insufficient to assert a claim to enforce the CRA's information access provisions.

Plaintiff's CRA claim is fundamentally deficient for failure to provide the purpose and basis of its request for records *in* the requests sent to Defendants. Title III mandates that the Attorney General's "demand [for records] shall contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. Because the statute enumerates "basis" and "purpose" separately

13

and these terms refer to different concepts, a written request must conspicuously provide both. Further, "*the* basis and *the* purpose therefor" and not "*a* basis and *a* purpose therefor" indicates that not any basis or purpose may entitle the Attorney General to election records.

Even when viewed in the light most favorable to Plaintiff, the Complaint's description of the *underlying request* is virtually silent on the purpose and basis for the demand for the complete and unredacted voter files. *First*, Plaintiff failed to allege any request containing a statement of the basis *and* purpose at all. *See* Compl. ¶¶ 33-34 (describing only records "regarding Pennsylvania's compliance with HAVA"); *id.* ¶¶ 36-37 (describing only the requested records in the August 4, 2025 letter); *id.* ¶¶ 39-40, 42 (describing only the requested records in the August 14, 2025 letter).

While the Fifth Circuit opined that the scope of review of a Title III access request is limited, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962), this is not a situation in which Defendants are quibbling with the scope or manner in which the DOJ is investigating violations of voting rights under the CRA. This is a situation where the DOJ has not even purported that it is undertaking such an investigation, which the Fifth Circuit recognized is the very purpose of Title III disclosure provisions. *Lynd*, 306 F.2d at 226 ("The Title III proceeding is investigative in nature. Its purpose is to enable the Attorney General to determine whether § 1971 suits or similar actions should be instituted. And it is to enable him to obtain evidence for use in such cases if and when filed."). Thus, the question at issue here is about the bounds of Title III itself, which is a legal question subject to judicial review. *See generally Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024); *see also* 5 U.S.C. §§ 551(13), 704, 706(2)(A) (defining agency action and empowering a court to set it aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.").

*Second*, directly referencing the letters, which Plaintiff did not include in its pleadings, does not save its Title III claim because none of the letters contain a basis *and* purpose. The June 23, 2025 letter only contains information about HAVA and lists Plaintiff's requests for descriptions and records, none of which include requests for voters' personal information. *See* ECF No. 37-1. It does not state a basis or purpose, much less refer to an investigation of racial discrimination under Title III. The letter does not even imply that the Defendants committed any violation, even under HAVA, much less the CRA. Solely claiming authority under the NVRA, the August 4, 2025 letter also fails to list any basis or purpose for inspection. ECF No. 37-3. Essentially, the letter only lists NVRA statutes and specific records requested. *Id.* at 1-2. This letter does not refer to an investigation of racial discrimination in Pennsylvania's electoral system. Finally, the August 14, 2025 letter has the first and only reference to the Civil Rights Act of 1960, ECF No. 37-4, but not as to the "basis" or "purpose" of the request. Plaintiff identifies only a "purpose," which is limited to "ascertain[ing] Pennsylvania's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* No basis is stated. Nor could there have been a basis under Title III because, again, Plaintiff failed to indicate anywhere that any of its demands were based on racial discrimination allegations in the election process. In fact, there is no indication that the Commonwealth has committed any possible wrongdoing in the letter.

### B. Plaintiff fails to assert an investigation of racial discrimination within the scope of the CRA.

Title III disclosure provisions were not enacted to provide the DOJ with unfettered access to voter data or as a general mechanism to access it, and they have never been used as a means to facilitate list maintenance as Plaintiff seeks to do here. Rather, they were enacted to enable investigation of voter intimidation and interference based on racial discrimination. H.R. Rep. No. 86-956, *reprinted in* 1960 U.S.C.C.A.N. 1939, 1944-45; *Kennedy v. Lynd*, 306 F.2d at 228 (Title

15

III is an invaluable "investigative" tool "to enable the Attorney General to determine whether [Civil Rights Act] suits or similar actions *should* be instituted" to combat racial discrimination in the election process (emphasis added)); U.S. Comm'n on Civ. Rts, *Voting*, at 99, bk. 1 *in 1961 Commission on Civil Rights Report* (1961) (referring to Title III as "primarily an investigative tool"); *see also* U.S. Dep't of Just., *Annual Report of the Attorney General of the United States for the Fiscal Year Ended June 30, 1962*, at 166 (1962) (describing the Attorney General's operative procedure for the investigative use of county records for discrimination actions).

