**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>v.<br><br>COMMONWEALTH OF PENNSYLVANIA;<br>and AL SCHMIDT, in his official capacity as<br>Secretary of the State of Pennsylvania,<br><br>     Defendants. | Case No. 2:25-cv-1481<br>(Hon. Cathy Bissoon) |

**BRIEF IN SUPPORT OF JOINDER AND MOTION TO DISMISS OF NICHOLAS MASTON, GREGORY PERRY, TODD THATCHER, JOEL DICKSON, TRISHA KENT, LIOR STERNFELD, JOHN THOMPSON, THE LEAGUE OF WOMEN VOTERS OF <u>PENNSYLVANIA, AND COMMON CAUSE</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................. 3

    A.    The United States Seeks to Force the Disclosure of Voters' Sensitive Voter Data ............ 3

    B.    The United States Seeks to Unlawfully Construct National Voter Database with the Data 6

    C.    The United States Seeks to Unlawfully Use the Data to Disenfranchise Voters ...............11

III.   ARGUMENT ................................................................................................... 13

    A.    The CRA Claim Can be Dismissed Because the United States has Failed to State the *Actual* Purpose for its Request for Pennsylvania Voters' Data.................................................. 15

IV.    CONCLUSION.................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*,
No. 25-cv-596 (D. Md. Jan. 16, 2026) ..................................................................................... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................... 13

*Coleman v. Kennedy*,
313 F.2d 867 (5th Cir. 1963) ................................................................................................. 14

*Corner Post, Inc. v. Board of Governors of the Federal Reserve System*,
603 U.S. 799 (2024) ............................................................................................................... 16

*Federal Deposit Insurance Corporation v. Wentz*,
55 F.3d 905 (3d Cir. 1995) .................................................................................................... 15

*In re Coleman*,
208 F. Supp. 199 (S.D. Miss. 1962) ...................................................................................... 14

*Kennedy v. Lynd*,
306 F.2d 222 (5th Cir. 1962) ................................................................................................. 14

*Niz-Chavez v. Garland*,
593 U.S. 155 (2021) ............................................................................................................... 16

*PA Fair Elections v. Pennsylvania Department of State*,
337 A.3d 598 (Pa. Commw. Ct. 2025) .................................................................................... 7

*Sugarloaf Funding, LLC v. United States Department of Treasury*,
584 F.3d 340 (1st Cir. 2009) .................................................................................................. 15

*Tincher v. Noem*,
No. 0:25-cv-04669-KMM-DTS (D. Minn. Jan. 16, 2026) ..................................................... 12

*Torrens v. Lockheed Martin Services Group, Inc.*,
396 F.3d 468 (1st Cir. 2005) .................................................................................................. 17

*Town of Sanford v. United States*,
140 F.3d 20 (1st Cir. 1998) .................................................................................................... 17

*United States v. Oregon*,
No. 6:25-cv-01666-MTK (D. Or. Jan. 26, 2026) .................................................................... 1

*United States v. Weber*,
No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) ......... 1, 14, 16, 18

**Statutes**

5 U.S.C. § 552a ........................................................................................................................ 16
52 U.S.C. § 20501 ....................................................................................................................11
52 U.S.C. § 20507 ............................................................................................................... 15, 17
52 U.S.C. § 20701 ............................................................................................................... 13, 14
52 U.S.C. § 20703 ........................................................................................................... 2, 14, 15
52 U.S.C. § 21083 ....................................................................................................................11
52 U.S.C. § 21085 .................................................................................................................11, 17

**Other Authorities**

Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES, Oct. 22, 2025, https://www.nytimes.com/2025/10/22/us/politics/trump-election-deniers-voting-security.html 7

Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, PROPUBLICA, July 13, 2024, https://perma.cc/5W2N-SS2Q ................................................................................. 7, 8

Bethany Rogers, *Testimony: Pa. Election Denial Group Behind Voter Registration Cancellation Form Mailings*, GOERIE.COM (Nov. 2, 2024), https://www.goerie.com/story/news/politics/elections/state/2024/11/02/pa-voter-registration-cancellation-letters-chester-county/75996247007 ..................................................... 9

Brett Sholtis, *'PA Fair Elections,' Tied to Powerful Conservative Groups, Pushes to Remove People from Voter Rolls*, WESA (Sept. 28, 2024), https://www.wesa.fm/politics-government/2024-09-28/pa-fair-elections-conservative-pennsylvania-voter-role-purges .......... 8

Brett Sholtis, *Pa. Election Integrity Group Met with 2 Architects of 2020 Effort to Overturn Election*, LANCASTERONLINE (July 21, 2024), https://lancasteronline.com/news/politics/pa-election-integrity-groupmet-with-2-architects-of-2020-effort-to-overturnelection/article_d477633c-460f-11ef-9d56-2fd754d57cab.html ................................... 8

Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8, 2024, https://perma.cc/YL7J-NUV5 ................................. 8, 9

Carter Walker, *This Pa. Activist Is the Source of False and Flawed Election Claims Gaining Traction Across the Country*, VOTEBEAT (Feb. 12, 2025), https://www.votebeat.org/pennsylvania/2024/02/12/heather-honey-pennsylvania-election-integrity-eric/ ................................................................................................................ 8

Chester County, *Nov. 1, 2024 Election Board* overview *Hearing*, https://chestercopa.portal.civicclerk.com/event/852/ ................................................ 9

December 5, 2025 Post by @AAGDhillon, https://perma.cc/8GE8-Q53H ................................ 10

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025, https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html. .............. 6

Doug Bock Clark, *She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security*, PROPUBLICA, Aug. 26, 2025, https://perma.cc/CE7A-6RY6... 7

