UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>AL SCHMIDT, in his official capacity as Secretary of the Commonwealth of Pennsylvania,<br><br>Defendant. | No. 2:25-cv-1481<br>Chief Judge Cathy Bissoon |

**REPLY BRIEF OF SECRETARY OF THE COMMONWEALTH AL SCHMIDT
IN SUPPORT OF HIS MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................ 1

ARGUMENT ....................................................................................................................................... 2

    I.      This Court lacks jurisdiction over DOJ's Title III claim. ................................................. 2

    II.     DOJ concedes that the Pennsylvania Constitution prevents disclosure of voters' SSN4 and DLN. ........................................................................................................ 3

    III.    DOJ does not dispute that its purported NVRA and HAVA justifications do not require voters' SSN4 and DLN. ........................................................................ 4

    IV.    DOJ cannot use Title III of the Civil Rights Act of 1960 to compel production of voters' SSN4 and DLN here. ............................................................. 6

    V.     DOJ's request violates federal privacy laws. .................................................................. 9

CONCLUSION ................................................................................................................................. 10

**INTRODUCTION**

DOJ's largely boilerplate response brief[1] is most notable for what it concedes. DOJ does not dispute that it has demanded electronic voter rolls from Pennsylvania and 24 other jurisdictions to run them through the SAVE database. *See* Schmidt Br. (Doc. 92) at 5-7; *see also United States v. Weber*, No. 25-cv-9149, 2026 WL 118807, at *10-12 (C.D. Cal. Jan. 15, 2026) (discussing representations made by DOJ). To the contrary, DOJ now admits that it seeks Pennsylvania voters' SSN4 and DLN to, among other things, "verify[] voter registration records." DOJ Br. (Doc. 103) at 23. But DOJ has no role in verifying voter registration or conducting list maintenance—these are duties Congress gave to Pennsylvania, which DOJ also does not dispute. DOJ further agrees that Secretary Schmidt answered the Attorney General's EAVS requests, *compare* DOJ Br. at 5, *with* Compl. ¶ 55, and so the sole purpose of this lawsuit is to obtain voters' SSN4 and DLN.

Recent statements from DOJ shine light on the ulterior motives behind this extraordinary request. Earlier this month, the Social Security Administration (whose databases are now connected to SAVE) admitted that several of its DOGE employees signed a clandestine "Voter Data Agreement" to share SSA records with an unnamed "political advocacy group" that sought "to find evidence of voter fraud and to overturn election results in certain States." Notice of Corrections to the Record, Doc. 197, *Am. Fed. of State & County Munic. Employs. v. SSA*, No. 25-cv-596 (D.Md. Jan. 16, 2026).[2] And last weekend, the Attorney General told the Minnesota Governor that a "common sense solution" to "chaos in Minnesota" required allowing DOJ "to access voter rolls

---

[1] *Compare with* DOJ Mem., Doc. 81-1, *United States v. New York State Board of Elections*, No. 25-cv-1338 (N.D.NY Jan. 6, 2026), https://storage.courtlistener.com/recap/gov.uscourts.nynd.150197/gov.uscourts.nynd.150197.81.1.pdf; DOJ Mem., Doc. 102, *United States v. Simon*, No. 25-cv-3761 (D. Minn. Jan. 21, 2026), https://storage.courtlistener.com/recap/gov.uscourts.mnd.227974/gov.uscourts.mnd.227974.102.0.pdf.
[2] https://storage.courtlistener.com/recap/gov.uscourts.mdd.577321/gov.uscourts.mdd.577321.197.0.pdf.

to confirm that Minnesota's voter registration practices comply with federal law as authorized by the Civil Rights Act of 1960."[3]

No matter what DOJ's true motives are, the allegations in its complaint are, as two courts have now recognized, legally insufficient on their face. *Weber*, 2026 WL 118807, at *10, 13, 15-16 (granting California's motion to dismiss similar lawsuit); Minute Order, Doc. 68, *United States v. Oregon*, No. 25-cv-1666 (D.Or. Jan. 26, 2026) (granting Oregon's motion to dismiss DOJ's similar lawsuit). The Court should grant the Secretary's motion and dismiss this matter.

