# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>AL SCHMIDT, in his official capacity as Secretary of the Commonwealth,<br><br>*Defendant*<br><br>and<br><br>PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS and MIKE CROSSEY,<br><br>NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE *et al.*,<br><br>NICHOLAS MASTON *et al.*,<br><br>*Intervenor-Defendants*. | Case No. 2:25-cv-01481<br>(Hon. Cathy Bissoon) |

**INTERVENORS PENNSYLVANIA ALLIANCE FOR RETIRED AMERICANS AND MIKE CROSSEY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................. 1

ARGUMENT ................................................................................................................................... 1

I.      The NVRA does not mandate the disclosure of private, sensitive voter data..................... 1

II.     HAVA is not a discovery tool................................................................................................ 2

III.    DOJ misinterprets and misapplies the CRA. ...................................................................... 2

        A.      DOJ's desire to search for potential NVRA and HAVA violations is not a proper basis and purpose under Title III. .................................................................. 2

        B.      Title III does not entitle DOJ to Pennsylvania's unredacted voter list. .................. 4

        C.      CRA claims are not immune from judicial review. ............................................... 4

CONCLUSION................................................................................................................................. 5

**INTRODUCTION**

DOJ fails to identify a single instance in the history of the NVRA, HAVA, or the 1960 Civil Rights Act ("CRA") in which a court held that *any* of those statutes require a state to turn over sensitive personal data protected by state privacy laws. For good reason: those statutes do not authorize the relief DOJ seeks, as two federal courts recently recognized in dismissing DOJ's parallel suits for California's and Oregon's unredacted voter lists. *See United States v. Weber*, No. 2:25-CV-09149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026); Minute Entry, *United States v. Oregon*, No. 6:25-cv-01666-MTK (D. Or. Jan. 26, 2026), ECF No. 68. The NVRA does not require disclosure of sensitive voter data; HAVA does not contain *any* inspection provision, as DOJ concedes; and the CRA provides no support because DOJ's demand did not state a sufficient basis and purpose, nor does it preempt Pennsylvania's privacy laws. Finally, the Supreme Court has confirmed that government document demands must be subject to meaningful judicial review under the Federal Rules of Civil Procedure; thus, the Court should reject DOJ's invitation to rubber stamp its request for relief.

**ARGUMENT**

**I.    The NVRA does not mandate the disclosure of private, sensitive voter data.**

DOJ baldly asserts that it should get *special* inspection rights under the NVRA, *see* Opp'n to Mot. Dismiss ("Opp.") at 25, ECF No. 103, but the statute confers no such authority: it contains only one inspection provision, 52 U.S.C. § 20507(i), which "makes no distinctions between the government and private individuals." *Weber*, 2026 WL 118807, at *13. And since "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information" before disclosing voter lists, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (citing cases), DOJ has no claim that Pennsylvania violated the NVRA by refusing to acquiesce to DOJ's demand, *see Weber*, 2026 WL 118807 at *13–14. Having failed to identify

1

any support in the plain language of the statute or the relevant case law, *see* Mot. to Dismiss ("Mot.") at 7−10, ECF No. 88-3 (citing cases), it should thus come as no surprise that DOJ has abandoned this claim (and its HAVA claim) in its more recent suits for states' voter lists.[1]

## II. HAVA is not a discovery tool.

DOJ concedes, as it must, that HAVA does not contain a disclosure provision. *See* Opp. at 24. Secretary Schmidt therefore could not have violated HAVA by failing to disclose information to DOJ when he was never required to do so in the first place. Undeterred, DOJ suggests its HAVA claim is part of "the ordinary discovery process." Opp. at 24. This is backwards: to survive a motion to dismiss and commence discovery, DOJ must *first* allege facts sufficient to state a legally viable cause of action; DOJ cannot use discovery to "find out whether [it] has such a claim." *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 335 F.R.D. 54, 76 (M.D. Pa. 2020). This claim should be dismissed.

## III. DOJ misinterprets and misapplies the CRA.

### A. DOJ's desire to search for potential NVRA and HAVA violations is not a proper basis and purpose under Title III.

The CRA contains a key limitation on DOJ's authority to demand records from state and local election officials: it requires DOJ to provide "the basis *and* the purpose" of its demand. 52 U.S.C. § 20703 (emphasis added).[2] DOJ here has not even *tried* to provide a factual basis for its demand, and its purported purpose has no grounding in the CRA.

---

[1] In its first wave of suits for state voter lists, DOJ brought claims under the NVRA, HAVA, and the CRA. In the most recent suits, it proceeds under the CRA only. *See, e.g.*, Compl., *United States v. Raffensperger*, No. 1:26-cv-00485 (N.D. Ga. Jan. 23, 2026), ECF No. 1.

[2] "Basis" refers to "something on which something else is established or based," while "purpose" refers to "the reason something is done or used." *Weber*, 2026 WL 118807, at *9 n.17, n.18 (citing dictionaries). Accordingly, DOJ must provide both the factual basis on which its request is established *and* explain the reason for its demand.

2

DOJ's demand did not provide *any* factual basis for suspecting the Secretary violated any federal voting rights law. *See* Mot. at 13. That failure stands in stark contrast to DOJ's demands in early CRA cases, where it clearly provided a statement of both basis and purpose. In *Kennedy v. Lynd*, for instance, DOJ's demand said:

> This demand is *based* upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction. The *purpose* of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

306 F.2d 222, 229 n.6 (5th Cir. 1962) (emphases added). DOJ's failure to state any factual basis for its demand here is fatal to its claim.

