# Exhibit 2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *Plaintiff*,<br><br>    v.<br><br>AL SCHMIDT, in his official capacity as Secretary of the State for the Commonwealth of Pennsylvania, *et al.*,<br><br>    *Defendants*. | Civil Action No. 2:25-CV-01481<br>Hon. Cathy Bissoon |

**REPLY IN SUPPORT OF MOTION TO DISMISS
BY INTERVENOR-DEFENDANTS THE NATIONAL ASSOCIATION
FOR THE ADVANCEMENT OF COLORED PEOPLE, THE NATIONAL
ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE
PENNSYLVANIA STATE CONFERENCE, AND STACEY TAYLOR**

## **TABLE OF CONTENTS**

ARGUMENT..........................................................................................................................1

    I.    The CRA does not permit fishing expeditions into unredacted voter files in the hope of supporting purges of the voter rolls. .......................................................................................2

    II.    This Court must limit Title III demands that exceed DOJ's authority. ..............................2

    III.    Plaintiff's demands violate federal privacy law..................................................................4

    IV.    DOJ's requests are *ultra vires* exertions, exceeding its statutory authority........................5

CONCLUSION.....................................................................................................................6

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.O. Smith Corp. v. Fed. Trade Comm'n*,
  396 F. Supp. 1125 (D. Del. 1975), *rev'd on other grounds*, 530 F.2d 525 (3d. Cir. 1976) ...................................................................................................................5

*Am. Ass'n of Univ. Professors v. Trump*,
  No. 25-CV-07864-RFL, 2025 WL 3187762 (N.D. Cal. Nov. 14, 2025) ................................4

*Becker v. United States*,
  451 U.S. 1306 (1981) (Rehnquist, J., in chambers) ..................................................3

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
  401 U.S. 402 (1971) ..........................................................................................5

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
  266 F. Supp. 3d 297 (D.D.C. 2017) ......................................................................4

*Equal Emp. Opportunity Comm'n v. Kloster Cruise Ltd.*,
  939 F.2d 920 (11th Cir. 1991) .............................................................................3

*Kennedy v. Lynd*,
  306 F.2d 222 (5th Cir. 1962) ...............................................................................2

*Major League Baseball v. Crist*,
  331 F.3d 1177 (11th Cir. 2003) ...........................................................................3

*Media Matters for Am. v. Paxton*,
  138 F.4th 563 (D.C. Cir. 2025) ............................................................................3

*Media Matters for Am. v. Trade Comm'n*,
  No. 25-5302, 2025 WL 2988966 (D.C. Cir. Oct. 23, 2025) .......................................3

*Mendoza v. Perez*,
  754 F.3d 1002 (D.C. Cir. 2014) ...........................................................................5

*Reno v. Condon*,
  528 U.S. 141 (2000) ..........................................................................................5

*United States v. Clement*,
  231 F. Supp. 913 (W.D. La. 1964), *rev'd*, 358 F.2d 89 (5th Cir. 1966) ....................2

*United States v. Lynd*,
  349 F.2d 785 (5th Cir. 1965) ...............................................................................2

*United States v. Mississippi*,
   229 F. Supp. 925 (S.D. Miss. 1964) (Brown, J., dissenting), *rev'd*, 380 U.S.
   128 (1965) ..................................................................................................................2

*United States v. Weber*,
   No. 2:25-cv-9149-DOC-ADS, 2026 WL 118807 (C.D. Cal. Jan. 15, 2026) .................... 1, 4, 5

*Washington v. Trump*,
   No. 2:25-cv-00602-JHC, 2026 WL 73866 (W.D. Wash. Jan. 9, 2026) ....................................5

**Statutes**

5 U.S.C.
   § 552a(a)(3) ...............................................................................................................4
   § 552a(a)(5) ...............................................................................................................4
   § 552a(e)(4) ...............................................................................................................4
   § 552a(e)(7) ...............................................................................................................4
   § 552a(f) ....................................................................................................................4
   § 706 ..........................................................................................................................5