As with civil investigative demands, the DOJ's investigative authority under the statute must be limited to the scope and enforcement power of the statute's act. *See generally Equal Emp. Opportunity Comm'n v. Univ. of Pittsburgh*, 487 F. Supp. 1071, 1075 (W.D. Pa. 1980) (tying the congressionally mandated authority of the EEOC's investigative demand to discrimination charges under the Civil Rights Act of 1964); *In re AAM Holding Corp.*, 153 F.4th 252, 259-60 (2d Cir. 2025) (referring to the statute's text, context, and history to determine the EEOC's authority to issue and enforce administrative subpoenas lies within its "role in combating employment discrimination" and its "mandate to secure more effective enforcement of Title VII" (internal quotation omitted)); *Equal Emp. Opportunity Comm'n v. McLane Co., Inc.*, 857 F.3d 813 (9th Cir. 2017) (grounding the authority of the EEOC's right to obtain information to its investigation under Title VII); *Equal Emp. Opportunity Comm'n v. United Air Lines, Inc.*, 287 F.3d 643, 650 (7th Cir. 2002); *see also Fed. Trade Comm'n v. Turner*, 609 F.2d 743, 745 (5th Cir. 1980) (declining to extend, without a specific congressional mandate or a clearly discernable statutory implication, the FTC's investigative authority to ancillary issues).

The history and purpose of the CRA bear out this racial discrimination requirement for an investigation. Congress enacted the Civil Rights Act of 1960 to remedy racial discrimination

experienced by Black voters. H.R. Rep. No. 86-956, *reprinted in* 1960 U.S.C.C.A.N. 1939; *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966); *Pa. State Conf. of NAACP Branches v. Sec'y Pa.*, 97 F.4th 120, 133 (3d Cir. 2024). After the passage of the Civil Rights Act of 1957, state election officials heightened registration and ballot access restrictions against Black voters by passing discriminatory election devices, such as imposing literary tests, vacating public offices to obstruct a court from enjoining a proper party defendant, and passing laws requiring the destruction of election records. *See United States v. Mississippi*, 380 U.S. 128, 132-33 (1965) (passage of literacy tests in Mississippi in 1954); *United States v. Alabama*, 362 U.S. 602, 603-04 (1960); *Hearing on H.R. 8601 Before the S. Comm. on the Judiciary*, 86th Cong. 9 (1960) (statement of Lawrence Walsh, Deputy Att'y Gen. of the United States) (referring to Alabama's destruction of election records 30 days after an applicant was denied registration).

A recognition of the need for records to enforce voting rights laws emerged close in time to the consideration and passage of the CRA. A 1959 report from the U.S. Commission on Civil Rights supported a records provision citing the DOJ's failure to secure an indictment under the 1957 act against Louisiana's illegal purging of 6,100 Black voters. *See* U.S. Comm'n on Civ. Rts., *Report of the United States Commission on Civil Rights*, at 131 (1959) (citing in support of a records provision). The Deputy Attorney General testified before Congress that "[i]n many cases, discrimination in registration can be proved only by comparing the records of [Black] applicants with those of white applicants. At the present time [in 1960], the Government lack[s] any procedure by which to compel the production of these records *before suit is filed*." *Hearing on H.R. 8601 Before the S. Comm. on the Judiciary*, 86th Cong. 9 (1960) (statement of Lawrence Walsh, Deputy Att'y Gen. of the United States) (emphasis added).