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAGAZINE, Nov. 16, 2025, https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html ...................................................................................................................... 6

Hansi Lo Wang, *Thousands of Pennsylvania Voters Have Had Their Mail Ballot Applications Challenged*, NPR, Nov. 5, 2024, https://perma.cc/9993-RZ6E ................................. 8

Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is Appointed to Federal Election Post*, PA. CAPITAL-STAR, Aug. 27, 2025, https://penncapital-star.com/election-2025/pa-s-heather-honey-who-questioned-the-2020-election-is-appointed-to-federal-election-post .......................................................... 7

Jeremy Roebuck and Katie Bernard, *'I Can't Think of Anything Less American': Right-Wing Activists' Effort to Nullify Hundreds of Pa. Votes Met with Skepticism*, PHILA. INQUIRER, Nov. 1, 2024, https://perma.cc/AMZ5-TFHQ ............................................................................... 8

Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security ... 6

Jonathan Shorman, *Trump's DOJ offers states 'confidential' deal to wipe voters flagged by feds as ineligible*, STATELINE, Dec. 18, 2025, https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible/ ................................... 12

Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025, https://perma.cc/J8VZ-X4N4 ............................................. 7

Jude Joffe-Block, *Trump's SAVE Tool Is Looking for Noncitizen Voters. But It's Flagging U.S. Citizens Too*, NPR (Dec. 10, 2025), https://www.npr.org/2025/12/10/nx-s1-5588384/savevoting-data-us-citizens. .................................................................................. 10

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, Brennan Center for Justice, *Tracker of Justice Department Requests for Voter Information* (updated Dec. 5, 2025), https://perma.cc/A73C-8YDZ ............................................................................................. 4

Kyle Cheney, *Trump Administration Concedes DOGE Team May Have Misused Social Security Data*, Politico, Jan. 20, 2026, https://www.politico.com/news/2026/01/20/trump-musk-doge-social-security-00737245 ................................................................................................. 10

Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET, June 12, 2025, https://www.democracydocket.com/news-alerts/dhs-said-to-brief-cleta-mitchells-anti-voting-group-on-checking-citizenship-for-voters ................................................................................. 7

Miles Parks & Jude Joffe-Block, *Trump's DOJ focuses in on voter fraud, with a murky assist from DOGE*, NPR (May 22, 2025), https://www.npr.org/2025/05/17/nx-s1-5383277/trump-doj-doge-noncitizenvoting ................................................................................................... 9

Press Release, U.S. Dep't of Just., *Justice Department Sues Virginia for Failure to Produce Voter Rolls* (Jan. 16, 2026), https://perma.cc/3L8Q-SJM5 .................................................................. 5

Press Release, United States Department of Justice, *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls* (January 6, 2026), https://perma.cc/YCM2-QQKM ............................................................................. 5

Press Release, United States Department of Justice, *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/8V9V-SRPJ..................................... 5

Press Release, United States Department of Justice, *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/RZL3-4E4B .................................................................................................. 5

Press Release, United States Department of Justice, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC ......................................................................... 5

Press Release, United States Department of Justice,
*Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls*
(Dec. 2, 2025), https://perma.cc/F5MD-NWHD..................................................................... 5
Press Release, United States Department of Justice,
*Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25,
2025), https://perma.cc/7J99-WGBA.................................................................................... 5
*Read Bondi's Letter to Minnesota's Governor*, N.Y. Times (Jan. 24, 2026),
https://perma.cc/H5GY-ZKBS ............................................................................................ 12
Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes,
Documents Show*, Reuters, Sept. 9, 2025,
https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-
data-criminal-probes-documents-2025-09-09 ........................................................................ 6
United States Department of Justice, Civil Rights Division,
*Federal Law Constraints on Post-Election "Audits"* (Jul. 28, 2021),
https://perma.cc/74CP-58EH.................................................................................................. 3

**Rules**

Fed. R. Civ. P. 12................................................................................................................ 1, 13

Nicholas Maston, Gregory Perry, Todd Thatcher, Joel Dickson, Trisha Kent, Lior Sternfeld, John Thompson, the League of Women Voters of Pennsylvania, and Common Cause (collectively, the "Maston Intervenors" or the "Voter Intervenors") submit this brief in support of their Joinder and Motion to Dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure.

## I.    INTRODUCTION

This Court recently granted the Voter Intervenors' motion to intervene as defendants in this action.  Motions to dismiss have been filed by Secretary Schmidt and by the other intervenor-defendants, and the Voter Intervenors hereby join in those motions.  *See* Br. of Sec. Schmidt in Support of his Mot. to Dismiss ("Sec. Schmidt MTD"), Dkt. No. 92; Mem. in Support of Mot. to Dismiss ("NAACP MTD"), Dkt. No. 90-2; Pa. Alliance for Retired Americans' Mem. in Support of Mot. to Dismiss ("PARA MTD"), Dkt. No. 88-3.  As set forth therein, the United States' claims under the Help America Vote Act ("HAVA"), the National Voter Registration Act ("NVRA"), and Title III of the Civil Rights Act of 1960 ("CRA") are legally deficient in multiple ways, and the relief the United States seeks violates federal law.  Indeed, a district court in California reached those same conclusions just last week with respect to a materially identical complaint against the State of California, dismissing the United States's claims without leave to replead.  *See United States v. Weber*, No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); *see also* Minutes of Proceedings, *United States v. Oregon*, No. 6:25-cv-01666-MTK (D. Or. Jan. 26, 2026), Dkt. No. 68 (granting dismissal of the United States's claims with written opinion to follow).  This Court should do the same.