## ARGUMENT

### I. This Court lacks jurisdiction over DOJ's Title III claim.

DOJ argues that this Court has jurisdiction because the statewide voter registration list "is available in electronic form throughout the commonwealth." DOJ Br. at 18. But as the Middle District of Georgia recognized last week, this would mean that Pennsylvania voter records are "'located' in every judicial district across the nation because they can be accessed online virtually everywhere with an Internet connection." *United States v. Raffensperger*, No. 25-cv-00548, 2026 WL 184233, at *3 (M.D. Ga. Jan. 23, 2026) (quoting 52 U.S.C. § 20507) (dismissing DOJ complaint for lack of jurisdiction). The court rejected this construction, holding that it would render 52 U.S.C. § 20705 "to be of no limit at all: reducing the entire provision to mere surplusage." *Id.* DOJ invokes the photostating discussion in *Kennedy v. Lynd*, 306 F.2d 222, 231 (5th Cir. 1962), but it has nothing to do with Title III's jurisdictional limitations, *contra* DOJ Br. at 18.

The Georgia Middle District's analysis is on point. DOJ concedes, as it must, that the Attorney General's written demand was sent to Secretary Schmidt at his principal and only office in Harrisburg. DOJ Br. at 18; *see* Doc. 92-1 (letters to Secretary Schmidt); *Raffensperger*, 2026 WL

---

[3] Letter from Attorney General Pam Bondi, to Minnesota Governor Tim Walz (Jan. 24, 2026), https://static.foxnews.com/foxnews.com/content/uploads/2026/01/mn_letter_1.24.26.pdf.

2

184233, at *3 (DOJ's written demand was sent to Secretary Raffensperger in his principal office in the Northern District of Georgia). The Department of State Bureau of Elections, which oversees Pennsylvania's voter registration list, also operates out of its principal and only office in Harrisburg. Pa. Dep't of State, *Contact the Department of State*;[4] *see Raffensperger*, 2026 WL 184233, at *3 (Georgia election division staff work out of the principal and only office in the Northern District). Requests for voter lists from the Department of State are likewise processed in Harrisburg. Pa. Dep't of State, *Request for Voter Lists from the Department of State*;[5] *see Raffensperger*, 2026 WL 184233, at *3 (copies of Georgia voter lists are processed in the Northern District). As a result, only the Middle District of Pennsylvania has jurisdiction under 52 U.S.C. § 20507.

Evidently realizing its error, DOJ now moves to transfer this matter to the Middle District. Doc. 120. Secretary Schmidt intends to respond separately to that motion.

## II.   DOJ concedes that the Pennsylvania Constitution prevents disclosure of voters' SSN4 and DLN.

In his motion to dismiss, Secretary Schmidt argued that Pennsylvania constitutional privacy protections operate harmoniously with the NVRA, HAVA, and Title III and prevent disclosure of voters' highly sensitive personally identifying information. Schmidt Br. at 22-23. DOJ does not dispute this argument at all, effectively conceding that Pennsylvania privacy protections are not preempted by federal election law. *See Yankees Ent. & Sports Network, LLC v. Hartford Fire Ins. Co.*, No. 22-3121, 2023 WL 6291784, at *2 (3d Cir. Sept. 27, 2023) (failure to oppose an argument constitutes forfeiture). And because DOJ has made no attempt to articulate a compelling interest in voters' SSN4 and DLN that overrides voters' privacy rights, *see infra* at 4-5, the Pennsylvania Constitution prevents Secretary Schmidt from disclosing these records.

---

[4] https://www.pa.gov/agencies/dos/contact-us (last visited Jan. 24, 2026).
[5] https://www.pa.gov/content/dam/copapwp-pagov/en/dos/programs/voting-and-elections/running-for-office/requestvoterlists.pdf (last visited Jan. 26, 2026).

### III. DOJ does not dispute that its purported NVRA and HAVA justifications do not require voters' SSN4 and DLN.

In his motion to dismiss, Secretary Schmidt explained why, as a legal and a practical matter, DOJ does not need a static snapshot of voters' SSN4 and DLN to ensure that Pennsylvania is complying with its statutory obligations under the NVRA and HAVA. Schmidt Br. at 10-14, 16-19. DOJ largely fails to dispute these points—and seemingly asks this Court to forget about its NVRA and HAVA claims altogether. DOJ Br. at 7.

***On ensuring compliance with the NVRA***: "impeding" DOJ's "efforts" to assess Pennsylvania's list maintenance efforts, DOJ Br. at 25, is not a NVRA violation when the only alleged "impediment" is Secretary Schmidt's refusal to provide Pennsylvanians' DLNs and SSN4s under Section 8(i)(1). As Secretary Schmidt explained, and DOJ does not dispute, the statute does not require disclosure of this sensitive personal information, and the numbers are neither necessary nor relevant for DOJ to determine whether the Commonwealth is complying with federal law. Schmidt Br. at 10-14; *see also Weber*, 2026 WL 118807 at *13 (the NVRA requires only "reasonable voter roll maintenance" and "DOJ makes no persuasive argument for why this large amount of unredacted voter information is necessary to evaluate state policies").