DOJ's demand also lacks a proper purpose. Its purported desire to "ascertain Pennsylvania's compliance with the list maintenance requirements of the NVRA and HAVA," Opp. at 11, is beyond the scope of the CRA. "Title III was not passed as a tool for NVRA compliance," *Weber*, 2026 WL 118807, at *9, but rather "to secure a more effective protection of the right to vote," *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960). As one early court applying the CRA noted, a jurisdiction's "failure[] to purge voters who have moved away or have died . . . does not bear any particular importance" to a CRA inquiry. *Kennedy v. Bruce*, 298 F.2d 860, 863 n.2 (5th Cir. 1962).

DOJ's assertion that *any conceivable* stated purpose suffices fails as a matter of statutory interpretation. The Court must "interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history, and purpose." *Abramski v. United States*, 573 U.S. 169, 179 (2014) (citation modified). It is clear that Congress enacted the CRA to give DOJ a tool to investigate violations of the *right to vote*. *See* Mot. at 12–13. Congress specifically crafted the CRA to help enforce the Civil Rights Act of 1957's substantive provisions safeguarding voting

3

rights. *Id.*; *see* 52 U.S.C. § 10101. Yet DOJ's reading eschews this essential statutory context, stripping the CRA's terms of their statutory mooring and rendering the basis and purpose requirements meaningless.

Enforcement history confirms the CRA's intended purpose. DOJ's early efforts to invoke the CRA all concerned investigations into the denial of the right to vote. *See, e.g.*, *Lynd*, 306 F.2d at 228; *Rogers*, 187 F. Supp. at 852. Throughout its correspondence, complaint, and briefs, DOJ has yet to identify any instance in the CRA's six-decade-plus history in which a court found DOJ may invoke the CRA for a purpose that did not relate to the protection of voters.. DOJ's failure to cabin its demands to the CRA's purpose is fatal to its claim.

### B.     Title III does not entitle DOJ to Pennsylvania's unredacted voter list.

The CRA extends only to "public records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers and effects." *Lynd*, 306 F.2d at 231. Contrary to DOJ's assertion, Intervenors do not ask this Court to "legislate limitations" into the CRA, Opp. at 17—it is DOJ that seeks to read into the statute a prohibition on redacting protected voter information that simply is not there. Without any indication that Congress exercised its power to preempt state privacy laws, Title III cannot be read to override Pennsylvania law. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013) (explaining Congress's power to preempt under the Elections Clause extends only "so far as it is exercised, and no farther").

### C.     CRA claims are not immune from judicial review.

DOJ cannot exempt its CRA claim from judicial review by jettisoning the Federal Rules of Civil Procedure. *See* Opp. at 16. Those Rules "govern the procedure in *all civil actions and proceedings* in the United States district courts, except as stated in Rule 81." Fed. R. Civ. P. 1 (emphasis added). Nothing in the text of the CRA nor the Rules themselves require courts to treat CRA claims any differently. Indeed, the Supreme Court in *United States v. Powell* rebuffed the

government's attempts to depart from the Federal Rules, holding instead that because the statute at issue "contains no provision specifying the procedure to be followed in invoking the court's jurisdiction, the Federal Rules of Civil Procedure apply." 379 U.S. 48, 57−58 & n.18 (1964).[3] The same is true here.

Since *Powell*, courts across the country—including this one—have regularly engaged in meaningful judicial review of government document requests under the Rules. *E.g.*, *In re 2025 UPMC Subpoena*, No. 2:25-mc-01069-CB, 2025 WL 3724705, at *1–3 (W.D. Pa. Dec. 24, 2025) (quashing subpoena that exceeded the statutory scope and purpose); *In re Subpoena No. 25-1431-014*, No. MC 25-39, 2025 WL 3252648, at *9 (E.D. Pa. Nov. 21, 2025) (rejecting DOJ's argument that would leave its "subpoena power untethered to any check and place it beyond meaningful judicial review"). Accordingly, "Title III cannot transform an election records request by the federal government from an ordinary civil action into an action comparable to an order to show cause." *Weber*, 2026 WL 118807, at *8 (holding CRA demands are subject to judicial review).

## CONCLUSION

The Court should dismiss DOJ's Complaint for failure to state a claim.

---

[3] The order DOJ cites from the parallel case in Connecticut merely schedules briefing on this issue. *See* Order, *United States v. Thomas*, No. 3:26-cv-00021 (D. Conn. Jan. 8, 2026), ECF No. 10.

| | |
|---|---|
| Dated: January 30, 2026 | Respectfully submitted,<br><br>*/s/ Uzoma N. Nkwonta*<br>Uzoma N. Nkwonta\*<br>Jacob D. Shelly\*<br>Branden D. Lewiston\*<br>Tori Shaw\*<br>**ELIAS LAW GROUP LLP**<br>250 Massachusetts Ave. NW, Suite 400<br>Washington, DC 20001<br>Telephone: (202) 968-4490<br>unkwonta@elias.law<br>jshelly@elias.law<br>blewiston@elias.law<br>tshaw@elias.law<br><br>Timothy J. Ford, Pa. Id. No. 325290<br>**DILWORTH PAXSON LLP**<br>1650 Market Street<br>Suite 1200<br>Philadelphia, PA 19103<br>tford@dilworthlaw.com<br><br>\*Admitted *Pro Hac Vice*<br><br>*Attorneys for Intervenors*<br>*the Pennsylvania Alliance for Retired*<br>*Americans and Mike Crossey* |