18 U.S.C.
   § 2721(a) ....................................................................................................................5
   § 2725(1) ....................................................................................................................5
   § 2725(3) ....................................................................................................................5
   § 2725(4) ....................................................................................................................5

52 U.S.C. § 10101(e) ................................................................................................................2

Pub. L. No. 107-347, 116 Stat. 2899 (2002) ................................................................................4

**Court Filings**

Minutes, *United States v. Oregon*, No. 6:25-cv-1666 (D. Or. Jan. 28, 2026), ECF
   No. 68 .........................................................................................................................1

**Other Authorities**

Exec. Order No. 14248, 90 Fed. Reg. 14005 (Mar. 25, 2005) ................................................2, 5

Fed. R. Civ. P.
   12(b)(1) ......................................................................................................................6
   12(b)(6) ......................................................................................................................6

H.R. Rep. No. 86-956 (1959) .....................................................................................................2

*Hearing on H.R. 8601 Before the S. Comm. on the Judiciary*, 86th Cong. (1960) ......................3

## **ARGUMENT**

The Department of Justice ("DOJ") asks this Court to contort the National Voter Registration Act ("NVRA"), the Help America Vote Act ("HAVA"), and the Civil Rights Act of 1960 ("CRA"), to order unprecedented disclosure of unredacted, sensitive personal information of every Pennsylvania voter based on its word alone that it has a legitimate basis to access it. The federal government spends the bulk of its opposition insisting that no limits exist to its authority to access sensitive information relating to one of the most sacred civil rights of this country. It asserts that the Federal Rules of Civil Procedure ("FRCP") do not apply to compulsory process under the CRA, that such process need not be tethered at all to the purpose for which the CRA was enacted, and that no challenge or review of the Attorney General's basis or purpose is permitted. The Court should reject this opportunity to turn the CRA into a blank check for the federal government to access sensitive voter data without review or accountability.

Moreover, Plaintiff's opposition does not identify any basis underlying its claims or letters, nor does it deny an ulterior motive to usurp state voter roll maintenance, to use the information to purge voter rolls, and to create a national voter registration database. To this end, Plaintiff has now filed similar actions against 23 states and the District of Columbia. Two district courts have already dismissed DOJ's NVRA, HAVA, and CRA claims with prejudice. *United States v. Weber*, No. 2:25-cv-9149-DOC-ADS, 2026 WL 118807, at *7, *20 (C.D. Cal. Jan. 15, 2026); Minutes, *United States v. Oregon*, No. 6:25-cv-1666 (D. Or. Jan. 28, 2026), ECF No. 68. DOJ does not explain away the defects that led to these dismissals nor suggest any amendment that could remedy them. This Court likewise should dismiss Plaintiff's Complaint with prejudice.

1

I. **The CRA does not permit fishing expeditions into unredacted voter files in the hope of supporting purges of the voter rolls.**

Plaintiff has failed to state a claim under the CRA and asks the Court to transform Title III into a mechanism for it to access sensitive voter data for any reason it provides, even if those bear no relation to the CRA's purpose. The purpose of a Title III proceeding "to enable the Attorney General to determine whether § 1971 suits or similar actions should be instituted" and resolve for applicable persons "a question concerning i*nfringement or denial of their constitutional voting rights*." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962) (emphasis added); H.R. Rep. No. 86-956 at 7 (1959) (indicating the purpose of Title III "is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race"). DOJ principally relies upon *Lynd* while glaringly omitting the purpose and basis underlying the demand for records there. The Attorney General's Title III records request in *Lynd* sought records reflecting a pattern and practice of discriminatory rejection of voter registrations under the 1956 act and Title VI of the 1960 act. 52 U.S.C. § 10101(e); *United States v. Lynd*, 349 F.2d 785, 787 (5th Cir. 1965). Other cases in the Fifth Circuit exemplify how these investigations were intended to alleviate racial discrimination within the voter registration process. *See United States v. Clement*, 231 F. Supp. 913, 917 (W.D. La. 1964), *rev'd*, 358 F.2d 89 (5th Cir. 1966); *United States v. Mississippi*, 229 F. Supp. 925, 994 (S.D. Miss. 1964) (Brown, J., dissenting), *rev'd*, 380 U.S. 128 (1965). Plaintiff has not identified a single case suggesting that a general inquiry into list maintenance falls within the scope of the CRA. And Plaintiff's own statements evidence goals that contravene the purposes and intent of all three statutes. *See* Compl. at 1 (citing Exec. Order No. 14248).