17

Courts that interpreted Title III recognized it as a mechanism for preventing racial discrimination in voting. In 1960, the Attorney General sent out written records requests under Title III to county officials residing in Alabama, Louisiana, and Mississippi, clearly stating in writing that the "demand is based upon information . . . tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within [their] jurisdiction" and that the "purpose . . . is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred." *Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) (quoting letter); *In re Coleman*, 208 F. Supp. 199, 199-200 (S.D. Miss. 1962) (quoting letter), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963); *Kennedy v. Lynd*, 306 F.2d at 229 & n.6 (quoting letter). The Fifth Circuit held that such a stated basis is valid. *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962) (requiring a "simple assertion . . . that there are reasonable grounds for belief that certain voters are being discriminatorily denied their voting rights in a given county"); *see also Kennedy v. Bruce*, 298 F.2d at 863 & n.2 (noting that, in light of statistical evidence where there were more registered white voters than there were white citizens in a county, "failures to purge voters who have moved away or have died . . . d[o] not bear any particular importance" on the racial discrimination Title III claims). Similarly, a valid purpose may be "to inspect and copy all of the voter papers and records as defined" "in fulfillment of the duties imposed upon [the Attorney General] by the Civil Rights Act of 1957 and 1960." *Kennedy v. Lynd*, 306 F.2d at 228; *see also Kennedy v. Bruce*, 298 F.2d at 864 (lamenting that local officials should not frustrate the Attorney General's ability "to inspect the records of a county having such a disparity in the percentage of voters to eligible citizens as between the races").

Nowhere among the stated reasons for Plaintiff's broad demands are allegations of racial discrimination, and thus the requested relief is entirely untethered from the "purpose" and "basis" understood and enforceable under the CRA. The demands are irrelevant to a Title III racial discrimination investigation. To the extent that Plaintiff requests in the August 4, 2025 letter information related to EAVS questions, *see* ECF No. 37-3 at 2, Plaintiff's concerns of duplicative registration records are not relevant to a Title III request. *See Kennedy v. Bruce*, 298 F.2d at 863 n.2. List maintenance compliance referenced in the August 14, 2025, letter, *see* ECF No. 37-4, is also not a valid basis or purpose for a Title III claim. None of these requests fall within Title III's scope of a valid purpose and basis for a racial discrimination suit.

### C.   Plaintiff is not entitled to unredacted sensitive personally identifying information.

Plaintiff's Title III claim rests on its unsupported allegation that the federal government is entitled to sensitive information contained in election records under the Civil Rights Act of 1960. *See* Compl. ¶¶ 48-50; *cf. id.* ¶ 43 (alleging that the Secretary offered public records). Plaintiff's gripe does not lie with Defendants' denial of a "record or paper" under the statute. 52 U.S.C. §§ 20701, 20703. Instead, Plaintiff disputes the ability to redact or withhold certain personal identifying information under the statute. As a matter of law, Plaintiff has not established a basis upon which it requires or is entitled to this information to investigate racial discrimination, and thus Plaintiff cannot seek relief from this Court to obtain such information.

The text of Title III does not define the scope of information within records the Attorney General may seek. Section 20703 refers to "record[s]" and "paper[s]" defined in 52 U.S.C. § 20701. *Id.* Section 20701 provides that the scope of records the Attorney General may seek are "all records and papers which come into [the] possession [of an election official] relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." *Id.*

§ 20701. Redactions of personal information are not prohibited by the text of the statute and may be appropriate, as they are here, in investigative demands. *Equal Emp. Opportunity Comm'n v. Univ. of Pa.*, 850 F.2d 969, 982 (3d Cir. 1988) (vacating order to release nonredacted records and holding redactions of identifying information in records sought by Title VII investigation may be justified); *Equal Emp. Opportunity Comm'n v. Franklin & Marshall Coll.*, 775 F.2d 110, 117 (3d Cir. 1985) (noting that parties agreed to omit certain identifying information in records responsive to a Title VII CID).