In granting intervention, this Court stated that the Voter Intervenors may seek leave to file their own motion to dismiss if they "determine that their arguments are not sufficiently addressed in the other MTDs."  Order, Dkt. No. 105. While the existing motions are comprehensive and provide multiple sufficient grounds for the dismissal of all of the United States's claims, there are

additional grounds for dismissal of the United States's CRA claim that are not sufficiently addressed in those motions.

The CRA claim can be dismissed for failure to properly disclose "the basis and the purpose" of the United States' demand for the disclosure of sensitive personal voter data. 52 U.S.C. § 20703. As the existing motions make clear, the United States has facially failed to comply with that statutory requirement, because it has stated no "basis" whatsoever for its request, and because its stated "purpose" is not plausibly advanced by obtaining the unredacted voter information at issue. In addition, and set forth below in detail, the CRA claim can also be dismissed because judicially noticeable documents and public reporting make plain that the United States's stated purpose (even it were sufficient on its face) is pretextual, and that the United States still has not disclosed the *actual* purpose of its requests, as required by the CRA. *See* 52 U.S.C. § 20703 (United States must disclose "*the* basis and *the* purpose" of request) (emphasis added)). These documents and reporting indicate that the United States' actual reason for the data demand is to create an unauthorized and unlawful national database, and to use this illicit tool to target and challenge voters in coordination with so-called "election integrity" advocates who have sought to overturn elections in Pennsylvania and elsewhere.

For Voter Intervenors in particular, this unlawful purpose strikes close to home. On the eve of the 2024 Presidential Election, thousands of Pennsylvania voters, including Mr. Maston, Mr. Perry, Mr. Thatcher, Mr. Dickson, and Ms. Kent, were subjected to baseless mass challenges to their mail-in ballots. This coordinated effort to disenfranchise eligible voters, led by purported election integrity activists, was premised on faulty database matching techniques using publicly available voter registration data. These Voter-Intervenors—who were anxious and furious at this attempted infringement on their rights—attended Board of Elections hearings and submitted

2

written statements to defend their qualifications to vote in Pennsylvania.  Now, the Department of Justice is seeking unprecedented access to highly sensitive voting data about these voters and millions more like them, demanding personally identifying information including social security numbers and drivers' license numbers, apparently in an effort to supercharge the wrongful disenfranchising conduct from the 2024 election and give it the imprimatur of the federal government.

The CRA, the NVRA, and HAVA were enacted for the purpose of ensuring that all eligible Americans—especially racial minorities and voters with disabilities—have the opportunity to participate in free, fair, and secure elections. Title III of the CRA, for example, was designed to "secure a more effective protection of the right to vote." U.S. Dep't of Just., Civ. Rts. Div., *Federal Law Constraints on Post-Election "Audits"* (Jul. 28, 2021), https://perma.cc/74CP-58EH (citing *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) and H.R. Rep. No. 86-956 (1959)).  The United States' demand for Pennsylvania's unredacted voter file, and the sensitive, protected personal information of millions of Pennsylvania voters, undermines these statutes' core purposes and is contrary to law.  The Complaint should be dismissed.

## II.    BACKGROUND

The relevant background facts are recounted in the other motions to dismiss, and are set forth here only as necessary to provide context for the additional grounds for dismissal advanced in this motion.  *See* Sec. Schmidt MTD at 2-7; NAACP MTD at 2-6; PARA MTD at 3-6.

### A.    The United States Seeks to Force the Disclosure of Voters' Sensitive Voter Data

Beginning in May 2025, Plaintiff the United States, through its Department of Justice ("DOJ"), began sending letters to election officials in at least forty states, making escalating demands for the production of statewide voter registration databases, with plans to gather data

from all fifty states. *See* Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, Brennan Ctr. for Just., *Tracker of Justice Department Requests for Voter Information* (updated Dec. 5, 2025), https://perma.cc/A73C-8YDZ.

On June 23, 2025, DOJ wrote to Defendant Secretary Al Schmidt requesting information about voter registration and maintenance of voter rolls in Pennsylvania. *See* Compl. ¶¶ 33-34; *see also* Letter of Maureen Riordan to the Hon. Al Schmidt (June 23, 2025), Dkt. No. 37-1.  In particular, DOJ expressed an interest in certain categories of voters, including: voters who might have "duplicate" records in the system for some reason (for example, because they changed addresses and registered to vote at their new address); "voters who have been convicted of a felony;" voters "who have moved outside the Commonwealth" and registered in their new state (even if those voters subsequently moved back to Pennsylvania); voters who are supposedly "ineligible to vote due to non-citizenship;" and voters who "registered to vote by mail." *Id.* at 2. Secretary Schmidt provided detailed responses to the June 23 requests in a heavily footnoted, 11-page letter. *See* Letter of Al Schmidt to Maureen Riordan (July 23, 2025), Dkt. No. 37-2.

The United States responded by demanding that Secretary Schmidt provide "[t]he current electronic copy of the Commonwealth of Pennsylvania's computerized statewide voter registration list" with "all fields contained within the list." Compl. ¶¶ 33-34; Letter of Deputy Attorney General Michael Gates to the Hon. Al Schmidt (Aug. 4, 2025), Dkt. No. 37-3. This August 4 letter again asked about voters with supposed "duplicate registrations," as well as supposed "[n]on-citizen" voters and voters with a "[f]elony conviction." *Id.* at 2. The August 4 letter purported to demand this information "[p]ursuant to Section 20507(i) of the NVRA." *Id.* at 1.

Ten days later, the United States again demanded sensitive Pennsylvania voter data, specifying that "the statewide VRL [voter registration list]… must… contain[] *all fields*, which

includes either the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number [SSN4s]." Letter of Assistant Attorney General Harmeet Dhillon to the Hon. Al Schmidt (Aug. 14, 2025) ("August 14 Letter"), Dkt. 37-4; *accord* Compl. ¶ 39. This August 14 Letter for the first time invoked Title III of the Civil Rights Act of 1960 as one source of purported authority for the demand and stated, with respect to the invocation of Title III, "the purpose of the request is to ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA and HAVA." *Id.* at 3.