***On Section 8(i)(1) disclosure***: DOJ claims it is entitled to special treatment because it is not a private organization. DOJ Br. at 25. But the NVRA—which provides for lawsuits by both the Attorney General and private organizations, 52 U.S.C. § 20510—makes no such distinction as to who is entitled to what documents, 52 U.S.C. § 20507(i)(1). Nor have the courts made any distinction between governmental and private plaintiffs when determining that the NVRA's public disclosure provision is subject to privacy considerations. *See, e.g.*, *Weber*, 2026 WL 118807 at *12-13 (summarizing case law and holding that "California was well within the directive of the NVRA when it offered the DOJ the ability to inspect redacted voter records").

4

***On ensuring compliance with HAVA***: in DOJ's only substantive rebuttal, it cherry-picks a quote to mischaracterize the holding of *Florida State Conference of NAACP v. Browning*, 522 F.3d 1153 (11th Cir. 2008). The sentence DOJ cites is from the portion of this decision that examined whether a Florida state law violated the materiality provision of the Civil Rights Act of 1964, which is not relevant here. *Browning*, 522 F.3d at 1172-75; *see* DOJ Br. at 15 (citing *Browning*, 522 F.3d at 1174). And in a footnote appended to the very sentence DOJ cites, the Eleventh Circuit makes clear that HAVA "does not require that states authenticate these numbers by matching them against existing databases." *Browning*, 522 F.3d at 1174 n.21; *see also id.* at 1168-69, 1172. Pennsylvania law does not require a match. Schmidt Br. at 18. And as Secretary Schmidt has explained, Schmidt Br. at 16-19, and DOJ has not refuted, voters' DLNs and SSN4s are not necessary for the United States to assess compliance with Section 303 of HAVA.

***On a standalone HAVA claim***: DOJ admits that HAVA does not contain a public record disclosure provision, and that DOJ instead has brought a HAVA claim to obtain voters' DLNs and SSN4s through discovery. DOJ Br. at 24-25. But to obtain discovery, DOJ must first adequately plead a violation of law, which it admits it has not done here. DOJ Br. at 24-25 ("[DOJ] seeks records necessary to establish a claim under HAVA[.]"); *see* Schmidt Br. at 15-16. The United States "is not entitled to conduct a fishing expedition based upon … bare allegations." *Accenture Global Srvs. GMBH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 663 (D. Del. 2008); *see also Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010) ("A plaintiff may not, however, undertake a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery"); *Weber*, 2026 WL 118807, *15 ("Even the federal government is not permitted to sue first, obtain discovery, and finalize its allegations later.").

5

### IV. DOJ cannot use Title III of the Civil Rights Act of 1960 to compel production of voters' SSN4 and DLN here.

Having all but abandoned its NVRA and HAVA claims, DOJ rests primarily on a construction of Title III that operates outside of the Federal Rules of Civil Procedure and requires the Court to rubber-stamp production of every record DOJ wants for any reason it wants. But the text of Title III, its context, and the caselaw interpreting it do not support this sweeping assertion.

1. Nothing in the plain text of Title III (52 U.S.C. §§ 20701-20706) displaces the Federal Rules. *Contra* DOJ Br. at 9, 16. To the contrary, a federal court has jurisdiction over a Title III claim "by appropriate process." 52 U.S.C. § 20705. The Federal Rules govern "all civil actions and proceedings in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1. DOJ cites Rule 81 generally, DOJ Br. at 9, but that rule contains no exclusion applicable here. The Supreme Court has held that in the absence of a "provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." *United States v. Powell*, 379 U.S. 48, 58 n.18 (1964) (evaluating enforcement of an IRS summons where 26 U.S.C. § 7604(a) provided jurisdiction to compel production "by appropriate process").