II. **This Court must limit Title III demands that exceed DOJ's authority.**

Plaintiff suggests the Court must automatically order the requested relief, without even cursory review of the claims and basis upon which the action is brought. *See* ECF No. 103 at 9,

2

15-16. However, civil investigative demands ("CIDs") are governed by the FRCP. *See Becker v. United States*, 451 U.S. 1306, 1307-08 (1981) (Rehnquist, J., in chambers). DOJ's investigative authority reaches no farther than the statute that conferred it. *See generally Equal Emp. Opportunity Comm'n v. Kloster Cruise Ltd.*, 939 F.2d 920, 923 (11th Cir. 1991) (indicating that jurisdictional challenges to the EEOC's CIDs may be appropriate when the agency attempts to investigate a charge totally unrelated to illegal discrimination). Plaintiff does not assert any violation of the NVRA, HAVA, or CRA, and its demand is a treasure hunt without a treasure. *See generally Major League Baseball v. Crist*, 331 F.3d 1177, 1187 n.23 (11th Cir. 2003) ("[T]he [state] Attorney General has no idea what illegal conduct might have occurred, or who might have engaged in this conduct. Even so, the Attorney General believes he has the power to commence a full-blown investigation. . . . [T]he Constitution clearly require[s] that the Attorney General have *something*." (emphasis in original)).

Courts have a critical role in agency investigations, particularly to protect against abuse of congressionally conferred powers. Congress intended FRCP to apply to Title III claims. *Hearing on H.R. 8601 Before the S. Comm. on the Judiciary*, 86th Cong. 134 (1960) (statement of Lawrence Walsh, Deputy Attorney General of the United States) ("[T]his act . . . incorporates the rules of federal procedure except to the extent they are expressly negatived by express provision of the act."). DOJ's pretextual explanation for its demand demonstrates the importance of maintaining the strong presumption of judicial review. *See Media Matters for Am. v. Trade Comm'n*, No. 25-5302, 2025 WL 2988966, at *3 (D.C. Cir. Oct. 23, 2025) (quoting *Media Matters for Am. v. Paxton*, 138 F.4th 563, 579 (D.C. Cir. 2025)) ("[W]hen a company challenges a 'sweeping' demand on First Amendment grounds and demonstrates actual and ongoing harm to its constitutional rights, the case is no longer 'simply about a pre-enforcement challenge to a non-

3

self-executing [demand.]"); *see also Am. Ass'n of Univ. Professors v. Trump*, No. 25-CV-07864-RFL, 2025 WL 3187762, at *2, *37 (N.D. Cal. Nov. 14, 2025) (enjoining coercive usage of Title VI and IX procedures). Tellingly, Plaintiff does not deny that its true and ultimate purpose is the creation of a national voter registration database compiled from all state voter lists, nor that it intends to independently verify eligibility to coerce states to conduct purges. When paired with DOJ's insistence that courts exercise no independent review of this matter, *see* ECF No. 103 at 9, it is clear that it seeks unfettered power to displace functions the Constitution lodged with states, not the federal Executive. This mandates all-the-more careful review.

### III. Plaintiff's demands violate federal privacy law.

DOJ cannot bootstrap list maintenance provisions into Title III to avoid more than a half century of jurisprudence defining the boundaries of public records disclosure under the NVRA and HAVA. *See* ECF 103 at 2 n.2 ("The record production requirements of those statutes are subject to litigation procedures inapplicable to Title III . . . ."). Nothing in the CRA, NVRA, or HAVA prevents redaction of sensitive personal information, as the Secretary has offered to do. In fact, federal privacy law bars production of these unredacted voter files to DOJ. The Privacy Act prevents federal agencies from collecting records regarding Americans' First Amendment activities. 5 U.S.C. §§ 552a(a)(3), (a)(5), (e)(4), (e)(7), (f). The unredacted state voter list would associate protected First Amendment activity, such as party affiliation and previous election participation of individual voters, with SSN and driver license number. The creation of a centralized political dossier on every voter containing their personally identifiable information was precisely what the Privacy Act sought to prevent. *Weber*, 2026 WL 118807, *17. Further, the E-Government Act's procedural requirements, including the § 208(b) impact assessment, Pub. L. No. 107-347, 116 Stat. 2899, 2921-92 (2002), must be completed "*before* the agency initiates a new collection of information." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election*