The CRA does not provide Plaintiff with a vehicle to obtain the sensitive information it seeks here. In 1960, legislators could not have fathomed that such confidential information would be disclosed to the Attorney General, because most states did not require that information at all for eligible voters to be registered. In fact, around the time the NVRA was passed, over 30 years after the enactment of the CRA, only eight states required at least part of a Social Security number to be listed on a voter registration application, and many states did not require any part of a Social Security number or driver's license to be listed at all. Fed. Election Comm'n, *Implementing the National Voter Registration Act: A Report to State and Local Election Officials on Problems and Solutions Discovered 1995 – 1996*, app. A (1998) (under Recommendation 1).

Courts interpreting Title III disclosures recognized that they do not provide unbounded access to information. For example, the Fifth Circuit never mandated the disclosure of the types of personal information that Plaintiff seeks. In *Kennedy v. Lynd*, 306 F.2d at 231, the court was clear that it was "not discussing confidential, private papers and effects. [The court], rather deal[t] with public records which ought ordinarily to be open to legitimate reasonable inspection and which by nature relate directly to the most vital of all public functions—the franchise of the citizen." *Id.* at 231. In declining to stay the disclosure of election records in *Kennedy v. Owen*, 321

F.2d 116 (5th Cir. 1963), Supreme Court Justice Hugo Black explained that the Fifth Circuit's order "only require[d] [states] to make available to the Attorney General or his representative, *under fair and reasonable conditions*, records of which movants are not the owners but are only custodians for the State or its agencies." *Owen v. Kennedy*, 84 S. Ct. 12, 13 (1963) (emphasis added). Disclosure has never been absolute and is subject to qualification "under fair and reasonable conditions." *Id.*

Further, redactions of personally identifying information within election records are consistent with the interpretation of similar records provisions under the NVRA. "[A]ll records," 52 U.S.C. § 20507(i), is construed to protect the privacy interests of voters. So, too, should Title III be. *See* Mem. in Supp. of Req. for Order to Compel Produc. of Rs. Pursuant to 52 U.S.C. § 20701, *et seq.* at 15 n.4, *United States v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025), ECF No. 4 ("Although this Motion for an Order to Show Cause is made under the CRA, the United States notes that the NVRA includes a similar requirement for production of Federal election records. *See* 52 U.S.C. §§ 20507, 20510(a). '[W]hen Congress uses the same language in two statutes having similar purposes … it is appropriate to presume that Congress intended that text to have the same meaning in both statutes.' *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion).").[2] As courts have denied relief to plaintiffs seeking sensitive personal information under the NVRA, this Court should do the same under the CRA.

---

[2] *See also* Mem. in Supp. of Mot. to Compel at 12, n.3, *United States v. Hanzas*, No. 2:25-cv-903 (D. Vt. Dec. 1, 2025), ECF No. 2-2 (same); Mem. in Supp. of Mot. to Compel at 13 n.3, *United States v. DeMarinis*, No. 1:25-cv-3934 (D. Md. Dec. 1, 2025), ECF No. 2-1 (same); Mem. in Supp. of Mot. to Compel at 11 n.3, *United States v. Oliver*, No. 1:25-cv-1193 (D. N.M. Dec. 2, 2025), ECF No. 2-2 (same); Mem. in Supp. of Req. for Order to Compel at 8 n.3, *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo. Dec. 11, 2025), ECF No. 5 (same); Mem. in Supp. of Req. for Order to Compel at 17 n.3, *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Dec. 11, 2025), ECF No. 5-1 (same).