In subsequent letters, Secretary Schmidt answered the questions posed by the United States and offered to provide the United States a copy of Pennsylvania's voter registration list ("Full Voter Export" or "FVE"), but declined to include in the FVE certain confidential, sensitive data, including voters' driver's license numbers and SSN4s. Compl. ¶ 43; Letter of Al Schmidt to Michael Gates (Aug. 18, 2025), Dkt. No. 37-5; Letter of Al Schmidt to AAG Dhillon and DAAG Gates (Aug. 21, 2025), Dkt. No. 37-6.

The United States responded by filing this lawsuit—one of at least twenty-five suits nearly identical lawsuits that DOJ has initiated against states and election officials—seeking to compel the production of this sensitive Pennsylvania voter data.[1]

---

[1] *See* Press Release, U.S. Dep't of Just., *Justice Department Sues Virginia for Failure to Produce Voter Rolls* (Jan. 16, 2026), https://perma.cc/3L8Q-SJM5; Press Release, U.S. Dep't of Just., *Justice Department Sues Arizona and Connecticut for Failure to Produce Voter Rolls* (January 6, 2026), https://perma.cc/YCM2-QQKM; Press Release, U.S. Dep't of Just., *Justice Department Sues Four States for Failure to Produce Voter Rolls* (Dec. 18, 2025), https://perma.cc/RZL3-4E4B; Press Release, U.S. Dep't of Just., *Justice Department Sues Four Additional States and One Locality for Failure to Comply with Federal Elections Laws* (Dec. 12, 2025), https://perma.cc/8V9V-SRPJ; Press Release, U.S. Dep't of Just., *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025), https://perma.cc/F5MD-NWHD; Press Release, U.S. Dep't of Just., *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/7J99-WGBA; Press Release, U.S. Dep't of Just., *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/M69P-YCVC.

**B.    The United States Seeks to Unlawfully Construct National Voter Database with the Data**

According to extensive public reporting, DOJ's requests for private, sensitive voter data from Pennsylvania and other states appear to be in connection with novel efforts by the United States to construct a national voter database, and to otherwise use untested forms of database matching to scrutinize state voter rolls.

According to this reporting, DOJ employees "have been clear that they are interested in a central, federal database of voter information." Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES, Sept. 9, 2025, https://perma.cc/CN2T-RJU9.  DOJ is coordinating these novel efforts with the federal Department of Homeland Security ("DHS"), according to reported statements from DOJ and DHS. *Id.*[2] One article extensively quoted a recently-departed lawyer from DOJ's Civil Rights Division describing DOJ's aims in this case and others like it:

> We were tasked with obtaining states' voter rolls, by suing them if necessary. Leadership said they had a DOGE person who could go through all the data and compare it to the Department of Homeland Security data and Social Security data. . . . I had never before told an opposing party, Hey, I want this information and I'm saying I want it for this reason, but I actually know it's going to be used for these other reasons. That was dishonest. It felt like a perversion of the role of the Civil Rights Division.

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. TIMES MAGAZINE, Nov. 16, 2025, https://perma.cc/L39A-S5VZ .

---

[2] *See also, e.g.*, Jonathan Shorman, *DOJ is Sharing State Voter Roll Lists with Homeland Security*, STATELINE, Sept. 12, 2025, https://stateline.org/2025/09/12/doj-is-sharing-state-voter-roll-lists-with-homeland-security; Sarah Lynch, *US Justice Dept Considers Handing over Voter Roll Data for Criminal Probes, Documents Show*, REUTERS, Sept. 9, 2025, https://www.reuters.com/legal/government/us-justice-dept-considers-handing-over-voter-roll-data-criminal-probes-documents-2025-09-09.

According to additional public reporting, these efforts are being conducted with the involvement of self-proclaimed election integrity advocates within and outside the government who have previously sought to disenfranchise voters and overturn elections.  Those advocates include Heather Honey, who sought to overturn the result of the 2020 presidential election in multiple states (including Pennsylvania) and now serves as DHS's "deputy assistant secretary for election integrity."[3] Also involved is Cleta Mitchell, a private attorney and leader of a national group called the "Election Integrity Network," who has, among other things, promoted the use of artificial intelligence to challenge registered voters.[4] These actors and their associates have previously sought to compel Pennsylvania to engage in aggressive purges of registered voters, and have abused voter data to make mass challenges to disenfranchise voters in Pennsylvania.  *See, e.g.*, *PA Fair Elections v. Pa. Dep't of State*, 337 A.3d 598, 600 n.1 (Pa. Commw. Ct. 2025) (dismissing as meritless complaint brought by "PA Fair Elections," a group affiliated with current

---

[3] *See* Alexandra Berzon & Nick Corasaniti, *Trump Empowers Election Deniers, Still Fixated on 2020 Grievances*, N.Y. TIMES, Oct. 22, 2025, https://perma.cc/R8ZU-GGZZ (documenting "ascent" of election denier Honey); Jen Fifield, *Pa.'s Heather Honey, Who Questioned the 2020 Election, Is Appointed to Federal Election Post*, PA. CAPITAL-STAR, Aug. 27, 2025, https://penncapital-star.com/election-2025/pa-s-heather-honey-who-questioned-the-2020-election-is-appointed-to-federal-election-post; Doug Bock Clark, *She Pushed to Overturn Trump's Loss in the 2020 Election. Now She'll Help Oversee U.S. Election Security*, PROPUBLICA, Aug. 26, 2025, https://perma.cc/CE7A-6RY6.