Notably, DOJ appears to have only recently taken the novel position that the Federal Rules do not apply to Title III. *Cf.* DOJ Mem. at 6, Doc. 75, *United States v. Bellows*, No. 25-cv-468 (D. Maine Jan. 2, 2026) (responding to motion to dismiss under the Federal Rules);[6] DOJ Mem. at 5-6, Doc. 53, *United States v. Benson*, No. 25-cv-1148 (W.D. Mich. Dec. 26, 2025) (same);[7] DOJ Mem. at 5-6, Doc. 57, *United States v. Oregon*, No. 25-cv-1666 (D.Or. Dec. 8, 2025) (same).[8]

---

[6] https://storage.courtlistener.com/recap/gov.uscourts.med.68935/gov.uscourts.med.68935.75.0.pdf.
[7] https://storage.courtlistener.com/recap/gov.uscourts.miwd.116977/gov.uscourts.miwd.116977.53.0_1.pdf.
[8] https://storage.courtlistener.com/recap/gov.uscourts.ord.188997/gov.uscourts.ord.188997.57.0.pdf.

2.	Similarly, nothing in the plain text of Title III requires a "severely limited" inquiry. *Contra* DOJ Br. at 2, 8-9, 16; *see Weber*, 2026 WL 118807, at *8 ("Nothing in the text of Title III requires a special statutory proceeding or any abbreviated procedures."). DOJ would have this Court compel production if the Attorney General merely states that she has made a written demand for federal election records on an officer of election. DOJ Br. at 2. And DOJ would prohibit Secretary Schmidt from challenging the sufficiency of the Attorney General's statement of basis and purpose. DOJ Br. at 7-8 & n.6, 16. But the Supreme Court has made clear that even a federal investigatory demand, such as a summons, "must be scrutinized by a court to determine whether it seeks information relevant to a legitimate investigative purpose and is not meant 'to harass [the recipient] or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation.'" *United States v. Bisceglia*, 420 U.S. 141, 151 (1975) (quoting *Powell*, 379 U.S. at 58); *United States v. Morton Salt Co.*, 338 U.S. 632, 644-54 (1950) (examining FTC authority to require reports showing compliance with court decree and noting that FTC orders are not "exempt from judicial examination"). Under this Circuit's precedent, judicial review also includes balancing implicated privacy interests. *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 578 (3d Cir. 1980).

3.	DOJ agrees that Title III requires the Attorney General to provide a written demand with "a statement of *the basis* and *the purpose* therefor." 52 U.S.C. § 20703 (emphasis added); DOJ Br. at 2, 14. DOJ concedes that it has only provided a statement of purpose ("to ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA and HAVA"). DOJ Br. at 11, 14. And DOJ does not refute Secretary Schmidt's explanation of why a static snapshot of voters' SSN4 and DLN is not necessary to assess compliance with these laws. *See supra* at 4-5.

Instead, DOJ argues that considering the historical context in which Congress enacted Title III is improper. DOJ Br. at 9-12. But historical context can help determine the meaning of words in a statute that courts have not carefully examined in decades (if at all). *See Trump v. Illinois*, No. 25A443, 2025 WL 3715211 (U.S. Dec. 23, 2025) (the term "regular forces" in 10 U.S.C. § 12406(3) "likely refers to the regular forces of the United States military"); Brief of Professor Martin S. Lederman as Amicus Curiae in Support of Respondents, *Trump v. Illinois* (No. 25A443), 2025 WL 3016387, at *8-18 (Oct. 21, 2025) (providing historical context for this conclusion).

Congress enacted Title III at a time when "persistent voter suppression was preventing Black Americans from voting" and "state officials destroyed the records of Black Americans who had registered to vote, as well as those denied the opportunity to register." *Weber*, 2026 WL 118807, at *1-2. As contemporaneous courts recognized, the purpose of Title III was to allow the Attorney General to obtain evidence about persons "as to whom there is a question concerning infringement or denial of their constitutional voting rights" and "determine whether [52 U.S.C. § 10101] suits or similar actions should be instituted." *Lynd*, 306 F.2d at 228; *see, e.g.*, *United States v. Cartwright*, 230 F. Supp. 873, 876 (M.D. Ala. 1964) (records obtained under Title III show that defendants "engaged in racially discriminatory acts and practices in conducting the registration of voters in Elmore County"). Compelling production of voters' SSN4 and DLN, ostensibly to investigate whether Pennsylvania is complying with the NVRA and HAVA (both of which postdate Title III by decades), does not align with Congress's intended basis and purpose. Schmidt Br. at 20-21; *contra* DOJ Br. at 8-9.