4

*Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017) (emphasis in original); *Weber*, 2026 WL 118807, at *19. The Driver's Privacy Protection Act (DPPA) also does not allow sharing of voters' private information with DOJ. 18 U.S.C. §§ 2721(a), 2725(1), (3), & (4); *Reno v. Condon*, 528 U.S. 141, 143 (2000); *Weber*, 2026 WL 118807, at *19. Plaintiff's actions thus violate three federal statutes that protect the privacy rights of Pennsylvania voters.

    **IV.**    **DOJ's requests are *ultra vires* exertions, exceeding its statutory authority.**

DOJ exceeds the scope of its authority under the CRA, NVRA, and HAVA authority. The actions taken contravene statutory prohibitions against federal consolidation of voter information and statutory mandates that list maintenance be performed at the state level. *See* 5 U.S.C. § 706; *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415-16 (1971) (judicial review of agency action begins at the scope of authority conferred by statute); *see also A.O. Smith Corp. v. Fed. Trade Comm'n*, 396 F. Supp. 1125, 1133 (D. Del. 1975) ("[A]ncillary matters described in [Section 555], including investigations, are not a new category of substantive authority to which neither rulemaking nor adjudicatory procedures apply."), *rev'd on other grounds*, 530 F.2d 525 (3d. Cir. 1976); *see also Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014) ("A rule is legislative if it supplements a statute, adopts a new position inconsistent with existing regulations, or otherwise effects a substantive change in existing law or policy."). Where the DOJ's ultimate end is the creation of a new federal voter eligibility verification regime, the pursuit of this object by means of filing suit against 23 states is at best arbitrary and capricious, violating the Constitution and contravening legislative mandates. Further, to the extent that DOJ seeks to enforce Executive Order 14248 ("EO"), 90 Fed. Reg. 14005 (Mar. 25, 2005), DOJ's actions are derivative of the EO's *ultra vires* mandates. *See Washington v. Trump*, No. 2:25-cv-00602-JHC, 2026 WL 73866, at *25-27 (W.D. Wash. Jan. 9, 2026) (holding that the EO circumvents NVRA and constitutional authority).

## **CONCLUSION**

Proposed Intervenors respectfully request that the Court dismiss the Complaint under Rule 12(b)(1) and 12(b)(6).

Dated: January 30, 2026

Respectfully submitted,

By: */s/ Gillian Cassell-Stiga*
Gillian Cassell-Stiga, D.C. Bar No. 90032319*
Leah Frazier, D.C. Bar No. 492540*
Edward G. Caspar, D.C. Bar No. 1644168*
Robert N. Weiner, D.C. Bar No. 298133**
Ryan Snow, D.C. Bar No. 1619340**
Grace Thomas, D.C. Bar No. 90018667*
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K Street N.W., Suite 900
Washington, D.C. 20005
Tel: 202-662-8600
lfrazier@lawyerscommittee.org
ecaspar@lawyerscommittee.org
rweiner@lawyerscommittee.org
gcassell-stiga@lawyerscommittee.org
rsnow@lawyerscommittee.org
gthomas@lawyerscommittee.org

David Smith, Pa. Id. No. 21480
Dilworth Paxson LLP
1650 Market Street, Suite 1200
Philadelphia, PA 19103
Tel.: (215) 575-7000
Fax: (215) 754-4603
dsmith@dilworthlaw.com

*Admitted *pro hac vice*
***Pro hac vice* motions forthcoming

*Counsel for Proposed Intervenors NAACP, State Conference, and Stacey Taylor*

6