**D.    Plaintiff has not been denied proper disclosure under the CRA.**

Plaintiff's Complaint does not adequately allege that the federal government has suffered an injury under the Civil Rights Act of 1960. Title III mandates records to "be made available for inspection, reproduction, and copying at the principal office of such custodian" of the records. 52 U.S.C. § 20703. Despite the text of the statute only mandating in-person inspection and copying in Harrisburg, Pennsylvania, Plaintiff seeks relief through the provision of electronic records, which it requested to be sent by email or via Plaintiff's "Justice Enterprise File Sharing" file collector. ECF No. 37-4. However, inspection of records under the NVRA may be limited to only in-person inspection. *See Greater Birmingham Ministries v. Sec'y of State for Ala.*, 105 F.4th 1324, 1332-33 (11th Cir. 2024) (holding that the NVRA does not require electronic disclosure). Similarly, the DOJ is not entitled to the requested electronic disclosure. The Complaint declares that upon an insufficient request, the SOS "offered voter records to the United States to review." Compl. ¶ 43. These records were the public voter records, though, which do not include the entire scope of information that Plaintiff wants. *Id.* To the extent that public voter registration records were offered, Plaintiff was not denied records under its Title III claim. Plaintiff has failed to show that it is entitled to the unredacted information under Title III, and thus has not suffered a real injury to seek relief.

**E.    Plaintiff fails to establish subject matter jurisdiction in this Court.**

Plaintiff fundamentally fails to plead a claim under the CRA or establish jurisdiction in this court. Plaintiff failed to allege that the records are held in the Western District of Pennsylvania, that the requests were issued to the parties it now seeks to compel, or that there is an underlying failure to turn over records to which it is entitled. There are a number of subject-matter jurisdiction deficiencies to Plaintiff's Title III claim. *First*, this Court does not have jurisdiction to compel the records sought. A federal district court obtains jurisdiction "for the district in which a demand is

made pursuant to section 20703 . . . , or in which a record or paper so demanded is located." 52 U.S.C. § 20705. Plaintiff fails to allege within the Complaint where its request was sent. Plaintiff simply alleges that letters were "sent." Compl. ¶¶ 33, 39. Every letter was mailed to the Secretary of State's Harrisburg office location, indicating that Plaintiff's requests were made in Harrisburg. *See* ECF Nos. 37-1, 37-3, 37-4. Plaintiff also fails to allege where the statewide voter registration list is kept. Presumably, the records are located at the Secretary's "principal office," 52 U.S.C. § 20703, which is in Harrisburg. Plaintiff may not bring this claim in the Western District of Pennsylvania under 52 U.S.C. § 20705, *see* Compl. ¶ 4.

## CONCLUSION

For the reasons above, Proposed Intervenors respectfully request that the Court dismiss the Complaint under Rule 12(b)(1) and 12(b)(6).

Dated: December 16, 2025                    Respectfully submitted,

By: */s/ Gillian Cassell-Stiga*
Leah Frazier, D.C. Bar No. 492540*
Edward G. Caspar, D.C. Bar No. 1644168*
Robert N. Weiner, D.C. Bar No. 298133**
Gillian Cassell-Stiga, D.C. Bar No. 90032319*
Ryan Snow, D.C. Bar No. 1619340**
Grace Thomas, D.C. Bar No. 90018667*
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street N.W., Suite 900
Washington, D.C. 20005
Tel: 202-662-8600
lfrazier@lawyerscommittee.org
ecaspar@lawyerscommittee.org
rweiner@lawyerscommittee.org
gcassell-stiga@lawyerscommittee.org
rsnow@lawyerscommittee.org
gthomas@lawyerscommittee.org

David Smith, Pa. Id. No. 21480
Dilworth Paxson LLP

23

1650 Market Street, Suite 1200
Philadelphia, PA 19103
Tel.: (215) 575-7000
Fax: (215) 754-4603
dsmith@dilworthlaw.com

*Admitted *pro hac vice*
**Pro hac vice* motions forthcoming

*Counsel for Proposed Intervenors NAACP,
State Conference, and Stacey Taylor*