[4] *See, e.g.*, Matt Cohen, *DHS Said to Brief Cleta Mitchell's Group on Citizenship Checks for Voting*, DEMOCRACY DOCKET, June 12, 2025, https://perma.cc/E87D-XDRX; *see also* Jude Joffe-Block & Miles Parks, *The Trump Administration Is Building a National Citizenship Data System*, NPR, June 29, 2025, https://perma.cc/J8VZ-X4N4 (reporting that Mitchell had received a "full briefing" from federal officials); *see also* Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, PROPUBLICA, July 13, 2024, https://perma.cc/5W2N-SS2Q ("Mitchell is promoting a tool called EagleAI, which has claimed to use artificial intelligence to automate and speed up the process of challenging ineligible voters.").

DHS official Honey, challenging Pennsylvania's voter roll maintenance practices pursuant to HAVA).[5]

For example, in the months before the 2024 election, Honey and her affiliated organization PA Fair Elections pushed an effort to remove thousands of lawful Pennsylvania voters from the rolls, based on faulty sources of voter data such as "Eagle AI," a voter database analysis tool supported by Mitchell and her Election Integrity Network.[6] Then, on the eve of the 2024 election, over 4,000 Pennsylvania voters were subjected to mass-challenges lodged by individuals affiliated with PA Fair Elections.[7] Public reporting and contemporaneous hearing testimony from county boards of elections confirmed that PA Fair Elections helped facilitate these challenges, which were based on self-evidently flawed attempts to analyze and match data from the Pennsylvania voter

---

[5] *See, e.g.*, Carter Walker, *This Pa. Activist Is the Source of False and Flawed Election Claims Gaining Traction Across the Country*, VOTEBEAT (Feb. 12, 2025), https://perma.cc/HQ9C-TMT7 (discussing Honey's "false" claims regarding voting in Pennsylvania in 2020 and her extensive collaboration with Mitchell); *see also* Brett Sholtis, *Pa. Election Integrity Group Met with 2 Architects of 2020 Effort to Overturn Election*, LANCASTERONLINE (July 21, 2024), https://perma.cc/K92T-L288 (describing Mitchell meeting with PA Fair Elections).

[6] *See* Brett Sholtis, *'PA Fair Elections,' Tied to Powerful Conservative Groups, Pushes to Remove People from Voter Rolls*, WESA (Sept. 28, 2024), https://perma.cc/8FNC-5KH9; *see also* Andy Kroll & Nick Surgey, *Inside Ziklag, the Secret Organization of Wealthy Christians Trying to Sway the Election and Change the Country*, PROPUBLICA (July 13, 2024), https://perma.cc/4MEZ-82SF ("Mitchell is promoting a tool called EagleAI, which has claimed to use artificial intelligence to automate and speed up the process of challenging ineligible voters.").

[7] *See* Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8, 2024, https://perma.cc/YL7J-NUV5 (describing mass-challenges and noting connection to Honey and her organization "PA Fair Elections"); Jeremy Roebuck and Katie Bernard, *'I Can't Think of Anything Less American': Right-Wing Activists' Effort to Nullify Hundreds of Pa. Votes Met with Skepticism*, PHILA. INQUIRER, Nov. 1, 2024, https://perma.cc/AMZ5-TFHQ (noting sworn testimony regarding PA Fair Elections' involvement in the challenges); Hansi Lo Wang, *Thousands of Pennsylvania Voters Have Had Their Mail Ballot Applications Challenged*, NPR, Nov. 5, 2024, https://perma.cc/9993-RZ6E  (same).

database with external sources.[8] The baseless voter challenges, which were filed in at least twelve counties across the Commonwealth and which targeted five of the Voter Intervenors among thousands of Pennsylvanians, were eventually all rejected. *See, e.g.*, Carter Walker, *Efforts to Challenge Pennsylvania Voters' Mail Ballot Applications Fizzle*, SPOTLIGHT PA, Nov. 8, 2024, https://perma.cc/YL7J-NUV5; *see also* Decl. of Nicholas Maston ("Maston Decl.") ¶¶ 8-13, Dkt. No. 36-2; Decl. of Gregory Perry ("Perry Decl.") ¶ 9-11, Dkt. No. 36-3; Decl. of Todd Thatcher ("Thatcher Decl.") ¶¶ 9, 10, Dkt. No. 36-4; Decl. of Joel Dickson ("Dickson Decl.") ¶¶ 8-14, Dkt. No. 36-5; Decl. of Trisha Kent ("Kent Decl.") ¶¶ 11-13, Dkt. No. 36-6.

The United States took up these efforts to use novel and unspecified forms of data analysis to scrutinize state voter data and target voters for potential disenfranchisement after the new Administration took office. According to public reporting, as part of those efforts DOJ asked staffers from the new "Department of Governmental Efficiency" ("DOGE") to identify noncitizens in state voter rolls by matching voter data with data from the Social Security Administration.[9] DOJ officials have since claimed that "we've checked 47.5 million voting records" and found "several thousand non-citizens who are enrolled to vote in Federal elections," although public reporting

---

[8] *E.g.*, Bethany Rogers, *Testimony: Pa. Election Denial Group Behind Voter Registration Cancellation Form Mailings*, GOERIE.COM (Nov. 2, 2024), https://www.goerie.com/story/news/politics/elections/state/2024/11/02/pa-voter-registration-cancellation-letters-chester-county/75996247007. Notably, the challenger in Chester County, who baselessly challenged Intervenors Thatcher and Dickson's ballots, testified under oath about PA Fair Elections' involvement in her effort. Chester County, *Nov. 1, 2024 Election Board Hearing* at 50:30-51:34; 58:00-58:47; 1:54:58-1:55:19, https://chestercopa.portal.civicclerk.com/event/852/media.