4. Secretary Schmidt explained that nothing in Title III prohibits the redaction of sensitive voter information or requires electronic disclosure. Schmidt Br. at 21-22. In rebuttal, DOJ again points to *Lynd*. DOJ Br. at 12-13, 16-17. But this and other 1960s decisions predate HAVA's

8

requirement that voters provide SSN4 or DLN when registering to vote. The Fifth Circuit made clear it was "not discussing confidential, private papers and effects" but rather "public records which ought ordinarily to be open to legitimate reasonable inspection." *Lynd*, 306 F.2d at 231; *see also In re Coleman*, 208 F. Supp. 199, 200 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (noting it would be "significant[]" if Attorney General sought records "privileged" or "exempt from discovery for any sound reason of public policy," or which would be "any unlawful invasion of any personal constitutional right of any respondent"). DOJ does not dispute that voters' SSN4s and DLNs are highly confidential and sensitive information widely excluded from public record, DOJ Br. at 7 & n.4, and subject to Pennsylvania constitutional privacy protections, *see supra* at 3.

Elsewhere, the Fifth Circuit discussed photostating equipment in the context of reversing a district court order that postponed record production by five months, *Lynd*, 306 F.2d at 231, not in changing the delineated statutory methods of production, *contra* DOJ Br. at 17. That other states consented to provide this voter data electronically, DOJ Br. at 13 & n.10, does not mean Title III requires it.

**V.     DOJ's request violates federal privacy laws.**

1.     The Privacy Act limits how the DOJ can collect and use Americans' personal information. Schmidt Br. at 23-24; *Weber*, 2026 WL 118807, at *17-18; *contra* DOJ Br. at 19. In a fundamental misunderstanding of the Act, DOJ invokes a "Privacy Policy," which itself only applies to information voluntarily "provide[d] through this form" (the form is not specified). DOJ Br. at 19 & n.12.[9] The Act, by contrast, requires DOJ to provide notice to the American public of *what* information it is collecting *for each* system of records and publish notice for public comment

---

[9] https://civilrights.justice.gov/privacy-policy (last visited Jan. 28, 2026).

before making any change to the intended use of *that system*. 5 U.S.C. § 552a(e)(4), (e)(11). DOJ does not dispute Secretary Schmidt's criticism that DOJ's choice of a system of records is inadequate. Schmidt Br. at 24; *see* Compl. ¶ 41. Instead, DOJ now suggests it may store sensitive voter data in any or all of DOJ's many systems of records. DOJ Br. at 19-20 & nn. 13-14. Handwaving to all existing systems of records and all SORNs thwarts the purpose of the Act and contradicts DOJ's purported commitment to its requirements. The recent SSA admission, *supra* at 1, further suggests that this Court should be wary about DOJ's treatment of this sensitive voter data.

2.  The E-Government Act applies to DOJ's new collection of information about Pennsylvanians. OMB Mem. M-03-22 Attach. A § II(B)(a)(1) (Sept. 26, 2003); *contra* DOJ Br. at 21-22. DOJ offers no support for its bald assertion that the NVRA and HAVA are excluded. *Cf.* OMB Mem. Attach. A § II(B)(c) (circumstances when PIA not required); *see Weber*, 2026 WL 118807, at *19. While the nonprofit organization EPIC may have lacked informational and organizational standing, DOJ Br. at 22, EPIC did not raise its claims as an affirmative defense to a request to produce voter records—Secretary Schmidt has.

3.  DOJ is not "performing a statutorily mandated function," *contra* DOJ Br. at 23, so its request violates the Driver's Privacy Protection Act, *see Weber*, 2026 WL 118807, at *19.

## CONCLUSION

DOJ's demand for sensitive voter data is both unprecedented and legally unsupported. The Court should dismiss this action.

| | |
|---|---|
| January 30, 2026 | Respectfully submitted, |
| Carolyn A. DeLaurentis (PA 307018)<br>Chief Counsel<br>Kathleen A. Mullen (PA 84604)<br>Executive Deputy Chief Counsel<br>Pennsylvania Department of State<br>306 North Office Bldg.<br>401 North Street<br>Harrisburg, PA 17120-0500 | Jennifer Selber (PA 80644)<br>General Counsel<br>Michael J. Fischer (PA 322311)<br>Executive Deputy General Counsel<br><br>*/s/Aimee D. Thomson*<br>Aimee D. Thomson (PA 326328)<br>Deputy General Counsel<br>Office of General Counsel<br>30 N. 3rd St., Suite 200<br>Harrisburg, PA 17101<br>(223) 234-4986<br>aimeethomson@pa.gov |

*Counsel for Secretary of the Commonwealth Al Schmidt*