[9] *E.g.*, Miles Parks & Jude Joffe-Block, *Trump's DOJ focuses in on voter fraud, with a murky assist from DOGE*, NPR (May 22, 2025), https://www.npr.org/2025/05/17/nx-s1-5383277/trump-doj-doge-noncitizenvoting.

indicates that these efforts are producing false positives—*i.e.*, that they are flagging U.S. citizens as being non-citizens who are ineligible to vote.[10]

A recent federal court filing by DOJ further corroborates how United States officials have been seeking to use voter data in conjunction with DOGE-inspired data-matching and aggregation techniques, and have been working with outside "election integrity" advocates seeking to deny election results in those efforts. As detailed in the filing, which was made on behalf of the U.S. Social Security Administration (SSA):

> SSA determined in its recent review that in March 2025, a political advocacy group contacted two members of SSA's DOGE Team with a request to analyze state voter rolls that the advocacy group had acquired. The advocacy group's stated aim was to find evidence of voter fraud and to overturn election results in certain States. In connection with these communications, one of the DOGE team members signed a "Voter Data Agreement," in his capacity as an SSA employee, with the advocacy group. He sent the executed agreement to the advocacy group on March 24, 2025.

Notice of Corrections to the Record at 5, *Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, No. 25-cv-596, Dkt. No. 197 (D. Md. Jan. 16, 2026); *see also* Kyle Cheney, *Trump Administration Concedes DOGE Team May Have Misused Social Security Data*, Politico, Jan. 20, 2026, https://www.politico.com/news/2026/01/20/trump-musk-doge-social-security-00737245. The filings, which do not specify the terms of the "Voter Data Agreement" or the activities these DOGE actors or others undertook pursuant to it, also indicated that, around the same period, DOGE actors also shared unknown amounts of social security data on an unapproved third-party server, in a "manner [that] is outside SSA's security protocols." Notice of Corrections to the Record, *supra*, at 6.

---

[10] December 5, 2025 Post by @AAGDhillon, https://perma.cc/8GE8-Q53H; *see* Jude Joffe-Block, *Trump's SAVE Tool Is Looking for Noncitizen Voters. But It's Flagging U.S. Citizens Too*, NPR (Dec. 10, 2025), https://www.npr.org/2025/12/10/nx-s1-5588384/savevoting-data-us-citizens.

**C.    The United States Seeks to Unlawfully Use the Data to Disenfranchise Voters**

Additional federal government documents indicate how that the United States ultimately plans to use voters' sensitive personal data: to assert control over voting eligibility in the states, to order the disenfranchisement of voters, and potentially to contest the results of state-run elections.

In connection with its requests for states' voter data, the United States has begun asking states to execute a memorandum of understanding ("MOU") describing how the data will be used. *See* Ex. A, U.S. Dep't of Just., Civ. Div., Confidential Mem. of Understanding ("MOU"); *see also* Ex. B, Dec. 4 Transcript Excerpts from *United States v. Weber*, No. 25-cv-09149, at 72–73, 90 (DOJ attorney discussing MOU).  The terms of the MOU purport to vest the United States with substantial new authority to identify supposedly ineligible voters on state voter rolls and then to compel states to remove these voters from the rolls, depriving them of the franchise.

The NVRA and HAVA give states the responsibility of conducting a "reasonable effort" to maintain voter lists and remove actually ineligible voters from the rolls.  52 U.S.C. § 20507(a)(4); § 21083(a)(4)(A). The particular procedures developed for complying with HAVA's requirement to maintain a centralized voter file are thus "left to the discretion of the State." 52 U.S.C. § 21085. Moreover, the NVRA builds in significant protections for voters, requiring that, once identified, certain potentially ineligible voters *must* necessarily stay on the rolls for two election cycles so as to limit the likelihood of a state removing eligible voters by mistake. *Id.;* § 20507(d)(1)(B). That is consistent with Congress's core goals in the NVRA of protecting and expanding the right to register to vote and participate in democracy.  *E.g.*, 52 U.S.C. § 20501.

The terms of the MOU, however, purport to place authority to identify supposed ineligible voters in the hands of the federal government.  MOU at 2, 5.  The MOU makes DOJ a "Custodian" of the state's voter file, and provides that DOJ will analyze the file and identify "any voter list maintenance issues, insufficiencies, inadequacies, deficiencies, anomalies, or concerns, the Justice

Department found when testing, assessing, and analyzing your state's [voter list] for NVRA and HAVA compliance, i.e., that your state's [voter list] only includes eligible voters." MOU at 4-5. And under the MOU's terms, once federal officials identify supposed "ineligible voters," states would be required to "remov[e]" these voters "within forty-five (45) days" and then resubmit their voter lists for additional analysis, MOU at 5. These removals would be required under the terms of the MOU notwithstanding the procedural protections afforded to voters by the NVRA, including the statute's firm bar on systematic removals of voters within 90 days of an election, 52 U.S.C. § 20507.[11]

In short, extensive public reporting, including government documents created by the DOJ and DOJ officials' own statements and admissions, indicate that the United States's aim in seeking sensitive voter data on millions of Americans is to turn states' own voter rolls into a tool for unlawfully and improperly mass-challenging voters and interfering with the democratic process in the states. And recent events have further highlighted the extremely abnormal nature of the United States' request. On January 24, 2026, Attorney General Pamela Bondi wrote a letter to Minnesota Governor Tim Walz, purporting to discuss DHS's "Operation Metro Surge" activities in the Twin Cities amidst ongoing violence against the civilian population there.[12] The letter purports to set out three actions that Minnesota—which is one of the states DOJ has sued to try to obtain sensitive voter data—should take to "restore the rule of law, support ICE officers, and bring an end to the

---

[11] *See also* Jonathan Shorman, *Trump's DOJ Offers States 'Confidential' Deal to Wipe Voters Flagged by Feds as Ineligible*, STATELINE, Dec. 18, 2025, https://stateline.org/2025/12/18/trumps-doj-offers-states-confidential-deal-to-wipe-voters-flagged-by-feds-as-ineligible/.

[12] *Read Bondi's Letter to Minnesota's Governor*, N.Y. Times (Jan. 24, 2026), https://perma.cc/H5GY-ZKBS ("Bondi Letter"); *see also* Order, *Tincher v. Noem*, No. 0:25-cv-04669-KMM-DTS (D. Minn. Jan. 16, 2026), Dkt. No. 85 (granting injunction against certain DHS practices towards the civilian population of Minneapolis-St. Paul in connection with purported immigration enforcement operations there).

chaos in Minnesota," one of which is to "allow the Civil Rights Division of the Department of Justice to access voter rolls to confirm that Minnesota's voter registration practices comply with federal law as authorized by the Civil Rights Act of 1960."[13]

## III.    ARGUMENT

A court must dismiss a complaint if, accepting all well-pleaded factual allegations as true, it does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, a court need not accept the complaint's legal conclusions. *Id.* A complaint must state a "plausible claim for relief" and contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678–79.

The motions to dismiss filed by Secretary Schmidt and the other intervenor-defendants set forth numerous independently sufficient grounds to dismiss the complaint here. The Voter Intervenors offer one more, relating to the United States' claim under Title III of the CRA.

By way of background, Title III of the CRA sets out requirements regarding federal election records, including a requirement in Section 301 for officers of elections to "retain and preserve, for a period of twenty-two months from the date of any" federal election, "all records and papers which come into [their] possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," with certain exceptions regarding delivery and designation of custodians. 52 U.S.C. § 20701. Section 303 requires that "[a]ny record or paper" retained and preserved under Section 301 "shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of

---

[13] Bondi Letter at 2, 3.

such custodian by the Attorney General or [her] representative." *Id.* § 20703. "This demand *shall* contain a statement of *the basis <u>and</u> the purpose* therefor." *Id.* (emphasis added).[14]

Consistent with the statutory text, contemporaneous case law immediately following the enactment of Title III of the CRA treated "the basis" and "the purpose" as two related, but distinct, concepts. *See Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962), *aff'd sub nom.*, *Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963). The "basis" is the statement of *why* the Attorney General believes there may be a violation of federal civil rights law in the first place, whereas the "purpose" explains *how* the requested records would help the Attorney General ultimately determine if there is, in fact, a violation of the law. *E.g.*, *Kennedy* 306 F.2d at 229 n.6.

The basis-and-purpose requirement under the CRA is a "critical safeguard that ensures the request is legitimately related to the purpose of the statute." *Weber*, 2026 WL 118807, at *9. It prevents the statute from being used for a "fishing expedition" to obtain records for reasons that are speculative, unrelated to the CRA's aims, or otherwise impermissible or contrary to law. *Id.* The statutory basis-and-purpose requirement therefore is not perfunctory but requires a specific statement as to the reason for requesting the information and how that information will aid in the investigatory analysis. That is consistent with other federal statutes allowing federal agencies to obtain records in service of investigations, where courts have found that the test of whether federal demands for records are enforceable includes an evaluation of whether the underlying investigation is "conducted pursuant to a legitimate purpose," *Sugarloaf*

---

[14] Voter Intervenors assume for purposes of this motion that the statewide electronic voter file may constitute a "record" or "paper" "relating to any application, registration, payment of poll tax, or other act requisite to voting" that has "come into [the Secretary's] possession. 52 U.S.C. § 20701. However, no court has ever addressed the question.

*Funding, LLC v. U.S. Dep't of Treasury*, 584 F.3d 340, 345 (1st Cir. 2009) (citing *United States v. Powell*, 379 U.S. 48, 57 (1964)); *see also, e.g.*, *F.D.I.C. v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995) (information sought pursuant to an administrative subpoena must be relevant to the inquiry and not unduly burdensome).

Here, and as detailed in the other defendants' motions, the United States simply has not stated *any* "basis" for its demand at all, either in the Complaint or in the August 14 Letter in which DOJ first invoked Title III. *See, e.g.*, Sec. Schmidt MTD at 21; NAACP MTD at 15; PARA MTD at 13. The failure to set forth any "basis" for the demand is sufficient grounds for dismissal of this action. *See Weber*, 2026 WL 118807, at *9. Moreover, the United States has failed to plausibly plead that it has stated the "purpose" of its request, because a copy of Pennsylvania's unredacted voter file from a single point in time cannot assist DOJ in examining whether Pennsylvania is complying with its obligations under the NVRA and HAVA to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters" by virtue of "death" or "a change in the residence of the registrant," 52 U.S.C. § 20507. *See* Sec. Schmidt MTD at 10-13, 16-19; *see also* PARA MTD at 14-15.

However, even if the United States had plausibly set forth some facially sufficient statement of the basis and the purpose for its request related to compliance with those statutes (and again, it did not), the CRA claim would also be subject to dismissal because DOJ's stated reason for requesting the sensitive personal data of millions of Pennsylvania voters is pretextual.

### A. The CRA Claim Can be Dismissed Because the United States has Failed to State the *Actual* Purpose for its Request for Pennsylvania Voters' Data

Section 303 of the CRA requires a statement of "*the* basis and *the* purpose" of a records request. 52 U.S.C. § 20703 (emphasis added). By twice using the definite article, the statute requires not just *a* basis or purpose among many, but *the* complete basis and purpose underlying

15

the request. *See Niz-Chavez v. Garland*, 593 U.S. 155, 165–166 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024) (emphasizing distinction between the definite and the indefinite article). But the United States has not disclosed the actual purpose for its requests, and this Court "is not obliged to accept a contrived statement and purpose" in place of an accurate one. *Weber*, 2026 WL 118807, at *10.

Public reporting and public, judicially noticeable documents confirm that the United States' *actual* purpose is not to ensure compliance with the NVRA and HAVA, but to build an unprecedented national voter file through novel, error-prone, DOGE-inspired forms of data-matching and then to use this tool to identify ostensibly ineligible voters and challenge their right to vote. *See supra* 6-13 & nn.2-13. As the *Weber* court characterized it, considering the same robust set of public reporting and documents, "[i]t appears that the DOJ is on a nationwide quest to gather the sensitive, private information of millions of Americans for use in a centralized federal database." 2026 WL 118807, at *10.

This unstated purpose, which is being carried out in conjunction with "election integrity" advocates who have previously attacked Pennsylvania's elections, is eerily similar to the unlawful mass-challenges that violated the rights of Voter Intervenors and thousands of other Pennsylvanians in 2024. *See supra* 8-9 & nn.7-8. The creation of a national voter database— much less one designed for targeting and mass-challenging voters—has never been authorized by Congress, and would violate (among other provisions of federal law) the federal Privacy Act's prohibition on the creation or maintenance of any database "describing how any individual exercises rights guaranteed by the First Amendment," which necessarily includes exercising the right to vote. *See* 5 U.S.C. § 552a(e)(7).

16

Now consider the MOU that the United States has recently sought for states to sign in connection with its requests for statewide voter files. *See supra* 11-12. Far from indicating a purpose of ensuring compliance with the NVRA and HAVA, this MOU runs directly afoul of those statutes.[15] For one, the MOU seeks to place authority to identify supposed ineligible voters in the hands of the federal government, directly contrary to statute's requirement that procedures for complying with HAVA be "left to the discretion of the State." *Id.* § 21085; MOU at 2, 5. In addition, the MOU's substantive terms would allow DOJ to compel states to remove supposedly ineligible voters "within forty-five (45) days," MOU at 5, in a manner that would violate multiple protections of the NVRA, including the requirement to provide voters with notice prior to their removal from the rolls, and the firm bar against systematic voter removals within 90 days of an election. 52 U.S.C. § 20507. The MOU confirms that DOJ's stated purpose of ensuring compliance with the NVRA and HAVA is not accurate or plausible, and that its actual purpose for seeking to ingest the sensitive personal information of millions of Pennsylvania voters involves defying those statutes and the procedural protections they afford in order to unlawfully centralize control over state voter rolls in the hands of the federal executive.

And now consider the Attorney General's recent letter to Minnesota Governor Tim Walz, demanding that Minnesota turn over voters' private data in order to help "support ICE officers" and "bring an end to the chaos" being inflicted on the civilian population there by DHS agents ostensibly tasked with enforcing the immigration laws. *See supra* 12-13. Bondi's letter, purporting to connect DOJ's request for state voter data with the Administration's draconian immigration-

---

[15] This Court can take judicial notice of the MOU as a government document produced by DOJ. *See Torrens v. Lockheed Martin Servs. Grp., Inc.*, 396 F.3d 468, 473 (1st Cir. 2005); *see also, e.g.*, *Town of Sanford v. United States*, 140 F.3d 20, 22 (1st Cir. 1998).

17

enforcement efforts, further highlights DOJ's failure to disclose the true purpose of the request here.

The United States' failure to honestly disclose what it is doing and will do with voters' sensitive personal information—to state *the true purpose* for the demand for Pennsylvanian's protected personal data—is independently fatal to the CRA claim. "Congress passed the NVRA, Civil Rights Act, and HAVA to protect voting rights. If the DOJ wants to instead use these statutes for more than their stated purpose, circumventing the authority granted to them by Congress, it cannot do so under the guise of a pretextual investigative purpose." *Weber*, 2026 WL 118807, at *12.

## IV.    CONCLUSION

The United States' Complaint should be dismissed.

Dated: January 28, 2026                                            Respectfully submitted,


                                                            /s/ *Ari J. Savitzky*

Mary M. McKenzie (PA No. 47434)**              Ari J. Savitzky*
Benjamin Geffen (PA No. 310134)**              Theresa Lee*
Olivia Mania (PA No. 336161)**                 Sophia Lin Lakin*
PUBLIC INTEREST LAW CENTER                     AMERICAN CIVIL LIBERTIES UNION FOUNDATION
1500 JFK Blvd., Suite 802                       125 Broad Street, 18th Floor
Philadelphia, PA 19102                          New York, NY 10004
(267) 546-1313                                  Tel.: (212) 549-2500
mmckenzie@pubintlaw.org                         asavitzky@aclu.org
bgeffen@pubintlaw.org                           tlee@aclu.org
omania@pubintlaw.org                            slakin@aclu.org

                                               Witold J. Walczak (PA No. 62976)
                                               Kate I. Steiker-Ginzberg (PA No. 332236)
                                               AMERICAN CIVIL LIBERTIES UNION OF
                                               PENNSYLVANIA
                                               P.O. Box 60173
                                               Philadelphia, PA 19102
                                               (215) 592-1513
                                               vwalczak@aclupa.org

18

ksteiker-ginzberg@aclupa.org

\* *admitted pro hac vice*

\*\* *attorney admission pending*

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record.

/s/ *Ari J. Savitzky*